No. 12-56236

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT THOMSON,

      Plaintiff and Appellant,

  v.

TORRANCE POLICE DEPARTMENT and LOS ANGELES COUNTY SHERIFF'S DEPARTMENT,

      Defendants and Appellees.

---

On Appeal From the United States District Court
for the Central District of California
Case No. CV11-06154 SJO (JCx)
Honorable S. James Otero, U.S. District Judge

---

## APPELLEE TORRANCE POLICE DEPARTMENT'S ANSWERING BRIEF

TORRANCE CITY ATTORNEY'S OFFICE
John L. Fellows III (State Bar No. 103968) City Attorney,
jfellows@TorranceCA.gov
Della Thompson-Bell (State Bar No. 224846) Deputy City Attorney,
dthompsonbell@TorranceCA.Gov
3031 Torrance Boulevard
Torrance, CA 90503
Telephone:  310-618-5810
Facsimile:   310-618-5813

RUTAN & TUCKER, LLP
Robert S. Bower (State Bar No. 70234), rbower@rutan.com
Ajit S. Thind (State Bar No. 268018), athind@rutan.com
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931
Telephone:  714-641-5100
Facsimile:   714-546-9035

Attorneys for Defendant/Appellee TORRANCE POLICE DEPARTMENT

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT .............................................................i

II.     JURISDICTIONAL STATEMENT ......................................................1

III.    STATEMENT OF ISSUES .................................................................1

IV.     STATEMENT OF THE CASE..............................................................2

        A.      The Requirement For A CCW License Under California Law ...............2

        B.      Plaintiff/Appellant's Lawsuit ..................................................3

        C.      Motions For Summary Judgment...............................................3

        D.      The District Court's Order ......................................................4

V.      STATEMENT OF FACTS ..................................................................6

VI.     SUMMARY OF ARGUMENT ..........................................................10

VII.    STANDARD OF REVIEW ...............................................................13

VIII.   ARGUMENT...................................................................................14

        A.      Concealed Carry Regulations Are Not Within The Scope Of
                The Second Amendment Guarantee .......................................14

        B.      If Concealed Carry Regulations Are Deemed To Be Within The
                Scope Of The Second Amendment, Then Rational Basis
                Review Applies, Which The TPD CCW Policy Satisfies......................21

        C.      Even If Heightened Scrutiny Applies, The TPD CCW Policy
                More Than Satisfies That Standard.........................................24

IX.     CONCLUSION................................................................................30

**FEDERAL CASES**

*Clark v, Jeter*,
　　486 U.S. 456, 108 S.Ct. 1910, 100 L. Ed. 2d 465 (1988) ....................... 28

*District of Columbia v. Heller*,
　　554 U.S. 570, 128 S. Ct. 2783, 1171 L. Ed. 2d 637 (2008) ............ *passim*

*Dorr v. Weber*,
　　741 F. Supp. 2d 993 (N.D. Iowa 2010) ................................................... 19

*Edwards v. Aguillard*,
　　482 U.S. 578, 107 S. Ct. 2573,2593, 96 L. Ed. 2d 510 (1987) .............. 13

*GeorgiaCarry.Org, Inc. v. Georgia*,
　　No. 11-10387, 687 F.3d 1244, 2012 U.S. App. LEXIS 14955,
　　2012 WL 2947817 (11th Cir. July 20, 2012) ......................................... 16

*Hightower v. City of Boston*,
　　693 F.3d 61 (1st Cir. 2012)..................................................................... 27

*Jewel Cos. v. Pay Less Drug Stores Northwest, Inc.*,
　　741 F.2d 1555 (9th Cir. 1984) ................................................................ 13

*Kachalsky v. County of Westchester*,
　　701 F.3d 81 (2d. Cir. 2012) ............................................................. 22, 25

*Martinkovich v. Oregon Legislative Body*,
　　2011 U.S. Dist. LEXIS 117277 (D. Ore. 2011) ...................................... 19

*McCall v. Andrus*,
　　628 F.2d 1185 (9th Cir. 1980) ................................................................ 13

*McDonald v. City of Chicago*,
　　130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010)............................................. 16

*Moore v. Madigan*,
　　2012 U.S. App. LEXIS 25264 (7th Cir. 2012)................................. 15, 19

*Nordyke v. King*,
    681 F.3d 1041 (9th Cir. 2012) ................................................................ 18

*Peruta v. County of San Diego*,
    758 F. Supp. 2d 1106 (S.D. Cal. 2010) ............................................ 28, 29

*Piszczatoski v. Filko*,
    840 F. Supp. 2d 813 (N.J. 2012)........................................................ 25, 26

*Richards v. County of Yolo*,
    821 F. Supp. 2d 1169 (E.D. Cal. 2011) ...................................... 19, 21, 23

*Robertson v. Baldwin*,
    165 U.S. 275, 17 S. Ct. 326, 41 L. Ed. 715 (1897) .......................... 17, 19

*Schall v. Martin*,
    467 U.S. 253, 104 S. Ct. 2403, 81 L. Ed. 2d 207 (1984) ....................... 24

*Travelers Cas. & Sur. Co. of America v. Brenneke*,
    551 F.3d 1132 (9th Cir. 2009) ................................................................ 13

*U.S. v. Chester, Jr.*,
    628 F.3d 673 (4th Cir. 2010) .................................................................. 17

*Union Pacific Land Resources Corp. v. Moench Inv. Co.*,
    696 F.2d 88 (10th Cir. 1982) .................................................................. 13

*United States v. Barton*,
    633 F.3d 168 (3d Cir. 2011) ................................................................... 16

*United States v. Booker*,
    644 F.3d 12 (1st Cir. 2011), *cert. denied*, 132 S. Ct. 1538 (2012).......... 16

*United States v. Greeno*,
    679 F.3d 510 (6th Cir. 2012) ................................................................. 16

*United States v. Hart*,
    726 F. Supp. 2d 56 (D. Mass. 2010)....................................................... 19

*United States v. Marzzarella*,
    614 F.3d 85 (3d Cir. 2010) ............................................................... 17, 27

*United States v. Reese*,
  627 F.3d 792 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 2476, 179
  L. Ed. 2d 1214 (2011) .............................................................................. 16

*United States v. Staten*,
  666 F.3d 154 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 1937,
  182 L. Ed. 2d 794 (2012) ......................................................................... 16

*United States v. Vongxay*,
  594 F.3d 1111 (9th Cir. 2010) ................................................................ 18

*Williams v. Puerto Rico*,
  2012 U.S. Dist. LEXIS 181402 (D. P.R. 2012) ..................................... 15

## OTHER STATE CASES

*Commonwealth v. Perez*,
  952 N.E.2d 441, 80 Mass. App. Ct. 271 (2011) ..................................... 21

*Gamble v. United States*,
  30 A.3d 161 ............................................................................................. 19

*Gifford v. City of Los Angeles*,
  88 Cal. App. 4th 801 (2001) ...................................................................... 3

*Kansas v. Knight*,
  44 Kan. App. 2d 666, 241 P.3d 120 (2009) ..................................... 14, 20

*People v. Flores*,
  169 Cal. App. 4th 568, 86 Cal. Rptr. 3d 804 (2008) .............................. 20

*People v. Yarbrough*,
  169 Cal. App. 4th 303, 86 Cal. Rptr. 3d 674 (2008) .............................. 20

*Sims v. U.S.*,
  963 A.2d 147 (D.C. 2008) ....................................................................... 19

*State v. Chandler*,
  5 La.Ann. 489, 1850 La. LEXIS 226 (1850) ........................................... 18

*Williams v. State of Maryland*,
417 Md. 479, 10 A.3d ............................................................... 20

**FEDERAL STATUTES**

42 United States Code
section 1983 ........................................................................ 3, 23

**STATE STATUTES**

California Penal Code
section 12000. ...........................................................................2
section 12025 .............................................................. 2, 6, 20, 28
section 12026 ...........................................................................3
section 12026(a)............................................................... 23
section 12026.1(a)(1)........................................................ 23
section 12026(b) ............................................................... 23
section 12031 ........................................................ 2, 3, 6, 22, 28
section 12031(j)(1)........................................................ 23, 30
section 12031(k) ........................................................... 23, 30
section 12031(l) ................................................................. 30
section 12050 ..................................................... 2, 19, 23, 28
section 16000 ...........................................................................2

**CONSTITUTIONAL PROVISIONS**

U.S. Constitution,
Amendment II ....................................................................... 14

**NON-PERIODICAL PUBLICATIONS**

Blackstone's *Commentaries on the Laws of England* (1769) ...................... 17

# I. PRELIMINARY STATEMENT

Robert Thomson ("Plaintiff/Appellant") sued Appellees Torrance Police Department ("TPD") and Los Angeles County Sheriff's Department ("LASD"), alleging they violated his civil rights by denying him a concealed carry weapon ("CCW") license. All parties moved for summary judgment. On July 2, 2012, the District Court granted TPD's and LASD's motions for summary judgment and entered judgment in their favor. Plaintiff/Appellant timely appealed.

# II. JURISDICTIONAL STATEMENT

TPD agrees with Plaintiff/Appellant's "Statement of Jurisdiction."

# III. STATEMENT OF ISSUES

TPD disagrees with Plaintiff/Appellant's description of "Issues Presented," which misconstrues what the District Court decided. The appeal presents the following issues for review:

1. Whether there is a Second Amendment right to carry a concealed handgun in public.

2. Assuming *arguendo* that carrying a concealed handgun in public is protected by the Second Amendment, whether TPD's CCW policy passes constitutional muster under the appropriate level of scrutiny.

## IV.  STATEMENT OF THE CASE

Because Plaintiff/Appellant did not offer a sufficient Statement of the Case, TPD offers its own Statement as follows:

### A.  The Requirement For A CCW License Under California Law

California Penal Code section 12025 prohibits the carrying of concealed firearms, and section 12031 prohibits the general carrying of loaded firearms in public.  (Cal. Penal Code §§ 12025 (2011), 12031 (2010).) [1]  A CCW license allows a person to "to carry a pistol, revolver, or other firearm capable of being concealed upon the person."  (*Id*. § 12050(a)(1)(A).)  Section 12050 sets forth an application process that allows the sheriff of a county/chief of police of a city to issue such a license "upon proof that the person applying is of good moral character, that **good cause** exists for the issuance, and that the person applying satisfies" certain other statutory requirements.  (*Id*. § 12050(a)(1)(A) (emphasis added).)  Section 12050 gives "extremely broad discretion to the sheriff/chief concerning the issuance of concealed weapons licenses and explicitly grants

---

[1]  When Appellees considered Plaintiff/Appellant's applications for a CCW license, California Penal Code sections 12000 *et seq.* controlled.  Effective January 1, 2012, there was a nonsubstantive reorganization of those statutes in Part 6 of the Code ("Control of Deadly Weapons"), sections 16000 *et seq.* A table showing the new provisions and the corresponding old provisions is set forth at the beginning of Part 6.  Because the record in the case at bar refers to the old provisions, TPD cites to those old provisions here.

discretion to the issuing officer to issue or not issue a license to applicants meeting the minimum statutory requirements." (*Gifford v. City of Los Angeles*, 88 Cal. App. 4th 801, 805 (2001) (quotation marks omitted).) In addition, there are several exceptions to the requirement of a CCW license, which allow for individuals in certain situations to arm themselves in public without a license. (Cal. Pen. Code §§ 12026, 12031.)

### B.    Plaintiff/Appellant's Lawsuit

Plaintiff/Appellant's Second Amended Complaint ("Complaint") contains one cause of action, alleging that the separate denials of his CCW applications by Appellees amount to violations of his Second Amendment Rights. The action is brought under 42 U.S.C. § 1983.

### C.    Motions For Summary Judgment

All three parties filed motions for summary judgment. Plaintiff/Appellant did not object to any of Appellees' proffered uncontroverted facts or declarations, while Appellees objected to some portions of Plaintiff/Appellant's papers. (2 Joint Supplemental Excerpts of Record, 6:172-185, 7:186-190.)[2] The Honorable S. James Otero of the

---

[2]    Plaintiff/Appellant originally filed an Excerpts of Record ("ER"), which did not include an index or tabs. Thus, citations to the ER are only to the page number. Appellees thereafter agreed to also file a two volume Joint Supplemental Excerpts of Record ("JSER"). Citations to it are to the volume followed by the tab number and page number (*e.g.*, 2 JSER 6:172).

Central District took the matters under submission without oral argument on the motions.

D.    The District Court's Order

On July 2, 2012, the District Court ("Court") issued its order denying Plaintiff/Appellant's motion and granting LASD's and TPD's motions.  (ER, 1-13.)  The Court did not decide whether the Second Amendment encompasses a right to carry a loaded handgun in public:

> "The Court will not unnecessarily decide the constitutional
>
> issue of whether and to what extent there is a right to carry a
>
> weapon outside the home.  The Court need not decide whether
>
> the Second Amendment encompasses a right to carry a loaded
>
> handgun in public because '[i]f it exists, the right to carry a
>
> loaded handgun in public cannot be subject to a more rigorous
>
> level of judicial scrutiny than the "core right" to possess
>
> firearms in the home for self-defense.'  *See Peruta v. County of*
>
> *San Diego*, 758 F. Supp. 2d 1106, 1116 (S.D. Cal. 2010).
>
> Assuming *arguendo* that there is a Second Amendment right to
>
> carry a weapon outside the home, that right triggers a level of
>
> constitutional review below strict scrutiny - intermediate
>
> scrutiny or rational basis review."

(ER, 7.)

Without actually deciding which standard of review applied, the Court then reviewed the LASD and TPD policies under "intermediate scrutiny," as that was the more exacting standard of review. It found that both policies promoted a significant governmental interest:

> "Because the government has a compelling interest in protecting public safety, LASD and TPD have satisfied their burden to demonstrate a significant government interest in regulating firearms.
>
> . . . .
>
> "LASD's and TPD's licensing policies are substantially related to the compelling government objective of protecting citizens from gun violence. The policies allow LASD and TPD to better protect the public by adequately determining who is allowed to carry a concealed weapon in public."

(ER, 9.)

As a result, both policies satisfied intermediate scrutiny, and the Court entered judgment in favor of both LASD and TPD.

## V.   STATEMENT OF FACTS

Because Plaintiff/Appellant did not offer a sufficient Statement of Facts, TPD offers its own Statement as follows:

California Penal Code section 12025 prohibits the carrying of concealed firearms, and section 12031 prohibits the general carrying of loaded firearms in public.  (Cal. Penal Code §§ 12025 (2011), 12031 (2010).)  A CCW license allows a person to "to carry a pistol, revolver, or other firearm capable of being concealed upon the person."  (*Id*. § 12050(a)(1)(A).)  Plaintiff/Appellant applied for a CCW license with TPD and LASD.  (ER, 27-28; 2 JSER, 4:162-164.)

TPD's CCW policy reads as follows:

"CITY OF TORRANCE – GOOD CAUSE POLICY FOR

CCW LICENSES

GOALS

"Torrance has instituted a good cause policy for the issuance of CCW licenses pursuant to California Penal Code section 12050. The goals of this good cause policy in regulating concealed firearms are to maintain public safety, prevent gun-related crime and the death of its citizens, reduce the incidence of unlawful public shootings, reduce the number of concealed

weapons in public in order to reduce the risks to other members of the public who use the streets and go to public accommodations, and ensure that police officers can safely respond to dangerous situations.

"<u>POLICY</u>

"The Police Department shall conduct an individualized assessment of each applicant for a CCW license, including a review of the standardized DOJ application, a background check, and an interview of the applicant. The Chief of Police shall issue a CCW license when, in his sole discretion, he determines there is good cause to do so and the applicant has met all of the other conditions set forth in California Penal Code section 12050. **To establish good cause, an applicant must demonstrate more than a "generalized fear" for one's personal safety**. Rather, the applicant must document that:

"(i) the applicant is dealing with **circumstances that distinguish the applicant from other members of the public, in that there is a clear, present, and documented danger to the applicant**, <u>and</u>

"(ii) there are **no feasible alternative means of protection, either through existing law enforcement resources or under the provisions of California Penal Code section 12031**, which carve out a number of exceptions that allow individuals to possess and carry firearms in public settings for self-defense and defense of property.

<u>"EXAMPLES</u>

"Examples of good cause include where the applicant is a business owner who typically is forced to carry large sums of cash or valuable items in public <u>and</u> has been the victim of violent crime and/or the **subject of documented, credible threats of violence**.  Good cause would <u>not</u> include situations where the applicant voluntarily chooses to undertake risks in the performance of the applicant's job that could otherwise be avoided by performing the job in a different manner (*e.g*., avoiding risks by meeting clients in public places during the day, rather than late at night in crime-ridden areas)."

(2 JSER, 3:86-87 (bolding added, underscoring in the original).)

In his application to TPD for a CCW license, Plaintiff/Appellant asserted he had good cause for a license because he was a bail agent who

periodically carries over $10,000 in cash while performing his duties in dangerous neighborhoods at all hours.  (2 JSER, 3:151, 155.)  He further stated:  "I fear great bodily injury or death from an armed assailant who has the intent to steal my cash or harm me.  I am a man of small stature, and work very late hours of the night."  (2 JSER, 3:155.)

In his interview with the TPD, Plaintiff/Appellant recounted three incidents that purportedly established good cause for a CCW license:  one at a client's house where the man who answered the door held a firearm; a second where he had to call police to help him effect an arrest on a violent subject who had a bail warrant; and a third, where he had to call police because he was helping his wife - who works in real estate - change the locks on a property when the evicted tenants threw things at them.  (2 JSER, 3:138.)  The TPD investigator, however, found that Plaintiff/Appellant did not establish good cause:

"Mr. Thomson further stated that he **has not been threatened, nor had any security concerns, within the Torrance Police Department's jurisdiction [and]** that he **has never been physically assaulted or robbed during the course of his duties, nor has he ever had to file a report with any police agencies in regards to threats made against him or his**

2465/062579-0097
4711163.4 a01/07/13

**family**. Mr. Thomson said if he talks with a potential client or

family members of a potential client, and feels there is any type

of risk monetarily or safety-wise, he simply refuses to take the

case. Mr. Thomson made very clear . . . that he understands

there are risks that go with his occupation and he evaluates

every bond with safety in mind, **but his concerns are the**

**'unforeseen' and 'what ifs' that go along with the job**.

. . .

"I was **unable to determine/identify any specific or credible**

**threats to the applicant**. . . ."

(2 JSER, 3:138-139 (emphasis added).)

Because Plaintiff/Appellant failed to provide convincing evidence or

documentation of a sufficiently "clear and present danger" to his life, body,

spouse, or dependent child, Plaintiff/Appellant failed to establish good cause

to possess a concealed firearm in public, and the TPD denied the license.

(ER, 27-28; 2 JSER, 4:163-165.)

## VI.    SUMMARY OF ARGUMENT

Plaintiff/Appellant frames the issues for review as follows:

"Did the District Court err in finding, [*sic*] that the Second

Amendment was limited to the home and that Public Safety

Concerns [*sic*] alone justify infringement of Plaintiffs's [*sic*]

Fundamental Rights."  (Opening Brief, p. 5.)

Plaintiff/Appellant misinterprets the District Court's order.  First, the

District Court did not decide the precise scope of the Second Amendment.  It

merely determined that Appellees' CCW policies "do not hinder Plaintiff's

enjoyment of the Second Amendment's core protection."[3]  (ER, 7.)

Second, the District Court never found that Plaintiff/Appellant had a

fundamental right to carry a loaded concealed weapon in public, or that such

a fundamental right could be infringed on the basis of public safety

concerns.  Rather, the Court found that *if* there is a right to carry a loaded

handgun in public under the Second Amendment, it would be subject to, at

most, intermediate scrutiny.  The Court then found that Appellees' CCW

policies were constitutional under such review.[4]  (ER, 9-10.)

With regard to the issues as properly framed:

(i)      The prevalent holding of those cases deciding the issue is that

the Second Amendment does *not* encompass the right to have ready-to-use

---

[3]    As explained *infra*, courts have determined this "core right" is the possession of operative firearms for use in defense of hearth and home.

[4]    The Court also held the Appellees' CCW policies were applied to Plaintiff/Appellant in a consistent manner; found that his applications failed to satisfy the statutory prerequisite of "good cause;" and rejected his argument that a "prior restraint" analysis should apply to the policies.  (ER,

firearms for potential self-defense beyond the home.  Only an individual's

right to possess a firearm *for protection of the home* is protected by the

Second Amendment.  Thus, the right Plaintiff/Appellant seeks here is

outside the scope of the Second Amendment.

(ii)     To the extent the Second Amendment is deemed to provide

some right to carry a loaded firearm in public, that is not the "core right" of

the Second Amendment.  As a result, any infringement upon such a right

would be subject to a standard of judicial review that is less demanding than

strict scrutiny.  If the policy at issue does not "substantially burden" the right

to keep and bear arms, the policy should be reviewed under the rational basis

standard.  Because (a) the TPD CCW policy does not totally ban firearms,

and (b) the California statutory scheme allows individuals to bear arms

without a CCW license under several different scenarios, the TPD CCW

policy does not substantially burden the right to keep and bear arms.  And,

because the policy is based on a governmental interest in preserving public

safety – an interest characterized as *compelling* by the Supreme Court - it

easily withstands rational basis review.

(iii)    Even if reviewed under "intermediate scrutiny," as was done by

the District Court, TPD's disapproval of Plaintiff/Appellant's license

---

11-13.)  Plaintiff/Appellant does not challenge those holdings on appeal.

application was lawful because (a) it was based on a significant governmental interest in preserving public safety and had a substantial relationship and reasonable fit with that interest, and (b) Plaintiff/Appellant failed to satisfy the statutory prerequisite of "good cause" for the license.

## VII. STANDARD OF REVIEW

An order granting or denying summary judgment generally is reviewed de novo. (*Travelers Cas. & Sur. Co. of America v. Brenneke*, 551 F.3d 1132, 1137 (9th Cir. 2009).) The Court may affirm a summary judgment on any ground that has support in the record, whether or not relied upon by the lower court. (*Jewel Cos. v. Pay Less Drug Stores Northwest, Inc.,* 741 F.2d 1555, 1564-1565 (9th Cir. 1984).)

Summary judgment is particularly appropriate when, as here:

(i) the question of law involves the interpretation of a statute (*Edwards v. Aguillard*, 482 U.S. 578, 594-595, 107 S. Ct. 2573,2593, 96 L. Ed. 2d 510, 526 (1987); *Union Pacific Land Resources Corp. v. Moench Inv. Co.*, 696 F.2d 88, 93, n. 5 (10th Cir. 1982)); and

(ii) the court is reviewing an administrative action. (*McCall v. Andrus*, 628 F.2d 1185, 1189-1190 (9th Cir. 1980)).

## VIII. ARGUMENT

### A.     Concealed Carry Regulations Are Not Within The Scope Of The Second Amendment Guarantee.

The Second Amendment provides:

"A well regulated Militia, being necessary to the security of a

free State, the right of the people to keep and bear Arms, shall

not be infringed."

(U.S. Const. Amend. II.)

Since the early 1800s, the courts have repeatedly upheld concealed carry regulations.  Indeed, in *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 1171 L. Ed. 2d 637 (2008), the United States Supreme Court found that the longstanding recognition of the validity of concealed weapons laws was presumptively lawful.  (*Id.,* 626-27, and n.26.)[5]  Further, CCW regulations have been upheld by state and federal courts throughout the country since the Court's decision in *Heller.*  Thus, Plaintiff/Appellant is

---

[5]     Although the *Heller* Court did not specifically mention prohibitions on concealed firearms in its list of regulations that were presumptively lawful, the Court's list was not exhaustive.  (554 U.S. at 627, n. 26.)  Moreover, the Court (i) specifically mentioned prohibitions on concealed firearms in the sentence before its list of presumptively lawful prohibitions, and (ii) began the paragraph by stating that "the right secured by the Second Amendment is not unlimited" and, two sentences later, noted prohibitions on carrying concealed firearms as an example.  (*Id.,* 626-627.)  "This clearly shows that the *Heller* Court considered concealed firearms prohibitions to be presumptively constitutional under the Second Amendment."  (*Kansas v.*

seeking protection for an activity that is not within the scope of the Second Amendment. To hold that Plaintiff/Appellant has a constitutional right to carry a loaded concealed handgun in public would be an unwarranted extension of Second Amendment law. (*But see Moore v. Madigan*, 2012 U.S. App. LEXIS 25264, *22, *29 (7th Cir. 2012) [court struck down a "uniquely sweeping" total ban on carrying firearms outside the home under the Second Amendment, holding that where state law precluded *any* CCW licenses, state had to show that ban was justified by an increase in public safety and was based on more than rational basis - the state failed to carry that burden]; *see Williams v. Puerto Rico,* 2012 U.S. Dist. LEXIS 181402, *21-*24 (D. P.R. 2012) [distinguishing *Moore* on grounds that "it is the complete ban of weapons – not the mere regulation by licensing or requiring permits – that is unconstitutional."].)

In *Heller*, the Supreme Court addressed laws that (i) totally banned the possession of handguns, and (ii) required any lawful firearms in the home to be kept inoperable. The Court struck down the laws, concluding that the core purpose of the right conferred by the Second Amendment was an individual right, as opposed to a collective protection of state militias, and it allowed "law-abiding, responsible citizens to use [handguns] *in defense of*

---

*Knight*, 44 Kan. App. 2d 666, 685-686, 241 P.3d 120 (2009).)

2465/062579-0097
4711163.4 a01/07/13

*hearth and home*" (554 U.S. at 635 (emph. added)), "where the need for defense of self, family, and property is most acute" (*id.,* 628).[6]

The right to use arms in the defense of one's home, however, does not provide any precedent pertaining to the public carry of concealed weapons. The *Heller* Court emphasized that (i) the right to keep and bear arms is not unlimited - it is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for any purpose" (554 U.S. at 626), and (ii) most 19th-century courts upheld prohibitions on carrying concealed weapons (*id.,* 626-627 and n.26). (*See also McDonald v. City of Chicago*, 130 S. Ct. 3020, 3050, 177 L. Ed. 2d 894, 929 (2010) [in holding that the Second Amendment applies to state and local governments, the Court reiterated that the right to bear arms is not without restrictions].)

The process by which the *Heller* Court reached its decision provides guidance on evaluating the challenge here. *Heller* held that challenged

---

[6]    It is universally recognized that *Heller* established that the possession of operative firearms for use in defense of the home constitutes the "core" of the Second Amendment. (*See, e.g.*, *United States v. Booker*, 644 F.3d 12, 25 n.17 (1st Cir. 2011), *cert. denied*, 132 S. Ct. 1538 (2012); *United States v. Greeno*, 679 F.3d 510, 517 (6th Cir. 2012); *GeorgiaCarry.Org, Inc. v. Georgia*, No. 11-10387, 687 F.3d 1244, 2012 U.S. App. LEXIS 14955, 2012 WL 2947817, at *7 (11th Cir. July 20, 2012) (to be published in F.3d); *United States v. Barton*, 633 F.3d 168, 170 (3d Cir. 2011); *United States v. Staten*, 666 F.3d 154, 158 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 1937, 182 L. Ed. 2d 794 (2012); *United States v. Reese*, 627 F.3d 792, 800 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 2476, 179 L. Ed. 2d 1214 (2011).)

conduct violates the protections of the Second Amendment only if the rights impacted were understood to be within the scope of the Second Amendment guarantee at the time of its ratification in 1791. For example, the Court interpreted the word "arms" in specific reference to its "18th-century meaning" as defined in the 1773 edition of Samuel Johnson's dictionary. (554 U.S. at 581.) Likewise, the Court relied on the 1769 edition of Blackstone's *Commentaries on the Laws of England* and 17th century English statutes to define the phrase "keep and bear arms." (*Id.,* 582.)

Thus, the first question in evaluating a challenged regulation is whether the burdened conduct was understood to be within the scope of the Second Amendment guarantee at the time of ratification. (*U.S. v. Chester, Jr.*, 628 F.3d 673, 680 (4th Cir. 2010).) If it was not, *the inquiry is complete*. (*United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010).)

Significant to the case at bar, the Supreme Court noted that "the majority of the 19th-century courts to consider the question held that *prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues*." (554 U.S. at 626 (cit. omitted, emph. added); *see, e.g., Robertson v. Baldwin*, 165 U.S. 275, 281-282, 17 S. Ct. 326, 329, 41 L. Ed. 715, 717-718 (1897) [where the Supreme Court itself held that "the right of the people to keep and bear arms . . . is not infringed

by laws prohibiting the carrying of concealed weapons"]; *State v. Chandler*, 5 La.Ann. 489, 490, 1850 La. LEXIS 226 (1850) [right to keep and bear arms does not extend to the carrying of concealed weapons].)  Thus, because the right to carry a concealed weapon was *not* understood to be within the scope of the Second Amendment guarantee at the time of ratification, the inquiry is complete, and no claim was stated here.

The cases decided since *Heller* overwhelmingly suggest that carrying a concealed weapon is not a right protected by the Second Amendment.  For example, in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), this Court explained that the scope of *Heller* was limited to the right to register and keep a loaded firearm *in the home* for self-defense:

> "[*Heller's*] specific holding . . . was that D.C.'s 'ban on handgun possession **in the home** violates the Second Amendment, as does its prohibition against rendering any lawful firearm **in the home** operable for the purpose of immediate self-defense.'"

(594 F.3d at 1115 (cit. omitted, emphasis added).)[7]

---

[7]    To be fair, however, this Court has not provided definitive guidance on Second Amendment issues.  In the recent case of *Nordyke v. King,* 681 F.3d 1041 (9th Cir. 2012), where plaintiffs challenged an ordinance that required firearms at a gun show to be secured to prevent unauthorized use, the Court did not opine on the scope of the Second Amendment.  And, the Court held

Similarly, in *Richards v. County of Yolo*, 821 F. Supp. 2d 1169 (E.D. Cal. 2011), plaintiffs asserted, as Plaintiff/Appellant does here, that the requirement of "good cause" under California Penal Code section 12050 infringed on their Second Amendment rights. (*Id.,* 1172.) Applying *Heller*, the court held that the Second Amendment "does not create a fundamental right to carry a concealed weapon in public." (*Id.,* 1174.) The court noted that the county's policy, like the TPD's CCW policy in the case at bar, did not "create a total ban on carrying a firearm, such that the policy completely infringes on the rights protected by the Second Amendment." (*Id.*)[8]

---

that plaintiffs did not state a viable Second Amendment claim "no matter what form of scrutiny applies to Second Amendment claims." (*Id.,* 1045.)

[8]  *See Dorr v. Weber*, 741 F. Supp. 2d 993, 1005 (N.D. Iowa 2010) ["a right to carry a concealed weapon under the Second Amendment has not been recognized to date;" *Heller* did not alter *Robertson v. Baldwin*'s ruling that Second Amendment not infringed by laws prohibiting the carrying of concealed weapons]; *Gamble v. United States*, 30 A.3d 161, 164 (D.C. 2011) ["carrying a concealed weapon is not protected by the Second Amendment"]; *Martinkovich v. Oregon Legislative Body*, 2011 U.S. Dist. LEXIS 117277, *5 (D. Ore. 2011) ["Because Plaintiff does not have a constitutional right to carry a concealed weapon, Plaintiff fails to state a claim for relief . . . under the Second Amendment"]; *United States v. Hart*, 726 F. Supp .2d 56, 60 (D. Mass. 2010) ["*Heller* does not hold, nor even suggest, that concealed weapons laws are unconstitutional"]; *Sims v. U.S.*, 963 A.2d 147, 150 (D.C. 2008) [Second Amendment does not "compel the District to license a resident to carry and possess a handgun outside the confines of his home, however broadly defined"]. *But see Moore v. Madigan,* 2012 U.S. App. LEXIS 25264, *22, *29 [state failed to carry burden of showing total ban on firearms outside the home was justified by increase in public safety and was based on more than rational basis].

State courts, including those in California, concur that there is no individual constitutional right to carry a concealed weapon under the Second Amendment. California Penal Code section 12025, which prohibits carrying a concealed weapon, has been held to be constitutional in challenges similar to the one posited here. (*People v. Yarbrough*, 169 Cal. App. 4th 303, 314, 86 Cal. Rptr. 3d 674 (2008) [section 12025 does not regulate possession of handgun in the home for purposes of self-defense; carrying concealed firearm in public presents recognized threat to public order, and is prohibited as a means of preventing physical harm to persons other than the offender]; *accord*, *People v. Flores*, 169 Cal. App. 4th 568, 575, 86 Cal. Rptr. 3d 804 (2008) ["Given this implicit approval of concealed firearm prohibitions, we cannot read *Heller* to have altered the courts' longstanding understanding that such prohibitions are constitutional"]; *see also Williams v. State of Maryland*, 417 Md. 479, 496, 10 A.3d 1167, 1177-1178 (2011) [statute "prohibiting wearing, carrying, or transporting a handgun, without a permit and outside of one's home," is "outside of the scope of the Second Amendment"]; *Kansas v. Knight*, *supra*, 44 Kan. App. 2d at 684-686 [*Heller* does not extend to individuals the right to carry a concealed firearm outside the home; "the *Heller* Court considered concealed firearms prohibitions to be presumptively constitutional under the Second Amendment"];

*Commonwealth v. Perez*, 952 N.E.2d 441, 451, 80 Mass. App. Ct. 271

(2011) ["The Second Amendment does not protect the defendant in this case

because he was in possession of the firearm outside his home."].)

Because Plaintiff/Appellant does not have a right to carry a concealed

handgun under the Second Amendment, judgment was properly granted.

> B.     If Concealed Carry Regulations Are Deemed To Be Within The
>        Scope Of The Second Amendment, Then Rational Basis
>        Review Applies, Which The TPD CCW Policy Satisfies.

Assuming *arguendo* that the Second Amendment recognizes some

sort of right to carry a concealed handgun in public, the TPD's policy does

not substantially burden that right.  Thus, the policy's constitutionality is

determined under the highly deferential rational basis review.  (*Richards v.

County of Yolo, supra*, 821 F. Supp. 2d at 1174.)

*Richards* upheld the county's "good cause" policy which, similar to

the TPD's policy, listed as an *invalid* reason for a CCW license "self-defense

'without credible threats of violence.'"  (821 F. Supp. 2d at 1172.)  Three

rulings by the court are of significance here:

First, the Second Amendment did not create a fundamental right to

carry a concealed weapon in public.  (821 F. Supp. 2d at 1174.)

Second, even if it did, the policy did not "substantially burden" the

right to keep and bear arms, because (i) it did not *totally ban* carrying a

firearm, and (ii) the Penal Code "carved out a number of exceptions that allow individuals to possess and carry loaded firearms in public settings." One such exception is California Penal Code section 12031, "where someone . . . believes they are in 'immediate, grave, danger and that the carrying of the weapon is necessary for the preservation of that person or property.'" (*Id.*, 1175 ["even if Plaintiffs are denied a concealed weapon license for self-defense purposes . . , they are still more than free to keep an unloaded weapon nearby their person, load it, and use it for self-defense in circumstances that may occur in a public setting." Thus, the  policy "does not substantially burden Plaintiffs' right to bear and keep arms."]; *but see Kachalsky v. County of Westchester*, 701 F.3d 81, *30 (2d. Cir. 2012) [finding state's "proper cause" requirement for CCW license placed substantial limits on ability to carry firearms in public].)

Third, "if the regulation does not place a *substantial* burden to an individual's fundamental right, then *rational basis review applies.*" (*Id.*, 1174-1175 (emphasis added).)  A regulation is constitutional under such review if it bears a reasonable relationship to a legitimate government interest.  Because regulating concealed firearms was an essential part of the effort to maintain public safety and prevent gun-related crimes and the death

of citizens, the policy was "more than rationally related" to those goals, so that the county was entitled to summary judgment. (*Id.,* 1175-1176.)

Applying the rationale of *Richards* here, the same result should obtain: (i) the Second Amendment does not create a fundamental right to carry a concealed weapon in public, and thus Plaintiff/Appellant fails to state a claim under Section 1983; (ii) in any event, the TPD's CCW policy does not create a total ban on carrying a firearm – a person need only show that he is subject to a clear and present danger to receive a license (Cal. Pen. Code § 12050); (iii) there are a number of alternative means of self-defense available to a person;[9] and (iv) TPD's interest in public safety is more than a legitimate one. It is, according to the *Heller* Court, a compelling one:

> "[A]lmost every gun-control regulation will seek to advance . . .
> a primary concern of every government - a concern for the
> safety and indeed the lives of its citizens. The Court has
> deemed that interest, as well as the Government's general
> interest in preventing crime, to be compelling, and the Court

---

[9]   For example, a person may carry a loaded weapon, open or concealed, in his home, business, or on other designated private property (§ 12026(a), (b)); carry an unloaded firearm in a locked trunk or other locked container in the car (§ 12026.1(a)(1)); and open-carry a loaded weapon while making a lawful arrest (§ 12031(k)) or if he believes he is in immediate, grave danger and the firearm is needed for his self-defense (§ 12031(j)(1)).

has in a wide variety of constitutional contexts found such

public-safety concerns sufficiently forceful to justify

restrictions on individual liberties."

(*Heller, supra*, 554 U.S. at 689 [quotation marks omitted]; *see also Schall v.*

*Martin*, 467 U.S. 253, 264, 104 S. Ct. 2403, 2410, 81 L. Ed. 2d 207, 217

(1984) ["The 'legitimate and compelling state interest' in protecting the

community from crime cannot be doubted."].)

Because the TPD's CCW policy does not substantially burden the

right to keep and bear arms, rational basis review applies.  Moreover,

because regulating concealed firearms is an essential part of the City's

efforts to maintain public safety and prevent gun-related crimes and the

death of its citizens, the policy is more than rationally related to these goals.

Thus, the TPD was entitled to summary judgment.

C.    Even If Heightened Scrutiny Applies, The TPD CCW Policy
      More Than Satisfies That Standard.

Even if TPD's CCW policy were deemed to somehow substantially

burden Second Amendment rights, so that a heightened judicial scrutiny

would apply, the policy would still pass that review.  Restrictions on the

right to carry concealed firearms "should be subject to less exacting scrutiny

than burdens on the right to use a gun for self-defense in the home."

(*Piszczatoski v. Filko*, 840 F. Supp. 2d 813, 835-837 (N.J. 2012).) Thus,

rather than strict scrutiny, at most, "intermediate scrutiny" would apply.

In *Kachalsky v. County of Westchester*, *supra,* 701 F.3d 81, the court

analyzed *Heller* in circumstances strikingly similar to those in the case at

bar. There, the plaintiffs included a person asserting a need to defend

himself against sporadic random violence (like Plaintiff/Appellant here) and

a transgender individual claiming to be subject to a higher likelihood of

being the victim of violence. Plaintiffs asserted they needed CCW permits

for self-defense purposes. (*Id.,* *13-*14.) Under the statutory scheme,

applicants for a CCW permit had to show "proper cause," which, similar to

"good cause" in the case at bar, was defined as a need for self protection

distinguishable from that of the general public. (*Id.,* *10-*11.)

When their applications were denied, plaintiffs claimed the "proper

cause" requirement violated the Second Amendment. (2012 U.S. App.

LEXIS 24363, *15.) The court acknowledged that *Heller* provided no

categorical answer as to whether the "proper cause" requirement burdened

conduct protected by the Second Amendment (*id.,* *15-*16), but assumed it

did for purposes of its analysis (*id.,* *29). The court then held that even

under intermediate scrutiny, the state had compelling interests in public

safety and crime prevention, and that the "proper cause" requirement was

substantially related to those purposes. (*Id.,* \*41-\*53.) As stated by the court:

> "In light of the state's considerable authority – enshrined within the *Second Amendment* – to regulate firearm possession in public, requiring a showing that there is an **objective threat** to a person's safety – a '**special need for self-protection**' – before granting a carry license is entirely consistent with the right to bear arms."

(2012 U.S. App. LEXIS 24363, \*52 (emphasis added).)

In *Piszczatoski v. Filko, supra*, 840 F. Supp. 2d 813, the court reviewed New Jersey's handgun permit law. Similar to the case at bar, the New Jersey law required applicants to demonstrate "an urgent necessity for self-protection" based on "specific threats or previous attacks demonstrating a special danger to the applicant's life that cannot be avoided by other means." (*Id.*, 817) The court found that the permitting scheme was not facially unconstitutional (*id.,* 820 [Second Amendment does not protect an absolute right to carry a handgun for self-defense outside the home]), and that the Supreme Court "does not recognize or even suggest a broad general right to carry arms" (*id.,* 822). To the extent the law might implicate some narrow right to carry a firearm outside of the home, the court found that

"[t]he requirement that an applicant demonstrate need for a permit to carry a handgun in public is a 'longstanding' licensing provision of the kind that *Heller* identified as presumptively lawful." (*Id.,* 829.) Applying intermediate scrutiny, the court held, consistent with *Heller*, that "the governmental interest in protecting public safety is important or even compelling." (*Id.,* 835.) The court also agreed that the justifiable need requirement of the law "does not burden more of any alleged right to carry a handgun for self-defense than would be reasonably necessary to achieve New Jersey's interest in public safety." (*Id.,* 837; *see also Hightower v. City of Boston,* 693 F.3d 61, 64, 72-74 (1st Cir. 2012) [interest plaintiff advances in carrying concealed weapons outside the home "is distinct from this core interest emphasized in *Heller.*" Government may regulate that activity and the licensing thereof is presumptively lawful].)

As in the cases discussed above, the TPD's CCW policy's good cause requirement is substantially related to serve the important, even compelling, governmental interest in public safety. (2 JSER, 3:86, 4:162.) Even if limiting CCW licenses to only those who demonstrate a clear, present, and documented danger might not be the most precisely focused means to achieve that end, intermediate scrutiny permits the government to paint with a broad brush. (*Marzzarella, supra*, 614 F.3d at 97-99 [under intermediate

scrutiny, state's policy need not be perfect, only substantially related to a "significant," "substantial," or "important" governmental interest]; *see also Clark v, Jeter*, 486 U.S. 456, 461, 108 S. Ct. 1910, 100 L. Ed. 2d 465 (1988).) Moreover, because the governmental objective of public safety is exceptionally compelling in this area, the state must be afforded wider latitude to combat the great social harm inflicted by gun violence.

Indeed, the "good cause" requirement of California Penal Code section 12050 has been upheld against the same sort of challenge brought here. *Peruta v. San Diego County*, *supra*, 758 F. Supp. 2d 1106, involved a Second Amendment challenge to the county's CCW policy which required an applicant to establish "good cause" for obtaining a license. (*Id.,* 1109.) The court found that the policy and California Penal Code sections 12025, 12031, and 12050, when considered together, did not unconstitutionally burden a person's right to carry an operable firearm for the purposes of immediate self-defense. (*Id.,* 1117.) Whereas *Heller* addressed a total ban on handguns in the home and a requirement that other firearms be kept inoperable at all times, making it impossible for citizens to use firearms in self-defense, the California Penal Code contains an exception for self-defense – specifically, section 12031 that expressly permits loaded open carry for immediate self-defense. (*Id.,* 1114-1115.)

The *Peruta* court held that even if intermediate scrutiny applied to the county's "good cause" policy, the county had substantial interests in public safety and in reducing the number of concealed weapons in public in order to reduce the risks to members of the public who use the streets and go to public accommodations. (758 F. Supp. 2d at 1117.) The policy of requiring documented good cause was reasonably related to those interests, because it helped differentiate between individuals who had a bona fide need to carry a concealed handgun for self-defense and individuals who did not. (*Id.*)

The same is true here. TPD's policy is substantially related to the compelling government objective of protecting citizens from gun violence. The policy allows TPD to better protect the public by adequately determining who is allowed to carry a concealed weapon in public. The Declaration of Franklin E. Zimring makes it clear that concealed weapons pose a public danger and that the "governmental interest in limiting the number of persons licensed to carry weapons hidden on their persons in public places is substantially related to reducing the volume and deadliness of street robberies and assaults." (2 JSER, 2:49.)

There is also a proper fit between the policies and the compelling government interest of public safety. First, the scope of the policies' restrictions is limited and narrow. And, as stated, California provides

multiple exceptions to its firearm prohibitions.  (Cal. Penal Code §§ 12031(*l*)

["Nothing in this section shall prevent any person from having a loaded

weapon, if it is otherwise lawful, at his or her place of residence, including

any temporary residence or campsite"]; 12031(k) ["Nothing in this section is

intended to preclude the carrying of a loaded firearm by any person while

engaged in the act of making or attempting to make a lawful arrest"];

12031(j)(1) [person may carry a loaded firearm in public when he

reasonably believes he is in "immediate, grave danger and that the carrying

of the weapon is necessary for the preservation of that person or property"].)

These exceptions prevent any sweeping  prohibitions on firearm possession.

## IX.    CONCLUSION

There is no Second Amendment right to carry a concealed loaded

weapon in public.  Even if there were, restrictions on that right would be

subject to, at most, intermediate scrutiny.  TPD has a sufficient interest in

public safety and has tailored its policy to properly fit that interest.

Accordingly, the judgment should be affirmed.

Dated:  January 8, 2013                    RUTAN & TUCKER, LLP
                                           ROBERT S. BOWER
                                           AJIT S. THIND


                                   By:_____
                                           Ajit S. Thind
                                           Attorneys for Appellee

# Certificate of Compliance

## (Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-l)

The text in this Answering Brief is proportionately spaced. The typeface is Times New Roman in 14-point size. I understand that this Answering Brief must not exceed 14,000 words. The word count of this Answering Brief is 6,486, as generated by Microsoft Word 2010 for the portions of the brief subject to the restrictions of FRAP 32(a)(7)(B)(i).

Dated: January 8, 2013

RUTAN & TUCKER, LLP
ROBERT S. BOWER
AJIT S. THIND

By:_____
    Ajit S. Thind
    Attorneys for Appellee
    TORRANCE POLICE
    DEPARTMENT

## Statement of Related Cases

## (Circuit Rule 28-2.6)

Counsel for TPD believes that there are some related cases presently pending in this Court that deal with the issue of CCW policies. They are:

*Peruta v. County of San Diego,* Case No. 10-56971

*Richards v. Prieto*, Case No. 11-16255

*Birdt v. Beck*, Case No. 12-55115

Dated: January 8, 2013                    RUTAN & TUCKER, LLP
                                          ROBERT S. BOWER
                                          AJIT S. THIND


By:_____
     Ajit S. Thind
     Attorneys for Appellee
     TORRANCE POLICE
     DEPARTMENT

**Certificate of Service**

I certify that on January 8, 2013, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Dated: January 8, 2013

RUTAN & TUCKER, LLP
ROBERT S. BOWER
AJIT S. THIND

By: _____
    Ajit S. Thind
    Attorneys for Appellee
    TORRANCE POLICE
    DEPARTMENT