No. 12-56236

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT THOMSON,

      Plaintiff and Appellant,

  v.

TORRANCE POLICE DEPARTMENT and LOS ANGELES COUNTY
SHERIFF'S DEPARTMENT,

      Defendants and Appellees.

---

On Appeal From the United States District Court
for the Central District of California
Case No. CV11-06154 SJO (JCx)
Honorable S. James Otero, U.S. District Judge

---

# APPELLEES TORRANCE POLICE
# DEPARTMENT'S AND LOS ANGELES COUNTY
# SHERIFF'S DEPARTMENT'S JOINT
# SUPPLEMENTAL EXCERPTS OF RECORD

## VOLUME 2
## TABS 2 - 9
## PAGES JS00002 – JS0202

TORRANCE CITY ATTORNEY'S OFFICE
John L. Fellows III (State Bar No. 103968)
City Attorney
jfellows@TorranceCA.gov
Della Thompson-Bell (State Bar No. 224846)
Deputy City Attorney
dthompsonbell@TorranceCA.Gov
3031 Torrance Boulevard
Torrance, CA 90503
Telephone: 310-618-5810
Facsimile: 310-618-5813

RUTAN & TUCKER, LLP
Robert S. Bower (State Bar No. 70234)
rbower@rutan.com
Ajit S. Thind (State Bar No. 268018)
athind@rutan.com
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Defendant and Appellee
TORRANCE POLICE DEPARTMENT


LOS ANGELES COUNTY SHERIFF'S DEPARTMENT
John F. Krattli (State Bar No. 82149)
Acting County Counsel
Roger H. Granbo (State Bar No. 108372)
Assistant County Counsel
Jennifer D. Lehman (State Bar No. 191477)
Principal Deputy County Counsel
jlehman@counsel.lacounty.gov
648 Kenneth Hahn Hall of Administration
500 West Temple Street
Los Angeles, California 90012-2713
Telephone: (213) 974-1908 . Fax: (213) 626-2105


Attorneys for Defendant and Appellee
LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

# INDEX TO SUPPLEMENTAL EXCERPTS OF RECORD

| Vol. | Tab | Document | Page(s) |
|------|-----|----------|---------|
| 1 | 1 | Judgment in Favor of Defendants Los Angeles County Sheriff's Department and Torrance Police Department, filed July 2, 2012 (Docket #71) | JSER0001 – JSER0002 |
| 2 | 2 | Defendants Los Angeles County Sheriff's Departments' Separate Statement of Undisputed Facts & Conclusions of Law; Evidence in Support Thereon, filed December 23, 2011 (Docket #37-1) | JSER0003 – JSER0081 |
| 2 | 3 | Declaration of Chief of Police John Neu in Support of Defendant Torrance Police Department's Motion for Summary Judgment (with Exhibits A-C), filed January 3, 2012 (Docket # 41, et seq.) | JSER0082 – JSER0160 |
| 2 | 4 | Defendant Torrance Police Department's Statement of Uncontroverted Facts and Conclusions of Law, filed January 3, 2012 (Docket # 42-3) | JSER0161 – JSER0167 |
| 2 | 5 | Defendant Torrance Police Department's Statement of Genuine Disputes of Material Facts, filed February 6, 2012 (Docket # 58) | JSER0168 – JSER0171 |
| 2 | 6 | Defendant Torrance Police Department's Evidentiary Objections to the Declaration of Lawrence Mudgett, filed February 10, 2012 (Docket # 61) | JSER0172 – JSER0185 |
| 2 | 7 | Objections to Plaintiff's Evidence in Opposition to LASD Defendant's Motion for Summary Judgment, filed February 10, 2012 (Docket # 64) | JSER0186 – JSER0190 |

| Vol. | Tab | Document | Page(s) |
|------|-----|----------|---------|
| 2 | 8 | Notice of Appeal, filed July 3, 2012 (Docket # 72) | JSER0191 |
| 2 | 9 | Civil Docket, obtained December 6, 2012 | JSER0192 – JSER0202 |

# Tab 2

1   ANDREA SHERIDAN ORDIN, County Counsel
    ROGER H. GRANBO, Assistant County Counsel
2   JENNIFER A.D. LEHMAN, Principal Deputy County Counsel
    (SBN 191477) • jlehman@counsel.lacounty.gov
3   648 Kenneth Hahn Hall of Administration
    500 West Temple Street
4   Los Angeles, California 90012-2713
    Telephone: (213) 974-1908 · Fax: (213) 626-2105
5
    Attorneys for Defendant
6   LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

7
                    UNITED STATES DISTRICT COURT
8
                    CENTRAL DISTRICT OF CALIFORNIA
9

10

11  ROBERT THOMSON,                    CASE NO. CV 11-06154 SJO (JCx)

          Plaintiff,                   **DEFENDANTS LOS ANGELES**
12                                     **COUNTY SHERIFF'S**
          v.                           **DEPARTMENTS' SEPARATE**
13                                     **STATEMENT OF UNDISPUTED**
    TORRANCE POLICE DEPARTMENT         **FACTS & CONCLUSIONS OF**
14  and THE LOS ANGELES COUNTY         **LAW; EVIDENCE IN SUPPORT**
    SHERIFF'S DEPARTMENT,              **THEREOF**
15
          Defendants.                  [Filed concurrently with Notice of
16                                     Motion and Motion for summary
                                       Judgment; Proposed Order]
17
                                       MSJ Date:   **February 27, 2012**
18                                     Time:        10 a.m.
                                       Dept.:       1
19
                                       Action Filed:   July 26, 2011
20

21

22
          Defendant Los Angeles County Sheriff's Department ("LASD") submits its
23
    Separate Statement of Uncontroverted Facts & Conclusions of Law in support of
24
    their Motion for Summary Judgment/Partial Summary Judgment pursuant to Local
25
    Rule 56-1.
26

27

28

HOA.846755.1

## LASD'S UNDISPUTED FACTS AND EVIDENCE

| LASD's Undisputed Facts | LASD's Supporting Evidence |
|---|---|
| 1.     Paul Tanaka is the Undersheriff for Los Angeles County. As part of his responsibilities as Undersheriff he has been designated to act as the Sheriff's sole authorized representative for reviewing applications for concealed weapons licenses (CCW) for the County of Los Angeles.  In that role, he and members of his staff, evaluate CCW applications.  While members of his staff make recommendations regarding applications, he is the final decision-maker. | 1.     Exh. A, Tanaka Decl. ¶¶ 1-2. |
| 2.     As part of his evaluation of CCW applications, he will review the entire application packet and any and all supporting documentation. | 2.     Exh. A, Tanaka Decl. ¶ 2. |
| 3.     In Los Angeles County, there are four distinct categories of CCW licenses:  Employment, Standard, Judges, and Reserve Police Officers. The Employment CCW license is issued only to a person who spends a | 3.     Exh. A, Tanaka Decl. ¶ 3. |

JSER0004

| LASD's Undisputed Facts | LASD's Supporting Evidence |
|---|---|
| substantial period of time in his or her principal place of employment or business in Los Angeles County. The Standard CCW license is issued to residents of Los Angeles County or to residents of a particular city within Los Angeles County. The Judge CCW license is issued to California judges, full-time commissioners, and to federal judges and magistrates of the federal courts. The Reserve Police Officer CCW license may be issued to reserve police officers appointed pursuant to California Penal Code § 830.6. | |
| 4.    If an applicant resides in an incorporated city not policed by the LASD, the applicant must apply to the chief of police of their city of residence for a concealed weapons license and have such application acted upon. Within 60 days after a denial of such application, such city resident may file a separate application with the LASD, attaching a copy of the application denied by the chief of police. The LASD will exercise independent | 4.    Exh. A, Tanaka Decl. ¶ 4. |

JSER0005

| LASD's Undisputed Facts | LASD's Supporting Evidence |
|---|---|
| discretion in granting or denying licenses to such person but may review, consider, and give weight to the grounds upon which such denial was made. | |
| 5.      California Penal Code sections 12050-12054 set forth the general criteria that CCW applicants must meet. Applicants must be of good moral character, be a resident of, or spend substantial time in the County they apply in, take a firearms course, and demonstrate good cause for the license. | 5.      Exh. A, Tanaka Decl. ¶ 5. |
| 6.      The issuance of licenses enabling a private citizen to carry a CCW is of great concern to the LASD.  The LASD's overriding policy is that no CCW license should be granted merely for the personal convenience of the applicant.  No position or job application in itself shall constitute good cause for the issuance, or for the denial, of a CCW license. | 6.      Exh. A, Tanaka Decl. ¶ 6. |
| 7.      The LASD defines "good cause" under California Penal Code section 12050 as requiring convincing evidence of a clear and present danger to life or of | 7.      Exh. A, Tanaka Decl. ¶ 6, see also Exh. 1 to Tanaka Decl. (p.22) |

| LASD's Undisputed Facts | LASD's Supporting Evidence |
|---|---|
| great bodily harm to the applicant, his spouse or dependent child, which cannot be adequately dealt with by existing law enforcement resources and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm. | |
| 8.     Each CCW application is individually reviewed for cause.  The LASD's definition of good cause has been in existence since at least 2005.  It is the Undersheriff's understanding that this definition of good cause, or one similar to it, is utilized by many other counties within California, including San Diego. | 8.     Exh. A, Tanaka Decl. ¶ 6. |
| 9.     In evaluating whether an applicant has presented good cause, an applicant's stated reason of self-defense is not enough. | 9.     Exh. A, Tanaka Decl. ¶ 7. |
| 10.     The applicant must demonstrate a credible threat of violence which would justify the need to possess a concealed weapon.  If an applicant claims that he | 10.     Exh. A, Tanaka Decl. ¶ 7. |

JSER0007

| LASD's Undisputed Facts | LASD's Supporting Evidence |
|---|---|
| or she has been threatened, the LASD looks for documentation of that threat, such as police reports or other evidence. | |
| 11.    One of the purposes for the LASD's policy is to protect against gun violence to the community at large, as well as to protect officers conducting law enforcement operations on the streets. | 11.    Exh. A, Tanaka Decl. ¶ 8; see also Exh. B, Zimring Decl., ¶¶ 1-28. |
| 12.    Gun violence is a problem throughout the State of California and Los Angeles County is no exception. The vast majority of homicides in Los Angeles County are committed with the use of guns.  Handguns are of particular concern because they are much more likely to be used than shotguns and rifles.  Because handguns are small, easy to conceal, and deadly at short range, they are of paramount concern and danger.  Further, most of the violent acts committed in this County involving the use of guns are by gang members. | 12.    Exh. A, Tanaka Decl. ¶ 8; see also Exh, B, Zimring Decl., ¶¶ 3-10. |
| 13.    The presence of more guns on the streets of Los Angeles County creates many problems for law enforcement | 13.    Exh. A, Tanaka Decl. ¶ 9; Exh,. B, Zimring Decl., ¶¶ 3-28. |

| LASD's Undisputed Facts | LASD's Supporting Evidence |
|---|---|
| officers.  Officers are often charged with monitoring public gatherings as well as with breaking up public nuisances. Officers must act quickly whenever a disturbance occurs.  Often times, this involves isolating one or two problem individuals.  However, if multiple persons within a crowd are carrying concealed weapons, this creates an increased likelihood that guns will be brandished or used.  Thus, the increased presence of guns creates not only increased safety problems for officers but also for members of the community at large. | |
| 14.    It is the LASD's position that increasing the numbers of concealed weapons in the community increases the threat of gun violence to the community at large, to those who use the streets and go to public accommodations, and to law enforcement officers patrolling the streets.  Further, the increased presence of concealed handguns make law enforcement operations more difficult thus taking away valuable resources | 14.    Exh. A, Tanaka Decl. ¶ 10; Exh. B, Zimring Decl., ¶¶ 3-28. |

JSER0009

| LASD's Undisputed Facts | LASD's Supporting Evidence |
|---|---|
| which would be better used conducting law enforcement operations. | |
| 15.   Los Angeles County's "good cause" requirement is intended to drastically restrict the number of persons who are secretly armed in the County. | 15.   Exh. A, Tanaka Decl. ¶ 10; see also, e.g., Exh. B, Zimring Decl., ¶¶ 3-28. |
| 16.   In 2011, there was an average of approximately 400 concealed weapons permits that were issued by the LASD. The Undersheriff is informed and believe that the County's Chief Executive Office has estimated that the population of Los Angeles County as of January 2010 was 10,441,080 people. | 16.   Exh. A, Tanaka Decl. ¶ 11. |
| 17.   On or about April 7, 2011, Plaintiff submitted a CCW application to the LASD. | 17.   Exh. A, Tanaka Decl., ¶ 12, (and exh. 2 to Tanaka Decl., pp. 27-41) |
| 18.   In his application, Plaintiff stated as justification: "I am a licensed California Bail Agent.  I have been licensed for over three years.  I am alone when I meet with co-signers and defendants at their homes in violent high crime areas within Los Angeles County such as Compton, Inglewood, | 18.   Exh. A, Tanaka Decl., ¶ 12, (and exh. 2 to Tanaka Decl., p.39) |

JSER0010

| LASD's Undisputed Facts | LASD's Supporting Evidence |
|---|---|
| Watts, and South Los Angeles as well as city and county jails to fill out paperwork and receive payment for I am called to post bail at all hours of the day and night.  Often when I bail out a person I am in neighborhoods where other suspects are a danger to me.  I don't' know the backgrounds of clients who may be disgruntled and have a grudge against me.  While in the process of my Bail Agent duties, I sometimes have in my possession over $10,000 in cash.<br><br>      I fear great bodily injury or death from an armed assailant who has the intent to steal my case of harm me.  I am a man of small stature, and work very late hours of the night.  The criminal element that I deal with presents a danger to my safety that cannot be mitigated by law enforcement resources or other means available to me.  I don't have any other means of defending myself." | |
| 19.    The LASD reviewed Plaintiff's application and determined that he | 19.    Exh. A., Tanaka Decl., ¶¶ 12-13; exh. 3 to Tanaka Decl. |

JSER0011

| **LASD's Undisputed Facts** | **LASD's Supporting Evidence** |
|---|---|
| failed to show good cause as required by LASD policy, and as defined above. (LASD UF 17) Specifically, Plaintiff failed to show convincing evidence of a clear and present danger to life or of great bodily harm to the applicant, his spouse or dependent child, which cannot be adequately dealt with by existing law enforcement resources and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm. | |
| 20.    Julie Basco of the California Department of Justice supervised an analysis of all 122,948 adult felony arrests in Los Angeles County for 2010 and divided these persons by whether they had a pre-2010 felony conviction. A total of 43,440 subjects had a prior felony that would keep them from being eligible in a "shall issue" mandate or constitutional rule.  Sixty-five percent of Los Angeles County felons do not have a prior felony conviction when arrested. | 20.    Exh. B, Zimring Decl. ¶ 23, Exh. C, Basco Decl., ¶ 2-3. |

JSER0012

| LASD's Undisputed Facts | LASD's Supporting Evidence |
|---|---|
| These statistics indicate that almost 2/3rds of the known current felons would not be screened out by a prior felony from CCW permits without further barriers. | |

JSER0013

# CONCLUSIONS OF LAW

1. California Penal Code § 12050(a)(1)(A) authorizes a county sheriff to issue a license to carry a concealed pistol, revolver, or other firearm capable of being concealed upon the person (hereinafter "CCW permit") upon the existence of good cause, and provided that the applicant meets other criteria provided for in the Penal Code.

2. Penal Code § 12050 gives extremely broad discretion to the sheriff concerning the issuance of concealed weapons licenses, and explicitly grants discretion to the issuing officer to issue or not issue a license to applicants meeting the minimum statutory requirements. *Gifford v. City of Los Angeles*, 88 Cal.App.4th 801, 805 (2001).

3. In *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 2788, 2822 (2008) and *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3026, 3044 (2010), the United States Supreme Court held that the Second Amendment protects an individual's right to possess firearms in the home for self-defense.

4. The right to keep and bear arms is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. *Heller*, 128 S.Ct. at 2816.

5. Penal Code sections 12025(a) and 12031(a) have been upheld in California against a Second Amendment challenge after *Heller*. *People v. Flores*, 169 Cal. App. 4th 568, 575-576 (2008); *People v. Yarbrough*, 169 Cal. App. 4th 303, 312-314 (2008).

6. Unlike possession of a gun for protection within a residence, carrying a concealed firearm presents a recognized "threat to public order," and is "prohibited as a means of preventing physical harm to persons other than the offender.' *Yarbrough*, 169 Cal.App.4th at 314, citing *People v. Hale*, 43 Cal.App.3d 353, 356 (1974).

7. A person who carries a concealed firearm on his person or in a vehicle,

JSER0014

1   which permits the individual immediate access to the firearm but impedes others

2   from detecting its presence, poses an 'imminent threat to public safety. *Id.* at 313-

3   314.

4        8.     Intermediate scrutiny requires that the challenged statute or regulation

5   "be substantially related to an important governmental objective." *Clark v. Jeter*,

6   486 U.S. 456, 461 (1988).

7        9.     Maintaining public safety and preventing crime are clearly important (if

8   not paramount) government interests and the regulation of concealed firearms is a

9   critical factor in accomplishing that interest. *See, e.g., United States v. Salerno*, 481

10  U.S. 739, 750 (1987); *Schall v. Martin*, 467 U.S. 253, 264 (1984); *Kelley v.*

11  *Johnson*, 425 U.S. 238, 247 (1976).

12       10.     The denial of a concealed weapons permit is not a deprivation of the

13  right to travel. See *Pencak v. Concealed Weapons Licensing Bd.*, 872 F.Supp.410,

14  414 (E.D. Mich. 1994).

15       11.     When a government's action does not involve a suspect classification

16  or implicate a fundamental right, even intentional discrimination will survive

17  constitutional scrutiny for an equal protection violation as long as it bears a rational

18  relation to a legitimate state interest. *New Orleans v. Dukes*, 427 U.S. 297, 303-04

19  (1976); *Lockary v. Kayfetz*, 917 F.2d 1150, 1155 (9th Cir. 1990).

20  DATED: January___, 2012          Respectfully submitted,

21

22                                   ANDREA SHERIDAN ORDIN
                                     County Counsel

23

24                                   By         /S/

25                                        JENNIFER A.D. LEHMAN
                                          Principal Deputy County Counsel

26

27                                   Attorneys for Defendants
                                     LOS ANGELES COUNTY SHERIFF'S

28                                   DEPARTMENT & LEE BACA

HOA.846755.1                    -13-

## DECLARATION OF JENNIFER A.D. LEHMAN

I, JENNIFER A.D. LEHMAN, declare as follows:

1.     I am an attorney at law, duly licensed to practice law in all of the Courts of the State of California.  I am employed by the County of Los Angeles as a Principal Deputy County Counsel in the Office of the County Counsel, and am counsel for Defendant Los Angeles County Sheriff's Department.

2.     I have personal knowledge of the facts set forth below and if called as a witness, I could and would testify thereto.

3.     Attached hereto as Exhibit A is the Declaration of Paul Tanaka, and attached exhibits.

4.     Attached hereto as Exhibit B is the Declaration of Frank Zimring.

5.     Attached hereto as Exhibit C is the Declaration of Julie Basco.

I declare under penalty of perjury that the foregoing is true and correct under the laws of the United States of America.

Executed this _11nd_ day of December, 2011 in Los Angeles, California.

_Jennifer Lehman_

JENNIFER A.D. LEHMAN

JSER0016

# EXHIBIT A

JSER0017

1   ANDREA SHERIDAN ORDIN, County Counsel
ROGER H. GRANBO, Assistant County Counsel
2   JENNIFER A.D. LEHMAN, Principal Deputy County Counsel
(SBN 191477) • jlehman@counsel.lacounty.gov
3   648 Kenneth Hahn Hall of Administration
500 West Temple Street
4   Los Angeles, California 90012-2713
Telephone: (213) 974-1908 · Fax: (213) 626-2105
5
Attorneys for Defendant
6   LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   ROBERT THOMSON,                     CASE NO. CV 11-06154 SJO (JCx)

12              Plaintiff,
                                          **DECLARATION OF**
13        v.                              **UNDERSHERIFF PAUL TANAKA**

14   TORRANCE POLICE DEPARTMENT
and THE LOS ANGELES COUNTY
15   SHERIFF'S DEPARTMENT,

16              Defendants.

17

18   I, PAUL TANAKA, declare as follows:

19        1.     I am the Undersheriff for Los Angeles County.  I have served as the

20   Undersheriff since June 2011, and have been employed by the Los Angeles County

21   Sheriff's Department (LASD) for over 29 years.  As the Undersheriff, I am the

22   second in command of the LASD and the Sheriff's chief assistant.  In the Sheriff's

23   absence, I also assume his duties, in addition to my executive responsibilities

24   addressing LASD operational, budgetary and personnel matters.

25        2.     As part of my responsibilities as Undersheriff, I have been designated

26   to act as the Sheriff's sole authorized representative for reviewing applications for

27   carry concealed weapons (CCW) licenses for the County of Los Angeles.  In that

28
HOA.845808.1

JSER0018

1  role, I and members of my staff, evaluate CCW applications.  While members of my

2  staff make recommendations regarding applications, I am the final decision-maker.

3  As part of my evaluation of CCW applications, I will review the entire application

4  packet and any and all supporting documentation.

5       3.     In Los Angeles County, there are four distinct categories of CCW

6  licenses:  Employment, Standard, Judges, and Reserve Police Officers.  The

7  Employment CCW license is issued only to a person who spends a substantial

8  period of time in his or her principal place of employment or business in Los

9  Angeles County.  The Standard CCW license is issued to residents of Los Angeles

10  County or to residents of a particular city within Los Angeles County.  The Judge

11  CCW license is issued to California judges, full-time commissioners, and to federal

12  judges and magistrates of the federal courts.  The Reserve Police Officer CCW

13  license may be issued to reserve police officers appointed pursuant to California

14  Penal Code § 830.6.

15       4.     If an applicant resides in an incorporated city not policed by the LASD,

16  the applicant must apply to the chief of police of their city of residence for a

17  concealed weapons license and have such application acted upon.  Within 60 days

18  after a denial of such application, such city resident may file a separate application

19  with the LASD, attaching a copy of the application denied by the chief of police.

20  We will exercise independent discretion in granting or denying licenses to such

21  person but may review, consider, and give weight to the grounds upon which such

22  denial was made.  A copy of the LASD Concealed Weapons License Policy is

23  attached hereto as Exhibit 1.  This policy is also available on the LASD website at

24  www.lasd.org.

25       5.     California Penal Code sections 12050-12054 set forth the general

26  criteria that CCW applicants must meet.  Applicants must be of good moral

27  character, be a resident of, or spend substantial time in the County they apply in,

28  take a firearms course, and demonstrate good cause for the license.

HOA.845308.1

CV 11-06154 SJO (JCx)

00016

JSER0019

6.     The issuance of licenses enabling a private citizen to carry a CCW is of great concern to the LASD. The LASD's overriding policy is that no CCW license should be granted merely for the personal convenience of the applicant. No position or job application in itself shall constitute good cause for the issuance, or for the denial, of a CCW license. The LASD defines "good cause" under California Penal Code section 12050 as requiring convincing evidence of a "clear and present danger to life or of great bodily harm to the applicant, his spouse or dependent child, which cannot be adequately dealt with by existing law enforcement resources and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm." Each application is individually reviewed for cause. I am informed and believe that the LASD's definition of good cause has been in existence since at least 2005. It is also my understanding that this definition of good cause, or one similar to it, is utilized by many other counties within California, including San Diego.

7.     In evaluating whether a CCW applicant has presented "convincing evidence of a clear and present danger to life or of great bodily harm to the applicant, his spouse or dependent child, which cannot be adequately dealt with by existing law enforcement resources and which danger cannot be reasonably avoided by applicant's carrying of a concealed firearm," an applicant's stated reason of self-defense is not enough. The applicant must demonstrate a credible threat of violence which would justify the need to possess a concealed weapon. If an applicant claims that he or she has been threatened, we look for documentation of that threat, such as police reports or other evidence.

8.     One of the purposes for the LASD's policy is to protect against gun violence to the community at large, as well as to protect officers conducting law enforcement operations on the streets. Gun violence is a problem throughout the State of California and Los Angeles County is no exception. The vast majority of homicides in Los Angeles County are committed with the use of guns. Handguns

HOA.845808.1

CV 11-06154 SJO (JCx)

00017

JSER0020

1  are of particular concern because in my experience, they are much more likely to be
2  used than shotguns and rifles. Because handguns are small, easy to conceal, and
3  deadly at short range, they are of paramount concern and danger. Further, most of
4  the violent acts committed in this County involving the use of guns are by gang
5  members.

6      9.    In my experience as a law enforcement officer, the presence of more
7  guns on the streets of Los Angeles County creates many problems for law
8  enforcement officers. Officers are often charged with monitoring public gatherings
9  as well as with breaking up public nuisances. Officers must act quickly whenever a
10  disturbance occurs. Often times, this involves isolating one or two problem
11  individuals. However, if multiple persons within a crowd are carrying concealed
12  weapons, this creates an increased likelihood that guns will be brandished or used.
13  Thus, the increased presence of guns creates not only increased safety problems for
14  officers but also for members of the community at large.

15      10.    It is the LASD's position that increasing the numbers of concealed
16  weapons in the community increases the threat of gun violence to the community at
17  large, to those who use the streets and go to public accommodations, and to law
18  enforcement officers patrolling the streets. Further, the increased presence of
19  concealed handguns make law enforcement operations more difficult thus taking
20  away valuable resources which would be better used conducting law enforcement
21  operations. Los Angeles County's "good cause" requirement is intended to
22  drastically restrict the number of persons who are secretly armed in the County.

23      11.    In 2011, there was an average of approximately 400 existing concealed
24  weapons permits that were issued by the LASD. I am informed and believe that the
25  County's Chief Executive Office has estimated that the population of Los Angeles
26  County as of January 2010 was 10,441,080 people.

27      12.    Attached hereto as Exhibit 2 is a copy of the April 7, 2011 CCW
28  application we received from Robert Thomson (redacted to conceal certain personal

HOA.845808.1

-4-

CV 11-06154 SJO (JCx)

00018

JSER0021

1  information).  Mr. Thomson's permit application was reviewed, analyzed, and

2  processed in the exact same manner in which every application is processed.  After

3  reviewing Mr. Thomson's application and supporting documentation, I determined

4  that he did not demonstrate "good cause" for the issuance of a permit as required by

5  the LASD policy.  Specifically, convincing evidence was not established of a clear

6  and present danger to life or of great bodily harm to the applicant, his spouse or

7  dependent child, which could not be adequately dealt with by existing law

8  enforcement resources and which danger cannot be reasonably avoided by

9  alternative measures, and which danger would be significantly mitigated by the

10  applicant's carrying of a concealed firearm.

11      13.    Attached hereto as Exhibit 3 is a copy of the June 28, 2011 letter we

12  sent to Mr. Thomson denying his application.

13      I declare under penalty of perjury under the laws of the United States of

14  America that the foregoing is true and correct.

15      Executed in Monterey Park, California on December 15, 2011

16

17      _Paul Tanaka_

18      PAUL TANAKA

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1
# POLICY

00020

JSER0023

# Los Angeles County Sheriff's Department

## Concealed Weapons Licensing Policy

The issuance of licenses enabling a private citizen to carry a concealed weapon (CCW) is of great concern to the Los Angeles County Sheriff's Department. The Department's overriding policy is that no concealed weapons license should be granted merely for the personal convenience of the applicant. No position or job classification in itself shall constitute good cause for the issuance, or for the denial, of a CCW license. Each application shall be individually reviewed for cause, and the applicant will be notified by writing within 90 days of the application, or within 30 days after receipt of the applicant's criminal background check from the Department of Justice, that the CCW license was either approved or denied.

In accordance with California Penal Code § 12050 et. seq., and subject to Department policy and procedures, any Los Angeles County resident may obtain a CCW application for authorization to carry a concealed weapon. Applications may be obtained from any sheriff's patrol station or directly from the Office of the Undersheriff. Completed applications may be submitted to any of these units for processing.

## Types of Licensing and Expiration Periods for CCWs

There are four distinct categories of CCW licenses: Employment, Standard, Judges, and Reserve Police Officers. The. Employment CCW license is issued only by the sheriff of a county to a person who spends a substantial period of time in his or her principal place of employment or business in the county of issuance. The license is valid only in the county issued and for any period not to exceed 90 days. The Standard CCW license is issued to residents of the county or a particular city within the county. The license is valid for any period not to exceed 2 years. The Judge CCW license may be issued to California judges, full-time commissioners, and to federal judges and magistrates of the federal courts. The license is valid for any period not to exceed 3 years. The Reserve Police Officer CCW license may be issued to reserve police officers appointed pursuant to California Penal Code § 830.6. The license is valid for any period not to exceed 4 years, except that it becomes invalid upon the conclusion of the person's appointment as a reserve police officer.

## Training Requirements for a CCW License

Regardless of the category, all new license applicants for CCW's must now pass a specified course of training which is acceptable to the licensing authority, the Los Angeles County Sheriff's Department (See attached sheet, "Suggested Training Vendors"). New CCW license applicants must pass a specified course of training acceptable to the licensing authority. The course shall not exceed 16 hours, and the course shall include instruction on firearm safety, the law regarding the permissible use of a firearm and weapon proficiency. The licensing authority may also require

JSER0024

the applicant to attend a community college course certified by the Commission on Peace Officer Standards and Training (POST), up to a maximum of 24 hours, but only if required uniformly of all applicants without exception. For CCW license renewal applicants, the course of training may be any course acceptable to the licensing authority, shall be no less than 4 hours, and shall include instruction on firearms safety, the law regarding the permissible use of a firearm and weapon proficiency.

## Qualifications for a CCW License

To qualify for a CCW, each applicant must demonstrate (1) proof of good moral character, (2) that good cause exists, and (3) that the applicant is a resident of the count or a city within the county, or, that the applicant spends a substantial period of time in the applicant's place of employment or business in the county or a city within the county. In addition, the applicant must complete the training requirements as listed above.

According to Los Angeles County Sheriff's Department policy (5-09/380.10) and the California Supreme Court (CBS, Inc. v. Block, (1986) 42 Cal.3d 646), good cause shall exist only if there is convincing evidence of a clear and present danger to life, or of great bodily harm to the applicant, his spouse, or dependent child, which cannot be adequately dealt with by existing law enforcement resources, and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm.

The character requirement will be fulfilled by, but not limited to, a criminal history check through the Bureau of Criminal Identification and Investigation. The good cause requirement will only be fulfilled by thoroughly justifying the applicant's need to the Sheriff or his designee on the application form. The residence requirement will be fulfilled upon presentation of an approved, recognized identification card and at least one recently canceled item of United States mail.

If the applicant resides in an incorporated city, which is not policed by our Department, he or she must first apply to the Chief of Police of their city of residence for a CCW license and have the application acted upon. Within 60 days after a denial of the application, the city resident may file a separate application with the Los Angeles County Sheriff's Department, attaching a copy of the application denied by the Chief of Police. The Sheriff will exercise independent discretion in granting or denying licenses to these applicants. Further, the Sheriff may review, consider, and give weight to the grounds upon which the previous denial was made.

-2-

00022

## CCW License Subject to Restrictions

When a license is issued it will be subject to the following general restrictions.

While exercising the privilege granted under the terms of this license, licensees shall not:

1. Consume any alcoholic beverage. Represent to any person that they
2. are peace officers, unless they are in fact
   peace officers as defined by law.
3. Abuse this privilege by an unjustified display of a deadly weapon.
4. Violate any law of this State or Country.
5. Be under the influence of any medication or narcotic drug. Impede
6. law enforcement officers in the conduct or performance of their duty or activities.
7. Refuse to display their permits or to surrender their concealable firearm to any peace officer for inspection upon demand.

In addition, the Los Angeles County Sheriff's Department may place special limitations further limiting the time, the place, and the circumstances under which the license is valid. When each license is issued, general restrictions and any special limitations will be noted on the reverse side of the card.

Remember, it is a Privilege, not a right to carry a concealed weapon.

## Application for CCW License Form

Upon reviewing the attached policy and meeting all requirements, please complete the Standard Application form in its entirety and forward to Sheriff Headquarters, 4700 Ramona Boulevard, Monterey Park, California, 91754-2169, Attention: CCW Coordinator. A non-refundable fee of $10.00 must accompany this application. Those who successfully pass the initial screening will be charged a required follow-up processing fee.

Revised 9/99

-3-

00023

JSER0026

# Suggested Training Vendors

**Angeles Range 12651 Little Tujunga, Lakeview Terrace Phone: (818) 362-3650 or (800) 499-4486 Instructor: Don Emmer**

**Centinel Services 1060 N. Lake Street, Burbank Phone: (818) 954-981 0 Instructor: John Rives**

**L.A.X. Shooting Range 927 W. Manchester, Inglewood Phone: (310) 568-1515 Instructor: Danny Hudson**

**The Firing Line 17921 Jamestown Lane, Huntington Beach Phone: (714) 841-2100 Instructor: Fred Donohue**

**Sharpshooter 1827 W. 208 Street, Torrance Phone: (310) 618-9971 Instructor: Fred Darling**

**Professional Security Training School 44633 Sierra Highway Lancaster, CA 93534 Phone: (661) 945-0600 Instructor: Cecil Williams**

**Centinel Services 18348 Eddy, Northridge Phone: (818) 238-9860 Instructor: Cecil Williams**

**5040 Cornell Road Agoura Hills, CA 91301 (818) 707-9100**

THE CONTENT AND LENGTH OF THE COURSES OFFERED BY THE TRAINERS LISTED ABOVE ARE ACCEPTABLE TO THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ("LASD") IN ACCORDANCE WITH PENAL CODE SECTION 12050(a).

## DISCLAIMER

THE COUNTY OF LOS ANGELES AND THE LASD MAKE NO OTHER REPRESENTATIONS OR WARRANTIES ABOUT THE TRAINERS LISTED ABOVE OR THE FACILITIES OR EQUIPMENT THEY USE TO CONDUCT TRAINING.

- ◆ NONE OF THESE TRAINERS ARE EMPLOYEES OR AGENTS OF THE COUNTY OF LOS ANGELES OR LASD.

- ◆ NONE OF THESE TRAINERS WAS TRAINED IN THE USE OF FIREARMS BY THE COUNTY OF LOS ANGELES OR LASD.

- ◆ NONE OF THE FACILITIES AND EQUIPMENT USED BY THESE TRAINERS ARE OWNED, CONTROLLED OR INSPECTED BY THE COUNTY OF LOS ANGELES OR THE LASD.

NEITHER THE COUNTY OF LOS ANGELES NOR LASD CERTIFY OR CONTROL THE SAFETY OF THE TRAINING CONDUCTED BY ANY OF THESE TRAINERS.

YOU ASSUME FULLY THE RISK OF ANY LOSS, INJURY OR DAMAGE ATTRIBUTABLE TO (1) ANY ACT OR OMISSION OF ANY OF THESE TRAINERS OR ANY OF THEIR AGENTS OR EMPLOYEES OR (2) THE CONDITION ANY PREMISES OR EQUIPMENT USED BY ANY OF THESE TRAINERS. THE COUNTY OF LOS ANGELES AND LASD DISCLAIM ANY RESPONSIBILITY FOR ANY SUCH LOSS, INJURY OR DAMAGE.

LASD RECOMMENDS THAT BEFORE YOU BEGIN TRAINING, YOU FULLY INVESTIGATE THE TRAINER'S QUALIFICATIONS, TRAINING, SAFETY RECORD AND CONDITION OF PREMISES AND EQUIPMENT.



## 5-09/380.10 APPLICATION REQUESTS

Any person may obtain the Department's Concealed Weapon License Application (form SH-AD-602 revised 2/95) from any station or the Undersheriff. Persons requesting such application shall be shown a copy of the application process.

Each applicant must demonstrate proof of residence and good character. In addition, good cause for the purposes of Penal Code section 12050 shall exist only if both of the following elements prevail:

- Convincing evidence of a clear and present danger to life or of great bodily harm to the applicant, his spouse or dependent child, which cannot be adequately dealt with by existing law enforcement resources and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm,
- A valid certificate from an Advanced Officer Training Institution, approved by the California State Bureau of Collection and Investigative Services, attesting to applicant's satisfactory completion of at least 24 hours of training,
    - Alternate proof of firearms proficiency may be submitted for review and possible acceptance in lieu of this certification.

If the applicant <u>resides in an incorporated city</u> not policed by this Department, they must apply to the chief of police of their city of residence for a Concealed Weapon License and have such application acted upon. Within 60 days after a denial of such application, such city resident may file a separate application with the Sheriff, attaching a copy of the application denied by the chief of police. The Sheriff will exercise independent discretion in granting or denying licenses to such persons but may review, consider and give weight to the grounds upon which such denial was made.

### 04/01/96 MPP

cud evid...                                           ...  ...  ...  great bodily harm ...  ...
applicant, his spouse or dependent child, which cannot be adequately dealt with by
existing law enforcement resources and which danger cannot be reasonably avoided ...
alternativ...              ...                     ...  ...  mitigated by the
applic...              ...  a concealed firearm,
                                   ...  ...  Training Institution, approved by ...
...  ...                     ...                     ...  investigativ...  ...
...  ...  ...                                   ...  ...  ...  review and pos ...  ...
      acceptance in lieu of this certification.


If the applicant ...  ...  ...  ...  ...  ...  ...  ...  ...  this Department, th...  ...
apply ...  ...                     ...  ...  ...  ...  ...  Concealed Weapon Lic...  
...                     ...  ...  Within 60 days after a denial of such applic...  
...  ...                                   ...  ...  ...  ...  ...  ...  ...
...  ...                     ...                     ...  ...  ...  independent ...  ...
...  grant ...                                   ...  ...  consider and gi...  ...
to the grounds upon which such denial was made.

JSER0028

# EXHIBIT 2

## APPLICATION

# California Department of Justice



# STANDARD APPLICATION
# FOR LICENSE TO CARRY
# A CONCEALED WEAPON (CCW)



RECEIVED

APR 1 1 2011

UNDER SHERIFF'S OFFICE
CCW COORDINATOR

BCIA 4012 (6/99)

00027

JSER0030

State of California, Department of Justice
# Standard Application for CCW License

Official Use Only -Type of Permit
Requested ( ) Standard   ( ) Judge
( ) Reserve Officer ( ) 90 Day

## Public Disclosure Admonition

I understand that I am obligated to be complete and truthful in providing information on this application. I understand that all of the information disclosed by me in this application may be subject to public disclosure.

_____   **4 - 7 - 2011**
Applicant Signature              Date

_____   _____
Witness Signature / Badge Number   Date

## Section I - Applicant Personal Information

Name: **Thomson**          **Robert**          **James**
         Last                First               Middle

If Applicable,
Maiden Name or Other Name(s) Used: **Robby , Bob**

City and County
of Residence: **Torrance , Los Angeles**   Country of Citizenship: **U.S.A.**

Date of Birth: **REDACTED**   Place of Birth: **Harbor City , Los Angeles CA**
                                              City        County      state

Height: **5'6"**   Weight: **185**   Color Eyes: **Blue**   Color Hair: **Brown**

## Section 2 - Applicant Clearance Questions

1. Do you now have, or have you ever had a license to carry a concealed weapon (CCW)?
   No_____ Yes **✓** (If yes, please indicate below. Use additional pages if necessary.)

Issuing Agency **Utah**   Issue Date **10-6-208** CCW# **C256808**

2. Have you ever applied for and been denied a license to carry a concealed weapon?
   No_____ Yes **✓** (If yes, give agency name, date and reason for denial.)

**April 1, 2009   Torrance   Failed to prove 1 or more**
**April 5th, 2011   Torrance   legal requirements**

-3-

00028

JSER0031

State of California, Department of Justice
## Standard Application for CCW License

### Section 2 - Applicant Clearance Questions - (continued)

3. Have you ever held and subsequently renounced your United States citizenship?
   No __✓__ Yes _____ (If yes, explain):

4. If you served with the Armed Forces, were you ever convicted of any charges or was your discharge other than honorable? No __✓__ Yes _____ (If yes, explain):

5. Are you now, or have you been, a party to a lawsuit in the last five years?
   No _____ Yes __✓__ (If yes, explain):
   _Small claims court regarding my spa._
   _(resolved 2008)_

6. Are you now, or have you been, under a restraining order(s) from any court?
   No __✓__ Yes _____ (If yes, explain):

7. Are you on probation or parole from any state for conviction of any offense including traffic? No __✓__ Yes _____ (If yes, explain):

-4-

00029

JSER0032

State of California, Department of Justice
## Standard Application for CCW License

**Section 2 . Applicant Clearance Questions -   (continued)**

8. List all traffic violations (moving violations only) and motor vehicle accidents you have had in the last five years. (Use additional pages if necessary.)

Date _____ Violation / Accident _____ Agency / Citation # _____

| Date | Violation / Accident | Agency / Citation # |
|------|---------------------|---------------------|
| 7-6-2006 | 21650 V.C. | Signal Hill PD 5187066 |
| 6-29-2006 | 22349 (A) V.C. | CHP 42922 BJ |
| 4-28-2010 | 27315 (D)(1) V.C | Gardena G215190 |

9. Have you ever been convicted for any criminal offense (civilian or military) in the U.S. or any other country?

No __✓__ Yes _____ (If yes, explain including date, agency, charges, and disposition.)

10. Have you withheld any fact that might affect the decision to approve this license?

No __✓__ Yes _____ (If yes, explain):

**Section 3 . Descriptions of Weapons:**

List below the weapons you desire to carry if granted a CCW. You may carry concealed only the weapon(s) which you list and describe herein, and only for the purpose indicated. Any misuse will cause an automatic revocation and possible arrest. (Use additional pages if necessary.)

| | Make | Model | Caliber | Serial No. |
|---|------|-------|---------|-----------|
| 1. | Glock | 22 | .40 | DKL431 45 |
| 2. | Glock | 27 | .40 | HG2 826 |
| 3. | | | | |

-5-

00030

State of California, Department of Justice
# Standard Application for CCW License

## Section 4 - CCW License Conditions and Restrictions

The licensee is responsible for all liability for, injury to, or death of any person, or damage to any property which may result through any act or omission of either the licensee or the agency that issued the license. In the event any claim, suit, or action is brought against the agency that issued the license, its chief officer or any of its employees, by reason of, or in connection with any such act or omission, the licensee shall defend, indemnify, and hold harmless the agency that issued the license, its chief officer or any of its employees from such claim, suit, or action.

The licensee authorizes the licensing agency to investigate, as they deem necessary, the licensee's record and character to ascertain any and all information which may concern his/her qualifications and justification to be issued a license to carry a concealed weapon and release said agency of any and all liability arising out of such investigation.

While exercising the privileges granted to the licensee under the terms of this license, the licensee shall not, when carrying a concealed weapon:

- Consume any alcoholic beverage.
- Be in a place having a primary purpose of dispensing alcoholic beverages for on-site consumption.
- Be under the influence of any medication or drug, whether prescribed or not.
- Refuse to show the license or surrender the concealed weapon to any peace officer upon demand.
- Impede any peace officer in the performance of his/her duties.
- Present himself/herself as a peace officer to any person unless he/she is, in fact, a peace officer as defined by California law.
- Unjustifiably display a concealed weapon.
- Carry a concealed weapon not listed on the permit
- Carry a concealed weapon at times or circumstances other than those specified in the permit.

Pursuant to U.S. Government Code - Title 49, Chapter 26, Section 1472 (1) and Federal Aviation Regulation 121.583, a license to carry a concealed weapon does not authorize a person to carry a firearm, tear gas, or any dangerous weapon aboard commercial airlines. Further, a person must declare that he/she is carrying such firearm, tear gas, or dangerous weapon BEFORE entering the boarding area of an air terminal where the security checks are made. Such violation can result in arrest by law enforcement.

Any violation of these restrictions or conditions may invalidate the CCW license and may void any further use of the license until reinstated by the licensing authority. Any arrest for a felony or serious misdemeanor, including driving under the influence of alcohol and/or drugs, is cause for invalidating the license.

-6-

00031

JSER0034

State of California, Department of Justice
## Standard Application for CCW License

### Section 5 - Applicable California Penal Code Sections

The following Penal Code sections are of special importance to the holder of a CCW license regarding the use, carrying, and storage of firearms:

**Penal Code Section 12051 - Applications for CCW Licenses; False Statements**

(b) Any person who files an application required by subdivision (a) knowing that statements contained therein are false is guilty of a misdemeanor.

(c) Any person who knowingly makes a false statement on the application regarding any of the following shall be guilty of a felony:
- (1) The denial or revocation of a license, or the denial of an amendment to a license, issued pursuant to Section 12050.
- (2) A criminal conviction.
- (3) A finding of not guilty by reason of insanity.
- (4) The use of a controlled substance.
- (5) A dishonorable discharge from military service.
- (6) A commitment to a mental institution.
- (7) A renunciation of United States citizenship.

**Penal Code Section 192 - Manslaughter**

Manslaughter is the unlawful killing of a human being without malice.

(a) Voluntary - upon a sudden quarrel or heat of passion.

(b) Involuntary - in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; provided that this subdivision shall not apply to acts committed in the driving of a vehicle.

**Penal Code Section 197 - Justifiable Homicide; Any Person**

Homicide is justifiable when committed by any person in any of the following cases:

1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or,

2. When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the of offering violence to any person therein; or,

3. When committed in the lawful defense of such person, or of a wife or husband, parent, child, master, mistress, or servant of such person, when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or the person in whose behalf the defense was made, if he was the assailant or engaged in mutual combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed; or,

4. When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace.

-7-

00032

JSER0035

State of California, Department of Justice

# Standard Application for CCW License

## Section 5 - Applicable California Penal Code Sections -   (continued)

**Penal Code Section 198 - Justifiable Homicide; Sufficiency of Fear**
**(Limitation of Self-defense of Property Rule)**
A bare fear of the commission of any of the offenses mentioned in subdivisions 2 and 3 of Section 197, to prevent which homicide may be lawfully committed, is not sufficient to justify it. But the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone.

**Penal Code Section 199 - Justifiable and Excusable Homicide; Discharge of Defendant**
The homicide appearing to be justifiable or excusable, the person indicted must, upon his trial, be fully acquitted and discharged.

**Penal Code Section 12035 - Storage of Firearms Accessible to Children**
(a) As used in this section, the following definitions shall apply:
    (1) "Locking device" means a device that is designed to prevent the firearm from functioning and when applied to the firearm, renders the firearm inoperable.
    (2) "Child" means a person under the age of 16 years. (3) "Off-premises" means premises other than the premises where the firearm was stored.
    (4) "Locked container" has the same meaning as set forth in subdivision (d) of Section 12026.2.
(b)(1) Except as provided in subdivision (c), a person commits the crime of "criminal storage of a firearm of the first degree" if he or she keeps any loaded firearm within any premise which is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child parent or legal guardian and the child obtains access to the firearm and thereby causes death or great bodily injury to himself, herself, or any other person.
    (2) Except as provided in subdivision (c), a person commits the crime of "criminal storage of a firearm of the second degree" if he or she keeps any loaded firearm within any premise which is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child's parent or legal guardian and the child obtains access to the firearm and thereby causes injury, other than great bodily injury, to himself, herself, or any other person, or carries the firearm either to a public place or in violation of Section 417.
(c) Subdivision (b) shall not apply whenever any of the following occurs:
    (1) The child obtains the firearm as a result of an illegal entry to any premises by any person.
    (2) The firearm is kept in a locked container or in a location that a reasonable person would believe to be secure.
    (3) The firearm is carried on the person or within such a close proximity thereto so that the individual can readily retrieve and use the firearm as if carried on the person.
    (4) The firearm is locked with a locking device that has rendered the firearm inoperable.
    (5) The person is a peace officer or a member of the armed forces or national guard and the child obtains the firearm during, or incidental to, the performance of the person's duties.
    (6) The child obtains, or obtains and discharges, the firearm in a lawful act of self-defense or defense of another person, or persons.
    (7) The person who keeps a loaded firearm on any premise which is under his or her custody or control has no reasonable expectation, based on objective facts and circumstances, that a child is likely to be present on the premise.

-8-

00033

JSER0036

State of California, Department of Justice
## Standard Application for CCW License

**Section 5 -   Applicable California Penal Code Sections -    (continued)**

Penal Code Section 12036 -Firearms Accessed by Children and Carried Off-premises

(a) As used in this section, the following definitions shall apply:

(1) "Locking device" means a device that is designed to prevent the firearm from functioning and when applied to the firearm, renders the firearm inoperable.

(2) "Child" means a person under the age of 16 years. (3) "Off-premises" means premises other than the premises where the firearm was stored.

(4) "Locked container" has the same meaning as set forth in subdivision (d) of Section 12026.2.

(b) A person who keeps a pistol, revolver, or other firearm capable of being concealed upon the person, loaded or unloaded, within any premise that is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to that firearm without the permission of the child's parent or legal guardian and the child obtains access to that firearm and thereafter carries that firearm off-premises, shall be punished by imprisonment in a county jail not exceeding one year, by a fine not exceeding one thousand dollars ($ 1.000), or by both that imprisonment and fine.

(c) A pistol, revolver, or other firearm capable of being concealed upon the person that a child gains access to and carries off-premises in violation of this Section shall be deemed "used in the commission of a misdemeanor as provided in this code or any felony" for the purpose of subdivision (b) of Section 12028 regarding the authority to confiscate firearms and other deadly weapons as a nuisance.

(d) This Section shall not apply if any one of the following circumstances exists:

(1) The child obtains the pistol, revolver, or other firearm capable of being concealed upon the person as a result of an illegal entry into any premises by any person.

(2) The pistol, revolver, or other firearm capable of being concealed upon the person is kept in a locked container or in a location that a reasonable person would believe to be secure.

(3) The pistol, revolver, or other firearm capable of being concealed upon the person is locked with a locking device that has rendered the firearm inoperable.

(4) The pistol, revolver, or other firearm capable of being concealed upon the person is carried on the person within such a close range that the individual can readily retrieve and use the firearm as if carried on the person.

(5) The person is a peace officer or a member of the armed forces or national guard and the child obtains the pistol, revolver, or other firearm capable of being concealed upon the person during, or incidental to, the performance of the person's duties.

(6) The child obtains, or obtains and discharges, the pistol, revolver, or other firearm capable of being concealed upon the person in a lawful act of self-defense or defense of another person or persons.

(7) The person who keeps a pistol, revolver, or other firearm capable of being concealed upon the person has no reasonable expectation, based on objective facts and circumstances, that a child is likely to be present on the premises.

-9-

00034

JSER0037

State of California, Department of Justice

## Standard Application for CCW License

### Section 6 - Agreement to Restrictions and to Hold Harmless

I accept and assume all responsibility and liability for, injury to, or death of any person, or damage to any property which may result through any act or omission of either the licensee or the agency that issued the license. In the event any claim, suit or action is brought against the agency that issued the license, its chief officer or any of its employees, by reason of, or in connection with any such act or omission, the licensee shall defend, indemnify, and hold harmless the agency that issued the license, its chief officer or any of its employees from such claim, suit, or action.

I understand that the acceptance of my application by the licensing authority does not guarantee the issuance of a license and that fees and costs are not refundable if denied. I further understand that if my application is approved and I am issued a license to carry a concealed weapon, that the license is subject to restrictions placed upon it and that misuse of the license will cause an automatic revocation and possible arrest and that the license may also be suspended or revoked at the discretion of the licensing authority at any time. I am aware that any use of a firearm may bring criminal action or civil liability against me.

I have read, understand, and agree to the CCW license liability clauses, conditions, and restrictions stated in this Application and Agreement to Restrictions and to Hold Harmless.

I have read and understand the applicable Penal Code sections regarding False Statements on a CCW Application, Manslaughter, Killing in Defense of Self or Property, Limitation on Self-defense and Defense of Property, and Child Access and Firearm Storage, stated in this application.

I have read and understand Attachment 1 - California Prohibiting Categories for a CCW License, Attachment 2 - California Prohibiting Misdemeanors, and Attachment 3 - Federal Prohibiting Categories for Possessing Firearms. I further acknowledge that these Prohibiting Categories can be amended or expanded by state or federal legislative or regulatory bodies and that any such amendment or expansion may affect my eligibility to hold a CCW.

_____   4-7-2011
Applicant Signature                Date

_____   _____
Witness Signature / Badge Number   Date

-10-

00035

JSER0038

State of California, Department of Justice
## Standard Application for CCW License

### Section 7 - Investigator's Interview Notes

Applicant Name: **Thomson, Robert James**
Last            First         Middle

Date of Birth: _____          Age: **40**

Social Security No.: **REDACTED**

California DLAD No.: _____

Driver's License Restrictions: **None**

Residence Address:
**REDACTED**                **Torrance CA**
Number    Street                    Apt.    City         State   Zip

Mailing Address (if different):
**same as above**
Number    Street              Apt    City         State   Zip

Home / Personal Phone Numbers: **REDACTED**

Spouse's Name and Address: **Cristina Thomson**
**REDACTED**            **Torrance CA**

Applicant Occupation: **Bail Bonds Agent**

Business / Employer Name: **Caught Up Bail Bonds — owner**

Business Phone Number: **(310) 320-2245 (310) 320-BAIL**

Business Address:
**2309 Torrance Blvd #205, Torrance CA 9050**
Number    Street              Apt    City         State   Zip

1.  List all previous home addresses for the past five years.
**San Pedro CA 90731**

-11-

00036

JSER0039

State of California, Department of Justice
## Standard Application for CCW License

### Section 7 - Investigator's Interview Notes - (continued)

2.  Have you ever been in a mental institution, treated for mental illness, or been found not-guilty by reason of insanity ? No ___✓___ Yes _____ (If yes, explain):

_____

_____

3.  Are you now, or have you ever been, addicted to a controlled substance or alcohol, or have you ever utilized an illegal controlled substance, or have you ever reported to a detoxification or drug treatment program? No ___✓___ Yes _____ (If yes, explain):

_____

_____

4.  Have you ever been involved in an incident involving firearms?
    No ___✓___ Yes _____(If yes, explain):

_____

_____

_____

5.  Have you been involved in a domestic violence incident?
    No ___✓___ Yes _____(If yes, explain):

_____

_____

6.  List any arrests or formal charges, with or without disposition, for any criminal offenses within the U.S. or any other country (civilian or military).

    Not Applicable

_____

_____

-12-

State of California, Department of Justice
## Standard Application for CCW License

### Section 7 - Investigator's Interview Notes - (continued)

If the CCW license is desired for self-protection, the protection of others, or for the protection of large sums of money or valuable property, you are required to explain and provide good cause for issuance of the license. For example, has your life or property been threatened or jeopardized? Explain incidents and include dates, times, locations, and names of police agencies to which these incidents were reported.

Details of Reason for Applicant Desiring a CCW License (use additional sheets if needed).

*See Good Cause Statement*

-13-

00038

JSER0041

## GOOD CAUSE STATEMENT

I am a licensed California Bail Agent. I have been licensed for over three years. I am alone when I meet with co-signers and defendants at their homes in violent high crime areas within Los Angeles County such as Compton, Inglewood, Watts, and South Los Angeles as well as city and county jails to fill out paperwork and receive payment for I am called to post bail at all hours of the day and night. Often when I bail out a person I am in neighborhoods where other suspects are a danger to me. I don't know the backgrounds of clients who may be disgruntled and have a grudge against me. While in the process of my Bail Agent duties I sometimes have in my possession over $10,000 in cash.

I fear great bodily injury or death from an armed assailant who has the intent to steal my cash or harm me. I am a man of small stature, and work very late hours of the night. The criminal element that I deal with presents a danger to my safety that cannot be mitigated by law enforcement resources or other means available to me. I don't have any other means of defending myself. The areas I work in have a higher violent crime rate than the rest of the state. I have attached the 2007 crime rate statistics from Melissadata.com which is the most recent for Compton, Lynwood, Inglewood, and Los Angeles, cities in which I frequently post bail.

This creates an exigency that shows that I need a CCW more than some regular Joe off the street. I want to have it to protect myself and my family. I work out of my house as my office so I meet clients at their home or an establishment. (Fast food, star bucks, home.

Beginning in January of 2000.all applicants for a bail agents license in California had to complete a course prescribed in California penal code section 1299 if they were going to apprehend their own clients that failed to appear in court or those defendants of other bail agents agencies.

One requirement under P.C.1299 is that the bail agent or bail fugitive recovery person must complete a course of powers of arrest approved by the Bureau of Security and Investigative Services, because of this requirement many Bail Agents or Bail Fugitive Recovery Persons also take the security guard exposed firearm training to receive an exposed firearm permit from the BSIS. They then believe that they can now carry a firearm exposed while attempting or making an arrest of a bail fugitive.

Penal code 12031(k) states "Nothing in this section is intended to preclude the carrying a loaded firearm by any person while engaged in the act of making or attempting to make a lawful arrest" as a bail agent or bail recovery person, they may carry the loaded firearm only during the arrest itself, not before or after the arrest, need to be transported unloaded in and locked container. From the attorney general's office Leslie McGovern firearms division.

00039

State of California, Department of Justice
## Standard Application for CCW License

### Section 8 - Certification and Release of Information

I hereby give permission to the agency to which this application is made to conduct a background investigation of me and to contact any person or agency who may add to or aid in this investigation. I further authorize persons, firms, agencies and institutions listed on this application to release or confirm information about me and statements I have made as contained in this application.

Notwithstanding any other provision of law and pursuant to the Public Records Act (Government Code section 6250 et seq.), I understand that information contained in this application may be a matter of public record and shall be made available upon request or court order.

I hereby certify under penalties of perjury and Penal Code section 1205 1 (b) and (c), that the answers I have given are true and correct to the best of my knowledge and belief, and that I understand and agree to the provisions, conditions, and restrictions herein or otherwise imposed.

_____       4 - 7 - 2011
Applicant Signature                                   Date


_____       _____
Witness Signature / Badge Number                      Date

-14-

00040

JSER0043

76M474C (REV 12/98)

**COUNTY OF LOS ANGELES**
**DEPARTMENT OF SHERIFF**

01- 1162059

/027

Received from _____ Ck. ____ Cash                    Los Angeles, Calif., 5/10 20 11

Thimson, Robert                                        $ 10

Ten                                                    _____ Dollars

For Cen app fee _____ In Case No. _____

_____ vs. _____

LEROY D. BACA, SHERIFF

BY _____ C Lee _____

00041

# EXHIBIT 3
## DENIAL LETTER

00042



**County of Los Angeles**

Sheriff's Department Headquarters

4700 Ramona Boulevard

Monterey Park, California 91754-2169



LEROY D. BACA, SHERIFF

June 28, 2011

Mr. Robert J. Thomson
2309 Torrance Boulevard, #205
Torrance, California  90501

Dear Mr. Thomson:

Department Executives have reviewed your application for a concealed weapon license.  The circumstances, as outlined in the application, do not satisfy the requirements for the existence of good cause and we must, pursuant to our policy, deny your request.

Our stated policy as to what constitutes good cause for the issuance of a permit is stated below for your information:

> ".....specifically state under the section entitled "Qualifications for a CCW License" those circumstances which present convincing evidence of a clear and present danger to life, or of great bodily harm to the applicant, his/her spouse, or dependent child, which cannot be adequately dealt with by existing law enforcement resources and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by applicant's carrying of a concealed firearm."

Typically, the verbiage "convincing evidence of a clear and present danger...." refers to a current situation which involves a specific person(s) who has threatened an individual and who has displayed a pattern of behavior which would suggest that the threat(s) could be carried out.  Situations which would suggest only a potential danger to one's safety, (e.g. carrying large amounts of money to the bank, profession/job, working late hours in a high crime rate area, etc.) are not consistent with the criteria for issuance of a concealed weapon license.

If your circumstances change, please feel free to submit a new application.  Please do not hesitate to call Lieutenant Christopher Nee at (323) 526-5118 if you have any questions.

Sincerely,

LEROY D. BACA, SHERIFF

PAUL K. TANAKA
UNDERSHERIFF

*A Tradition of Service*

00043

JSER0046

# EXHIBIT B

JSER0047

1            **DECLARATION OF FRANKLIN E. ZIMRING**

2    I, Franklin E. Zimring, declare as follows:

3            1.      My current academic appointment is William G. Simon Professor of

4    Law, Wolfen Distinguished Scholar and Chair of the Criminal Justice Research

5    Program at the University of California, Berkeley. I have been studying the

6    relationship between firearms and violence, strategies of firearms control, and

7    patterns of gun commerce and civilian gun usage since 1967. I have served as

8    director of research of the task force on firearms of the National Commission on

9    the Causes and Prevention of Violence in 1968-1969 and as a firearms and federal

10   criminal law expert for the National Commission on Reform of Federal Criminal

11   Laws. I have published several empirical studies of firearms and violence and on

12   gun control, and I have co-authored three books with firearms issues at their

13   center, in 1969, 1986 and 1997. I have served as an expert both on the relationship

14   between firearms and violence and on the design and evaluation of firearms

15   control. I am providing expert opinions on both of these topics in this declaration.

16   I was elected a Fellow of the American Academy of Criminology in 1993 and to

17   the American Academy of Arts and Sciences in 1990. A full curriculum vitae is

18   Appendix A of this declaration.

19           2.      This declaration will summarize the empirical evidence and my

20   expert opinions concerning four issues arising out of this litigation.

21               (1) The relationship between firearms and violence and the

22           governmental interest in reducing the rate of gun use in crime.

23               (2) The particular governmental concerns with handguns and other

24           concealable weapons because of their disproportionate involvement in life-

25           threatening crimes of violence, particularly in streets and other public

26           places.

27               (3) The special threat posed by concealed handguns as weapons used

28           by criminals in streets and other public spaces. Persons using the streets

1   cannot avoid and police patrolling the streets cannot detect persons who
2   carry concealed handguns and later will find victims who are at risk when
3   concealed guns are displayed in robberies or assaults and not infrequently
4   discharged.  The governmental interest in limiting the number of persons
5   licensed to carry weapons hidden on their persons in public places is
6   substantially related to reducing the volume and deadliness of street
7   robberies and assaults.
8           (4)  A robust right to own a handgun in the privacy of one's own
9   home imposes whatever risks the gun poses on the owner and his family and
10  those who choose to visit those premises as long as the gun stays home.  But
11  unlimited freedom given to a person to carry a hidden handgun on the
12  streets subjects everybody else on the street to whatever risks that gun may
13  pose, and the others on the public fare have neither notice of the risk nor
14  power to control it.  This "externality" of unrestricted street carrying of
15  concealed weapons is probably the root cause of the longstanding and
16  broadly based history of restricting use of concealed weapons in public
17  places.
18  Firearms and the Death Rate from Violence.
19          3.      The overlap between firearms and crime in the United States is a
20  partial but important one.  Of all so-called "index" crimes reported to the police
21  nationwide (willful homicide, forcible rape, robbery, burglary, aggravated assault,
22  larceny over $50, motor vehicle theft, and arson), guns are known to be involved
23  in only about 4%.  But gun use is concentrated in violent crime, where about 20%
24  of all offenses involve guns.  And when only criminal acts that kill are counted,
25  guns account for almost 70% of all cases.  Why are gun cases seven out of every
26  ten lethal crimes, if firearms are used in only one out of five violent criminal acts?
27  Commonsense suggests that the greater dangerousness of guns when compared to
28  other frequently used instruments of attack such as knives and blunt instruments,

HOA.846807.12

00045

JSER0049

1  plays a major role in increasing the death rate from crimes, but there is an

2  alternative hypothesis, that robbers and assaulters who truly want to kill will

3  choose guns more often, and therefore that the greater death rate simply reflects

4  the more lethal intentions of those who use guns.  Which theory is better supported

5  by studying patterns of violent assault?

6      4.    A series of studies that were conducted under my supervision

7  addressed this issue from 1967 to 1988.  The first study compared knife and gun

8  attacks in Chicago over four police periods in 1967.  I found that when one only

9  compared gun and knife assaults to the same part of the body and controlled for

10  the number of wounds inflicted, the gun attacks were five times as likely to kill.[1]

11  Yet knives were the second most deadly instruments used in violent assault.  A

12  second study found that guns that fired smaller bullets were much less likely to kill

13  than guns firing larger bullets, again controlling for both the number of and the

14  location of the most life-threatening wound.  The central finding was that

15  instrumentality effects – the influences of weapon dangerousness independent of

16  measurable variations in the attacker's intent was an important influence in the

17  death rate from assault.[2]

18      5.    A second set of studies generated the same general results for the

19  weapons used in robberies.  Since the robber usually doesn't mean to inflict harm

20  if his demands are met, the death rate from all forms of robbery is much lower than

21

---

22      [1] Zimring, Franklin E. "Is Gun Control Likely to Reduce Violent Killings?"

23  *University of Chicago Law Review* 35:721 (1968).

24      [2] Zimring, Franklin E. "The Medium is the Message: Firearms Caliber as a

25  Determinant of the Death Rate from Assault," *Journal of Legal Studies* 1:97 (1972).

26  See Philip J. Cook, "The Technology of Personal Violence,' *Crime and Justice* 14:1

27  (1991).

28

from aggravated assault, but robberies with firearms are much more likely to produce a victim's death than robberies using knives or personal force.[3] The availability of guns may or may not influence the rate of robberies, but the proportion of robberies that involve guns will have a major impact on the number of victims who die in robberies, and lethal robberies are a major element in the life-threatening violence that sets U.S. cities apart from the major metropolitan areas of other developed nations.

6.  The governmental interest in restricting the use of guns in violent crime is in reducing the number of deaths and life-threatening injuries that are produced when guns rather than less deadly weapons became instruments of robbery and assault. This interest is clear, appropriate and important for both the State of California and the County and City of Los Angeles.

The Special Risks of Handguns.

7.  All forms of firearms are very dangerous to life if they are used in assaults and robberies, but the handgun is the major hazard, particularly in big cities, because handguns are much more likely to be used in criminal violence than shotguns and rifles. Handguns are slightly more than one-third of all firearms owned by civilians in the United States, but they are used in more than 75% of all gun killings and in even larger portions of robberies. The handgun is small, easy to carry and conceal, and deadly at short range. Handguns are the priority concern of law enforcement everywhere.[4]

---

[3] Zimring, Franklin E. and James Zuehl. "Victim Injury and Death in Urban Robbery: A Chicago Study," *Journal of Legal Studies* 15:1 (1986).

[4] Zimring, Franklin E. and Gordon Hawkins. Crime Is Not the Problem: Lethal Violence in America, New York: Oxford University Press (1997), Chapters 1, 3 and 7. See also Zimring, Franklin E. and Gordon Hawkins, The Citizen's Guide to Gun Control, New York: McMillan (1986), at Chapter 5, p. 38.

1       8.     The special dangers of handgun use in violence have produced a wide

2   variety of different legal strategies to minimize the rate of handgun misuse.  Many

3   nations attempt to restrict both the number of such firearms owned by citizens and

4   reasons why citizens might be permitted to own them.  But California, like most

5   U.S. states, allows competent adults to own handguns if they have no major record

6   of criminal conviction.

7       9.     Because California does not restrict eligibility of most citizens to own

8   handguns or the volume of guns owned, the state's first line of defense against the

9   use of such weapons in street crime is a series of restrictions on the time, place and

10   manner of handgun use.  California law prohibits the carrying of concealed deadly

11   weapons in public without a special permit.  The state law delegates the authority

12   to establish standards and make individual decisions in Los Angeles to county and

13   city law enforcement and government.  The goal here is to distinguish uses of

14   handguns that do not pose a special threat to the public (such as storage and use in

15   the owner's home) from uses that pose greater threats to public safety (such as the

16   carrying of concealed weapons in streets and public places).  The special danger of

17   a hidden handgun is that it can be used against persons in public robbery and

18   assault as well as transported to other indoor commercial and residential locations

19   to be used in attacks.  The concealment of a handgun means that other citizens and

20   police don't know it is in their shared space until it is brandished.  Concealed

21   handguns are a special problem for police because an armed police officer has no

22   warning that persons carrying concealed handguns are doing so.  A police officer

23   will be vulnerable to an element of surprise that will not be present if a person is

24   openly carrying a firearm.

25      10.    Of course not all of those carrying concealed handguns intend to use

26   them as instruments of public harm.  But the existence of a loaded weapon is a

27   hidden danger.  California's emphasis on controlling this risky use of guns rather

28   than restricting ownership itself is exactly opposite to the policy formerly pursued

1  by Washington, D.C. and disapproved in the *Heller* decision in 2008.  The

2  distinction between restricting ownership and restricting dangerous uses is

3  fundamental in the design of firearms control.  And no public law regulation of

4  firearms is as old or as pervasive as restrictions on public space use of firearms.

5      "The earliest and most numerous state and local laws relate to the
        carrying or use of firearms.  In the 1600s, Massachusetts prohibited
6      the carrying of defensive firearms in public places.  Kentucky in
        1813, Indiana in 1819, Arkansas and Georgia in 1837 passed laws
7      prohibiting the carrying of concealed weapons.  Many states and
        most cities today have laws attempting to regulate what has been
8      called the place and manner in which firearms may be carried or
        used."[5]

9

10  Almost all places make special rules for concealed handguns in public places.

        "Most often, state law prohibits the carrying of concealable firearms
11      without a special permit and the discharge of guns within city
        limits...Forty-nine states now impose some sort of restrictions on
12      carrying a concealed gun."[6]

13
        The Public Danger of Concealed Firearms.
14
        11.    The previous section of this declaration documented the statistical
15
    dominance of handguns in life-threatening violence but did not explain it.  Why are
16
    handguns, a minority of all firearms, responsible for three-quarters of all firearms
17
    deaths?  Why are handguns the overwhelmingly predominant firearm used in armed
18
    robbery?
19
        12.    This is a matter of simple criminal logistics.  Most firearms assaults
20
    and almost all firearms robberies take place outside the offender's home, so that
21

22

23      [5] Newton, George and Franklin E. Zimring, *Firearms and Violence in
    American Life*, staff report submitted to the National Commission on Causes and
24  Prevention of Violence, Washington D.C.: Government Printing Office (1969) at p.
    87 (citations in original omitted).

25      [6] Zimring, Franklin E. and Gordon Hawkins, *The Citizen's Guide to Gun
26  Control* (1986) at p. 123.  A more recent compendium lists 47 states with special
    permits, see www.lcav.org.
27

28

1   using a firearm in crime requires transporting it to a non-home location. But

2   carrying a loaded shotgun to a commercial location for a robbery or to somebody

3   else's home or on the street while looking for a target is a warning to potential

4   victims and a red flag to passersby and to any law enforcement personnel that the

5   armed pedestrian is not on an ordinary errand. Other pedestrians and motorists can

6   avoid the visibly armed person and police can ask questions and subject the visibly

7   armed person to identity checks and surveillance.

8       13.     But the person with a concealed handgun in his pocket generates no

9   special notice until the weapon appears at his criminal destination. The robber or

10  assaulter looks no different from any other user of common public spaces. And this

11  ability to escape special scrutiny is the advantage that makes the concealed handgun

12  the dominant weapon of choice for gun criminals and a special danger to

13  government efforts to keep public spaces safe and secure.

14      14.     The necessity of carrying guns to crime sites without detection is one

15  reason why the National Violence Commission research reported that 86% of all the

16  firearms used in all assaults were handguns and an astonishing 96% of all firearms

17  robberies were committed with handguns in the ten large cities the task force

18  surveyed.[7] What that robbery percentage means is that the problem of gun robbery

19  in American cities is almost exclusively a problem of concealable handguns.

20      15.     The stringent requirements that California and Los Angeles County and

21  cities within the county impose on persons wishing to have permits to carry loaded

22  and concealed guns have two strategic objectives. The first and most important is to

23  restrict drastically the number of persons secretly armed on the streets of Los

24  Angeles County.

25      16.     Figure 1 shows the current control of the volume of California

26  _____

27      [7] Newton, George and Franklin E. Zimring (1969), *Firearms and Violence in
    American Life*, at Figure 8-1, p. 49.

28

HOA 846807.17

00050

JSER0054

1  concealed weapons (CCW) permits and the huge stakes of shifting to the standards

2  asserted as rights by the plaintiff in this litigation.  The current system of CCW

3  licensing allows citizens in Los Angeles to apply for CCW licenses either to the

4  county sheriff or to their local police.  For this reason, only countywide rates of

5  licensing can be determined without detail on the city of residence for all who obtain

6  county licenses.  Figure 1 provides countywide population and CCW data.

7  Figure 1.  Population and Licenses to Carry in Los Angeles County.



Sources: population (U.S.Census Bureau, State and County Quickfacts, Los Angeles
County, California, available at
http://quickfacts.census.gov/qfd/states/06/06037.html); permits (California
Department of Justice, CCW Counts by County, 2000 through 2007, available at
http://ag.ca.gov/firearms/forms/pdf/ccwissuances2007.pdf)

17.    The rate per thousand adults of CCW permits is .16, indicating that

fewer than one of every 5,000 adults holds a permit.  By contrast, a system where all

persons without felony convictions, convictions for domestic violence crime or

involuntary mental health commitments would make more than 90% of Los Angeles

adults eligible for permits.  That would be just under seven million potential

carriers.

18.    Making the carrying of hidden deadly weapons into a very rare

00051

JSER0055

1  privilege enables citizens not to worry that they must choose between carrying a gun

2  themselves or being unarmed in public spaces where many strangers are secretly

3  armed.  Restricting the publicly entitled carriers of concealed handguns to a tiny

4  number also reinforces the practical monopoly of armed force by the police.  And

5  the police are one of the primary groups protected by small rates of carrying

6  concealed guns since more than 90% of killings of police are with guns.[8]

7      19.  The special vulnerability of police to weapons concealed on a person is

8  the element of surprise in the event of an attack.  An openly carried firearm is a

9  special danger to an officer, but it is a known danger.  The police officer can be

10  prepared to draw or use his weapon when a weapon is on display.  But the person

11  carrying a concealed handgun is a hidden danger to an officer.  High rates of

12  carrying concealed weapons put the police on the horns of a dangerous dilemma—

13  either they (1) make no assumptions about persons being armed (in which case they

14  are surprised and at a disadvantage when a concealed weapon is drawn) or (2)

15  assume everybody is carrying a loaded gun in which case they will be much quicker

16  to draw and fire their own guns even if no weapons are in fact held by the person

17  being approached.  So once a high rate of CCW takes place, the relationship

18  between armed police and citizens without any visible evidence of carrying guns

19  will get more dangerous for the police, for the citizen, or for both.

20      20.  The second strategic aim of a permit-to-carry requirement is to screen

21  those persons who do have special needs for concealed guns to make sure they will

22  not misuse the guns they carry.  This kind of risk screening explains the good

23  character, minimum age and lack of criminal record requirements.  But the central

24  reason to require a good reason for needing a gun is to reduce the number of secretly

25  armed citizens on the streets and sidewalks of one of the biggest urban areas in the

26  ───────────────

27     [8] U.S. Department of Justice, Federal Bureau of Investigation, *Law Enforcement Officers Killed and Assaulted* (2008), Table 27.

28

1   United States.

2       21.    There is one factual dispute of central importance in the distinction

3   between small and large volumes of CCW permits—the degree to which criminal

4   conduct is concentrated among formally identified felons.  It is sometimes claimed

5   that simply excluding former felons would prevent persons with high risks of future

6   crime from being eligible to carry hidden handguns.  This claim is false.  A majority

7   of criminal homicides and other serious crimes are committed by individuals who

8   have not been convicted of a felony.  The first published study on this question

9   found that in Chicago, 57% of those adults arrested for homicide did not have a

10   felony record.[9]

11       22.    It has more recently been reported that for all of New York State only

12   33% of all persons arrested for felonies have a felony conviction at the time of

13   arrest.  Thus, about two-thirds of current felons would not be prohibited from

14   eligibility under "shall issue" criteria (meaning criteria wherein if a person has no

15   prior felony conviction, domestic violence conviction, or recent psychiatric

16   commitment, said person would automatically be entitled to a CCW permit).[10]

17       23.    What percentage of the persons committing serious crimes in Los

18   Angeles would be disqualified by reason of a felony conviction from a permissive

19   "right to carry" license standard?  Julie Basco of the California Department of

20   Justice supervised an analysis of all 122,948 adult felony arrests in Los Angeles

21   County for 2010 and divided these persons by whether they had a pre-2010 felony

22   conviction.  A total of 43,440 subjects had a prior felony that would keep them

23

---

24       [9] P.J. Cook, J. Ludwig and A. Braqa, "Criminal Records of Homicide

25   Offenders," *Journal of the American Medical Association* 294(5), August 3, 2005.

26       [10] Reported in expert's declaration of Philip J. Cook in Kachalsky v. Cacase,
   Civil Action 10-cv-5413, Southern District of New York (2011).

27

28

1   from being eligible in a "shall issue" mandate or constitutional rule.  Sixty-five

2   percent of Los Angeles County felons do not have a prior felony conviction when

3   arrested.  These statistics indicate that Almost 2/3rds of the known current felons

4   would not be screened out by a prior felony from CCW permits without further

5   barriers.   We cannot divide the Department of Justice 35% into city and other-

6   county segments, but we are confident that 65% of Los Angeles County's felony

7   suspects are not prior felons: The same general breakdown appears in the

8   statewide New York findings.  Los Angeles is part of a general pattern.

9        24.    The State of California and the County of Los Angeles believe that it

10  would threaten the public health and safety to have hundreds of thousands of people

11  in the county carrying loaded handguns that the people who share the streets and

12  stores and parks of Los Angeles cannot see.

13       25.    Is this public choice consistent with *D.C. v. Heller's* conferral of a right

14  to handgun ownership under the Second Amendment?  Los Angeles has never tried

15  to restrict home possession, so it obviously believes that public places call for

16  different presumptive policies, and history is on Los Angeles' side.  Special

17  restrictions on carrying concealed weapons are venerable and almost universal.

18  Even the plaintiff in this suit does not question the legitimacy of a special license for

19  carrying weapons.  The central question is whether publicly concealed weapons can

20  be restricted even if possession in the home is protected by *Heller*.

21       The External Dangers of Concealed Weapons in Public Spaces.

22       26.    The right of home possession announced in the *Heller* case does not

23  require citizens to purchase and own handguns in their houses but rather confers on

24  individuals the right to decide for themselves if the benefits of gun possession in the

25  home outweigh the risks.  So the Second Amendment liberty announced in *Heller*

26  puts the homeowner in a position of power to determine what risks to take.  As long

27  as the guns owned in the home stay there, Mr. Smith's gun is no risk to his

28  neighbors.  But the presence of loaded and concealed guns in public spaces is an act

HOA.846807.1 11

1   where Mr. Smith's decision will generate risks to others who use the streets, and go

2   to public accommodations.  And if the guns are concealed, the people who are

3   exposed to these risks won't have notice or any ability to avoid the armed presence

4   they confront.

5       27.   This "externality" means that the implications of concealed carrying are

6   spread over the community of users of public space and the only method of deciding

7   policy is a collective determination of whether concealed weapon carrying should be

8   allowed and under what circumstances.

9       28.   So government must be involved in public space regulation in a way

10  that is not necessary in the privacy of individual homes.  This is why concealed

11  weapons laws are the oldest form of legal regulation of gun use and the most

12  common.  There is a public choice that must be made to reduce the number of

13  persons carrying concealed weapons by limiting licenses.  But without a general rule

14  on the standard for licenses, there is no way that individual preferences for or

15  against high rates of permits can be translated into a regulatory framework.

16      I declare under penalty of perjury that the forgoing is true and correct.

17  Executed at *Berkeley*           , this *14th* of December 2011.

18

19

                      FRANKLIN E. ZIMRING

20

21

22

23

24

25

26

27

28

HOA.846807.1 12

# FRANKLIN E. ZIMRING

20 October 2011

| | |
|---|---|
| **PERSONAL** | Born 1942, Los Angeles, California; married; two adult children. |
| **EDUCATION** | Los Angeles Public Schools; B.A. with Distinction, Wayne State University (1963); J.D. *cum laude*, University of Chicago (1967). |
| **PRESENT POSITION** | **WILLIAM G. SIMON PROFESSOR OF LAW; WOLFEN DISTINGUISHED SCHOLAR** and **CHAIR**, Criminal Justice Research Program, Institute for Legal Research (formerly the Earl Warren Legal Institute), Boalt Hall School of Law, University of California, Berkeley. |

**OTHER WORK**

**Principal Investigator,** Center on Culture, Immigration and Youth Violence Prevention (2005-).

**DIRECTOR**, Earl Warren Legal Institute (1983-2002).

**FACULTY OF LAW**, University of Chicago (1967-85): **KARL N. LLEWELLYN PROFESSOR OF JURISPRUDENCE** (1982-85) and **DIRECTOR**, Center for Studies in Criminal Justice (1975-85).

**MEMBER,** MacArthur Foundation Research Program on Adolescent Development and Juvenile Justice (1997-2007).

**FELLOW**, Center for Advanced Studies in the Behavioral Sciences, Stanford, California (1979-80).

**RAPPORTEUR**, Task Force on Sentencing Policy for Young Offenders, Twentieth Century Fund (1978).

**VISITING PROFESSOR OF LAW**, University of California, Irvine (2004), University of South Africa (1993), University of California, Berkeley (1983-85), Yale University (1973), and University of Pennsylvania (1972).

**DIRECTOR OF RESEARCH**, Task Force on Firearms, National Commission on the Causes and Prevention of Violence (1968-69).

**CONSULTANT:** American Bar Foundation, Police Foundation, National Commission on Reform of Federal Criminal Laws, Institute for Defense Analysis, Department of Justice, Rand Corporation, Abt Associates, Federal Parole Commission, Federal Bureau of Prisons, Federal Bureau of Investigation, General Accounting Office, Canadian Institute for Advanced Studies, States of Alaska, California, Nebraska, Illinois, Virginia, and Washington, Cities of Chicago, New York and San Francisco.

**ADVISORY POSTS**

CURRENT: Campaign for Youth Justice (2007-); California Attorney General's Office (2001-); National Policy Committee, American Society of Criminology (1989-91 and 1993-); Board of Directors, Illinois Youth Services Association (Honorary) (1977-); Advisory Committee, National Pre-Trial Services Association (1975-).

PAST: Asian Pacific Violence Prevention Center, National Council on Crime and Delinquency (2001-2005); Advisory Committee, Sentencing Project, American Law Institute (2001-2003); Criminal Justice Policy Group, Advisory Board, National Campaign Against Youth Violence (2000-2002); Expert Panel Member, U.S. Department of Transportation, National Highway Traffic Safety Administration Panel on Crash Risk of Alcohol-Involved Driving (1994-2002); Expert Panel Member, U.S. Department of Education Panel on Safe, Disciplined, and Drug-Free Schools (1998-2001); National Research Council Panel on Juvenile Crime: Prevention, Intervention, and Control (1998-2001); Advisory Board, Center on Crime, Communities, and Culture, Open Society Institute (1998-2000); Affiliated Expert, Center for Gun Policy and Research, Johns Hopkins University (1995-98); Gun Violence Advisory Group, American College of Physicians (1995-98); Advisory Committee, Violent and Serious

JSER0060

Juvenile Offender Project, National Council on Crime and Delinquency (1994-1997); Panel on NIH Research on Anti-Social, Aggressive, and Violence-Related Behaviors and their Consequences (1997-); Task Force on Future Directions for the National Archive of Criminal Justice Data, Bureau of Justice Statistics, Department of Justice (1995); Panel on Antisocial, Aggressive, and Violence-Related Behaviors and Their Consequences, National Institute of Health (1993-94); Panel on Understanding and Control of Violent Behavior, National Research Council, National Academy of Sciences (1989-91); Research Advisory Committee, California Attorney General (1983-1990); Law Enforcement Committee, California Governor's Policy Council on Drug and Alcohol Abuse (1989-91); National Research Council, Working Group Crime and Violence (1985-88); Internal Revenue Service, Advisory Group Taxpayer Compliance Research (1983-87); Board of Directors, Eisenhower Foundation for the Prevention of Violence (1981-84); U.S. Secret Service Advisory Committee on Protection of the President (1981-82); Assembly of Behavioral and Social Sciences, National Academy of Sciences (1977-80); Executive Committee, Illinois Academy of Criminology (1968-71, 1977-78); Advisory Committee, Assessment Center for Alternatives to Juvenile Courts (1977-78) (chairman); Advisory Committee, Law and Social Science Program, National Science Foundation (1976-77); Advisory Committee, Vera Institute of Justice, Court Employment Project Evaluation (1976-77) (chairman); Panel on Deterrence and Incapacitation, National Academy of Sciences (1975-77); Legal Committee, American Civil Liberties Union, Illinois Branch (1967-70).

**EDITORIAL BOARDS**    CURRENT:  Punishment and Society (1998-); Crime and Justice:  An Annual Review of Research (1979-90, 1998-); Western Criminology Review (1997-); Buffalo Criminal Law Review (1996-); Homicide Studies (1996-); The Prison Journal (1992-); Journal of Research in Crime and Delinquency (1976-84, 1990-); Federal Sentencing Reporter (1988-); Studies in Crime and Justice (1980-); Journal of Criminal Justice (1978-).

PAST:  Law and Society Review (1988-1998); British Journal of Criminology (1988-1996);  Journal of Quantitative Criminology (1984-1989); Ethics, (1985-87); Encyclopedia of Crime and Justice (1979-83); Evaluation Quarterly (1976-84); Law and Behavior (1976-85).

**HONORS**    Edwin H. Sutherland Award, American Society of Criminology (2007); August Vollmer Award, American Society of Criminology (2006); Notable Book of the Year, *The Economist* (2003); Society of Research on Adolescence, Biannual Book Award (2002); Pass Award, National Council on Crime and Delinquency (1999); Donald Cressey Award, National Council on Crime and Delinquency (1995); Choice, Outstanding Academic Book Citation (1995 and 1982); Paul Tappan Award, Western Society of Criminology (1994); Fellow, American Society of Criminology (1993); Distinguished Alumni Award, Wayne State University (1989); Bustin Prize for Legal Research, University of Chicago (1981); Cooley Lecturer, University of Michigan Law School (1980); National Distinguished Alumnus Award, Delta-Sigma-Rho (1977); Ten Law Professors Who Shape the Future, *Time Magazine* (1977); Civilian Award of Merit for 1975, Chicago Crime Commission; Gavel Award Certificate of Merit, American Bar Association (1973).

**MEMBER**    American Academy of Arts and Sciences (1990-); California Bar Association (1968-); Order of the Coif (1967-); Phi Beta Kappa (1964-).

## BOOKS AND MONOGRAPHS

*The City That Became Safe: What New York Teaches About Urban Crime and Its Control,* New York: Oxford University Press (October 2011).

(with David T. Johnson) *The Next Frontier: National Development, Political Change, and the Death Penalty in Asia,* New York: Oxford University Press (January 2009).

(with Bernard E. Harcourt) *Criminal Law and the Regulation of Vice,* American Casebook Series, St. Paul: Thompson/West Publishers (2007).

*The Great American Crime Decline,* New York: Oxford University Press (2006).

*American Juvenile Justice,* New York: Oxford University Press (2005); (Korean translation) Prime Books (November 2009); (Chinese translation) Chinese People's Public Security University Press (2010).

*An American Travesty: Legal Responses to Adolescent Sexual Offending,* Chicago: University of Chicago Press (2004); paperback edition (2009).

*The Contradictions of American Capital Punishment,* New York: Oxford University Press (2003); paperback edition (2004); (Chinese translation) Shanghai Joint Publishing (2008); (Italian translation) Società editrice il Mulino, Bologna (2009).

(with Margaret Rosenheim, David Tanenhaus, and Bernardine Dohrn, eds.) *A Century of Juvenile Justice,* Chicago: University of Chicago Press (2002); (Chinese translation) Beijing: The Commercial Press (2008).

(with Gordon Hawkins and Sam Kamin) *Punishment and Democracy: Three Strikes and You're Out in California,* New York: Oxford University Press (2001).

(with Jeffrey Fagan, ed.) *The Changing Borders of Juvenile Justice: Transfer from Juvenile to Criminal Court,* Chicago: University of Chicago Press (2000).

(with Sam Kamin and Gordon Hawkins) *Crime and Punishment in California: The Impact of Three Strikes and You're Out,* Berkeley: Institute of Governmental Studies (1999).

*American Youth Violence,* New York: Oxford University Press (1998); paperback edition (2000).

(with Gordon Hawkins) *Crime Is Not the Problem: Lethal Violence in America,* New York: Oxford University Press (1997); paperback edition (1999).

(with Gordon Hawkins) *Incapacitation: Penal Confinement and the Restraint of Crime,* New York: Oxford University Press (1995); paperback edition (1997).

(with Gordon Hawkins) *Prison Population and Criminal Justice Policy in California,* Berkeley: Institute of Governmental Studies (1992).

(with Gordon Hawkins) *The Search for Rational Drug Control,* New York: Cambridge University Press (1992); paperback edition (1995).

(with Gordon Hawkins) *The Scale of Imprisonment,* Chicago: University of Chicago Press (1991); paperback edition (1993).

(with Gordon Hawkins) *Pornography in a Free Society,* New York: Cambridge University Press (1988); paperback edition (1991).

(with Michael Laurence and John Snortum, eds.) *Social Control of the Drinking Driver*, Chicago: University of Chicago Press (1988).

(with Gordon Hawkins) *The Citizen's Guide to Gun Control*, New York: Macmillan Publishing Company (1987); paperback edition (1992).

(with Gordon Hawkins) *Capital Punishment and the American Agenda*, New York: Cambridge University Press (1987); paperback edition (1989).

(with Mark Siegler, Steven Toulman, Kenneth Schaffner, eds.) *Medical Innovation and Bad Outcomes: Legal, Social, and Ethical Responses*, Ann Arbor, MI: Health Administration Press (1987).

(with Gordon Hawkins, ed.) *The Pursuit of Criminal Justice: Essays From the Chicago Center*, Chicago: University of Chicago Press (1984); Midway reprint edition (1986).

(with Michael Tonry, ed.) *Reform and Punishment: Essays on Criminal Sentencing*, Chicago: University of Chicago Press (1983).

*The Changing Legal World of Adolescence*, New York: The Free Press (1982); paperback edition (1985).

(with Richard Frase) *The Criminal Justice System: Materials on the Administration and Reform of the Criminal Law*, Boston: Little, Brown and Company (1980).

*Confronting Youth Crime: Report of the Twentieth Century Fund Task Force on Sentencing Policy Toward Young Offenders*, New York: Holmes and Meier (1978).

(with Gordon Hawkins) *Deterrence: The Legal Threat in Crime Control*, Chicago: University of Chicago Press (1973); Phoenix edition (1976).

*Perspectives on Deterrence*, Washington, D.C.: National Institute of Mental Health (1971).

(with George P. Newton) *Firearms and Violence in American Life*, Task Force Report to the National Commission on the Causes and Prevention of Violence, Washington, D.C.: U.S. Government Printing Office (1969).

## SCHOLARLY ARTICLES

How New York Beat Crime, *Scientific American,* August 2011, p. 75.

Executions without Legitimacy? Why the ALI Action Matters, Response to Jordan and Steiker, "No More Tinkering: The ALI and the Death Penalty Provisions of the Model Penal Code." Texas Law Review See Also 88:257 (2011); available at: <http://www.texaslrev.com/seealso/vol/88/responses/zimring>.

(with Rosemary Gartner and Anthony Doob) The Past as Prologue? Decarceration in California then and Now, *Criminology and Public Policy* 10:291-325 (2011).

The Scale of Imprisonment in the United States: 20th Century Patterns and 21st Century Prospects, *The Journal of Criminal Law & Criminology* 100:1225-1245 (2010).

The Power Politics of Juvenile Court Transfer: A Mildly Revisionist History of the 1990s, *Louisiana Law Review* 71:1-15 (2010).

(with Jeffrey Fagan and David T. Johnson) Executions, Deterrence, and Homicide: A Tale of Two Cities, *Journal of Empirical Legal Studies* 7:1-29 (March 2010).

JSER0063

Delinquency, Opportunity and the Second Generation Immigrant Puzzle, in Frost, et al, eds., *Contemporary Issues in Criminal Justice Policy: Policy Proposals from the American Society of Criminology Conference,* Wasdworth/Cenage Learning (2010) 247-249.

Juvenile Crime, in Shweder, et al, eds., *The Child: An Encyclopedic Companion*, University of Chicago Press (2009) 217-219.

Debating a Federal Sentencing Commission circa 1978, *Federal Sentencing Reporter* 21:271 (April 2009).

(with Alex Piquero, Wesley Jennings and Stephanie Hays) Investigating the Continuity of Sex Offending: Evidence from the Second Philadelphia Birth Cohort, *Justice Quarterly* 26:59 (March 2009).

(with Chrysanthi S. Leon) A Cite Checker's Guide to Sexual Dangerousness, *Berkeley Journal of Criminal Law* 13:65 (Spring 2008).

Public Sentiment, Political Action, and Governmental Crime Policy–On the Origins and Significance of Mixed Feelings, *Criminology and Public Policy* 7:467 (August 2008).

Criminology and Its Discontents: The American Society of Criminology 2007 Sutherland Address, *Criminology* 46:255 (May 2008)

Violence and Drugs: Divide, Then Conquer? *Berkeley Review of Latin American Studies* pp. 40-41 (Spring 2008).

Handgun Control, The Second Amendment and Judicial Legislation in the D.C. Circuit: A Note on *Parker v. District of Columbia, New Criminal Law Review* 2:312 (2008).

(with David Johnson) Law, Society and Capital Punishment in Asia, *Punishment & Society* 10:103 (2008); also published in *Criminal Law Review* 19:109, (translated into Chinese by Richard Chiang for Peking University Press) (2006).

(with Gordon Hawkins) Crime Is Not the Problem: Lethal Violence in America, in Mary E. Vogel, ed., *Crime, Inequality and the State,* Routledge (2007).

Protect Individual Punishment Decisions from Mandatory Penalties, *Criminology and Public Policy* 6:881 (November 2007).

(with Alex Piquero and Wesley Jennings) Sexual Delinquency in Racine: Does Early Sex Offending Predict Later Sex Offending in Youth and Young Adulthood? *Criminology and Public Policy* 6:507 (August 2007).

Vollmer Award Address: The Necessity and Value of Transnational Comparative Study--Some Preaching from a Recent Convert, *Criminology and Public Policy* 5:615 (November 2006).

(with David Johnson) Taking Capital Punishment Seriously, *Asian Criminology* 1:89 (2006).

(with Cheryl Marie Webster and Anthony N. Doob) Proposition 8 and Crime Rates in California: The Case of the Disappearing Deterrent, *Criminology and Public Policy* 5:1501 (August 2006).

(with Jeffrey Fagan and Amanda Geller) Capital Punishment and Capital Murder:  Market Share and the Deterrent Effects of the Death Penalty, *Texas Law Review* 84:1803 (June 2006).

(with David Johnson) Public Opinion and the Governance of Punishment in Democratic Political Systems, *The Annals of The American Academy of Political and Social Science* 605:266 (May 2006).

(with David Johnson) On the Comparative Study of Corruption, *British Journal of Criminology* 45:793 (2005); also in the *Pacific McGeorge Global Business and Development Law Journal* 20:243 (2007) and in K. Padmaja, ed., *Corruption: Socio Legal Dimensions,* The ICFAI University Press (2008).

Penal Policy and Penal Legislation in Recent American Experience, *Stanford Law Review* 58:323 (2005).

Path Dependence, Culture and State-Level Execution Policy: A Reply to David Garland, *Punishment and Society* 7:377 (2005).

Minimizing Harm from Minority Disproportion, in Darnell F. Hawkins and Kimberly Kempf-Leonard, eds., *Our Children, Their Children: Confronting Racial and Ethnic Differences in American Juvenile Justice,* University of Chicago Press (2005).

Política Criminal y Legislación Penal en la Experiencia Estadounidense Reciente [Criminal Policy and Penal Legislation in the Recent American Experience], in José Luis Díez Ripollés, Ana María Prieto del Pino and Susana Soto Navarro, eds., *La Política Legislativa Penal en Occidente: Una Perspectiva Comparada* [Legislative Penal Policy in the West: A Comparative Perspective], Tirant lo Blanch (2005).

In Memoriam: Norval Morris (1923-2004), *The University of Chicago Law Review* 72:459 (2005).

The Unexamined Death Penalty: Capital Punishment and Reform of the Model Penal Code, *Columbia Law Review* 105:1396 (2005).

Symbol and Substance in the Massachusetts Commission Report, *Indiana Law Journal* 80:115 (2005).

(with Michael Vitiello, Clark Kelso, Erwin Chemerinsky, Kevin Reitz, and Jonathan Turley) A Proposal for a Wholesale Reform of California's Sentencing Practice and Policy, *Loyola of Los Angeles Law Review* 38:903 (2004).

The Discrete Character of High-Lethality Youth Violence, *Youth Violence: Scientific Approaches to Prevention, Annals of the New York Academy of Sciences* 1036:290 (2004).

The Weakest Link: Human Rights and the Criminal Offender in Modern Democratic Government, in Gerben Bruinsma, Henk Elffers, and Jan de Keijser, eds., *Punishment, Places, and Perpetrators: Developments in Criminology and Criminal Justice Research,* Wilan Publishing (2004).

Firearms, Violence, and the Potential Impact of Firearms Control, *The Journal of Law, Medicine, and Ethics* 32:34 (2004).

(with Gordon Hawkins) Democracy and the Limits of Punishment: A Preface to Prisoners' Rights, in Michael Tonry, ed., *The Future of Imprisonment,* Oxford University Press (2004).

Continuity and Change in the American Gun Debate in Jens Ludwig and Philip J. Cook, eds., *Evaluating Gun Policy: Effects on Crime and Violence*, Washington, DC: Brookings Institution Press (2003); also as Chapter 1 in Bernard E. Harcourt, ed., *Guns, Crime, and Punishment in America*, New York: New York University Press (2003).

The Peculiar Present of American Capital Punishment in Stephen P. Garvey, ed., *Beyond Repair? America's Death Penalty*, Durham, NC: Duke University Press (2003).

(with Sam Kamin) Facts, Fallacies, and California's Three Strikes, *Duquesne Law Review* 40:605 (2002).

(with Gordon Hawkins) Capital Punishment, in *Oxford Companion to American Law*, New York: Oxford University Press (2002).

JSER0065

The New Politics of Criminal Justice:  Of "Three Strikes," Truth-in-Sentencing, and Megan's Laws, *National Institute of Justice Research Report, Perspectives on Crime and Justice: 1999-2000 Lecture Series, Washington, DC*, Volume 4 (March 2001).

Crime, Criminal Justice, and Criminology for a Smaller Planet: Some Notes on the 21st Century (Noriyoshi Takemura, translator), *Toin Law Review* 8:75 (2001)

Crime, Criminal Justice, and Criminology for a Smaller Planet: Some Notes on the 21st Century, *The Australian and New Zealand Journal of Criminology* 34:213 (2001)

Imprisonment Rates and the New Politics of Criminal Punishment, *Punishment and Society* 3:161 (2001); also as Chapter 10 in David Garland, ed., *Mass Imprisonment: Social Causes and Consequences*, London: Sage Publications (2001).

The Common Thread: Diversion in Juvenile Justice, *California Law Review* 88:2477 (2000); also as Chapter 5 in (with Margaret Rosenheim, David Tanenhaus, and Bernardine Dohrn, eds.) *A Century of Juvenile Justice*, Chicago: University of Chicago Press (2002).

(with Jeffrey Fagan) The Search for Causes in an Era of Declining Crime Rates: Some Lessons from the Study of New York City Homicide, *Crime and Delinquency* 46:446  (2000).

Incarceration Patterns, in *Mass Incarceration:  Perspectives on U.S. Imprisonment, University of Chicago Law School Roundtable, A Journal of Interdisciplinary Legal Studies*, Volume 7 (2000).

Penal Proportionality and the Young Offender: Notes on Immaturity, Capacity, and Diminished Responsibility, in Thomas Grisso and Robert G. Schwartz, eds., *Youth on Trial*, Chicago: University of Chicago Press (2000).

The Punitive Necessity of Waiver, Chapter 6 in Fagan and Zimring, eds., *The Changing Borders of Juvenile Justice*, Chicago: University of Chicago Press (2000).

(with Jeffrey Fagan) Transfer Policy and Law Reform, Chapter 12 in Fagan and Zimring, eds., *The Changing Borders of Juvenile Justice*, Chicago: University of Chicago Press (2000).

American Youth Violence:  Implications for National Juvenile Justice Policy, *Update on Law-Related Education* (American Bar Association publication) 23:6 (1999).

The Hardest of the Hard Cases: Adolescent Homicide in Juvenile and Criminal Courts, *Virginia Journal of Social Policy and the Law*, 6:437 (1999).

The 1990s Assault on Juvenile Justice: Notes from an Ideological Battleground, *Federal Sentencing Reporter* 11:260 (1999).

(with Jeffrey Fagan and June Kim) Declining Homicide in New York City: A Tale of Two Trends, *Journal of Criminal Law and Criminology* 88:1277 (1998); also (with Jeffrey Fagan) as Le Cause Della Diminuzione Dei Reati: Alcune Riflessioni Sull'Analisi Degli Omicidi a New York, in Marzio Barbagli, ed., *Perché È Diminuita La Criminalità Negli Stati Uniti?* Società Editrice Il Mulino (2000).

The Executioner's Dissonant Song:  On Capital Punishment and American Legal Values, Chapter 6 in Austin Sarat, ed., *Killing State:  Capital Punishment in Law, Politics, and Culture*, Oxford University Press (1999); also in *Institute for Philosophy and Public Policy Report*19:1 (1999).

(with Gordon Hawkins) Public Attitudes Toward Crime:  Is American Violence A Crime Problem? in Edward Rubin, ed., *Minimizing Harm:  A New Crime Policy for Modern America*, Westview Press (1999).

Toward a Jurisprudence of Youth Violence, in Michael Tonry and Mark Moore, eds., *Youth Violence. Crime and Justice:  A Review of Research*, University of Chicago Press (1998).

JSER0066

The Youth Violence Epidemic: Myth or Reality?, *Wake Forest Law Review* 33:727 (1998).

(with Gordon Hawkins) Crime Is Not the Problem: A Reply, *University of Colorado Law Review* 69:1177 (1998).

(with Gordon Hawkins) Lethal Violence and the Overreach of American Imprisonment, *National Institute of Justice Research Report, Presentations from the 1996 Annual Research and Evaluation Conference, Washington, DC*, July 1997.

Juvenile Violence in Policy Context, *Valparaiso University Law Review* 31:419 (1997).

The Doom of a Good Intention, *Politics and the Life Sciences* 16:44 (1997).

(with Gordon Hawkins) Concealed Handguns: The Counterfeit Deterrent, *The Responsive Community*, Spring 1997, p. 46.

Kids, Guns, and Homicide: Policy Notes on an Age-Specific Epidemic, *Law and Contemporary Problems* 59:25 (1996).

Populism, Democratic Government, and the Decline of Expert Authority: Some Reflections on "Three Strikes" in California, *Pacific Law Journal* 28:243 (1996).

(with Gordon Hawkins) Is American Violence a Crime Problem?, *Duke Law Journal* 46:43 (1996); also in Edward Rubin, ed., *Minimizing Harm as a Goal for Crime Policy in California*, California Policy Seminar Policy Research Program Report (1997).

The Wages of Ambivalence: On the Context and Prospects of New York's Death Penalty, *Buffalo Law Review* 44:303 (1996).

(with Adolfo Ceretti and Luisa Broli) Crime Takes a Holiday in Milan, *Crime and Delinquency* 42:269 (1996).

The Genetics of Crime, *Politics and the Life Sciences* 15:105 (1996).

(with Gordon Hawkins) Toward a Principled Basis for Federal Criminal Legislation, *The Annals of the American Academy of Political and Social Science* 543:15 (1996).

Firearms Control in Federal Law in the United States: Current Conditions and Further Choices, *UNAFEI Resource Materials Series*, No. 46 (Materials Produced during the 96th International Seminar Course on the "Promotion of International Cooperation in Criminal Justice Administration), p. 117 (1995).

Reflections on Firearms and the Criminal Law, *Journal of Criminal Law and Criminology* 86:1 (1995).

(with William Nelson) Cigarette Taxes as Cigarette Policy, *Tobacco Control* 4:S25 (1995).

(with Gordon Hawkins and Hank Ibser) Estimating the Effects of Increased Incarceration on Crime in California, *California Policy Seminar Brief*, Volume 7, July 1995.

(with Johannes van Vuren and Jan van Rooyen) Selectivity and Racial Bias in a Mandatory Death Sentence Dispensation: A South African Case Study, *Comparative and International Law Journal of Southern Africa* 28:107 (1995); Misleading Statistics and the Death Penalty -- Two Authors Reply to Henry Lever, *Comparative and International Law Journal of Southern Africa* 30:364 (1997).

(with Gordon Hawkins) The Growth of Imprisonment in California, *British Journal of Criminology* 34:83 (1994).

Policy Research on Firearms and Violence, *Health Affairs* 12:109 (1993).

(with Gordon Hawkins) Crime, Justice, and the Savings and Loan Crisis, *Crime and Justice* 18:247 (1993).

(with Gordon Hawkins) Continuity and Focus in Criminal Justice Research, *Journal of Research in Crime and Delinquency* 20:525 (1993).

Comparing Cigarette Policy and Illicit Drug and Alcohol Control, in Robert Rabin and Stephen Sugarman, eds., *Smoking Policy: Law, Politics, and Culture*, Oxford University Press (1993).

On the Liberating Virtues of Irrelevance, *Law and Society Review* 27:9 (1993).

Drug Treatment as a Criminal Sanction, *University of Colorado Law Review* 64:809 (1993).

Prison Population and Criminal Justice Policy in California, *California Policy Seminar Brief*, Volume 4, August 1992.

Inheriting the Wind: The Supreme Court and Capital Punishment in the 1990s, *Florida State University Law Review* 20:1 (1992).

The Jurisprudence of Teenage Pregnancy, in Margaret Rosenheim and Mark Testa, eds., *Early Parenthood and Coming of Age in the 1990s*, Rutgers University Press (1992).

The Multiple Middlegrounds Between Civil and Criminal Law, *Yale Law Journal* 101:1901 (1992).

(with Gordon Hawkins) What Kind of Drug War?, *Social Justice* 18:104 (1991).

Firearms, Violence, and Public Policy, *Scientific American*, November 1991, p. 48; also in Robert K. Miller, ed., *The Informed Argument*, Harcourt Brace (1995); K. Ackley, ed., *Perspective on Contemporary Issues*, Harcourt Brace (1996).

Ambivalence in State Capital Punishment Policy: An Empirical Sounding, *New York University Review of Law and Social Change* 18:729 (1991).

(with Gordon Hawkins) The Wrong Question: Critical Notes on the Decriminalization Debate, in Melvyn Krauss and Edward Lazear, eds., *Search for Alternatives: Drug-Control Policy in the United States*, Hoover Institution Press (1991).

The Limits of Criminal Punishment: Some Ethical Issues for the 1990s, in David Gordis, ed., *Crime, Punishment, and Deterrence: An American-Jewish Exploration*, University of Judaism (1991).

The Treatment of Hard Cases in American Juvenile Justice: In Defense of Discretionary Waiver, *Notre Dame Journal of Law, Ethics and Public Policy* 5:267 (1991).

Punishing the Drinking Driver: Toward an Experimental Design, *Alcohol, Drugs, and Driving* 6:199 (1990).

(with Gordon Hawkins) On the Scale of Imprisonment: Downes's *Contrasts in Tolerance*, *Journal of the American Bar Foundation* 14:527 (1989).

The Problem of Assault Firearms, *Crime and Delinquency* 35:538 (1989).

Methods for Measuring General Deterrence: A Plea for the Field Experiment, in Martin Friedland, ed., *Sanctions and Rewards in the Legal System*, University of Toronto Press (1989).

(with Gordon Hawkins) The Path Toward the Abolition of Capital Punishment in the Industrial West, *Revue Internationale de Droit Penal* 58:669 (1988).

(with Gordon Hawkins) The New Mathematics of Imprisonment, *Crime and Delinquency* 34:425 (1988); Response to Zedlewski, *Crime and Delinquency* 35:316 (1989).

(with Gordon Hawkins) Murder, the Model Code, and the Multiple Agendas of Reform, *Rutgers Law Journal* 19:733 (1988).

Law, Society, and the Drinking Driver:  Some Concluding Reflections, in Michael Laurence, John Snortum, and Franklin Zimring, eds., *Social Control of the Drinking Driver*, University of Chicago Press (1988).

Principles of Criminal Sentencing, Plain and Fancy, *Northwestern University Law Review* 82:73 (1987).

Legal Perspectives on Family Violence, *California Law Review* 75:521 (1987); also as Toward a Jurisprudence of Family Violence, in Lloyd Ohlin and Michael Tonry, eds., *Family Violence*, University of Chicago Press (1989).

(with Gordon Hawkins) Dangerousness and Criminal Justice, *Michigan Law Review* 85:481 (1987).

Some Social Bases for Compensation Schemes, in Mark Siegler, Steven Toulman, Franklin Zimring, and Kenneth Schaffner, eds., *Medical Innovation and Bad Outcomes:  Legal, Social, and Ethical Responses*, Health Administration Press (1987).

(with Gordon Hawkins) A Punishment in Search of a Crime:  Standards for Capital Punishment in the Law of Criminal Homicide, *Maryland Law Review* 46:1001 (1986).

Gun Control, *Bulletin of New York Academy of Medicine* 62:5 (1986).

(with James Zuehl) Victim Injury and Death in Urban Robbery:  A Chicago Study, *Journal of Legal Studies* 15:1 (1986).

(with Gordon Hawkins) Cycles of Reform in Youth Corrections:  The Story of Borstal, in Peter Greenwood, ed., *The Juvenile Rehabilitation Reader,* Rand Corporation (1985).

(with Gordon Hawkins) Western European Perspectives on the Treatment of Young Offenders, in Peter Greenwood, ed., *The Juvenile Rehabilitation Reader*, Rand Corporation (1985).

(with Gordon Hawkins) Capital Punishment and the Eighth Amendment:  Furman and Gregg in Retrospect, *UC Davis Law Review* 18:927 (1985).

Violence and Firearms Policy, in Lynn Curtis, ed., *American Violence and Public Policy*, Yale University Press (1985).

(with Rayman Solomon) The Principle of the Thing: Goss v. Lopez, Student Rights, and Litigation in the Public Interest of Children, in Robert Mnookin, ed., *In the Interest of Children:  Advocacy, Law Reform, and Public Policy*, Part VI, W.H. Freeman (1985).

Youth Homicide in New York:  A Preliminary Analysis, *Journal of Legal Studies* 13:81 (1984).

Sentencing Reform in the States, in Franklin Zimring and Michael Tonry, eds., *Reform and Punishment:  Essays on Criminal Sentencing*, University of Chicago Press (1983).

(with Satyanshu K. Mukherjee and Barrik Van Winkle) Intimate Violence:  A Study of Intersexual Homicide in Chicago, *University of Chicago Law Review* 50:910 (1983).

Kids, Groups, and Crime:  Some Implications of a Well-Known Secret, *Journal of Criminal Law and Criminology* 72:867 (1981).

Handguns in the Twenty-First Century:  Alternative Policy Futures, *The Annals of the American Academy of Political and Social Sciences* 455:1 (1981).

Secret Service "Dangerousness" Research, in Jane Takeuchi, Frederic Solomon, and W. Walter Menniger, eds., *Behavioral Science and the Secret Service:  Toward the Prevention of Assassination*, National Academic Press (1981).

Notes Toward a Jurisprudence of Waiver, in John Hall, Donna Hamparian, John Pettibone, and Joseph White, eds., *Issues in Juvenile Justice Information and Training,* Academy of Contemporary Problems (1981).

Privilege, Maturity, and Responsibility:  Notes on the Emerging Jurisprudence of Adolescence, in Lamar Empey, ed., *The Future of Childhood and Juvenile Justice*, University Press of Virginia (1980).

American Youth Violence:  Issues and Trends, in Norval Morris and Michael Tonry, eds., *Crime and Justice:  A Review of Research*, University of Chicago Press (1979).

(with Gordon Hawkins) Ideology and Euphoria in Crime Control, *Toledo Law Review* 10:370 (1979).

Pursuing Juvenile Justice:  Comments on Some Recent Reform Proposals, *University of Detroit Journal of Urban Law* 55:631 (1978).

Policy Experiments in General Deterrence, 1970-1975, in Alfred Blumstein, Jacqueline Cohen, and Daniel Nagin, eds., *Deterrence and Incapacitation:  Estimating the Effects of Criminal Sanctions on Crime Rates*, National Academy of Science (1978).

Bad Checks in Nebraska:  A Study of Complex Threats, in Greenburg, ed., *Punishment and Corrections*, Sage Publications (1977).

The Serious Juvenile Offender:  Notes on an Unknown Quantity, in *The Serious Juvenile Offender: Proceedings of a National Symposium Held in Minneapolis, Minnesota on September 19 and 20, 1977*, U.S. Government Printing Office (1978).

Determinants of the Death Rate from Robbery:  A Detroit Time Study, *Journal of Legal Studies* 6:317 (1977).

Making the Punishment Fit the Crime:  A Consumer's Guide to Sentencing Reform, *Hastings Center Reports*, December 1976; also in University of Chicago Law School, *Occasional Papers*, No. 12 (1977); Hyman Gross and Andrew von Hirsch, eds., *Sentencing*, Oxford University Press (1981); Culbertson and Tezak, eds., *Order Under Law*, Waveland Press (1981).

(with Joel Eigen and Sheila O'Malley) Punishing Homicide in Philadelphia:  Perspectives on the Death Penalty, *University of Chicago Law Review* 43:227 (1976); also in Hugo Bedau and Chester Pierce, eds., *Capital Punishment in the United States*, AMS Press (1976); *Civil Rights*, Staff Report of the Sub-Committee on Constitutional Rights of the Committee on the Judiciary, U.S. Senate (1976).

Street Crime and New Guns:  Some Implications for Firearms Control, *Journal of Criminal Justice* 4:95 (1976).

Field Experiments in General Deterrence:  Preferring the Tortoise to the Hare, *Evaluation Magazine*, Volume 3, Russell Sage Publications (1976).

Firearms and Federal Law:  The Gun Control Act of 1968, *Journal of Legal Studies* 4:133 (1975); also in *Evaluation Annual*, Volume 1, Russell Sage Publications (1977); *Improving the Criminal Justice System in the United States*, 94th Congress, 2d Session, Library of Congress Document No. 94-171, at 273.

Measuring the Impact of Pretrial Diversion from the Criminal Justice System, *University of Chicago Law Review* 41:224 (1974); also in *Crime and Justice Annual -- 1974*, Aldine (1975); Povl Boesen and Stanley Grupp, eds., *Community Based Corrections: Theory, Practice and Research*, Davis Publishing Company (1976).

Threat of Punishment as an Instrument of Crime Control, *Proceedings of the American Philosophical Society* 118:231 (1974).

(with Richard Block) Homicide in Chicago, 1965-70, *Journal of Research in Crime and Delinquency* 10:1 (1973); also in Lee Rainwater, ed., *Deviance and Liberty*, Aldine (1974).

Of Doctors, Deterrence, and the Dark Figure of Crime: A Note on Abortion in Hawaii, *University of Chicago Law Review* 39:699 (1972).

The Medium is the Message: Firearms Caliber as a Determinant of the Death Rate from Assault, *Journal of Legal Studies* 1:97 (1972).

(with Gordon Hawkins) The Legal Threat as an Instrument of Social Change, *Journal of Social Issues* 27:33 (1971); also in Ronald Akers and Richard Hawkins, eds., *Law and Control in Society*, Prentice-Hall (1974); June Louin Tapp and Felice Levine, eds., *Law, Justice, and the Individual in Society*, Holt, Rinehart (1977).

Firearms and Federal Criminal Law, *Working Papers of the National Commission on the Reform of Federal Criminal Laws*, Volume II, U.S. Government Printing Office (1970).

(with Norval Morris) Deterrence and Corrections, *Annals of the American Academy of Political Social Sciences* (1969).

(with Gordon Hawkins) Deterrence and Marginal Groups, *Journal of Research in Crime and Delinquency* 5:100 (1968).

Games with Guns and Statistics, *Wisconsin Law Review* 1968:1113 (1968).

Is Gun Control Likely to Reduce Violent Killings?, *University of Chicago Law Review* 35:721 (1968).

(with Edward H. Hunvald) Missouri Implied Consent Statutes, *Missouri Law Review* 33:323 (1968).

"Free Press-Fair Trial" Revisited: Defendant-Centered Remedies as a Publicity Policy, *University of Chicago Law Review* 33:512 (1966).

## GENERAL

Preface to the Chinese edition of *American Juvenile Justice,* Chinese People's Public Security University (2010).

Juvenile Justice: Legal, Policy & Political Issues (expert participant), *Focus on Law Studies,* American Bar Association, Division for Public Education, Vol. XXV, No. 2, Spring 2010, p. 4.

Miraklet I New York, *Magasinet Neo*, No. 2, March/April 2010, p. 38.

Pulling the Plug on Capital Punishment, *The National Law Journal,* Vol. 32, No. 14, December 7, 2009, p. 42.

Foreword to Jane Sprott and Anthony Doob, *Justice for Girls? Stability and Change in the Youth Justice Systems of the United States and Canada,* University of Chicago Press (2009).

JSER0071

(with Jeffrey Fagan) Myths of Get-Tough Law, *St. Petersburg Times,* October 30, 2009; also available online at http://www.tampabay.com/opinion/columns/myths-of-get-tough-law/1048326#.

Preface to the Korean edition, *American Juvenile Justice,* Oxford University Press (2009).

Book review of *The Death Penalty: A Worldwide Perspective* (Roger Hood and Carolyn Hoyle, Oxford University Press, 2008), *Punishment and Society,* Vol. 11, No. 2, April 2009, p. 280.

(with David T. Johnson) Last Days of the Hangman, *New Scientist,* March 14, 2009, p. 22; also available online at http://www.newscientist.com/article/mg20126995.100-capital-punishment-its-all-politics.html.

(with David T. Johnson) The Death Penalty's Future, *The Los Angeles Daily Journal,* January 16, 2009, p. 9.

Preface to the Chinese edition, *The Contradictions of American Capital Punishment,* Shanghai Joint Publishing, pp. 4-7 (2008).

Preface to the Chinese edition, *A Century of Juvenile Justice,* Beijing: The Commercial Press (2008).

Prison Policy Reform, *Issues in Science and Technology,* Vol. 25, No. 1, Fall 2008, p. 11.

A Sick System, *Los Angeles Times,* October 25, 2008, p. A23.

Guns: Liberty or Order? *The National Law Journal,* Vol. 30, No. 30, April 7, 2008, p. 23.

What Lies Behind the Case of Lethal Injection? *The Sacramento Bee,* Sunday, December 16, 2007, p. E1; reprinted in *The Police News* (Gulf Coast edition), Vol. V, No. 1, January 2008, p. 14.

A Tale of Two Despots, *The National Law Journal,* Vol. 29, No. 49, August 6, 2007, p. 23.

Little Changes, Big Results, *The New York Times,* April 8, 2007, p. 9.

Foreword to Peter Greenwood, *Changing Lives: Delinquency Prevention as Crime Control Policy,* University of Chicago Press (2005).

Capital Punishment: An American Dilemma, in "Shalt Thou Kill? An In-Depth Look at Capital Punishment," *Christian Networks Journal,* Fall 2005, p. 17.

Terri Schiavo and the Dilemma of "Life or Death" Litigation, *San Francisco Daily Journal,* June 15, 2005, p. 6.; *Los Angeles Daily Journal,* June 15, 2005, p. 6.

A Death Knell for the Death Penalty? *Newsday,* March 4, 2005, p. A47.

Review of Kathleen Auerhahn, *Selective Incapacitation and Public Policy: Evaluating California's Imprisonment Crisis, Contemporary Sociology* 34:62 (2005).

Foreword to Thomas Grisso, *Double Jeopardy: Adolescent Offenders with Mental Disorders,* University of Chicago Press (2004).

Three-Ring Capital-Punishment Circus, *Los Angeles Daily Journal,* February 20, 2004, p. 6.

Confessions of a Former Smoker, in Jane E. Aaron, *The Compact Reader: Short Essays by Method and Time* (Seventh Edition), Boston: Bedford/St. Martin's (2003);also as Hot Boxes for Ex-Smokers, *Newsweek,* My Turn, April 20, 1987, p. 12.

Train an Impartial Eye on Police Behavior, *Los Angeles Times,* July 12, 2002, p. A17.

JSER0072

(with Gordon Hawkins) The Ethics of Criminal Justice: Aspects of Human Dignity, *International Encyclopedia of the Social and Behavioral Sciences*, Volume 5, p. 2949 (2002).

Review of David Garland, *The Culture of Control: Crime and Social Order in Contemporary Society*, *Criminal Justice* 1:465 (2001).

McVeigh's Execution Will Heal Neither Survivors Nor Public, *Los Angeles Times*, May 11, 2001, p. B17.

The Walking Plea of Wen Ho Lee, *San Francisco Chronicle*, October 2, 2000, p. A21

Contributor to M. Dwayne Smith, *A New Era of Homicide Studies? Visions of a Research Agenda for the Next Decade*, *Homicide Studies* 4:1 (2000).

It's Violence by All, Not Just Teen Violence, *Los Angeles Times*, August 8, 2000, p. B9.

Bring Courage Back into Fashion, *Los Angeles Times,* January 16, 2000, p. M5.

Capital Punishment, *Microsoft's Encarta Encyclopedia* (CD-ROM) (1999).

Gun Control, *Microsoft's Encarta Encyclopedia* (CD-ROM) (1999).

Criminal Investigation Is Just a Human Art, *Los Angeles Times*, August 1, 1999, p. M5.

Curb Imperial Power of Prosecutors, *Los Angeles Times*, April 20, 1999, p. A15.

Mystery Terms, *Boston Review*, New Democracy Forum, April/May 1999, p. 17.

Marking Time on Death Row, *The 1999 World Book Year Book*, World Book, Inc. (1999).

What is the Aim of Criminal Law? *Los Angeles Times*, January 14, 1999, p. A15.

The Buck Stops with Prison Managers: Perspective on the Corcoran Report, *Los Angeles Times*, November 28, 1998, p. M5.

(with Gordon Hawkins) Review of Jacob Sullum, *For Your Own Good: The Anti-Smoking Crusade and the Tyranny of Public Health, The Responsive Community* 8:75 (1998).

A Gulag Mentality in the Prisons, *Los Angeles Times*, July 15, 1998, p. B9.

Thank You for Not Sneezing, *Los Angeles Times*, February 1, 1998, p. M5.

The Truth About Repeat Sex Offenders, *Los Angeles Times*, May 5, 1997, p. B5.

Review of Ugljesa Zvekic and Anna Alvazzi del Frate, eds., *Criminal Victimization in the Developing World, Contemporary Sociology* 25:663 (1996).

Paranoia on the Playground, *Los Angeles Times*, November 11, 1996, p. B5.

Crying Wolf over Teen Demons, *Los Angeles Times*, August 19, 1996, p. B5.

Gun Control, *Microsoft's Encarta Encyclopedia* (CD-ROM) (1996).

Crime Is Not the Problem, *Iowa Advocate*, Spring/Summer 1996, p. 34.

Deadly Force: South Africa's Brave and Necessary Gamble with Its Death Penalty, *Chicago Tribune*, July 6, 1995, p. 19.

Will Success Spoil James Q. Wilson?, *Journal of Criminal Law and Criminology* 85:828 (1995).

Introduction to David Indermaur, *Violent Property Crime*, The Federation Press (1995).

For Gun Control, Give Big Cities Local Control, *Los Angeles Times*, May 17, 1995, p. B7.

Death Penalty, *jungeWelt*, April 1, 1995, p. 2.

Don't Bet on Executions Here Any Time Soon, *Newsday*, February 21, 1995, p. A27; also as
Executions in New York?  Don't Bet on It, *New York Law Journal*, February 27, 1995.

Clouding the Issue:  Tobacco Industry Tries to Choke Off a Lawsuit, *Los Angeles Daily Journal*,
December 12, 1994, p. 4.

The Voodoo Economics of California Crime, *Overcrowded Times*, October 1994, p. 3.

(with Gordon Hawkins) Policy on Crime, in Leonard Levy and Louis Fisher, eds., *Encyclopedia of the
American Presidency*, Simon and Schuster (1994).

Tough Crime Laws Are False Promises, *Insight on the News* 10:21 (1994); also in *Federal Sentencing
Reporter* 6:61 (1994).

"Three Strikes" Law Is Political Fool's Gold, *The Christian Science Monitor*, April 11, 1994, p. 23.

New Senate, Same Old Crime Debate, *The American Lawyer*, March 1994, p. 25.

To Punish Genocide with Death Is Overkill, *Los Angeles Times*, December 2, 1993, p. B7.

Introduction to Harry Kalven, Jr. and Hans Zeisel, *The American Jury*, Gryphon Editions (1993).

A Country Where There Is No Status Quo, *Los Angeles Times*, June 30, 1993, p. B7.

Hanged If We Do, Or We Don't, *Johannesburg Star*, April 5, 1993.

The Color of Murder, *Legal Times*, February 22, 1993, p. 34.

Intercept Migrating Guns, *Christian Science Monitor*, September 10, 1992, p. 18.

Are State Prisons Undercrowded?, *Federal Sentencing Reporter* 4:347 (1992).

Politics Dictate Wilson's Verdict, *Los Angeles Times*, April 12, 1992, p. M5.

Tribute to Sheldon Messinger, *California Law Review* 80:307 (1992).

(with Gordon Hawkins) Review of Samuel Gross and Robert Mauro, *Death and Discrimination:  Racial
Disparities in Capital Sentencing*, *Constitutional Commentary* 9:135 (1992).

(with Gordon Hawkins) Why the S&L Gang Isn't in Jail, *Los Angeles Times*, February 3, 1992, p. B5.

(with Michael Laurence) Capital Punishment, in Leonard Levy, ed., Supplement to the *Encyclopedia
of the American Constitution*, Macmillan (1991).

More Jail Cells, Fewer Classrooms, *Los Angeles Times*, May 31, 1991, p. B5.

The Speaking Engagement as One-Night Stand, *California Monthly*, April 1991, p. 17.

The Great American Lockup, *Washington Post*, February 28, 1991, p. A19.

Strategies for Arms Control:  Trace Illegal Firearms, *New York Times*, January 4, 1991, p. A13.

Foreword to Stephen Sugarman and Herma Hill Kay, eds., *Divorce Reform at the Crossroads*, Yale University Press (1990).

Greenmail Goes Transnational, *Los Angeles Times*, March 23, 1990, p. B7; also as Can East Germany Leverage Its Way to Wealth?, *Newsday*, April 9, 1990, p. 43.

A Solitary Symbol in a Deadly Tug of War, *Los Angeles Times*, January 29, 1990, p. B5.

Review of Donald Downs, *The New Politics of Pornography*, *New York Times Book Review*, January 28, 1990, p. 18.

(with Gordon Hawkins) Bennett's Sham Epidemic, *New York Times*, January 25, 1990, p. A23.

Hardly the Trial of the Century, *Michigan Law Review* 87:1307 (1989).

Foreword to James Jacobs, *Drunk Driving:  An American Dilemma*, University of Chicago Press (1989).

Review of Jack Katz, *Seductions of Crime*, *New York Times Book Review*, November 20, 1988, p. 50.

Drug Death Penalty:  A Federal Tantrum, *New York Times*, September 16, 1988, p. 19; also as A Temper Tantrum Masquerading as an Act of Government, *Los Angeles Daily Journal*, September 20, 1988.

Pint-Sized Debate on Child Executions:  More Jurisprudence from the Briar Patch, *Legal Times*, July 18, 1988, p. 14; also as Can the Bad Die Young?, *The Connecticut Law Tribune*, July 18, 1988, p. 10; Justices Waffle on Death Penalty, *Fulton County Daily Report*, July 19, 1988, p. 2; Decision on Executing Youths Highlights Death Penalty Dilemma, *Manhattan Lawyer*, July 19, 1988, p. 12; The Court's Death Sentence Schizophrenia, *The Texas Lawyer*, July 25, 1988, p. 29; A Stumble at the Finish Line, *The Recorder*, July 28, 1988, p. 4.

If We Have Reached a Landmark in Our Execution Policy, It Is Still One of Confusion, *Los Angeles Times*, March 18, 1988, Part II, p. 7.

NRA's Latest Advice Can Get You Killed, *Los Angeles Times*, December 6, 1987, Part V, p. 5.

Review of James Wright and Peter Rossi, *Armed and Considered Dangerous:  A Survey of Felons and Their Firearms*, *American Journal of Sociology* 93:224 (1987).

Why the Goetz Verdict Was Not a Landmark Precedent, *New York Times*, June 21, 1987, p. 25.

Is Court Too Split To Sanction Death?, *Los Angeles Times*, April 27, 1987, Part II, p. 5.

A Frequent Flier Explains the Thrill, *New York Times*, April 20, 1987, p. 19; also as Rewarding the Pinball for Its Tos and Fros, *International Herald Tribune*, April 23, 1987, p. 5; Confessions of a Frequent Flier, *Chemtech*, June 1988, p. 386.

Beyond Solomon:  The "Tragic Choice" Cases, *Los Angeles Times*, March 16, 1987, Part II, p. 5.

EF Hutton Goes South, *Michigan Law Review* 85:397 (1987).

Is Retribution Only for a Few?, *Los Angeles Times*, December 4, 1986, Part II, p. 7.

Facing the Threat of a Crippled UC, *Los Angeles Times*, September 3, 1986, Part II, p. 5.

The Death Penalty:  Ten Dark Years, *New York Times*, June 19, 1986, p. 27.

Gun Lobby's Victory Can Help Handgun Control, *Los Angeles Times*, April 28, 1986, Part II, p. 5.

Justice Teeters on the Fine Points, *Los Angeles Times*, January 29, 1986, Part II, p. 5.

Review of Henry Pontell, *A Capacity to Punish*, *American Journal of Sociology* 91:724 (1985).

Two New Books on Guns, *Michigan Law Review* 83:954 (1985).

Lessons for the Urban Jungle, *Los Angeles Times*, March 15, 1985, Part II, p. 5.

Smoking and Public Policy, *Chicago Tribune*, Perspective Section, January 18, 1985, p. 27.

Research Agendas, Information Policies and Program Outcomes, in Alan Westin, ed., *Information Policy and Crime Control Strategies: Proceedings of a Bureau of Justice Statistics/Search Conference*, U.S. Government Printing Office (1984).

Is Crime Going Out of Style?, *Los Angeles Times*, July 12, 1984; also as Is American Crime Up or Down?, *Newsday*, August 30, 1984, p. 89.

The Dan White Case:  Justice Is a Victim, *Los Angeles Times*, January 6, 1984, Part II, p. 5.

The Death Penalty's Iron Law, *New York Times*, October 12, 1983, p. 27; also in *Los Angeles Times*, September 21, 1983, Part II, p. 7.

Where Do the New Scholars Learn New Scholarship?, *Journal of Legal Education* 33:453 (1983).

(with Gordon Hawkins) Crime Commissions, in Sanford Kadish, ed., *Encyclopedia of Crime and Justice*, Volume 1, The Free Press, Macmillan (1983).

(with James Lindgren) Regulation of Guns, in Sanford Kadish, ed., *Encyclopedia of Crime and Justice*, Volume 2, The Free Press, Macmillan (1983).

Foreword to John Kaplan, *The Hardest Drug:  Heroin and Social Policy*, University of Chicago Press (1983).

Review of Arnold Trebach, *The Heroin Solution*, and John Kaplan, *The Hardest Drug:  Heroin and Social Policy*, *The Times Literary Supplement*, June 10, 1983, p. 610.

Choosing the Right Camp for the Children, *Institutions Etc.* 6:21 (1983).

Idealizing the "Angels" on Death Row, *Los Angeles Times*, February 24, 1983, Part II, p. 7.

Uncle Sam's Wars on Crime, *The New Republic* 186:38 (1982).

Poland's "Real" Problem, *Chicago Tribune*, September 28, 1982, Perspective Section, p. 25.

Will the 21st Century Be Safer?, *Chicago Tribune*, April 13, 1982, Section 1, p. 22.

Crime:  The 120-Day Solution, *Chicago Tribune*, September 28, 1981, Perspective Section, p. 25.

Review of Peter Prescott, *The Child Savers:  Juvenile Justice Observed*, *New York Times Book Review*, June 14, 1981, p. 24.

(with Gordon Hawkins) Review of Walter Berns, *For Capital Punishment:  Crime and the Morality of the Death Penalty*, *American Journal of Sociology* 86:1171 (1981).

Portnoy's Real Complaint, *Moment* 6:58 (1980).

Taking a Tour of America's Prisons, *Chicago Tribune*, September 14, 1980, Perspective Section, p. 4.

Foreword to Philip Cook and Daniel Nagin, *Does the Weapon Matter?*, Institute for Law and Social Research (1979).

Comment, Current Developments in Judicial Administration, *Federal Rules Decisions* 80:147 (1979).

Crime in the Streets, *Chicago Sun Times Bookweek*, November 27, 1978, p. 14.

Review of The Institute of Judicial Administration and the American Bar Association, *Juvenile Justice Standards Project*, *Harvard Law Review* 91:1934 (1978).

Review of Charles Silberman, *Criminal Justice, Criminal Violence*, *Chicago Tribune*, November 5, 1978, Section 7, p. 1.

Review of John Allen, *Crime in the Streets: Assault with a Deadly Weapon*, Chicago Sun Times, November 27, 1977.

Foreword to Richard Block, *Violent Crime: Environment, Interaction, and Death*, Heath, Lexington (1977).

Comment, *Hastings Center Report*, p. 44 (1977).

Review of Mark Lane and Dick Gregory, *Code Name Zorro*, *Chicago Sun Times*, May 1, 1977.

Illegally Seized Evidence: Exclude It?, *Los Angeles Times*, April 20, 1976.

Review of Pretrial Intervention, in Abt Associates, *Pretrial Services: An Evaluation of Policy Related Research*, p. 152 (1975).

A Tale of Two Cities, *Wall Street Journal*, December 20, 1974, p. 12; also in *Hearings of Senate Subcommittee to Investigate Juvenile Delinquency, Oversight of 1968 Gun Control Act*, Volume 1, p. 11 (1975).

Eight Myths About Gun Control in the United States, *Christian Science Monitor*, July 24, 1972.

Getting Serious About Guns, *The Nation* 214:457 (1972).

Some Facts About Homicide, *The Nation* 214:303 (1972).

Firearms Control: Hard Choices, *Trial*, p. 53 (1972).


**WRITING REPRINTED IN:**

Funk, Day, Coleman and McMahan, *The Simon and Schuster Short Prose Reader* (2009).

Lee, *Empowered College Reading* (2008).

Feng-Checkett and Checkett, *The Write Start* (2nd edition, 2005).

Anker, *Real Writing with Readings* (2004).

Aaron, *The Complete Reader* (2003).

Nicholas and Nicholl, *Models for Effective Writing* (2000).

Miller, *The Informed Argument* (4th edition, 1995).

Eschholtz and Rosa, *Themes for Writers* (1994).

Winterrowd and Winterrowd, *The Critical Reader, Thinker and Writer* (1992).

### REPORTS TO GOVERNMENTAL AGENCIES

(with Peter W. Greenwood) *One More Chance: The Pursuit of Promising Intervention Strategies for Chronic Juvenile Offenders,* Rand Corporation (1985).

(with Peter W. Greenwood and Allan Abrahamse) *Factors Affecting Sentence Severity for Young Adult Offenders,* Rand Corporation (1984).

(with Peter W. Greenwood and Marvin Lavin) *The Transition From Juvenile to Adult Court,* Rand Corporation (1984).

(with Peter W. Greenwood, Albert J. Lipson, and Allan Abrahamse) *Youth Crime and Juvenile Justice: A Report to the California Legislature,* Rand Corporation (1983).

(with Peter W. Greenwood and Joan Petersilia) *Age, Crime, and Sanctions: The Transition From Juvenile To Criminal Court,* Rand Corporation (1980).

*Dealing with Youth Crime: National Needs and Federal Priorities,* a policy paper prepared for the Federal Coordinating Council on Juvenile Justice and Delinquency Prevention (1975) (mimeo).

*The Court Employment Project: A Report to the City of New York* (1974) (mimeo).

# EXHIBIT C

JSER0080

## DECLARATION OF JULIE BASCO

I, Julie Basco, declare as follows:

1.     My current position is the Bureau Chief of the Bureau of Criminal Information and Analysis in the Department of Justice.

2.     The Department of Justice has produced a statistical run from the Automated Criminal History System to determine the number of criminal identification and index (CII) number/subjects with a felony arrest from January 1, 2010 - December 31, 2010. From this run, 122,948 number/subjects were adults at the time of arrest and had a Los Angeles County Originating Agency Identifier (ORI).

3.     Of these 122,948 number/subjects, 43,440 also had a felony conviction prior to January 1, 2010.

I declare under penalty of perjury that the forgoing is true and correct. Executed at Sacramento, this 28th of July 2011.

JULIE BASCO, declarant

1

**Tab 3**

1  TORRANCE CITY ATTORNEY'S OFFICE
   John L. Fellows III (State Bar No. 103968)
2  City Attorney
   jfellows@TorranceCA.gov
3  Della Thompson-Bell (State Bar No. 224846)
   Deputy City Attorney
4  dthompsonbell@TorranceCA.Gov
   3031 Torrance Boulevard
5  Torrance, CA 90503
   Telephone:  310-618-5810
6  Facsimile:   310-618-5813

7  RUTAN & TUCKER, LLP
   Robert S. Bower (State Bar No. 70234)
8  rbower@rutan.com
   Ajit S. Thind (State Bar No. 268018)
9  athind@rutan.com
   611 Anton Boulevard, Fourteenth Floor
10 Costa Mesa, California 92626-1931
   Telephone:  714-641-5100
11 Facsimile:   714-546-9035

12 Attorneys for Defendant
   TORRANCE POLICE DEPARTMENT
13

14            UNITED STATES DISTRICT COURT

15            CENTRAL DISTRICT OF CALIFORNIA

16

17 ROBERT THOMSON,                    Case No. CV11-06154 SJO (JCx)
                                      Date Action Filed: July 26, 2011
18          Plaintiff,
                                      Assigned to:
19    vs.                             U.S. District Judge S. James Otero

20                                    **DECLARATION OF CHIEF OF**
21 TORRANCE POLICE DEPARTMENT         **POLICE JOHN NEU IN SUPPORT OF**
   and THE LOS ANGELES COUNTY         **DEFENDANT TORRANCE POLICE**
22 SHERIFFS DEPARTMENT,               **DEPARTMENT'S MOTION FOR**
                                      **SUMMARY JUDGMENT (FRCP 56)**
23
          Defendants.                 **Date:         February 27, 2012**
24                                    **Time:            10:00 a.m.**
                                      **Courtroom:    1- 2nd Floor**
25                                    **Location:      Spring Street**

26

27

28
                                      Case No. CV11-06154 SJO (JCx)
                                      DECLARATION OF CHIEF JOHN NEU
   102/062579-0097
   2698207.3 a12/19/11

JSER0082

### DECLARATION OF JOHN NEU

I, John Neu, declare as follows:

1.     I am the Chief of Police of the Torrance Police Department, City of Torrance, California ("City").  The following facts are within my personal knowledge and if called as a witness, I could and would competently testify thereto.

2.     A true and correct copy of the City's Good Cause Policy for Carry Concealed Weapons ("CCW") Licenses, consisting of three pages, that was in effect during all times pertinent to this litigation is attached hereto as Exhibit A.

3.     The Good Cause Policy is designed to maintain public safety, prevent gun-related crime and the death of citizens, reduce the incidence of unlawful public shootings, reduce the number of concealed weapons in public in order to reduce the risks to other members of the public who use the streets and go to public accommodations, and ensure that police officers can safely respond to dangerous situations.  The existence of a hidden loaded weapon poses a particularly serious danger to police officers when they investigate crimes and may be unaware of such a weapon.

4.     The Good Cause Policy is designed to differentiate between applicants that have a bona fide need for a CCW, as opposed to those that do not.

5.     On December 19, 2008, Plaintiff Robert Thomson ("Plaintiff") submitted his first CCW license application to the City ("First Application").  Pursuant to Department policy and my direction, over the next few months a thorough investigation was conducted by the Department based on Plaintiff's First Application, and Plaintiff was personally interviewed.  A true and correct copy of the Department's files concerning that investigation and interview is attached hereto as Exhibit B.

6.     On April 1, 2009, I denied Plaintiff's First Application based on the fact that he had failed to establish good cause for its issuance.  Although Plaintiff had some generalized security concerns for his safety because of his occupation as a

JSER0083

1  Bail Agent, there were no documented specific threats directed at Plaintiff, and there
2  was no evidence that the local police agencies could not assist Plaintiff with any
3  future problems that may arise.  Nor did Plaintiff have any safety concerns centered
4  geographically in the City of Torrance.  Plaintiff has never filed a legal challenge to
5  the denial of his First Application.

6         7.     Two years to the date after submitting his First Application to the City,
7  Plaintiff submitted his second CCW license application to the City on December 19,
8  2010 ("Second Application").  Pursuant to Department policy and my direction,
9  over the next few months another thorough investigation was conducted by the
10  Department based on Plaintiff's Second Application, and Plaintiff was again
11  personally interviewed.  A true and correct copy of the Department's files
12  concerning Plaintiff's Second Application investigation and interview is attached
13  hereto as Exhibit C.

14         8.     On April 5, 2011, I denied Plaintiff's Second Application.  It is this
15  denial that is the subject of Plaintiff's lawsuit.  The denial of Plaintiff's Second
16  Application was again based on the fact that Plaintiff had failed to establish good
17  cause for its issuance.  Specifically, Plaintiff's personal and employment
18  information had not changed since his First Application, except that he now claimed
19  to be operating his business out of commercial office space rather than his residence.
20  Plaintiff recounted only one incident in addition to the grounds he had set forth in
21  his First Application as justification for a license.  That new incident actually did not
22  involve Plaintiff's job - rather, it involved his wife, who works in real estate.  While
23  assisting her in changing the lock at a unit in a residential complex located in the
24  City of Los Angeles, Plaintiff was allegedly confronted by the former tenants of the
25  unit and some other tenants who threatened Plaintiff with physical harm and threw
26  household items at him.  Plaintiff contacted the LAPD, and the change of lock was
27  thereafter completed without incident.

28         9.     In both of his applications Plaintiff admitted that: (a) he had never

Case No. CV11-06154 SJO (JCx)
DECLARATION OF CHIEF JOHN NEU

102/062579-0097
2698207.3 a12/19/11

-2-

JSER0084

1  been threatened within the jurisdiction of the TPD; (b) he had no security concerns
2  within the jurisdiction of the TPD; (c) he had never been physically assaulted or
3  robbed during the course of his employment in any jurisdiction; (d) he had never
4  had to file a report with any police agency regarding threats made against him or his
5  family; (e) he evaluates every bail bond with safety in mind, and if he believes there
6  is any type of risk, he refuses to take the case; and (f) his concerns were with the
7  "unforeseen" and "what ifs" that went along with his job.  Again, although Plaintiff
8  professed some generalized security concerns for his safety because of his
9  occupation as a Bail Agent, there were no documented specific threats directed at
10  Plaintiff, and there was no evidence that the local police agencies could not assist
11  Plaintiff with any future problems that may arise.  Nor did Plaintiff have any safety
12  concerns centered geographically in the City of Torrance.  Finally, it was also
13  apparent that Plaintiff had alternative means of defending himself under California's
14  weapons laws other than carrying a concealed weapon.  Because Plaintiff was not
15  subject to any specific, credible threats, I ultimately determined that Plaintiff had
16  failed to demonstrate good cause for a CCW license, and I denied Plaintiff's Second
17  Application on April 5, 2011.
18         Executed on this **21** day of December, 2011, at Torrance, California.
19         I declare under penalty of perjury under the laws of the United States of
20  America that the foregoing is true and correct.
21
22                                                     _____
23                                                     John Neu
24
25
26
27
28

JSER0085

## CITY OF TORRANCE – GOOD CAUSE POLICY FOR CCW LICENSES

### GOALS

Torrance has instituted a good cause policy for the issuance of CCW licenses pursuant to California Penal Code section 12050. The goals of this good cause policy in regulating concealed firearms are to maintain public safety, prevent gun-related crime and the death of its citizens, reduce the incidence of unlawful public shootings, reduce the number of concealed weapons in public in order to reduce the risks to other members of the public who use the streets and go to public accommodations, and ensure that police officers can safely respond to dangerous situations.

### POLICY

The Police Department shall conduct an individualized assessment of each applicant for a CCW license, including a review of the standardized DOJ application, a background check, and an interview of the applicant. The Chief of Police shall issue a CCW license when, in his sole discretion, he determines there is good cause to do so and the applicant has met all of the other conditions set forth in California Penal Code section 12050. To establish good cause, an applicant must demonstrate more than a "generalized fear" for one's personal safety. Rather, the applicant must document that:

> (i) the applicant is dealing with circumstances that distinguish the   applicant from other members of the public, in that there is a clear, present, and  documented danger to the applicant, <u>and</u>

> (ii) there are no feasible alternative means of protection, either through existing law enforcement resources or under the provisions of California Penal Code section 12031, which carve out a number of exceptions that allow individuals to possess and carry firearms in public settings for self-defense and defense of property.

### EXAMPLES

Examples of good cause include where the applicant is a business owner who typically is forced to carry large sums of cash or valuable items in public <u>and</u> has been the victim of violent crime and/or the subject of documented, credible threats of violence. Good cause would <u>not</u> include situations where the applicant voluntarily chooses to undertake risks in the performance of the applicant's job that could otherwise be avoided by performing the job in a different manner (*e.g.*, avoiding risks by meeting clients in public places during the day, rather than late at night in crime-ridden areas).

102/062579-0097
2312346.1 a09/06/11

## CITY OF TORRANCE – GOOD CAUSE POLICY FOR CCW LICENSES

### GOALS

Torrance has instituted a good cause policy for the issuance of CCW licenses pursuant to California Penal Code section 12050. The goals of this good cause policy in regulating concealed firearms are to maintain public safety, prevent gun-related crime and the death of its citizens, reduce the incidence of unlawful public shootings, reduce the number of concealed weapons in public in order to reduce the risks to other members of the public who use the streets and go to public accommodations, and ensure that police officers can safely respond to dangerous situations.

### POLICY

The Police Department shall conduct an individualized assessment of each applicant for a CCW license, including a review of the standardized DOJ application, a background check, and an interview of the applicant. The Chief of Police shall issue a CCW license when, in his sole discretion, he determines there is good cause to do so and the applicant has met all of the other conditions set forth in California Penal Code section 12050. To establish good cause, an applicant must demonstrate more than a "generalized fear" for one's personal safety. Rather, the applicant must document that:

(i) the applicant is dealing with circumstances that distinguish the applicant from other members of the public, in that there is a clear, present, and documented danger to the applicant, and

(ii) there are no feasible alternative means of protection, either through existing law enforcement resources or under the provisions of California Penal Code section 12031, which carve out a number of exceptions that allow individuals to possess and carry firearms in public settings for self-defense and defense of property.

### EXAMPLES

Examples of good cause include where the applicant is a business owner who typically is forced to carry large sums of cash or valuable items in public and has been the victim of violent crime and/or the subject of documented, credible threats of violence. Good cause would not include situations where the applicant voluntarily chooses to undertake risks in the performance of the applicant's job that could otherwise be avoided by performing the job in a different manner. For example, good cause would not be established where a bail agent chooses to meet clients, potential clients, or their agents/representatives late at night in crime-ridden areas when the bail agent could otherwise conduct business at the bail agent's office or in a public place in a safer area.

# TORRANCE POLICE DEPARTMENT

## POLICY CONCERNING LICENSES TO CARRY CONCEALED WEAPONS

- All applicants shall complete the California Department of Justice Standard Application and attest under perjury that the information provided is true and correct.

- The Chief of Police may issue a CCW permit under certain conditions including but not limited to those listed below, which are covered in Penal Code Section 12050(a)(1)(B):

  1. The applicant is of good moral character (e.g., has no history of any mental or emotional condition, alcoholism, drug use or addiction, or other conduct indicating moral turpitude).

  2. The applicant has no prior conviction for a felony or any other crime that indicates moral turpitude.

  3. The applicant can show good cause for issuance.  (Is there clear and present danger and the applicant has no other means of protection?)        .

  4. The applicant is a resident of the City of Torrance.

  5. The applicant has successfully completed a designated course of training in the carrying, safety and use of firearms.

- Before a CCW permit is issued, applicants are required to pay for and pass psychological testing by the Department psychologist and maybe required to submit to and pass additional psychological testing.

- The Chief of Police may attach reasonable conditions upon such licenses, including but not limited to:

  1. The type of weapon and ammunition to be permitted and carried.

  2. The times and places where the concealed weapon can be carried.

  3. Limitations in carrying concealed weapons to those circumstances when a specific dangerous activity is to be encountered and for which the applicant sought the license.

  4. The applicant shall purchase an insurance policy in the amount of $1,000,000 naming the City of Torrance as the insured against the applicant's possession or use of a concealed firearm, and shall furnish proof of insurance be filed with the Torrance Police Department.  The term of any license granted by the Chief of Police shall end automatically upon lapse in said insurance.

- The license, if granted, shall lapse by operation of law if the licensee is convicted by final judgment of any felony, or serious misdemeanor, including driving under the influence of alcohol or drugs.

- If any section, subsection, sentence, clause, phrase or other portion of this policy is for any reason held to be invalid or unconstitutional by the decision of any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this policy.

- Fees associated with the CCW permit and application are the responsibility of the applicant.

| INITIAL APPLICATION FEES | | RENEWAL FEES | |
|---|---|---|---|
| **90-day Employment CCW** | | **90-day Employment CCW** | |
| State Fingerprinting Processing | $32 | State Thumbprint Verification | $8 |
| FBI Fingerprinting Processing | $24 | Firearms Eligibility Check | $17 |
| Initial Firearms Eligibility Check | $17 | **TOTAL** | $25 |
| **TOTAL** | $73 | | |
| **Standard / Two -Year Resident CCW** | | **Standard / Two -Year Resident CCW** | |
| State Fingerprinting Processing | $32 | State Thumbprint Verification | $8 |
| FBI Fingerprinting Processing | $24 | Firearms Eligibility Check | $17 |
| Initial Firearms Eligibility Check | $17 | Annual Firearms Eligibility Check | $17 |
| Annual Firearms Eligibility Check | $17 | **TOTAL** | $42 |
| **TOTAL** | $90 | | |
| **Judicial / Three -Year CCW** | | **Judicial / Three -Year CCW** | |
| State Fingerprinting Processing | $32 | State Thumbprint Verification | $8 |
| FBI Fingerprinting Processing | $24 | Firearms Eligibility Check | $17 |
| 1st Annual Firearms Eligibility Check | $17 | 1st Annual Firearms Eligibility Check | $17 |
| 2nd Annual Firearms Eligibility Check | $17 | 2nd Annual Firearms Eligibility Check | $17 |
| **TOTAL** | $107 | **TOTAL** | $59 |
| **Reserve Peace Officer/Four - Year CCW** | | **Reserve Peace Officer/Four - Year CCW** | |
| State Fingerprinting Processing | $32 | State Thumbprint Verification | $8 |
| FBI Fingerprinting Processing | $24 | Firearms Eligibility Check | $17 |
| Initial Firearms Eligibility Check | $17 | 1st Annual Firearms Eligibility Check | $17 |
| 1st Annual Firearms Eligibility Check | $17 | 2nd Annual Firearms Eligibility Check | $17 |
| 2nd Annual Firearms Eligibility Check | $17 | 3rd Annual Firearms Eligibility Check | $17 |
| 3rd Annual Firearms Eligibility Check | $17 | **TOTAL** | $76 |
| **TOTAL** | $124 | | |

- In addition to the fees, which are collected by the Department and sent to DOJ, our Department may charge a processing fee up to $100 for the initial CCW (not including fingerprinting and training costs).

**Exhibit A, Page 7**



## CITY OF
# TORRANCE

POLICE DEPARTMENT

JOHN J. NEU
CHIEF OF POLICE

April 1, 2009

Mr. Robert J. Thomson
16423 Haas Avenue
Torrance, CA  90504

RE:  Application for a Carry Concealed Weapons Permit

Dear Mr. Thomson:

A thorough investigation has been conducted based on your application for a Carry Concealed Weapons Permit. Based on my review and investigation of your application, your request is denied. This denial is based on my determination that you have failed to prove at least one or more of legal requirements to obtain a CCW Permit: you are a person of good moral character; good cause exists for the issuance of the license; you are currently a resident of the City of Torrance; you have completed the required training course.

The Chief of Police is given the discretion for the issuance of CCW permits. This authority is outlined in the California Penal Code Section 12050(B). This decision is final and no appeal can be made.

If you have any questions regarding my decision, you may contact Lieutenant Devin Chase at (310) 618-5712 within 15 days of receipt of this letter.

Sincerely,

John J. Neu
Chief of Police

JJN: ml

**Exhibit B, Page 8**



**Torrance Police Department Intelligence Detail**

# Concealed Weapon Permit Interview

### Detective Scott Bargar #14389

<u>To:</u>                                                          <u>Date:</u> **02 Feb 09**
**Lieutenant D. Chase**
Commander, Vice and Narcotics Division

<u>From:</u>
**Detective Scott Bargar**
Intelligence Section

<u>Subject:</u>
**Robert James Thomson**
16423 Haas Ave, Torrance
CDL: A1385180
DOB: 12-15-1970
Phone# 424-294-0583

On 23 Dec 08, I reviewed the CCW Application that was completed by the above named applicant. All Paperwork appeared to be complete and in order. On 21 Jan 09, I (Det. Bargar) and Sgt. Brian O'Steen also met at the Torrance Police Department with Mr. Thomson in regards to his application.

Mr. Thomson is a resident of Torrance and currently is a Bail Agent, and owner of Caught Up Bail Bonds, in the City of Torrance. Mr. Thomson said his schedule varies, but is available 24/7, including weekends and holidays. Mr. Thomson's business is also his home address, but meets the majority of his clients away from his residence. Mr. Thomson said he has been a Bail Agent for three years.

Mr. Thomson stated he bail's people out of jail on a daily basis, some who eventually don't show up for court. Mr. Thompson said when these people are tracked down and captured against their will by him or other people licensed for fugitive recovery and under a civil contract, they are often upset with their captors. Mr. Thomson feels it is equally important to carry a weapon on his person to protect himself from retaliatory attacks by fugitives who may still hold a grudge when released from jail or prison after sentencing. Mr. Thomson also said at times he has to venture into bad neighborhood's to meet with clients and sign documents, and at times leaves these meetings with large amounts of cash that has been received to secure a bond.

**Exhibit B, Page 9**
JSER0091

Mr. Thomson feels the above listed reasons create an exigency that shows a need for the issuance of a CCW.

I (Det. Bargar) questioned Mr. Thomson about the right to carry a firearm in the course of his work duties. Mr. Thomson was clearly educated about 12031 (k) PC, which states he is only allowed to carry a firearm in the act of making or attempting to make a lawful arrest, and not before or after the arrest. Mr. Thomson also said he was aware that a firearm needed to be transported unloaded and in a locked container.

While interviewing Mr. Thomson, he said he has had one incident in a high crime area where he was going to meet a clients family, and the man who answered the door was holding a firearm, other than that he has had no serious incidents involving his safety during the course of his working duties. Mr. Thomson also stated on one occasion he needed the assistance of LASO (Norwalk) to help him affect an arrest on a violent subject who had a bail warrant. Mr. Thomson further stated that he has not been threatened, nor had any security concerns, within the Torrance Police Department's jurisdiction. Mr. Thomson also stated that he has never been assaulted or robbed during the course of his duties, nor has he ever had to file a report with any police agencies in regards to threats made against him or his family. Mr. Thomson said if he talks with a potential client or family members of a potential client, and feels there is any type of risk monetarily or safety wise, he simply refuses to take the case.

Mr. Thomson does posses a valid CCW from the state of Utah, that expires in the year 2013 (CCW #C256808, see attached) and currently owns a registered Glock Model 22, 40 caliber handgun (ser# DKL431US), and a Glock Model 27, 40 caliber handgun (ser#HGZ826) that he trains and shoots with on a routine basis. Mr. Thomson has also successfully attended and completed the California Department of Justice Handgun Safety Course (see Attached), and holds valid permits through the State Department of Consumer Affairs for his guard registration, along with a permit for an exposed firearm.

It should be noted that Mr. Thomson stated he has never been treated for any type of mental illness, nor is there any evidence of controlled substance or alcohol abuse. The Intel Unit also found no arrest history involving Mr. Thomson.

Pursuant to Torrance Police Department General Order 3.31.1 (B) (1), my investigation revealed:
(a) The Applicant appears to be of good moral character.
(b) The applicant has no prior convictions of a felony or any other crime that indicates moral turpitude.
(c) I was unable to determine/identify any specific or credible threats to the applicant.
(d) The applicant is a bona fide resident of the City of Torrance.
(e) The applicant has successfully completed a designated course of training in the carrying, safety, and use of firearms.

While Mr. Thomson has some security concerns for his safety, all appear to be centered on his course of duties as a Bail Agent. At this time there are no specific threats directed at Mr. Thomson or his family, and it is the Intel Unit's belief that local police agencies can assist Mr. Thomson with any future problems that may arise. At this time, Mr. Thomson has no safety concerns centered geographically to the City of Torrance.

To be forwarded to the office of the Chief of Police for final consideration.



**Detective Scott Bargar**
Intelligence Section



JOHN J. NEU
CHIEF OF POLICE

# TORRANCE POLICE DEPARTMENT
## GENERAL ORDER  3.31  CONCEALED WEAPON PERMITS

DATE ISSUED: April 4, 2007

### PURPOSE

Rules pertaining to the issuance of permits to carry concealed weapons.

### 3.31.1  CARRY CONCEALED WEAPON (CCW) PERMIT

A.  APPLICATION. All applicants for a Concealed Weapons Permit shall complete the California Department of Justice (DOJ) Standard Application for carrying a concealed weapon (CCW). The Chief of Police will consider issuing a Concealed Weapon Permit only to those individuals who have met certain conditions outlined in Penal Code §12050. The Chief of Police may place additional restrictions on permits.

B.  COMPLETION. The person requesting the CCW permit shall fill out the application with the exception of those portions reserved for Department use.  The application fee shall be collected by the Records Division and transferred to the City Treasurer.  The completed application shall be forwarded to the Vice and Narcotics Division for processing.

   1.  The application shall be assigned an incident number.  The Vice and Narcotics Division Commander shall cause an investigation of the applicant, to include but not confined to the following:

      a.  The applicant is of good moral character.

      b.  The applicant has no prior convictions of a felony or any other crime that indicates moral turpitude.

      c.  The applicant can show good cause for issuance.

      d.  The applicant is a bona fide resident of the City of Torrance.

      e.  The applicant has successfully completed a designated course of training in the carrying, safety, and use of firearms.

   2.  Upon completion of the above-described investigation, the Vice and Narcotics Division Commander shall forward the application along with his recommendation to the Special Operations Bureau Commander for review and concurrence.  If there is no legal reason for disqualification, the applicant shall be fingerprinted and photographed in order to provide the required documentation to the Department of Justice.

   3.  CCW permits will not be issued until clearance is obtained from the Department of Justice.

   4.  Upon review of the DOJ response, the Vice and Narcotics Division Commander's recommendation, and the Special Operations Bureau Commander's concurrence, the Chief of Police shall make a final determination.  A letter signed by the Chief of Police shall be sent to the applicant providing notification of the final decision.

   5.  The applicant shall purchase an insurance policy in the amount of one million dollars ($1,000,000) naming the City as the insured against the applicant's possession or use of a concealed firearm.  A copy of this policy shall be filed with the Department. The term of any license granted by the Department shall end automatically by the operation of law upon lapse in said insurance.

**Exhibit B, Page 12**
JSER0094

6. All applicants shall be given written notice indicating the approval or denial of the requested CCW license within 90 days of application or 30 days after receipt of the applicant's background check from DOJ, whichever is later.

7. Before a permit is issued all qualified applicants will be required to pass psychological testing by the Department psychologist and may be required to submit and pass additional psychological testing.

8. The Chief of Police may attach reasonable conditions or restrictions upon such licenses including, but not limited to:

   a. The type of weapon and ammunition that is permitted and carried.

   b. The times and places where the concealed weapon can be carried.

   c. Limitations in carrying concealed weapons to those circumstances when a specific dangerous activity is to be encountered and for which the applicant has sought the license.

9. If granted, the duration of the license shall be not more than two years, as allowed by law.  The license shall lapse by operation of law if the licensee is convicted by final judgment of any felony, or serious misdemeanor, including driving under the influence of alcohol or drugs.

10. If any section, subsection, sentence, clause, phrase or other portion of this policy is for any reason held to be invalid or unconstitutional by the decision of any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this policy.

11. All fees associated with the CCW permit and application are the responsibility of the applicant.

12. There is no appeal of the final decision.  Within 15 days from notification of denial, the applicant may request a meeting to discuss the denial with the Vice and Narcotics Division Commander or a designee appointed by the Chief of Police.

C. DISTRIBUTION.  The application and any accompanying documentation shall be filed in Records Division.

## 3.31.2   CONCEALED WEAPONS FOR RETIREES

A. IDENTIFICATION CARD.  Retired sworn personnel shall be issued a picture retirement identification card bearing either an authorization to carry a concealed weapon, or a clear and explicit restriction withholding the privilege, and the date the endorsement is to be renewed.

B. CONCEALED WEAPON PERMIT.  Every peace officer honorably retired from the Torrance Police Department, after January 1, 1981, who desires authority to carry a concealed firearm per Penal Code §12027(a), shall:

1. Initially upon retirement, and before the lapse of five years thereafter, request authorization to carry a concealed weapon from the Chief of Police.

2. During the term of the permit, report all major physical or mental conditions or illnesses to the Chief of Police as soon as practical.

3. Submit, as soon as practical, a written report to the Chief of Police all incidents involving the discharge of a concealed weapon if other than on a firing range, or other legal recreational shooting.

4. Carry the authorization card at all times while carrying a concealed weapon.

C. PERMIT RENEWAL.  Authorization to carry a concealed weapon, by officers honorably retired after January 1, 1981, shall be granted for a maximum period of five years from the date of issue.  Retired Officers must apply for renewal to the Office of the Chief of Police before the lapse of each five year period thereafter.  Identification cards for officers retired after January 1, 1981, endorsed granting the privilege, must be renewed every five years, or the privilege of carrying a concealed weapon shall automatically lapse.  The retiree shall qualify with the firearm at least annually.

1. The retiree may demonstrate competency by firing on the Department Range under the supervision of the Range Master, or by submitting certified shooting scores from another police agency or public range.

2. Upon request for renewal, the Chief of Police shall review Department of Justice records to determine any relevant information in considering whether the permit should be renewed.

3. The retiree shall supply the Department with two recent photographs suitable for use on the renewed ID card.

4. This section does not apply to officers who retired prior to January 1, 1981.

D. PERMIT DENIED OR REVOKED.  The Chief of Police may deny or revoke the retired officer's privilege to carry a concealed weapon upon a showing of good cause.  A retired peace officer may have his privilege to carry a concealed and loaded firearm revoked or denied by violating any Departmental rule, or state or federal law that, if violated by an officer on active duty, would result in that officer's arrest, suspension, or removal from the agency.  A retired officer whose authorization to carry a concealed weapon is revoked or denied has the right to a hearing as specified in Penal Code §12027.1.

1. A retired officer shall have 15 days to respond to a notice of that hearing or, upon failing to respond to the notice, forfeits the retired officer's right to that hearing.

2. Any hearing shall be held before a three-member board.  One member of the board shall be selected by the Department and one member shall be selected by the retired officer or the Torrance Police Officer's Association.  The third member shall be selected jointly by the Department and the retired officer or TPOA.  A decision by the board shall be binding on the Department and the retiree.

3. An officer who retired because of a psychological disability after January 1, 1989, shall not be issued an endorsement to carry a concealed weapon.

4. Should the privilege to carry a concealed weapon be revoked or denied, the Chief of Police shall issue the retiree an Identification Card indicating that the bearer is restricted from carrying a concealed weapon.

5. Any retiree whose privilege to carry a concealed weapon is revoked shall, upon notification, immediately surrender to the Chief of Police his identification card containing permission to carry a concealed weapon.

JOHN J. NEU
CHIEF OF POLICE

# California Department of Justice



# STANDARD APPLICATION
# FOR LICENSE TO CARRY
# A CONCEALED WEAPON (CCW)

BCIA 4012 (6/99)

**Exhibit B, Page 15**
JSER0097

**California Department of Justice**
# STANDARD APPLICATION
for
# LICENSE TO CARRY A CONCEALED WEAPON (CCW)

## Authority

California Penal Code (PC) sections 12050 through 12054 provide that a sheriff of a county or the chief or other head of a municipal police department of any city or city and county may issue a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person (CCW license).  PC section 12051(a)(3)(A) requires the Attorney General to prescribe a statewide standard application form for a CCW license.

## Who May Be Issued a License

The licensing authority specified in PC section 12050(a)(1) (a sheriff or head of a municipal police department) may issue a license to persons who are of good moral character, who have completed a course of training, and where good cause exists for issuance of the CCW license.  All applications for a CCW will be fingerprinted and state records will be checked to determine if they are in a prohibiting class.  Attachments 1, 2, and 3 (following page 14 of this application) list all categories that would cause a person to be in a class prohibiting them from possessing firearms and being granted a CCW license.  These attachments are updated annually to reflect new legislation and other changes in the law.

## Format of CCW License

A CCW license may be issued in either of the following formats:

1. A license to carry concealed, a pistol, revolver, or other firearm capable of being concealed upon the person.
2. Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in that county a pistol, revolver, or other firearm capable of being concealed upon the person

## Training Required

PC section 12050(a)(1)(B) and (E) specifies that new license applicants must complete a course of training.  The training may consist of any course acceptable to the licensing authority.  The licensing authority may require either a course not to exceed 16 hours which includes instruction on at least firearms safety and the law regarding the permissible use of a firearm or a community college course not to exceed 24 hours certified by the Commission on Peace Officer Standards and Training.  If the licensing authority requires the community college course, it must be uniformly required for all CCW license applicants.  The licensing authority may also require annual qualification on the weapon(s) during the term for which the CCW license is granted.

For license renewal applicants, the course of training may be any course acceptable to the licensing authority, shall be no less than four hours in length, and shall include instruction on at least firearm safety and the law regarding permissible use of a firearm

-1-

State of California, Department of Justice
## Standard Application for CCW License

### Psychological Testing

In addition to licensing requirements as specified by the licensing authority, jurisdictions may require psychological testing on the initial application. If required, the applicant shall be referred to a licensed psychologist used by the licensing authority for the psychological testing of its own employees. Any fees charged will be the responsibility of the applicant and such fees shall not exceed $150.00 for an initial test. Additional psychological testing of an applicant seeking license renewal shall be required only if there is compelling evidence to indicate that a test is necessary (PC section 12054(c)).

### Completing the Application

Answering all the questions on this standard application does not guarantee the issuance of a CCW license. The determination whether or not to issue the license is the prerogative of the licensing authority. Each licensing authority, in addition to using the state standard application form, will have a written policy summarizing what they require pursuant to PC section 12050(1)(1)(A) and (B). Prior to issuing a CCW, the statutes require proof that:

- The applicant is of good moral character,
- Good cause exists to issue the CCW license,
- The applicant meets residence requirements, and
- The course of training prescribed by the licensing authority has been completed.

The application on the following pages sets forth standardized questions to be used by the CCW licensing authority to determine whether a CCW license shall be issued. The applicant shall not be required to complete any additional application or form for a CCW license, or to provide any information other than that necessary to complete this standard application form except to clarify or interpret information provided herein (PC section 12051(a)(3)(C)).

The applicant will certify that all answers provided are true and correct to the best of their knowledge and belief under penalty of perjury. The applicant will also acknowledge that information disclosed on this application may be subject to public disclosure.

#### *Important Instructions*

- Fill out, read, and sign Sections 1 through 5, as directed. Use additional pages if more space is required.

- Sections 6, 7, and 8 must be completed in the presence of an official of the licensing agency.

- Review Section 7 and be prepared to answer these questions orally. Do not write anything in Section 7 unless specifically directed to do so by the licensing agency.

Section 1 – Applicant Personal Information ............................................................................................. 3
Section 2 – Applicant Clearance Questions ............................................................................................. 3
Section 3 – Description of Weapon(s) ...................................................................................................... 5
Section 4 – CCW License Conditions and Restrictions ......................................................................... 6
Section 5 – Applicable California Penal Code Sections .......................................................................... 7
Section 6 – Agreement to Restrictions and to Hold Harmless ............................................................ 10
Section 7 – Investigator's Interview Notes ........................................................................................... 11
Section 8 – Certification and Release of Information ........................................................................... 14

Attachment 1 – California Prohibiting Categories for a CCW License ............................................... 16
Attachment 2 – California Prohibiting Misdemeanors ......................................................................... 17
Attachment 3 – Federal Prohibiting Categories for Possessing Firearms ......................................... 19

-2-

State of California, Department of Justice

## Standard Application for CCW License

| Official Use Only – Type of Permit Requested |  |
| --- | --- |
| ( ) Standard | ( ) Judge |
| ( ) Reserve Officer | ( ) 90 Day |

### Public Disclosure Admonition

I understand that I am obligated to be complete and truthful in providing information on this application. I understand that all of the information disclosed by me in this application may be subject to public disclosure.

Applicant Signature

Date _12-19-2008_

Witness Signature / Badge Number

Date _1/21/09_

### Section 1 – Applicant Personal Information

Name: _Thomson_        _Robert_        _James_
    Last           First         Middle

If Applicable
Maiden Name or other Name(s) Used: _Robby , Bob_

City and County
of Residence: _Torrance , Los Angeles_        Country of Citizenship: _U.S.A_

Date of Birth: _12-15-1970_ Place of Birth: _Harbor City , Los Angeles  CA_
                               City     County     State

Height: _5' 6"_  Weight: _190_  Color Eyes: _Blue_  Color Hair: _Brown_

### Section 2 – Applicant Clearance Questions

1.    Do you now have, or have you ever had a license to carry a concealed weapon (CCW)?
    No_____ Yes _✓_ (If yes, please indicate below. Use additional pages if necessary.)

Issuing Agency _Utah_        Issue Date _10-6-2008_ CCW# _C256808_

2.    Have you ever applied for and been denied a license to carry a concealed weapon?
    No _X_ Yes_____ (If yes, give agency name, date and reason for denial.)

_____

_____

-3-

**Exhibit B, Page 18**

JSER0100

State of California, Department of Justice
## Standard Application for CCW License

### Section 2 – Applicant Clearance Questions – (continued)

3. Have you ever held and subsequently renounced your United States citizenship?
   No ✓ Yes_____ (If yes, explain):
   _____

4. If you served with the Armed Forces, were you ever convicted of any charges or was
   your discharge other than honorable? No ✓ Yes_____ (If yes, explain):
   _____
   _____

5. Are you now, or have you been a party to a lawsuit in the last five years?
   No_____ Yes ✓ (If yes, explain):
   Small claims regarding my spa. (Resolved 2008)
   _____
   _____
   _____

6. Are you now, or have you been, under a restraining order(s) from any court?
   No ✓ Yes_____ (If yes, explain):
   _____
   _____

7. Are you on probation or parole from any state for conviction of any offense including
   traffic? No ✓ Yes_____ (If yes, explain):
   _____
   _____

-4-

State of California, Department of Justice
## Standard Application for CCW License

### Section 2 – Applicant Clearance Questions – (continued)

8. List all traffic violations (moving violations only) and motor vehicle accidents you have had in the last five years. (Use additional pages if necessary.)

| Date | Violation / Accident | Agency / Citation # |
|------|----------------------|---------------------|
| 7-06-2006 | 21650 V.C. | Signal Hill PD  S187066 |
| 6-29-2006 | 22349(A) V.C. | CHP  42922BJ |

9. Have you ever been convicted for any criminal offense (civilian or military) in the U.S. or any other country?

   No ✓ Yes_____ (If yes, explain including date, agency, charges, and disposition.)

10. Have you witheld any fact that might affect the decision to approve this license?

    No ✓ Yes_____ (If yes, explain):

### Section 3 – Descriptions of Weapons:

List below the weapons you desire to carry if granted a CCW. You may carry concealed only the weapon(s) which you list and describe herein, and only for the purpose indicated. Any misuse will cause an automatic revocation and possible arrest. (Use additional pages if necessary.)

| | Make | Model | Caliber | Serial No. |
|--|------|-------|---------|-----------|
| 1. | Glock | 22 | .40 | DKL431 US |
| 2. | Glock | 27 | .40 | HGZ826 |
| 3. | | | | |

-5-

State of California, Department of Justice
## Standard Application for CCW License

### Section 4 – CCW License Conditions and Restrictions

The licensee is responsible for all liability for, injury to, or death of any person, or damage to any property which may result through any act or omission of either the licensee or the agency that issued the license. In the event any claim, suit, or action is brought against the agency that issued the license, its chief officer or any of its employees, by reason of, or in connection with any such act or omission, the licensee shall defend, indemnify, and hold harmless the agency that issued the license, its chief officer or any of its employees from such claim, suit, or action.

The licensee authorizes the licensing agency to investigate, as they deem necessary, the licensee's record and character to ascertain any and all information which may concern his/her qualifications and justification to be issued a license to carry a concealed weapon and release said agency of any and all liability arising out of such investigation.

While exercising the privileges granted to the licensee under the terms of this license, the licensee shall not, when carrying a concealed weapon:
* Consume any alcoholic beverage.
* Be in a place having a primary purpose of dispensing alcoholic beverages for on-site consumption.
* Be under the influence of any medication or drug, whether prescribed or not.
* Refuse to show the license or surrender the concealed weapon to any peace officer upon demand.
* Impede any peace officer in the performance of his/her duties.
* Present himself/herself as a peace officer to any person unless he/she is, in fact, a peace officer as defined by California law.
* Unjustifiably display a concealed weapon.
* Carry a concealed weapon not listed on the permit.
* Carry a concealed weapon at times or circumstances other than those specified in the permit.

Pursuant to U.S. Government Code – Title 49, Chapter 26, Section 1472(1) and Federal Aviation Regulation 121.583, a license to carry a concealed weapon does not authorize a person to carry a firearm, tear gas, or any dangerous weapon aboard commercial airlines. Further, a person must declare that he/she is carrying such firearm, tear gas, or dangerous weapon BEFORE entering the boarding area of an air terminal where the security checks are made. Such violation can result in arrest by law enforcement.

Any violation of these restrictions or conditions may invalidate the CCW license and may void any further use of the license until reinstated by the licensing authority. Any arrest for a felony or serious misdemeanor, including driving under the influence of alcohol and/or drugs, is cause for invalidating the license.

-6-

State of California, Department of Justice

# Standard Application for CCW License

## Section 5 – Applicable California Penal Code Sections

The following Penal Code sections are of special importance to the holder of a CCW license regarding the use, carrying, and storage of firearms:

### Penal Code Section 12051 – Applications for CCW Licenses; False Statements

(b) Any person who files an application required by subdivision (a) knowing that statements contained therein are false is guilty of a misdemeanor.

(c) Any person who knowingly makes a false statement on the application regarding any of the following shall be guilty of a felony:

    (1) The denial or revocation of a license, or the denial of an amendment to a license, issued pursuant to Section 12050.

    (2) A criminal conviction.

    (3) A finding of not guilty by reason of insanity.

    (4) The use of a controlled substance.

    (5) A dishonorable discharge from military service.

    (6) A commitment to a mental institution.

    (7) A renunciation of United States citizenship.

### Penal Code Section 192 – Manslaughter

Manslaughter is the unlawful killing of a human being without malice.

(a)    Voluntary – upon a sudden quarrel or heat of passion.

(b)    Involuntary – in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; provided that this subdivision shall not apply to acts committed in the driving of a vehicle.

### Penal Code Section 197 – Justifiable Homicide; Any Person

Homicide is justifiable when committed by any person in any of the following cases:

1.    When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or,

2.    When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein; or,

3.    When committed in the lawful defense of such person, or of a wife or husband, parent, child, master, mistress, or servant of such person, when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or the person in whose behalf the defense was made, if he was the assailant or engaged in mutual combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed; or,

4.    When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace.

-7-

State of California, Department of Justice
## Standard Application for CCW License

## Section 5 – Applicable California Penal Code Sections – (continued)

### Penal Code Section 198 – Justifiable Homicide; Sufficiency of Fear
### (Limitation of Self-defense of Property Rule)
A bare fear of the commission of any of the offenses mentioned in subdivisions 2 and 3 of Section 197, to prevent which homicide may be lawfully committed, is not sufficient to justify it. But the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone.

### Penal Code Section 199 – Justifiable and Excusable Homicide; Discharge of Defendant
The homicide appearing to be justifiable or excusable, the person indicted must, upon his trial, be fully acquitted and discharged.

### Penal Code Section 12035 – Storage of Firearms Accessible to Children
(a) As used in this section, the following definitions shall apply:
   (1) "Locking device" means a device that is designed to prevent the firearm from functioning and when applied to the firearm, renders the firearm inoperable.
   (2) "Child" means a person under the age of 16 years.
   (3) "Off-premises" means premises other than the premises where the firearm was stored.
   (4) "Locked container" has the same meaning as set for the in subdivision (d) of Section 12026.2.
(b) (1) Except as provided in subdivision (c), a person commits the crime of "criminal storage of a firearm of the first degree" if he or she keeps any loaded firearm within any premise which is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child's parent or legal guardian and the child obtains access to the firearm and thereby causes death or great bodily injury to himself, herself, or any other person.
   (2) Except as provided in subdivision (c), a person commits the crime of "criminal storage of a firearm of the second degree" if he or she keeps any loaded firearm within any premise which is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child's parent or legal guardian and the child obtains access to the firearm and thereby causes injury, other than great bodily injury, to himself, herself, or any other person, or carries the firearm either to a public place or in violation of Section 417.
(c) Subdivision (b) shall not apply whenever any of the following occurs:
   (1) The child obtains the firearm as a result of an illegal entry to any premises by any person.
   (2) The firearm is kept in a locked container or in a location that a reasonable person would believe to be secure.
   (3) The firearm is carried on the person or within such a close proximity thereto so that the individual can readily retrieve and use the firearm as if carried on the person.
   (4) The firearm is locked with a locking device that has rendered the firearm inoperable.
   (5) The person is a peace officer or a member of the armed forces or national guard and the child obtains the firearm during, or incidental to, the performance of the person's duties.
   (6) The child obtains, or obtains and discharges, the firearm in a lawful act of self-defense or defense of another person, or persons.
   (7) The person who keeps a loaded firearm on any premise which is under his or her custody or control has no reasonable expectation, based on objective facts and circumstances, that a child is likely to be present on the premise.

-8-

State of California, Department of Justice
## Standard Application for CCW License

## Section 5 – Applicable California Penal Code Sections – (continued)

### Penal Code Section 12036 – Firearms Accessed by Children and Carried Off-premises

(a) As used in this section, the following definitions shall apply:
   (1) "Locking device" means a device that is designed to prevent the firearm from functioning and when applied to the firearm, renders the firearm inoperable.
   (2) "Child" means a person under the age of 16 years.
   (3) "Off-premises" means premises other than the premises where the firearm was stored.
   (4) "Locked container" has the same meaning as set forth in subdivision (d) of Section 12026.2.

(b) A person who keeps a pistol, revolver, or other firearm capable of being concealed upon the person, loaded or unloaded, within any premise that is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to that firearm without the permission of the child's parent or legal guardian and the child obtains access to that firearm and thereafter carries that firearm off-premises, shall be punished by imprisonment in a county jail not exceeding one year, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(c) A pistol, revolver, or other firearm capable of being concealed upon the person that a child gains access to and carries off-premises in violation of this Section shall be deemed "used in the commission of any misdemeanor as provided in this code or any felony" for the purpose of subdivision (b) of Section 12028 regarding the authority to confiscate firearms and other deadly weapons as a nuisance.

(d) This Section shall not apply if one of the following circumstances exists:
   (1) The child obtains the pistol, revolver, or other firearm capable of being concealed upon the person as a result of an illegal entry into any premises by any person.
   (2) The pistol, revolver, or other firearm capable of being concealed  upon the person is kept in a locked container or in a location that a reasonable person would believe to be secure.
   (3) The pistol, revolver, or other firearm capable of being concealed upon the person is locked with a locking device that has rendered the firearm inoperable.
   (4) The pistol, revolver, or other firearm capable of being concealed upon the person is carried on the person within such a close range that the individual can readily retrieve and use the firearm as if carried on the person.
   (5) The person is a peace officer or a member of the armed forces or national guard and the child obtains the pistol, revolver, or other firearm capable of being concealed upon the person during, or incidental to, the performance of the person's duties.
   (6) The child obtains, or obtains and discharges, the pistol, revolver, or other firearm capable of being concealed upon the person in a lawful act of self-defense or defense of another person or persons.
   (7) The person who keeps a pistol, revolver, or other firearm capable of being concealed upon the person has no reasonable expectation, based on objective facts and circumstances, that a child is likely to be present on the premises.

-9-

State of California, Department of Justice

## Standard Application for CCW License

### Section 6 – Agreement to Restrictions and to Hold Harmless

I accept and assume all responsibility and liability for, injury to, or death of any person, or damage to any property which may result through any act or omission of either the licensee or the agency that issued the license. In the event any claim, suit or action is brought against the agency that issued the license, its chief officer or any of its employees, by reason of, or in connection with any such act or omission, the licensee shall defend, indemnify, and hold harmless the agency that issued the license, its chief officer or any of its employees from such claim, suit, or action.

I understand that the acceptance of my application by the licensing authority does not guarantee the issuance of a license and that fees and costs are not refundable if denied. I further understand that if my application is approved and I am issued a license to carry a concealed weapon, that the license is subject to restrictions placed upon it and that misuse of the license will cause an automatic revocation and possible arrest and that the license may also be suspended or revoked at the discretion of the licensing authority at any time. I am aware that any use of a firearm may bring criminal action or civil liability against me.

I have read, understand, and agree to the CCW license liability clauses, conditions, and restrictions stated in this Application and Agreement to Restrictions and to Hold Harmless.

I have read and understand the applicable Penal Code sections regarding False Statements on a CCW Application, Manslaughter, Killing in Defense of Self or Property, Limitation on Self-defense and Defense of Property, and Child Access and Firearm Storage, stated in this application.

I have read and understand Attachment 1 – California Prohibiting Categories for a CCW License, Attachment 2 – California Prohibiting Misdemeanors, and Attachment 3 – Federal Prohibiting Categories for Possessing Firearms. I further acknowledge that these Prohibiting Categories can be amended or expanded by state or federal legislative or regulatory bodies and that any such amendment or expansion may affect my eligibility to hold a CCW.

_____
Applicant Signature

Date  12.19.2008

_____  #14389
Witness Signature / Badge Number

Date  1/21/09

-10-

**Exhibit B, Page 25**

JSER0107

State of California, Department of Justice
## Standard Application for CCW License

### Section 7 – Investigator's Interview Notes

Applicant Name: Thomson Robert James
Last        First        Middle

Date of Birth: 12-15-1970        Age

Social Security No.: 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

California DL/ID No.: A1385180

Driver's License Restrictions: None

Residence Address:

16423 Haas Ave                Torrance    CA    90504
Number    Street        Apt.        City        State    Zip

Mailing address (if different):

same as above
Number    Street        Apt.        City    State    Zip

Home / Personal Phone Numbers: (424) 294-0583

Spouse's Name and Address: Cristina Thomson

16423 Haas Ave. Torrance   CA 90504

Applicant Occupation: Bail Agent

Business / Employer Name: Caught Up Bail Bonds

Business Phone Number: : (562) 756-6167

Business Address:

16423 Haas Ave Torrance CA 90504
Number    Street        Apt.        City        State    Zip

1.  List all previous home addresses for the past five years.

439 Mitchell Ln Arroyo Grande, CA 93420

1811 S. Cabrillo Ave #3 San Pedro CA 90731

1837 W. Lincoln St Long Beach CA 90810

-11-

State of California, Department of Justice
## Standard Application for CCW License

### Section 7 – Investigator's Interview Notes – (continued)

2. Have you ever been in a mental institution, treated for mental illness, or been found not-guilty by reason of insanity ? No ✓ Yes_____ (If yes, explain):

_____

_____

3. Are you now, or have you ever been, addcicted to a controlled substance or alcohol, or have you ever utilized an illgal controlled substance, or have you ever reported to a detoxification or drug treatment program?  No ✓ Yes_____ (If yes, explain):

_____

_____

4. Have you ever been involved in an incident involving firearms?
   No ✓ Yes_____ (If yes, explain):

_____

_____

_____

5. Have you been involved in a domestic violence incident?
   No ✓ Yes_____ (If yes, explain):

_____

_____

6. List any arrests or formal charges, with or without disposition, for any criminal offenses with the U.S. or any other country (civilian or military).

   *Not applicable.* _____

_____

_____

-12-

State of California, Department of Justice

## Standard Application for CCW License

### Section 7 – Investigator's Interview Notes – (continued)

If the CCW license is desired for self-protection, the protection of others, or for the protection
of large sums of money or valuable property, you are required to explain and provide good
cause for issuance of the license.  For example, has your life or property been threatened or
jeopardized?  Explain incidents and include dates, times, locations, and names of police agencies
to which these incidents were reported.

Details of Reason for Applicant desiring a CCW License (use additional sheets if needed).

See Attachment
Consumer of Affairs (Guard) Permit - Card - 40 Hrs
Gun Permit Training - State Mandated Hours
California D.O.J Handgun Safety Certificate
* Utah Concealed Firearm Permit # C256808
→ Valid Through 2013 7 Allows Subject To Carry
Firearm To Arizona Where Property Is Owned
Reasons For:
* Place of Business at Home -
Can Be In Possession of up to $11,000 Cash At one
Time; When Return From Clients, Also Collateral (Diamonds,
Pink Slips, Jewelry etc.
* Has Clients In High Crime Areas
* At Norwalk Assisted w/ Arrest -
* Never Been Robbed or Assaulted - No Police
Reports On File.
* Tries To Avoid Work at Home,
* Caught up Bail Bonds advertised on Vehicle.

## GOOD CAUSE STATEMENT

Im a bail agent, I bail people out of jail on a daily basis, some of whom don't show up for court. When these people are tracked down and captured against their will by myself or other people licensed for fugitive recovery and under a civil contract, they are sometimes upset with their captors. For this reason, I feel that it is equally important to carry a weapon on my person to protect myself from retaliatory attacks by fugitives who still hold a grudge when released from jail or prison after sentencing. I some times have to go to bad neighborhood's to meet with clients and sign documents and I sometimes carry a lot of cash that clients pay 2,500.00 to 12,000.00.

1. I carry bail bonds over 1.6 million dollars in live bonds from 7,500.00 to 250,000.00 each bond total over 1.6 mil

This creates an exigency that shows that I need a CCW more than some regular Joe off of the street. I want to have it to protect myself and my family. I work out of my house as my office so I meet clients at their home or at an establishment ( fast food, Star Bucks, home).

penal code 12031(k) states " nothing in this section is intended to preclude the carrying a loaded firearm by any person while engaged in the act of making or attempting to make a lawful arrest" as a bail agent or bail recovery person, they may carry the loaded firearm only during the arrest itself, not before or after the arrest, need to be transported unloaded in and locked container. From the attorney general office Leslie Mc govern firearms division.

State of California, Department of Justice
## Standard Application for CCW License

### Section 8 – Certification and Release of Information

I hereby give permission to the agency to which this application is made to conduct a background investigation of me and to contact any person or agency who may add to or aid in this investigation. I further authorize persons, firms, agencies and institutions listed on this application to release or confirm information about me and statements I have made as contained in this application.

Notwithstanding any other provision of law and pursuant to the Public Records Act (Government Code section 6250 et seq.), I understand that information contained in this application may be a matter of public record and shall be made available upon request or court order.

I hereby certify under penalties of perjury and Penal Code section 12051(b) and (c), that the answers I have given are true and correct to the best of my knowledge and belief, and that I understand and agree to the provisions, conditions, and restrictions herein or otherwise imposed.

_____     12-19-2008
**Applicant Signature**                              Date

_____     1/21/09
**Witness Signature / Badge Number**              Date

-14-



**Attachments**

State of California, Department of Justice
## Standard Application for CCW License

### *Attachment 1*

## CALIFORNIA PROHIBITING CATEGORIES FOR A CCW LICENSE
## As of January, 1999

- Persons convicted of a felony, or any offense enumerated in section 12021.1 of the Penal Code (PC).

- Persons addicted to the use of narcotics.

- Persons denied firearm possession as a condition of probation pursuant to PC section 12021(d).

- Persons convicted of a specified misdemeanor pursuant to PC section 12021(c)(1) are prohibited from purchasing or possessing firearms for 10 years (see Attachment 2).

- Juveniles adjudged wards of the juvenile court because they committed a 707(b) Welfare and Institutions Code (WIC) offense, an offense described in PC section 1203.073(b) or any offense enumerated in PC section 12021 (c)(!) are prohibited until they reach age 30.

- Persons who are subject to a protective order as defined in section 6218 of the Family Code, or a temporary restraining order or injunction issued pursuant to sections 527.6 or 527.8 of the Code of Civil Procedure.

- Persons found by a court to be a danger to others because of mental illness.

- Persons found by a court to be mentally incompetent to stand trial.

- Persons found by a court to be not guilty by reason of insanity.

- Persons adjudicated to be a mentally disordered sex offender.

- Persons placed on a conservatorship because they are gravely disabled as a result of a mental disorder or impairment by chronic alcoholism

- Persons who communicate a threat to a licensed psychotherapist, against a reasonably identifiable victim, and the psychotherapist reports to law enforcement pursuant to WIC section 8100(b), are prohibited from purchasing or possessing a firearm for 6 months.

- Persons in a mental health facility certified pursuant to WIC sections 5250, 5260, and 5270.15 are prohibited from possessing or purchasing or attempting to purchase firearms for 5 years.

- Persons who are voluntary patients in a mental facility who are determined to be a danger to self or others are prohibited from purchasing or possessing a firearm between admission and discharge.

- Persons under indictment or information in any court for a crime punishable by imprisonment for a term exceeding one year.

-16-

**Exhibit B, Page 32**

JSER0114

State of California, Department of Justice
## Standard Application for CCW License

### *Attachment 2*

## CALIFORNIA PROHIBITING MISDEMEANORS
## As of January, 1999

Pursuant to Penal Code (PC) section 12021(c)(1), any person who has been convicted of a misdemeanor violation for any of the following offenses is prohibited from owning, possessing, or having under his or her custody or control any firearms within 10 years of the conviction:

- Threatening public officers, employees and school officials (PC section 71).
- Threatening certain public officials, appointees, judges, staff or their families with the intent and apparent ability to carry out the threat (PC section 76).
- Possessing a deadly weapon with the intent to intimidate a witness (PC section 136.5).
- Threatening witnesses, victims, or informants (PC section 140).
- Attempting to remove or take a firearm from the person or immediate presence of a public or peace officer (PC section 148(d)).

- Unauthorized possession of a weapon in a courtroom, courthouse or court building, or at a public meeting (PC section 171(b)).
- Bringing into or possessing a loaded firearm within the state capitol, legislative offices, etc. (PC section 171c).
- Taking into or possessing loaded firearms within the Governor's Mansion or residence of other constitutional officers, etc. (PC section 171(d)).
- Supplying, selling or giving possession of a firearm to a person for participation in criminal street gangs (PC section 186.28).
- Assault (PC sections 240, 241)

- Battery (PC sections 242, 243).
- Assault with a stun gun or Taber weapon (PC section 244.5)
- Assault with deadly weapon or force likely to produce great bodily injury (PC section 245).
- Assault with a deadly weapon or instrument, by any means likely to produce great bodily injury or with a stun gun or Taber on a school employee engaged in performance of duties (PC section 245.5).
- Shooting at an inhabited or occupied dwelling house, building, vehicle, aircraft, horsecart or camper (PC section 246).

- Discharging a firearm in a grossly negligent manner (PC section 246.3)
- Shooting at an unoccupied aircraft, motor vehicle, or uninhabited building or dwelling house (PC section 247)
- Inflicting corporal injury on a spouse or significant other (PC section 273.5)
- Willfully violating a domestic protective order (PC section 273.6).

-17-

State of California, Department of Justice
## Standard Application for CCW License

### *Attachment 2 (Continued)*

## CALIFORNIA PROHIBITING MISDEMEANORS
## As of January, 1999

- Drawing, exhibiting, or using any deadly weapon other than a firearm (PC sections 417(a)(1), 417(a)(2)).
- Brandishing a firearm in presence of a peace officer (PC section 417.1 – repealed by stats. 1998).
- Drawing or exhibiting, selling, manufacturing, or distributing firearm replicas or imitations (PC section 417.2).
- Inflicting serious bodily injury as a result of brandishing (PC section 417.6).
- Bringing into or possessing firearms upon or within public schools and grounds (PC section 626.9).
- Stalking (PC section 646.9).

- Armed criminal action (PC section 12023).
- Possessing a deadly weapon with intent to commit an assault (PC section 12024).
- Driver or any vehicle who knowingly permits another person to discharge a firearm from the vehicle or any person who will fully and maliciously discharges a firearm from a motor vehicle (PC sections 12034(b), 12034(d)).
- Criminal possession of a firearm (PC section 12040).
- Firearms dealer who sells or transfers or gives possession of any firearm to a minor or a handgun to a person under the age of 21 (PC section 12072(b)).

- Various violations involving sales and transfers of firearms (PC section 12072(g)(3)).
- Person or corporation who sells any concealable firearm to any minor (PC section 12100(a) – repealed by stats. 1994).
- Unauthorized possession/transportation of a machine gun (PC section 12220).
- Possession of ammunition designed to penetrate metal or armor (PC section 12320).
- Carrying a concealed or loaded firearm or other deadly weapon or wearing a peace officer uniform, while picketing (PC section 12590).

- Bringing firearm related contraband into juvenile hall (WIC section 871.5).
- Bringing firearm related contraband into a youth authority institution (WIC section 1001.5).
- Purchase, possession, or receipt of a firearm or deadly weapon by a person receiving in-patient treatment for a mental disorder, or by a person who has communicated to a licensed psychotherapist a serious threat of physical violence against an identifiable victim (WIC section 8100).
- Providing a firearm or deadly weapon to a person described in WIC sections 8100 or 8103 (WIC section 8101).
- Purchase, possession, or receipt of a firearm or deadly weapon by a person who has been adjudicated to be a mentally disordered sex offender or found to be mentally incompetent to stand trial, or not guilty by reason of insanity, and individuals placed under a conservatorship (WIC section 8103).

-18-

State of California, Department of Justice

## Standard Application for CCW License

### *Attachment 3*

## FEDERAL PROHIBITING CATEGORIES FOR POSSESSING FIREARMS
### Gun Control Act of 1968, Title 18 U.S.C. Chapter 44
### As of January, 1999

Pursuant to Section 922, any person listed below is prohibited from possessing, shipping, transporting, or receiving any firearm, who:

- Has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year.

- Is a fugitive from justice.

- Is an unlawful user of or addicted to any controlled substance.

- Has been adjudicated as a mental defective or committed to a mental institution.

- Is an alien illegally or unlawfully in the United States.

- Has been discharged from the Armed Forces under dishonorable conditions.

- Having been a citizen of the United States, has renounced U.S. citizenship.

- Is subject to a court order that restrains the person from harassing, stalking, or threatening an intimate partner or child of such intimate partner.

- Has been convicted in any court of a misdemeanor crime of domestic violence.

- Is under indictment for a crime punishable by imprisonment for a term exceeding one year.

- Has an out-of-state prohibitive criminal history.

- Has a prior denial on a previous National Instant Criminal Background Check System (NICS) inquiry.

-19-



DMV CALIFORNIA DMV
COMMERCIAL DRIVER LICENSE CLASS:A
EXPIRES 12-15-13    A 1385180

ROBERT JAMES THOMSON
16423 HAAS AVE
TORRANCE CA 90504

SEX:M    HAIR:BLN    EYES:BLU
HT:5-06  WT: 180     DOB: 12-15-70

12/09/2008 608 2B  F0/13

A Public Service Agency

DRIVER'S MEDICAL EXAM DATE
12/8/08

DRIVER'S MEDICAL CERT. EXPIRES ON
12/8/10

DRIVER'S SIGNATURE
X

California Department of Justice
Handgun Safety Certificate

TURNERS Outdoorsman
Issuing Business Name

16574
Proctor's Signature    CFD/CI Number

FD 034



UTAH    C256808
DEPARTMENT OF PUBLIC SAFETY
Concealed Firearm Permit

NAME: ROBERT    JAMES    THOMSON

D.O.B.: 12/15/1970    SEX:  M

ADDRESS: 16423 HAAS AVE

CITY: TORRANCE    ST: CA ZIP: 90504

DATE OF    DATE OF
ISSUE: 10/6/2008 EXPIRATION: 10/6/2013

HT: 507 WT: 180 EYES: BLU HAIR: BRO

Commissioner of Public Safety:



BUREAU OF SECURITY & INVESTIGATIVE SERVICES
P.O. BOX 989002
WEST SACRAMENTO, CA 95798-9002
(916) 322-4000
Permit For Exposed Firearm

ROBERT JAMES THOMSON
16423 HAAS AVE
TORRANCE CA 90504

Permit No: FQ  295465    Expiration: 01/31/10
CALIBERS 40 .45

Must Have Valid Guard Registration Card
Signature    DUPLICATE    RECEIPT NO.
00915911

BUREAU OF SECURITY & INVESTIGATIVE SERVICES
P.O. BOX 989002
WEST SACRAMENTO, CA 95798-9002
(916) 322-4000
Guard Registration

ROBERT JAMES THOMSON
16423 HAAS AVE
TORRANCE CA 90504

Registration: G  1576200    Expiration: 12/31/09

Additional Permit Required to Carry Firearm

Signature    RECEIPT NO
00915912



BUREAU OF SECURITY & INVESTIGATIVE SERVICES
P.O. BOX 989002
WEST SACRAMENTO, CA 95798-9002
(916) 322-4000
Permit For Exposed Firearm

ROBERT JAMES THOMSON
16423 HAAS AVE
TORRANCE CA 90504

Permit No: FQ  295465    Expiration: 01/31/10
CALIBER

Must Have Valid Guard Registration Card
Signature




Exhibit B, Page 36
JSER0118

**Bureau of Criminal Identification**

3888 West 5400 South
Salt Lake City, Ut.
84118

To verify the validity
of this permit for law
enforcement purposes
only. contact:
801-965-4446

For all other
questions regarding
Concealed Firearm
Permits please call
801-965-4445

CALIFORNIA STATE DEPARTMENT OF INSURANCE

## BAIL AGENT
### IDENTIFICATION CARD

LICENSE NUMBER:   1844310

LICENSEE NAME:   ROBERT JAMES THOMSON

This card is valid only while bail license is in force. For verification of license
status contact the Department of Insurance at www.insurance.ca.gov or call
(916) 322-3555/(800) 967-9331.

3318
(Rev. 2/04)   *Keith W. Kuzmich*
Deputy Insurance Commissioner

08-28-2007
DATE



```
PAGE 01  12/30/08  08:19:06 TCOQ PRINT REQUESTED BY TERMINAL TCO2
TO: TCO2  FROM: CLETS              12/30/08  08:19:00
4TOR0TCO2C.ID

DATE:12-30-08*TIME:08:18*

DMV RECORD FOR LAW ENFORCEMENT USE ONLY

DL/NO:A1385180*B/D:12-15-1970*NAME:THOMSON ROBERT JAMES*
MAIL ADDR AS OF 12-09-08:16423 HAAS AVE TORRANCE 90504*
OTH/ADDR AS OF 04-01-04:439 MITCHELL LN ARROYO GRANDE *
AKA:THOMSPON ROBERT JAMES*

IDENTIFYING INFORMATION:

SEX:MALE*HAIR:BLOND*EYES:BLU*HT:5-06*WT:180*

LIC/ISS:12-09-08*EXPIRES:12-15-13*RBM1*CLASS:A COMMERCIAL*
ENDORSEMENTS:NONE*
MEDICAL EXAM EXP:12-08-10**

LATEST APP:


DL TYPE:RBM WITH NEW PHOTO*ISS/DATE: 12-09-08*OFFICE: TOR*BATES: POL*



ORGAN AND TISSUE DONOR: NO   UPDATED:12-09-08
LICENSE STATUS:
  VALID*
COMMERCIAL LICENSE STATUS:
  VALID*

DEPARTMENTAL ACTIONS:

NONE

CONVICTIONS:
VIOL/DT  CONV/DT  SEC/VIOL   DKT/NO       DISP     COURT  VEH/LIC

01-10-06  07-06-06  21650  VC  S187066      B       19460  4RNR719

DMV POINT COUNT 1


03-02-06  06-29-06  22349A VC  42922BJ      B       37465  4RNR719

DMV POINT COUNT 1


FAILURES TO APPEAR:
NONE

ACCIDENTS:
NONE

END
```

**Exhibit B, Page 40**
JSER0122

```
PAGE 01  12/30/08  08:20:32 TCOQ PRINT REQUESTED BY TERMINAL TCO2
TO: TCO2   FROM: CWS      IW      12/30/08  08:20:12
*INFO* -  THOMPSON ROBERT JAM  NO HIT
```

```
PAGE 02
TO: TCO2   FROM: CLETS                12/30/08  08:20:12
4TOR0TCO2D.IW
CA0197200   RE: QW.CA0197200.NAM/THOMPSON,ROBE
NO MATCH NAM FIELD
NO WANTS
********** END OF WPS MESSAGE **********
```

```
PAGE 03
TO: TCO2  FROM: CLETS              12/30/08  08:20:13
4TOR0TCO2D.IB
8YYX.CA0197200
RE: QRR.CA0197200.NAM/THOMPSON,ROBERT JAMES.DOB/19701215.SEX
NO MATCH NAM FIELD
NO RESTRAINING ORDERS
********** END OF DVROS MESSAGE **********
```

```
PAGE 04
TO: TCO2  FROM: CLETS              12/30/08  08:20:13
4TOR0TCO2D.IR
CA0197200  RE: QVC.CA0197200.NAM/THOMPSON,ROBERT JAMES.SEX/M.DOB/197012
NO MATCH NAM FIELD
NO SUPERVISED RELEASE RECORDS
CHECKING NCIC
********* END OF SUPERVISED RELEASE FILE MESSAGE *********
```

```
PAGE 05
TO: TCO2  FROM: NCIC              12/30/08  08:20:14
4TOROTCO2D.IJ
1L01
CA0197200

NO NCIC WANT NAM/THOMPSON,ROBERT JAMES DOB/19701215 SEX/M
***MESSAGE KEY QWA SEARCHES ALL NCIC PERSONS FILES WITHOUT LIMITATIONS.
```

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
Bureau of Criminal Identification and Information
P.O. Box 903417
Sacramento, CA 94203-4170


DATE: 01/09/2009


CAPDTORRANCE
3300 CIVIC CENTER DRIVE
TORRANCE CA 90503


RE: FINGERPRINTS SUBMITTED TO THE FBI - NO RECORD

APP ORI:                 CA0197200
APP NAME:                ROBERT JAMES THOMSON
APP TYPE:                STANDARD CCW
APP TITLE:               CCW
APP SERVICE REQUESTED:   CA/FBI/FIREARM
OCA:                     550591084
SID:                     H022979605
DOB:                     12/15/1970
SSN:                     550591084
CDL:                     A1385180
ATI:                     I009THR598
OATI:
DATE SUBMITTED:          01/09/2009
SCN #:                   W07C0090003

APP ADDRESS:             16423 HAAS AVE TORRANCE CA 90504

****
Based upon a fingerprint search of records contained in the Federal Bureau of
Investigation files, there is no out-of-state or federal criminal history
information on the above named individual that meets dissemination criteria
pursuant to California law.

*** THIS RESPONSE DOES NOT CONSTITUTE A COMPLETE FIREARMS
ELIGIBILITY CLEARANCE UNTIL COMBINED WITH THE FORTHCOMING D.O.J.
FIREARMS DIVISION ELIGIBILITY CLEARANCE RESPONSE. ***


Electronic Response Code: 05938
Fax Address:             3106185710



*EDMUND G. BROWN JR.*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

## FAX TRANSMISSION COVER SHEET

IMPORTANT/CONFIDENTIAL: This communication is intended only for the use of the individual or entity to which it is addressed. This message contains information from the State of California, Attorney General's Office, which may be privileged, confidential and exempt from disclosure under applicable law. If the reader of this communications is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.

DATE: Friday, January 09, 2009    TIME: 10:03:09 AM    NO. OF    2
                                                         (INCLUDING COVER SHEET)

TO:    (.20090109095755_27:34701.)

NAME:

OFFICE:

LOCATION:

FAX NO: 13106185710    PHONE NO.:

FROM:

NAME: State of California Department of Justice

OFFICE: Applicant Program

LOCATION: Sacramento, CA 95820

FAX NO:    PHONE NO.: (916)227-3823

### MESSAGE/INSTRUCTIONS

**PLEASE DELIVER AS SOON AS POSSIBLE!**
FOR ASSISTANCE WITH THIS FAX, PLEASE CALL THE SENDER

JUS 133 (6/96)

**Exhibit B, Page 47**
JSER0129

CITY OF TORRANCE

2009 NOV 16   AM 10: 25

November 13, 2009

Cristina Thomson
16423 Haas Ave
Torrance CA 90504

Chief John Neu
Torrance Police Department
3300 Civic Center Dr. N
Torrance CA 90503

Dear Chief Neu,

I am writing to request a copy of your CCW policy and an application for a CCW permit.

Sincerely,

Cristina Thomson

Cristina Thomson
16423 Haas Ave
Torrance CA 90504



CERTIFIED MAIL

7009 1680 0000 2597 8084





90503



U.S. POSTAGE
PAID
GARDENA,CA
90247
NOV 13, '09
AMOUNT
$5.54
000-9481-16

RETURN RECEIPT
REQUESTED

Chief John Neu
Torrance Police Dept.
3300 Civic Center Dr. N
Torrance CA 90503

RETURN RECEIPT
REQUESTED

90503+5056



**City of Torrance, Police Department**
**Confidential FAX Report Cover**

---

## CONFIDENTIALITY NOTICE:

This FAX may contain confidential information.  If you are not the intended recipient, be advised that any disclosure or copying of this information is prohibited.  If you believe you have received this FAX in error, please call (310) 618-5737 immediately for instructions or to arrange for the return of this material.

*Thank you for your cooperation.*

---

Date: 4/1/09                        Number of pages (including cover sheet): 2

---

TO: ~~Capt.~~ Gwynn

FROM: Det. S. Barlow

Phone: (    )
Fax:   (916) 263-0790

Phone: (310) 618-5628
Fax:    (310) 212-6909

---

Copy:

---

REMARKS:          ☐ Urgent      ☐ For your review      ☐ Reply ASAP      ☐ Please
comment

---

TPD 160 (Rev. 11/99)

**Exhibit B, Page 50**
JSER0132



# CITY OF TORRANCE

POLICE DEPARTMENT

JOHN J. NEU
CHIEF OF POLICE

April 1, 2009

Mr. Robert J. Thomson
16423 Haas Avenue
Torrance, CA  90504

RE:  Application for a Carry Concealed Weapons Permit

Dear Mr. Thomson:

A thorough investigation has been conducted based on your application for a Carry Concealed Weapons Permit. Based on my review and investigation of your application, your request is denied. This denial is based on my determination that you have failed to prove at least one or more of legal requirements to obtain a CCW Permit: you are a person of good moral character; good cause exists for the issuance of the license; you are currently a resident of the City of Torrance; you have completed the required training course.

The Chief of Police is given the discretion for the issuance of CCW permits. This authority is outlined in the California Penal Code Section 12050(B). This decision is final and no appeal can be made.

If you have any questions regarding my decision, you may contact Lieutenant Devin Chase at (310) 618-5712 within 15 days of receipt of this letter.

Sincerely,

John J. Neu
Chief of Police

JJN: ml

CHIEF OF POLICE
CITY OF TORRANCE

4/3/2009
8:28:46 PM

2009 APR 13  AM 8: 20

Caught Up Bail Bonds
Robert J. Thomson
16423 Haas Ave.
Torrance, California
90504
562-756-6167

John J. Neu
Chief of Police
City of Torrance

RE: Application for a Carry Concealed Weapons Permit

Dear Mr. John J. Neu,

I would like for you to reconsider your decision regarding the issuing of a CCW permit.

Please advise at your earliest convenience.

Sincerely,

Robert J. Thomson
Caught Up Bail Bonds



# CITY OF
# TORRANCE

POLICE DEPARTMENT

JOHN J. NEU
CHIEF OF POLICE

April 5, 2011

Robert James Thomson
16423 Haas Avenue
Torrance, CA 90504

Re: **Application for a Carry Concealed Weapons Permit**

Dear Mr. Thomson:

A thorough investigation has been conducted based on your application for a Carry Concealed Weapons Permit. Based on my review and investigation of your application, your request is denied. This denial is based on my determination that you have failed to prove at least one or more of legal requirements to obtain a CCW Permit: you are a person of good moral character; good cause exists for the issuance of the license; you are currently a resident of the City of Torrance; you have completed the required training course.

The Chief of Police is given the discretion for the issuance of CCW permits. This authority is outlined in the California Penal Code Section 12050(B). This decision is final and no appeal can be made.

If you have any questions regarding my decision, you may contact Lieutenant Mike Jezulin at (310) 618-5712 within 15 days of receipt of this letter.

Sincerely,

John J. Neu
Chief of Police

JJN: ml



# Torrance Police Department

General Case Report for Incident 110030361

| | |
|---|---|
| **Occurred Between:** 09:57:38 05/31/2011 and 09:57:38 05/31/2011 | **Case Status:** ACT (Active ) |

**When Reported:** 09:57:38 05/31/2011          **Status Date:** 05/31/2011

**Area:** S27L                    **Report Type:** ()

**Location:** 3300 CIVIC CENTER DR; -TORRANCE PD Torrance, CA 90503

**Responsible Officer:**

Status: **Applicant :**

**Name:** Thomson, Robert J.

**Home Address:** 16423 HAAS AVE Torrance, CA 90504          **Home Phone:** (310)619-0019

**DOB:** 12/15/1970  **AGE:** 40        **SEX:** M        **RACE:** W        **HEIGHT:** 5'06"    **WEIGHT:** 185

**Business Addr:** 16423 Haas Ave, Torrance CA 90504          **Bus. Phone:** (310)320-2245

lwmain.x1a

05/31/11



**Torrance Police Department Intelligence Detail**

# Concealed Weapon Permit Interview
### Detective Scott Bargar #14389

<u>To:</u>
**Lieutenant Michael Jezulin**
Commander, Vice and Narcotics Division

<u>Date:</u>
**07 February 2011**

<u>From:</u>
**Detective Scott Bargar**
Intelligence Section

<u>Subject:</u>
**Robert James Thomson**
16423 Haas Ave, Torrance CA 90504
CDL: A1385180
DOB: 12-15-1970
Phone: (310) 619-0019

On 23 December 2008, Robert Thomson applied for a CCW permit through the Torrance Police Department. All paper work was completed and a complete background investigation was conducted. All paperwork was submitted to Chief John Neu for review and final consideration. On 01 April 2009, Mr. Thomson's application was denied.

On 19 December 20110, Robert Thomson again applied for a CCW permit. All paperwork appeared to be complete and in order. On 29 December 2010, I (Detective Bargar) met at the Torrance Police Department with Mr. Thomson in regards to his application.

Mr. Thomson stated that his personal information and employment have not changed since filing his last application, only adding that he has obtained office space for his business "Caught Up Bail Bonds" at 2309 Torrance Blvd. #205, Torrance CA., 90503.

Mr. Thomson reiterated that his schedule varies, but is available 24/7, including weekends and holidays. Mr. Thomson continued to state with the occupation as Bail Agent and the reason's stated on his previous application, create an exigency that shows a need for the issuance of a CCW.

As stated in his previous application, Mr. Thomson said he bails people out of jail on a daily basis, some who eventually don't show up for court. Mr. Thompson said when

these people are tracked down and captured against their will by him or other people licensed for fugitive recovery and under a civil contract, they are often upset with their captors. Mr. Thomson feels it is equally important to carry a weapon on his person to protect himself from retaliatory attacks by fugitives who may still hold a grudge when released from jail or prison after sentencing. Mr. Thomson also said at times he has to venture into bad neighborhoods to meet with clients and sign documents, and at times leaves these meetings with large amounts of cash that has been received to secure a bond.

While interviewing Mr. Thomson on 21 January 2009 (previous application), he said he had one incident in a high crime area where he was going to meet a client's family, and the man who answered the door was holding a firearm. Mr. Thomson also stated on one occasion he needed the assistance of LASD – Norwalk Station to help him affect an arrest on a violent subject who had a bail warrant.

While interviewing Mr. Thomson 29 December 2010, he stated he had an incident that took place approximately four months ago at 11818 Main St., Los Angeles that caused him great fear for his safety. Mr. Thomson said on occasion he will assist his wife who works in Real Estate. On this particular day Mr. Thomson was doing a "Re Key" or "Change of Locks" at the above listed property when he was confronted by the tenants who had been evicted from the property and other local residents at the complex. The former tenants and neighbors began threatening to cause physical harm to Mr. Thomson and then began throwing household items at him. In fear of his safety, Mr. Thomson was forced to contact LAPD who stood by the location while he performed the "Re Key". Mr. Thomson said he recently attempted to contact LAPD records for an incident number to the above listed incident with negative results.

Mr. Thomson further stated that he has not been threatened, nor had any security concerns, within the Torrance Police Department's jurisdiction. Mr. Thomson also stated that he has never been physically assaulted or robbed during the course of his duties, nor has he ever had to file a report with any police agencies in regards to threats made against him or his family. Mr. Thomson said if he talks with a potential client or family members of a potential client, and feels there is any type of risk monetarily or safety wise, he simply refuses to take the case. Mr. Thomson made very clear to this investigator that he understands there are risks that go with his occupation and he evaluates every bond with safety in mind, but his concerns are the "unforeseen" and "what ifs" that go along with the job.

I (Detective Bargar) again questioned Mr. Thomson about the right to carry a firearm in the course of his work duties. Mr. Thomson was clearly educated about 12031 (k) PC, which states he is only allowed to carry a firearm in the act of making or attempting to make a lawful arrest, and not before or after the arrest. Mr. Thomson also said he was aware that a firearm needed to be transported unloaded and in a locked container.

Mr. Thomson does posses a valid CCW from the state of Utah, that expires in the year 2013 (CCW #C256808, see attached) and currently owns a registered Glock Model 22, 40 caliber handgun (serial # DKL431US), and a Glock Model 27, 40 caliber handgun (serial # HGZ826) that he trains and shoots with on a routine basis. Mr. Thomson has also successfully attended and completed the California Department of Justice Handgun Safety Course. (See applicant package)

Mr. Thomson stated he has never been treated for any type of mental illness, nor is there any evidence of controlled substance or alcohol abuse. The Intel Section also found no arrest history involving Mr. Thomson.

Pursuant to Torrance Police Department General Order 3.31.1 (B) (1), my investigation revealed:
(a) The Applicant appears to be of good moral character.
(b) The applicant has no prior convictions of a felony or any other crime that indicates moral turpitude.
(c) I was unable to determine/identify any specific or credible threats to the applicant.
(d) The applicant is a bona fide resident of the City of Torrance.
(e) The applicant has successfully completed a designated course of training in the carrying, safety, and use of firearms.

To be forwarded to the office of the Chief of Police for final consideration.



Detective Scott Bargar
Intelligence Section

# California Department of Justice



# STANDARD APPLICATION
# FOR LICENSE TO CARRY
# A CONCEALED WEAPON (CCW)

BCIA 4012 (6/99)

California Department of Justice
# STANDARD APPLICATION
for
# LICENSE TO CARRY A CONCEALED WEAPON (CCW)

## Authority

California Penal Code (PC) sections 12050 through 12054 provide that a sheriff of a county or the chief or other head of a municipal police department of any city or city and county may issue a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person (CCW license). PC section 1205 1 (a)(3)(A) requires the Attorney General to prescribe a statewide standard application form for a CCW license.

## Who May be Issued a License

The licensing authority specified in PC section 12050(a)(1) (a sheriff or head of a municipal police department) may issue a license to persons who are of good moral character, who have completed a course of training, and where good cause exists for issuance of the CCW license. **All applicants for a CCW will be fingerprinted and** state records will be checked to determine if they are in a prohibiting class. Attachments 1 2 and 3 (following page 14 of this application) list all categories that would cause a person to be in a class prohibiting them from possessing firearms and being granted a CCW license. These attachments are updated annually to reflect new legislation and other changes in the law.

## Format of CCW License

A CCW license may be issued in either of the following formats:

1. A license to carry concealed, a pistol, revolver, or other firearm capable of being concealed upon the person.
2. Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in that county a pistol, revolver, or other firearm capable of being concealed upon the person.

## Training Required

PC section 12050(a)(1)(B) and (E) specifies that new license applicants must complete a course of training. The training may consist of any course acceptable to the licensing authority. The licensing authority may require either a course not to exceed 16 hours which includes instruction on at least firearms safety and the law regarding the permissible use of a firearm or a community college course not to exceed 24 hours certified by the Commission on Peace Officer Standards and Training. If the licensing authority requires the community college course, it must be uniformly required for all CCW license applicants. The licensing authority may also require annual qualification on the weapon(s) during the term for which the CCW license is granted.

For license renewal applicants, the course of training may be any course acceptable to the licensing authority, shall be no less than four hours in length, and shall include instruction on at least firearm safety and the law regarding permissible use of a firearm.

-1-

**Exhibit C, Page 59**
JSER0141

State of California, Department of Justice
## Standard Application for CCW License

### Psychological Testing

In addition to licensing requirements as specified by the licensing authority, may require psychological testing on the initial application. If required, the applicant shall be referred to a licensed psychologist by the licensing authority for the psychological testing of its own employees. Any fees charged will be the responsibility of the applicant and such fees shall not exceed $150.00 for an initial test. Additional psychological testing of an applicant seeking license renewal shall be required only if there is compelling evidence to indicate that a test is necessary (PC section 12054(c)).

### Completing the Application

Answering all the questions on this standard application does not guarantee the issuance of a CCW license. The determination whether or not to issue the license is the prerogative of the licensing authority. Each licensing authority, in addition to using the state standard application form, will have a written policy summarizing what they require pursuant to PC section 12050(a)(1)(A) and (B). Prior to issuing a CCW, the statutes require proof that:

- The applicant is of good moral character,
- Good cause exists to issue the CCW license,
- The applicant meets residence requirements, and
- The course of training prescribed by the licensing authority has been completed.

The application on the following pages sets forth standardized questions to be used by the CCW licensing authority to determine whether a CCW license shall be issued. The applicant shall not be required to complete any additional application or form for a CCW license, or to provide any information other than that necessary to complete this standard application form except to clarify or interpret information provided herein (PC section 12051 (a)(3)(C)).

The applicant will certify that all answers provided are true and correct to the best of their knowledge and belief under penalty of perjury. The applicant will also acknowledge that information disclosed on this application may be subject to public disclosure.

#### Important Instructions

• Fill out, read, and sign Sections 1 through 5, as directed. Use additional pages if more space is required.

• Sections 6, 7, and 8 must be completed in the presence of an official of the licensing agency.

• Review Section 7 and be prepared to answer these questions orally. Do not write anything in Section 7 unless specifically directed to do so by the licensing agency.

Section 1 - Applicant Personal Information _____ 3
Section 2 - Applicant Clearance Questions _____ 3
Section 3 - Description of Weapon(s) _____ 5
Section 4 - CCW License Conditions and Restrictions _____ 6
Section 5 - Applicable California Penal Code Sections _____ 7
Section 6 - Agreement to Restrictions and to Hold Harmless _____ 10
Section 7 - Investigator's Interview Notes _____ 11
Section 8 - Certification and Release of Information _____ 14

Attachment 1 - California Prohibiting Categories for a CCW License _____ 16
Attachment 2 - California Prohibiting Misdemeanors _____ 17
Attachment 3 - Federal Prohibiting Categories for Possessing Firearms _____ 19

**Exhibit C, Page 60**

JSER0142



Attachments

State of California, Department of Justice

# Standard Application for CCW License

Official Use Only -Type of Permit
Requested ( ) Standard    ( ) Judge
( ) Reserve Officer ( ) 90 Day

## Public Disclosure Admonition

I understand that I am obligated to be complete and truthful in providing information on this application. I understand that all of the information disclosed by me in this application may be subject to public disclosure.

_____   Applicant Signature    # 14389

12-19-2010
Date

_____   Witness Signature / Badge Number

12/29/10
Date

## Section I - Applicant Personal Information

Name: THOMSON    Robert    JAMES
     Last        First      Middle

If Applicable,
Maiden Name or Other Name(s) Used: Robby, Bob

City and County
of Residence: Torrance, Los Angeles    Country of Citizenship: U.S.A.

Date of Birth: 12-15-1970   Place of Birth: Harbor City, Los Angeles, CA
                                          City          County      state

Height: 5'6   Weight: 185   Color Eyes: Blue   Color Hair: Brown

## Section 2 - Applicant Clearance Questions

1.  Do you now have, or have you ever had a license to carry a concealed weapon (CCW)?
    No_____ Yes ✓ (If yes, please indicate below. Use additional pages if necessary.)

Issuing Agency  UtAH _____ Issue Date 10-6-2008 CCW# C256808

2.  Have you ever applied for and been denied a license to carry a concealed weapon?
    No_____ Yes ✓ (If yes, give agency name, date and reason for denial.)

April 1, 2009    See Attachment

_____

-3-

State of California, Department of Justice
## Standard Application for CCW License

### Section 2 - Applicant Clearance Questions - (continued)

3. Have you ever held and subsequently renounced your United States citizenship?
   No ✓ Yes _____ (If yes, explain): _____

4. If you served with the Armed Forces, were you ever convicted of any charges or was your discharge other than honorable? No ✓ Yes _____ (If yes, explain):
   _____
   _____

5. Are you now, or have you been, a party to a lawsuit in the last rive years?
   No _____ Yes ✓ (If yes, explain):
   Small claim regarding my SpA (Resolved 2008)
   _____
   _____

6. Are you now, or have you been, under a restraining order(s) from any court?
   No ✓ Yes _____ (If yes, explain):
   _____

7. Are you on probation or parole from any state for conviction of any offense including traffic? No ✓ Yes _____ (If yes, explain):
   _____
   _____

-4-

State of California, Department of Justice
## Standard Application for CCW License

### Section 2 . Applicant Clearance Qu

2735(d)(1)
Seat belt

8.  List all traffic violations (moving violati            nts you have had in the last
    five years. (Use additional pages if nec

Date _____  Violation / Accident _____          _____ Agency / Citation # _____

| 7-6-2006 | 21650 V.C. | SigNAl Hill PD | 5187066 |
| 6-29-2006 | 22349(A) V.C. | CHP | 42922B5 |
| 4-28-2010 | 27315(d)(1) V.C. | GarDenA | G215190 |

9.  Have you ever been convicted for any criminal offense (civilian or military) in the U.S. or any other
    country?

    No __✓__ Yes _____  (If yes, explain including date, agency, charges, and disposition.)

10. Have you withheld any fact that might affect the decision to approve this license?

    No __✓__ Yes _____ (If yes, explain):

### Section 3 . Descriptions of Weapons:

List below the weapons you desire to carry if granted a CCW. You may carry concealed only the weapon(s)
which you list and describe herein, and only for the purpose indicated. Any misuse will cause an automatic
revocation and possible arrest. (Use additional pages if necessary.)

| | Make | Model | Caliber | Serial No. |
|---|---|---|---|---|
| 1. | Glock | 22 | .40 | DKL431 45 |
| 2. | Glock | 27 | .40 | HGZ826 |
| 3. | | | | |

-5-

State of California, Department of Justice
## Standard Application for CCW License

### Section 4 - CCW License Conditions and Restrictions

The licensee is responsible for all liability for, injury to, or death of any person, or damage to any property which may result through any act or omission of either the licensee or the agency that issued the license. In the event any claim, suit, or action is brought against the agency that issued the license, its chief officer or any of its employees, by reason of, or in connection with any such act or omission, the licensee shall defend, indemnify, and hold harmless the agency that issued the license, its chief officer or any of its employees from such claim, suit, or action.

The licensee authorizes the licensing agency to investigate, as they deem necessary, the licensee's record and character to ascertain any and all information which may concern his/her qualifications and justification to be issued a license to carry a concealed weapon and release said agency of any and all liability arising out of such investigation.

While exercising the privileges granted to the licensee under the terms of this license, the licensee shall not, when carrying a concealed weapon:

- Consume any alcoholic beverage.
- Be in a place having a primary purpose of dispensing alcoholic beverages for on-site consumption.
- Be under the influence of any medication or drug, whether prescribed or not.
- Refuse to show the license or surrender the concealed weapon to any peace officer upon demand.
- Impede any peace officer in the performance of his/her duties.
- Present himself/herself as a peace officer to any person unless he/she is, in fact, a peace officer as defined by California law.
- Unjustifiably display a concealed weapon.
- Carry a concealed weapon not listed on the permit
- Carry a concealed weapon at times or circumstances other than those specified in the permit.

Pursuant to U.S. Government Code - Title 49, Chapter 26, Section 1472 (1) and Federal Aviation Regulation 121.583, a license to carry a concealed weapon does not authorize a person to carry a firearm, tear gas, or any dangerous weapon aboard commercial airlines. Further, a person must declare that he/she is carrying such firearm, tear gas, or dangerous weapon BEFORE entering the boarding area of an air terminal where the security checks are made. Such violation can result in arrest by law enforcement.

Any violation of these restrictions or conditions may invalidate the CCW license and may void any further use of the license until reinstated by the licensing authority. Any arrest for a felony or serious misdemeanor, including driving under the influence of alcohol and/or drugs, is cause for invalidating the license.

-6-

State of California, Department of Justice
## Standard Application for CCW License

### Section 5 -  Applicable California Penal Code Sections

The following Penal Code sections are of special importance to the holder of a CCW license regarding the use, carrying, and storage of firearms:

Penal Code Section 12051 - Applications for CCW Licenses; False Statements

(b) Any person who files an application required by subdivision (a) knowing that statements contained therein are false is guilty of a misdemeanor.
(c) Any person who knowingly makes a false statement on the application regarding any of the following shall be guilty of a felony:
  (1) The denial or revocation of a license, or the denial of an amendment to a license, issued pursuant to Section 12050.
  (2) A criminal conviction.
  (3) A finding of not guilty by reason of insanity.
  (4) The use of a controlled substance.
  (5) A dishonorable discharge from military service.
  (6) A commitment to a mental institution.
  (7) A renunciation of United States citizenship.

### Penal Code Section 192 - Manslaughter
Manslaughter is the unlawful killing of a human being without malice.
(a) Voluntary - upon a sudden quarrel or heat of passion.
(b) Involuntary - in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; provided that this subdivision shall not apply to acts committed in the driving of a vehicle.

### Penal Code Section 197 - Justifiable Homicide; Any Person
Homicide is justifiable when committed by any person in any of the following cases:
1.  When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or,
2.  When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the of offering violence to any person therein; or,
3.  When committed in the lawful defense of such person, or of a wife or husband, parent, child, master, mistress, or servant of such person, when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or the person in whose behalf the defense was made, if he was the assailant or engaged in mutual combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed; or,
4.  When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace.

-7-

State of California, Department of Justice

# Standard Application for CCW License

## Section 5 - Applicable California Penal Code Sections -   (continued)

**Penal Code Section 198 - Justifiable Homicide; Sufficiency of Fear**
**(Limitation of Self-defense of Property Rule)**
A bare fear of the commission of any of the offenses mentioned in subdivisions 2 and 3 of Section 197, to prevent which homicide may be lawfully committed, is not sufficient to justify it. But the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone.

**Penal Code Section 199 - Justifiable and Excusable Homicide; Discharge of Defendant**
The homicide appearing to be justifiable or excusable, the person indicted must, upon his trial, be fully acquitted and discharged.

**Penal Code Section 12035 - Storage of Firearms Accessible to Children**
(a) As used in this section, the following definitions shall apply:
  (1) "Locking device" means a device that is designed to prevent the firearm from functioning and when applied to the firearm, renders the firearm inoperable.
  (2) "Child" means a person under the age of 16 years. (3) "Off-premises" means premises other than the premises where the firearm was stored.
  (4) "Locked container" has the same meaning as set forth in subdivision (d) of Section 12026.2.
(b)(1) Except as provided in subdivision (c), a person commits the crime of "criminal storage of a firearm of the first degree" if he or she keeps any loaded firearm within any premise which is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child parent or legal guardian and the child obtains access to the firearm and thereby causes death or great bodily injury to himself, herself, or any other person.
  (2) Except as provided in subdivision (c), a person commits the crime of "criminal storage of a firearm of the second degree" if he or she keeps any loaded firearm within any premise which is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child's parent or legal guardian and the child obtains access to the firearm and thereby causes injury, other than great bodily injury, to himself, herself, or any other person, or carries the firearm either to a public place or in violation of Section 417.
(c) Subdivision (b) shall not apply whenever any of the following occurs:
  (1) The child obtains the firearm as a result of an illegal entry to any premises by any person.
  (2) The firearm is kept in a locked container or in a location that a reasonable person would believe to be secure.
  (3) The firearm is carried on the person or within such a close proximity thereto so that the individual can readily retrieve and use the firearm as if carried on the person.
  (4) The firearm is locked with a locking device that has rendered the firearm inoperable.
  (5) The person is a peace officer or a member of the armed forces or national guard and the child obtains the firearm during, or incidental to, the performance of the person's duties.
  (6) The child obtains, or obtains and discharges, the firearm in a lawful act of self-defense or defense of another person, or persons.
  (7) The person who keeps a loaded firearm on any premise which is under his or her custody or control has no reasonable expectation, based on objective facts and circumstances, that a child is likely to be present on the premise.

-8-

**Exhibit C, Page 67**

JSER0149

State of California, Department of Justice
## Standard Application for CCW License

### Section 5 - Applicable California Penal Code Sections -   (continued)

**Penal Code Section 12036 -Firearms Accessed by Children and Carried Off-premises**

(a) As used in this section, the following definitions shall apply:
  (1) "Locking device" means a device that is designed to prevent the firearm from functioning and when applied to the firearm, renders the firearm inoperable.
  (2) "Child" means a person under the age of 16 years. (3) "Off-premises" means premises other than the premises where the firearm was stored.
  (4) "Locked container" has the same meaning as set forth in subdivision (d) of Section 12026.2.

(b) A person who keeps a pistol, revolver, or other firearm capable of being concealed upon the person, loaded or unloaded, within any premise that is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to that firearm without the permission of the child's parent or legal guardian and the child obtains access to that firearm and thereafter caries that firearm off-premises, shall be punished by imprisonment in a county jail not exceeding one year, by a fine not exceeding one thousand dollars ($ 1,000), or by both that imprisonment and fine.

(c) A pistol, revolver, or other firearm capable of being concealed upon the person that a child gains access to and carries off-premises in violation of this Section shall be deemed "used in the commission of any misdemeanor as provided in this code or any felony" for the purpose of subdivision (b) of Section 12028 regarding the authority to confiscate firearms and other deadly weapons as a nuisance.

(d) This Section shall not apply if any one of the following circumstances exists:
  (1) The child obtains the pistol, revolver, or other firearm capable of being concealed upon the person as a result of an illegal entry into any premises by any person.
  (2) The pistol, revolver, or other firearm capable of being concealed upon the person is kept in a locked container or in a location that a reasonable person would believe to be secure.
  (3) The pistol, revolver, or other firearm capable of being concealed upon the person is locked with a locking device that has rendered the firearm inoperable.
  (4) The pistol, revolver, or other firearm capable of being concealed upon the person is carried on the person within such a close range that the individual can readily retrieve and use the firearm as if carried on the person.
  (5) The person is a peace officer or a member of the armed forces or national guard and the child obtains the pistol, revolver, or other firearm capable of being concealed upon the person during, or incidental to, the performance of the person's duties.
  (6) The child obtains, or obtains and discharges, the pistol, revolver, or other firearm capable of being concealed upon the person in a lawful act of self-defense or defense of another person or persons.
  (7) The person who keeps a pistol, revolver, or other firearm capable of being concealed upon the person has no reasonable expectation, based on objective facts and circumstances, that a child is likely to be present on the premises.

-9-

State of California, Department of Justice
## Standard Application for CCW License

### Section 6 - Agreement to Restrictions and to Hold Harmless

I accept and assume all responsibility and liability for, injury to, or death of any person, or damage to any property which may result through any act or omission of either the licensee or the agency that issued the license. In the event any claim, suit or action is brought against the agency that issued the license, its chief officer or any of its employees, by reason of, or in connection with any such act or omission, the licensee shall defend, indemnify, and hold harmless the agency that issued the license, its chief officer or any of its employees from such claim, suit, or action.

I understand that the acceptance of my application by the licensing authority does not guarantee the issuance of a license and that fees and costs are not refundable if denied. I further understand that if my application is approved and I am issued a license to carry a concealed weapon, that the license is subject to restrictions placed upon it and that misuse of the license will cause an automatic revocation and possible arrest and that the license may also be suspended or revoked at the discretion of the licensing authority at any time. I am aware that any use of a firearm may bring criminal action or civil liability against me.

I have read, understand, and agree to the CCW license liability clauses, conditions, and restrictions stated in this Application and Agreement to Restrictions and to Hold Harmless.

I have read and understand the applicable Penal Code sections regarding False Statements on a CCW Application, Manslaughter, Killing in Defense of Self or Property, Limitation on Self-defense and Defense of Property, and Child Access and Firearm Storage, stated in this application.

I have read and understand Attachment 1 - California Prohibiting Categories for a CCW License, Attachment 2 - California Prohibiting Misdemeanors, and Attachment 3 - Federal Prohibiting Categories for Possessing Firearms. I further acknowledge that these Prohibiting Categories can be amended or expanded by state or federal legislative or regulatory bodies and that any such amendment or expansion may affect my eligibility to hold a CCW.

_____        12-19-2010
Applicant Signature                          Date

_____  1013?        12-23-2010
Witness Signature / Badge Number           Date

-10-

**Exhibit C, Page 69**

JSER0151

State of California, Department of Justice
## Standard Application for CCW License

### Section 7 - Investigator's Interview Notes

Applicant
Name: THomson          Robert          JAmes
         Last              First              Middle

Date of Birth: 12-15-1970          Age: 40

Social Security No.: 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

California DLAD No.: A1385180

Driver's License Restrictions: None

Residence Address:

16423 HAAS Ave                              torrance, CA 90504
Number    Street                Apt.    City    State    Zip

Mailing Address (if different):

Same As Above
Number    Street                Apt    City    State    Zip

Home / Personal Phone Numbers: (310) 619-0019

Spouse's Name and Address: Cristina Thomson

16423 HAAS Ave torrance, CA 90504

Applicant Occupation: Bail Bonds Agent

Business / Employer Name: CAught up Bail Bonds (owner)

Business Phone Number: (310) 320-2245  (310) 320-Bail

Business Address:

2309 torrance blod          #205    torrance, CA 90501
Number    Street                Apt    City    State    Zip

1.   List all previous home addresses for the past five years.

1811 S. CAbrillo Ave #3 San pedro, CA 90731

439 mitchell LN Arroyo GrawDE CA 93420

-11-

State of California, Department of Justice

## Standard Application for CCW License

### Section 7 - Investigator's Interview Notes -   (continued)

2.  Have you ever been in a mental institution, treated for mental illness, or been found not-guilty by reason of insanity ? No __✓__ Yes _____ (If yes, explain):

_____

_____

3.  Are you now, or have you ever been, addicted to a controlled substance or alcohol, or have you ever utilized an illegal controlled substance, or have you ever reported to a detoxification or drug treatment program? No __✓__ Yes _____ (If yes, explain):

_____

_____

4.  Have you ever been involved in an incident involving firearms?
No __✓__ Yes _____ (If yes, explain):

_____

_____

_____

5.  Have you been involved in a domestic violence incident?
No __✓__ Yes _____ (If yes, explain):

_____

_____

6.  List any arrests or formal charges, with or without disposition, for any criminal offenses within the U.S. or any other country (civilian or military).

_Not Applicable._

_____

_____

-12-

Exhibit C, Page 71

JSER0153

State of California, Department of Justice
## Standard Application for CCW License

### Section 7 - Investigator's Interview Notes - (continued)

If the CCW license is desired for self-protection, the protection of others, or for the protection of large sums of money or valuable property, you are required to explain and provide good cause for issuance of the license. For example, has your fife or property been threatened or jeopardized? Explain incidents and include dates, times, locations, and names of police agencies to which these incidents were reported.

Details of Reason for Applicant Desiring a CCW License (use additional sheets if needed).

See good cause statement

-13-

**Exhibit C, Page 72**

JSER0154

## GOOD CAUSE STATEMENT

I am a licensed California Bail Agent. I have been licensed for over three years. I am alone when I meet with co-signers and defendants at their homes in violent high crime areas within Los Angeles County such as Compton, Inglewood, Watts, and South Los Angeles as well as city and county jails to fill out paperwork and receive payment for I am called to post bail at all hours of the day and night.  Often when I bail out a person I am in neighborhoods where other suspects are a danger to me.  I don't know the backgrounds of clients who may be disgruntled and have a grudge against me.  While in the process of my Bail Agent duties I sometimes have in my possession over $10,000 in cash.

I fear great bodily injury or death from an armed assailant who has the intent to steal my cash or harm me. I am a man of small stature, and work very late hours of the night. The criminal element that I deal with presents a danger to my safety that cannot be mitigated by law enforcement resources or other means available to me. I don't have any other means of defending myself.  The areas I work in have a higher violent crime rate than the rest of the state.  I have attached the 2007 crime rate statistics from Melissadata.com which is the most recent for Compton, Lynwood, Inglewood, and Los Angeles, cities in which I frequently post bail.

This creates an exigency that shows that I need a CCW more than some regular Joe off the street. I want to have it to protect myself and my family. I work out of my house as my office so I meet clients at their home or an establishment. (Fast food, star bucks, home.

Beginning in January of 2000.all applicants for a bail agents license in California had to complete a course prescribed in California penal code section 1299 if they were going to apprehend their own clients that failed to appear in court or those defendants of other bail agents agencies.

One requirement under P.C.1299 is that the bail agent or bail fugitive recovery person must complete a course of powers of arrest approved by the Bureau of Security and Investigative Services, because of this requirement many Bail Agents or Bail Fugitive Recovery Persons also take the security guard exposed firearm training to receive an exposed firearm permit from the BSIS.  They then believe that they can now carry a firearm exposed while attempting or making an arrest of a bail fugitive.

Penal code 12031(k) states "Nothing in this section is intended to preclude the carrying a loaded firearm by any person while engaged in the act of making or attempting to make a lawful arrest" as a bail agent or bail recovery person, they may carry the loaded firearm only during the arrest itself, not before or after the arrest, need to be transported unloaded in and locked container. From the attorney general's office Leslie McGovern firearms division.

State of California, Department of Justice
## Standard Application for CCW License

### Section 8 - Certification and Release of Information

I hereby give permission to the agency to which this application is made to conduct a background investigation of me and to contact any person or agency who may add to or aid in this investigation. I further authorize persons, firms, agencies and institutions listed on this application to release or confirm information about me and statements I have made as contained in this application.

Notwithstanding any other provision of law and pursuant to the Public Records Act (Government Code section 6250 et seq.), I understand that information contained in this application may be a matter of public record and shall be made available upon request or court order.

I hereby certify under penalties of perjury and Penal Code section 1205 1 (b) and (c), that the answers I have given are true and correct to the best of my knowledge and belief, and that I understand and agree to the provisions, conditions, and restrictions herein or otherwise imposed.

_____       12-19- 2010
Applicant Signature                                    Date

_____       12-23-10
Witness Signature / Badge Number              Date

-14-

State of California, Department of Justice

## Standard Application for CCW License

### *Attachment 1*

## CALIFORNIA PROHIBITING CATEGORIES FOR A CCW LICENSE
## As of January, 1999

- Persons convicted of a felony, or any offense enumerated in section 12021.1 of the Penal Code (PC).

- Persons addicted to the use of narcotics.

- Persons denied firearm possession as a condition of probation pursuant to PC section 1202 1 (d).

- Persons convicted of a specified misdemeanor pursuant to PC section 1202 1 (c)(1) are prohibited from purchasing or possessing firearms for 10 years (see Attachment 2).

- Juveniles adjudged wards of the juvenile court because they committed a 707(b) Welfare and Institutions Code (WIC) offense, an offense described in PC section 1203.073 (b) or any offense enumerated in PC section 12021 (c) (1) are prohibited until they reach age 30.

- Persons who are subject to a protective order as defined in section 6218 of the Family Code, or a temporary restraining order or injunction issued pursuant to sections 527.6 or 527.8 of the Code of Civil Procedure.

- Persons found by a court to be a danger to others because of mental illness.

- Persons found by a court to be mentally incompetent to stand trial.

- Persons found by a court to be not guilty by reason of insanity.

- Persons adjudicated to be a mentally disordered sex offender.

- Persons placed on a conservatorship because they are gravely disabled as a result of a mental disorder or impairment by chronic alcoholism.

- Persons who communicate a threat to a licensed psychotherapist, against a reasonably identifiable victim, and the psychotherapist reports to law enforcement pursuant to WIC section 8100(b), are prohibited from purchasing or possessing a firearm for 6 months.

- Persons in a mental health facility certified pursuant to WIC sections 5250, 5260, and 5270.15 are prohibited from possessing or purchasing or attempting to purchase firearms for 5 years.

- Persons who are voluntary patients in a mental facility who are determined to be a danger to self or others are prohibited form purchasing or possessing a firearm between admission and discharge.

- Persons under indictment or information in any court for a crime punishable by imprisonment for a term exceeding one year.

-16-

State of California, Department of Justice

## Standard Application for CCW License

### *Attachment 2*

## CALIFORNIA PROHIBITING MISDEMEANORS
## As of January, 1999

**Pursuant to Penal Code (PC) section 12021(c)(1), any person who has been convicted of a misdemeanor violation for any of the following offenses is prohibited from owning, possessing, or having under his or her custody or control any firearms within 10 years of the conviction:**

- Threatening public officers, employees and school officials (PC section 71).
- Threatening certain public officials, appointees, judges, staff or their families with the intent and apparent to carry out the threat (PC section 76).
- Possessing a deadly weapon with the intent to intimidate a witness (PC section 136.5).
- Threatening witnesses, victims, or informants (PC section 140).
- Attempting to remove or take a firearm from the person or immediate presence of a public or peace officer (PC section 148(d)).

- Unauthorized possession of a weapon in a courtroom, courthouse or court building, or at a public meeting (PC section 17 1 (b)).
- Bringing into or possessing a loaded firearm within the state capitol, legislative offices, etc. (PC section 171c).
- Taking into or possessing loaded firearms within the Governor's Mansion or residence of other constitutional officers, etc. (PC section 171(d)).
- Supplying, selling or giving possession of a firearm to a person for participation in criminal street gangs (PC section 186.28).
- Assault (PC sections 240, 241).

- Battery (PC sections 242, 243).
- Assault with a stun gun or Taber weapon (PC section 244.5).
- Assault with deadly weapon or force likely to produce great bodily injury (PC section 245).
- Assault with a deadly weapon or instrument, by any means likely to produce great bodily injury or with a gun or Taber on a school employee engaged in performance of duties (PC section 245.5).
- Shooting at an inhabited or occupied dwelling house, building, vehicle, aircraft, horse cart or camper (PC section 246).

- Discharging a firearm in a grossly negligent manner (PC section 246.3).
- Shooting at an unoccupied aircraft, motor vehicle, or uninhabited building or dwelling house (PC section 247).
- Inflicting corporal injury on a spouse or significant other (PC section 273.5).
- Willfully violating a domestic protective order (PC section 273.6).

-17-

State of California, Department of Justice

# Standard Application for CCW License

## Attachment 2 (Continued)

## CALIFORNIA PROHIBITING MISDEMEANORS
## As of January, 1999

- Drawing, exhibiting, or using any deadly weapon other than a firearm (PC sections 417(a)(1), 417(a)(2)).
- Brandishing a firearm in presence of a peace officer (PC section 417.1 - repealed by stats. 1998).
- Drawing or exhibiting, selling, manufacturing, or distributing firearm replicas or imitations (PC section 417.2).
- Inflicting serious bodily injury as a result of brandishing (PC section 417.6).
- Bringing into or possessing firearms upon or within public schools and grounds (PC section 626.9). Stalking (PC section 646.9).

- Armed criminal action (PC section 12023).
- Possessing a deadly weapon with intent to commit an assault (PC section 12024).
- Driver of any vehicle who knowingly permits another person to discharge a firearm from the
- vehicle or any person who willfudly **and maliciously discharges a firearm** from a motor vehicle (PC sections 12034(b), 12034(d)).
- Criminal possession of a firearm (PC section 12040).
- Firearms dealer who sells or transfers or gives possession of any firearm to a minor or a handgun to a person under the age of 21 (PC section 12072(b)).

- Various violations involving sales and transfers of firearms (PC section 12072(g)(3)).
- Person or corporation who sells any concealable firearm to any minor (PC section 12 1 00(a) - repealed by stats. 1994).
- Unauthorized possession/transportation of a machine gun (PC section 12220).
- Possession of ammunition designed to penetrate metal or armor (PC section 12320).
- Carrying a concealed or loaded firearm or other deadly weapon or wearing a peace officer uniform, while picketing (PC section 12590).

- Bringing firearm related contraband into juvenile hall (WIC section 871.5).
- Bringing firearm related contraband into a youth authority institution (WIC section 100 1.5).
- Purchase, possession, or receipt of a firearm or deadly weapon by a person receiving in-patient treatment for a mental disorder, or by a person who has communicated to a licensed psychotherapist a serious violence against an identifiable victim (WIC section 8100).
- Providing a firearm or deadly weapon to a person described in WIC sections 8 1 00 or 8103 (WIC section 8101).
- Purchase, possession, or receipt of a firearm or deadly weapon by a person who has been adjudicated to be a mentally disordered sex offender or found to be mentally incompetent to stand trial, or not guilty by reason of insanity, and individuals placed under a conservatorship (WIC section 8103).

-18-

State of California, Department of Justice

## Standard Application for CCW License

### *Attachment 3*

## FEDERAL PROHIBITING CATEGORIES FOR POSSESSING FIREARMS
## Gun Control Act of 1968, Title 18 U.S.C. Chapter 44
## As of January, 1999

Pursuant to Section 922, any person listed below is prohibited from possessing, shipping, transporting, or receiving any firearm, who:

- Has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year.

- Is a fugitive from justice.

- Is an unlawful user of or addicted to any controlled substance.

- Has been adjudicated as a mental defective or committed to a mental institution.

- Is an alien illegally or unlawfully in the United States.

- Has been discharged from the Armed Forces under dishonorable conditions .

- Having been a citizen of the United States, has renounced U.S. citizenship.

- Is subject to a court order that restrains the person from harassing, stalking, or threatening an intimate partner or child of such intimate partner.

- Has been convicted in any court of a misdemeanor crime of domestic violence.

- Is under indictment for a crime punishable by imprisonment for a term exceeding one year.

- Has an out-of-state prohibitive criminal history.

- Has a prior denial on a previous National Instant Criminal Background Check System (NICS) inquiry.

-19-

**Exhibit C, Page 78**

JSER0160

# Tab 4

1  TORRANCE CITY ATTORNEY'S OFFICE
   John L. Fellows III (State Bar No. 103968)
2  City Attorney
   jfellows@TorranceCA.gov
3  Della Thompson-Bell (State Bar No. 224846)
   Deputy City Attorney
4  dthompsonbell@TorranceCA.Gov
   3031 Torrance Boulevard
5  Torrance, CA 90503
   Telephone:  310-618-5810
6  Facsimile:  310-618-5813

7  RUTAN & TUCKER, LLP
   Robert S. Bower (State Bar No. 70234)
8  rbower@rutan.com
   Ajit S. Thind (State Bar No. 268018)
9  athind@rutan.com
   611 Anton Boulevard, Fourteenth Floor
10 Costa Mesa, California 92626-1931
   Telephone:  714-641-5100
11 Facsimile:  714-546-9035

12 Attorneys for Defendant
   TORRANCE POLICE DEPARTMENT

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15 | ROBERT THOMSON,                    | Case No. CV11-06154 SJO (JCx)
16 |              Plaintiff,            | Date Action Filed: July 26, 2011
17 |        vs.                         | Assigned to:
                                        | U.S. District Judge S. James Otero
18 | TORRANCE POLICE                    | **DEFENDANT TORRANCE POLICE**
   | DEPARTMENT and THE LOS             | **DEPARTMENT'S STATEMENT OF**
19 | ANGELES COUNTY SHERIFFS            | **UNCONTROVERTED FACTS AND**
   | DEPARTMENT,                        | **CONCLUSIONS OF LAW**
20 |              Defendants.
21 |                                    | Date:        February 27, 2012
   |                                    | Time:        10:00 a.m.
22 |                                    | Courtroom:   1-2nd Floor
   |                                    | Location:    Spring Street
23
24
25
26
27
28

102/062579-0097
2716672.1 a12/28/11

Case No. CV11-06154 SJO (JCx)
ST. OF UNCONTROVERTED FACTS &
CONCLUSIONS OF LAW

JSER0161

Pursuant to Central District of California Rule 56-1, Defendant Torrance Police Department ("TPD") respectfully submits the following "Separate Statement of Uncontroverted Facts and Conclusions of Law" in support of its Motion for Summary Judgment:

## UNCONTROVERTED FACTS

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 1.    A true copy of the TPD's "good cause" policy for issuing a CCW license is attached to Chief Neu's declaration as Exhibit A. | Declaration of Chief of Police John Neu filed concurrently herewith ("Neu Decl."), ¶ 2, Ex. A. |
| 2.    Plaintiff submitted his first application to the TPD for a CCW license on December 19, 2008 ("First Application").  A true copy of the First Application is attached to Chief Neu's declaration as Exhibit B. | Neu Decl., ¶ 5, Ex. B. |
| 3.    In his First Application, Plaintiff claimed (i) to be a licensed California Bail Agent residing in the City of Torrance; (ii) that due to his job, he sometimes had over $10,000 in cash in his possession late at night in high crime areas; (iii) he had passed multiple criminal background checks, and had completed a course on powers of arrest provided by the Bureau of Security and Investigative Services; (iv) that on one | Neu Decl., ¶ 5, Ex. B, pp. 9-11, 26, 28, 29. |

102/062579-0097
2716672.1 a12/28/11

-1-

Case No. CV11-06154 SJO (JCx)
ST. OF UNCONTROVERTED FACTS &
CONCLUSIONS OF LAW

JSER0162

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| occasion, while meeting a client's family, a man answered the door holding a firearm; and (v) that on another occasion, he needed the assistance of the Los Angeles Sheriff's Norwalk Station to help him arrest a subject who had a bail warrant. In neither incident was Plaintiff assaulted, and he did not file a police report in either incident. | |
| 4.      Plaintiff's First Application was denied by the TPD on April 1, 2009, based on Plaintiff's failure to demonstrate "good cause" under the TPD's "good cause" policy because there were no documented specific threats directed at Plaintiff, and there was no evidence that local police agencies could not assist Plaintiff with any problems that might arise while Plaintiff performed his work as a bail agent. | Neu Decl., ¶ 6, Ex. B at pp. 8-11. |
| 5.      Plaintiff submitted his second application to the TPD for a CCW license on December 19, 2010 ("Second Application"). A true copy of | Neu Decl., ¶ 7, Ex. C. |

102/062579-0097
2716672.1 a12/28/11                            -2-

Case No. CV11-06154 SJO (JCx)
ST. OF UNCONTROVERTED FACTS &
CONCLUSIONS OF LAW

JSER0163

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| the Second Application is attached to Chief Neu's declaration as Exhibit C. | |
| 6.   In his Second Application, Plaintiff recounted only one incident in addition to the grounds he had set forth in his first application as justification for a license.  That new incident actually did not involve Plaintiff's job - rather, it involved his wife's, who works in real estate.  While assisting her in changing the lock at a unit in a residential complex located in the City of Los Angeles, Plaintiff was allegedly confronted by the former tenants of the unit and some other tenants who threatened Plaintiff with physical harm and threw household items at him. Plaintiff contacted the LAPD, and the change of lock was thereafter completed without incident. | Neu Decl., Ex. C, pp. 56, 73. |
| 7.   Plaintiff's Second Application was denied by the TPD on April 5, 2011, based on Plaintiff's failure to demonstrate "good cause" under the TPD's "good cause" policy because (i) Plaintiff recounted only one | Neu Decl., ¶¶ 8, 9, Ex. C, at pp. 53, 57. |

JSER0164

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| incident in addition to the grounds he had set forth in his First Application as justification for a CCW license, (ii) there were no documented specific threats directed at Plaintiff, and (iii) there was no evidence that local police agencies could not assist Plaintiff with any problems that might arise while Plaintiff performed his work as a bail agent. | |
| 8.      In his CCW applications, Plaintiff admitted that:<br><br>• he had never been threatened within the jurisdiction of the TPD;<br><br>• he had no security concerns within the jurisdiction of the TPD;<br><br>• he had never been physically assaulted or robbed during the course of his employment in any jurisdiction;<br><br>• he had never had to file a report with any police agency regarding threats made against him or his family; | Neu Decl., ¶ 9; Ex. B, pp. 10-11, 29; Ex. C, pp. 56-57, 73. |

JSER0165

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| • he evaluates every bail bond with safety in mind, and if he believes there is any type of risk, he refuses to take the case; and<br>• his concerns were with the "unforeseen" and "what ifs" that went along with his job. | |

## THE TPD'S PROPOSED CONCLUSIONS OF LAW AND PROPOSED JUDGMENT

Based on the foregoing Uncontroverted Facts, the TPD submits that certain Conclusions of Law should be made as respectively set forth below:

1. There is no Second Amendment right to carry a concealed handgun in public.

2. Even if the Second Amendment could be plausibly read to protect a right to a CCW license, the TPD's Policy does not burden that right, and thus it is reviewed under the rational basis test. The Policy passes constitutional muster because it is reasonably related to a legitimate governmental interest.

3. Even if the TPD's Policy burdened Plaintiff's rights, and thus is reviewed under heightened scrutiny, it passes constitutional muster because the Policy is substantially related to important government interests.

4. Plaintiff is entitled to nothing under his Complaint.

5. Judgment shall be entered in Defendant TPD's favor.

## THE TPD'S PROPOSED JUDGMENT

After consideration of the papers in support of and in opposition to the cross-motions for summary judgment and the argument of counsel, this Court orders

Case No. CV11-06154 SJO (JCx)
ST. OF UNCONTROVERTED FACTS &
CONCLUSIONS OF LAW

1  summary judgment in favor of Defendant TPD.

2

3                                    Respectfully Submitted,

4  Dated:  January 3, 2012             RUTAN & TUCKER, LLP

5

6                                    By: _____

7                                        Ajit S. Thind
                                         Attorneys for The Torrance Police
8                                        Department

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV11-06154 SJO (JCx)
ST. OF UNCONTROVERTED FACTS &
CONCLUSIONS OF LAW

JSER0167

**Tab 5**

1 | TORRANCE CITY ATTORNEY'S OFFICE
John L. Fellows III (State Bar No. 103968)
2 | City Attorney
jfellows@TorranceCA.gov
3 | Della Thompson-Bell (State Bar No. 224846)
Deputy City Attorney
4 | dthompsonbell@TorranceCA.Gov
3031 Torrance Boulevard
5 | Torrance, CA 90503
Telephone: 310-618-5810
6 | Facsimile: 310-618-5813

7 | RUTAN & TUCKER, LLP
Robert S. Bower (State Bar No. 70234)
8 | rbower@rutan.com
Ajit S. Thind (State Bar No. 268018)
9 | athind@rutan.com
611 Anton Boulevard, Fourteenth Floor
10 | Costa Mesa, California 92626-1931
Telephone: 714-641-5100
11 | Facsimile: 714-546-9035

12 | Attorneys for Defendant
TORRANCE POLICE DEPARTMENT

13

14 | UNITED STATES DISTRICT COURT

15 | CENTRAL DISTRICT OF CALIFORNIA

16

17 | ROBERT THOMSON,

Case No. CV11-06154 SJO (JCx)
Date Action Filed: July 26, 2011

18 | Plaintiff,

Assigned to:
19 | U.S. District Judge S. James Otero

20 | vs.

**DEFENDANT TORRANCE POLICE
DEPARTMENT'S STATEMENT OF
21 | TORRANCE POLICE DEPARTMENT GENUINE DISPUTES OF MATERIAL
and THE LOS ANGELES COUNTY FACTS**

22 | SHERIFFS DEPARTMENT,

[Filed Concurrently With Torrance Police
23 | Department's Memorandum of Points and
Authorities in Opposition to Plaintiff's
24 | Defendants. Motion for Summary Judgment and
Declaration of Ajit Singh Thind]

25

Motion Hearing Date: Feb. 27, 2012
26 | Time: 10:00 a.m.
Courtroom: 1- 2nd Floor
27 | Location: Spring Street

28

Case No. CV11-06154 SJO (JCx)
TPD'S STATEMENT OF GENUINE
DISPUTES

2465/062579-0097
2859804.1 a02/03/12

JSER0168

**TPD'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT.**

Pursuant to Local Rule 56-2 of the Central District Court, Defendant TORRANCE POLICE DEPARTMENT ( "TPD") hereby submits this Statement of Genuine Disputes in response to Plaintiff ROBERT THOMSON'S ("Plaintiff") Separate Statement of Undisputed Facts Lodged Concurrently with Motion for Summary Judgment:

In this Statement, TPD responds to each of the "undisputed material facts" identified in Plaintiff's Separate Statement of Undisputed Facts:

**TPD'S RESPONSES TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACT**

| UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | RESPONSE IN OPPOSITION |
|---|---|
| 1. The California Legislative scheme requires a CCW Permit to enable Plaintiff to possess a functional firearm for self-defense purposes outside of the home. (Penal Codes 26350 (Open Carry), 12031 (Loaded) & 12025 (Concealed).) | This is not a "fact," but rather is a legal conclusion, as demonstrated by Plaintiff's statutory citations. The legal conclusion is also incomplete and incorrect, and is disputed as detailed in TPD's Motion for Summary Judgment and TPD's Opposition to Plaintiff's Motion for Summary Judgment. The California Legislative scheme provides for a variety of scenarios where Plaintiff may carry a handgun for self-defense outside of his home without a CCW. This was true |

2465/062579-0097
2859804 1 a02/03/12

-1-

Case No. CV11-06154 SJO (JCx)
TPD'S STATEMENT OF GENUINE
DISPUTES

JSER0169

| UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | RESPONSE IN OPPOSITION |
|---|---|
| | both when Plaintiff's application was denied by TPD in April 2011 and currently. Plaintiff's statement is also irrelevant as it refers to statutes that were not effective when TPD denied Plaintiff's CCW application. TPD also objects to the statement as argumentative. |
| 2.  Plaintiff applied with the Torrance Police Department (TPD) and Los Angeles County Sheriff's (LASD) Department for a permit to carry a concealed weapon pursuant to Cal. Pen. Code Section 12050. Plaintiff was denied a permit because he did not meet the Good Cause Policy of either Department.  (Stipulated facts from Joint Report of Counsel.) | Undisputed. |
| 3.  Defendants require documentation of | Undisputed, but incomplete.  To |

JSER0170

| UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | RESPONSE IN OPPOSITION |
|---|---|
| a Clear and Present Danger to the applicant before they will issue a CCW Permit. (Defendants Initial Disclosures.) | establish good cause, TPD's policy not only requires that the applicant is dealing with circumstances that distinguish the applicant from other members of the public, in that there is a clear, present, and documented danger to the applicant, but also requires that an applicant demonstrate that there are no feasible alternative means of protection, either through existing law enforcement resources or under the provisions of California Penal Code section 12031, which carve out a number of exceptions that allow individuals to possess and carry firearms in public settings for self-defense and defense of property. (Neu Decl. ¶¶ 2, 9, and Ex. A.) |

Dated: February 3, 2012

RUTAN & TUCKER, LLP
ROBERT S. BOWER
AJIT S. THIND

By: _____
Ajit S. Thind
Attorneys for Defendant
TORRANCE POLICE DEPARTMENT
Case No. CV11-06154 SJO (JCx)
TPD'S STATEMENT OF GENUINE
DISPUTES

JSER0171

**Tab 6**

1  TORRANCE CITY ATTORNEY'S OFFICE
   John L. Fellows III (State Bar No. 103968)
2  City Attorney
   jfellows@TorranceCA.gov
3  Della Thompson-Bell (State Bar No. 224846)
   Deputy City Attorney
4  dthompsonbell@TorranceCA.Gov
   3031 Torrance Boulevard
5  Torrance, CA 90503
   Telephone:  310-618-5810
6  Facsimile:   310-618-5813

7  RUTAN & TUCKER, LLP
   Robert S. Bower (State Bar No. 70234)
8  rbower@rutan.com
   Ajit S. Thind (State Bar No. 268018)
9  athind@rutan.com
   611 Anton Boulevard, Fourteenth Floor
10 Costa Mesa, California 92626-1931
   Telephone:  714-641-5100
11 Facsimile:   714-546-9035

12 Attorneys for Defendant
   TORRANCE POLICE DEPARTMENT
13

14                 UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16

17 ROBERT THOMSON,                  Case No. CV11-06154 SJO (JCx)
                                    Date Action Filed:  July 26, 2011
18          Plaintiff,
                                    Assigned to:
19     vs.                          U.S. District Judge S. James Otero

20 TORRANCE POLICE DEPARTMENT       **DEFENDANT TORRANCE POLICE**
   and THE LOS ANGELES COUNTY       **DEPARTMENT'S EVIDENTIARY**
21 SHERIFFS DEPARTMENT,             **OBJECTIONS TO THE**
            Defendants.             **DECLARATION OF LAWRENCE**
22                                  **MUDGETT**

23                                  Motion Hearing Date:   Feb. 27, 2012
                                    Time:                  10:00 a.m.
24                                  Courtroom:             1- 2nd Floor
                                    Location:              Spring Street
25

26

27

28

JSER0172

1   Defendant TORRANCE POLICE DEPARTMENT ("TPD") hereby objects to

2   the Declaration of Lawrence Mudgett # 15647 LAPD, Retired, submitted in Support

3   of Plaintiff's Motion for Summary Judgment and in Opposition to Defendants'

4   Motions for Summary Judgment.  (Lewis v. CITGO Petroleum Corp. (7th Cir. 2009)

5   561 F.3d 698, 704 [it is appropriate to make evidentiary rulings on proposed expert

6   testimony in conjunction with a summary judgment order].)

7

8   **EVIDENTIARY OBJECTIONS**

9

| Material Objected to: | Grounds for Objection: | Ruling: |
|---|---|---|
| 1. The Mudgett declaration in its entirety. | **FRE 702**.  **Improper expert opinion.** Mudgett lacks the requisite qualifications to provide expert testimony on issues related to the public policies behind CCW regulation.  In Paragraph 1, p. 2, lines 1-4, Mudgett states: "I was the Chief Firearms Instructor for LAPD SWAT for approximately 14 years and the Chief Firearms Instructor at the LAPD Police Academy for 13 years.  I am a combat veteran having served in the First Air Cavalry in Vietnam as an Infantry Light Weapons Sergeant." He also states at Paragraph 2, p. 2, lines 5-11: "I am a Utah County Delegate.  I recently testified in front of the state legislature in support of a bill to approve the 1911 pistol as the | Sustained: _____ _____ _____ Overruled: _____ _____ |

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2955611.3 a02/10/12

-2-

Case No. CV11-06154 SJO (JCx)
TPD'S EVIDENTIARY OBJECTIONS TO
DECLARATION OF LAWRENCE MUDGETT

JSER0173

| | Material Objected to: | Grounds for Objection: | Ruling: |
|---|---|---|---|
| 1 | | | |
| 2 | | official firearm of the state of Utah.  I have | |
| 3 | | lectured on the Second Amendment for the | |
| 4 | | 912 Project.  I am a Range Master at the | |
| 5 | | famous Gunsite Academy in AZ.  My wife | |
| 6 | | and I run a Defensive Firearms Training | |
| 7 | | Program here in Utah and we are NRA | |
| 8 | | instructors.  I hold 5 CCW permits.  I am | |
| 9 | | certified by the State of Utah as a CFP | |
| 10 | | (Concealed Firearms Permit) instructor.  I | |
| 11 | | have testified as an expert witness on | |
| 12 | | firearms and firearms training in Los | |
| 13 | | Angeles Superior Court." | |
| 14 | | Mudgett, however, has no | |
| 15 | | experience or education related to the | |
| 16 | | rationales behind the regulation of | |
| 17 | | concealed weapons or in designing | |
| 18 | | policies, analyzing criminal statistics, or | |
| 19 | | doing any of his own research.  For | |
| 20 | | instance, he does not have any expertise in | |
| 21 | | analyzing criminal statistics (or any | |
| 22 | | statistics for that matter), public safety | |
| 23 | | issues, or threats posed by concealed | |
| 24 | | weapons.  It is not even clear that Mudgett | |
| 25 | | actually served as a police officer in the | |
| 26 | | field.  Although Mudgett might be able | |
| 27 | | testify as an expert on firearms and | |
| 28 | | | |

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2955611.3 a02/10/12

-3-

Case No. CV11-06154 SJO (JCx)
TPD'S EVIDENTIARY OBJECTIONS TO
DECLARATION OF LAWRENCE MUDGETT

JSER0174

| | Material Objected to: | Grounds for Objection: | Ruling: |
|---|---|---|---|
| 2 | | firearms training, those issues are not | |
| 3 | | relevant for purposes of this case. | |
| 4 | | (Eagleston v. Guido (2d Cir. 1994) 41 F.3d | |
| 5 | | 865, 874 [expert with sociology degree not | |
| 6 | | qualified to provide testimony on | |
| 7 | | "criminology or domestic violence"].) | |
| 8 | | Moreover, all of Mudgett's opinions | |
| 9 | | seem to be based on reading some studies | |
| 10 | | and then summarizing other research. This | |
| 11 | | is also inadequate. (See United States v. | |
| 12 | | Kelley (D. Kan. 1998) 6 F.Supp.2d 1168, | |
| 13 | | 1184 [witnesses' "self-directed efforts at | |
| 14 | | reading reference works, talking with some | |
| 15 | | researchers and growers, and then | |
| 16 | | summarizing the work of others into | |
| 17 | | popular 'how-to guides' fails to provide | |
| 18 | | proffered expert with requisite | |
| 19 | | foundation."].) | |
| 20 | | Apart from Mudgett's lack of proper | |
| 21 | | qualifications, he also offers a variety of | |
| 22 | | unsubstantiated and speculative opinions. | |
| 23 | 2. Paragraph 3, p. 2, lines | **FRE 702**. **Improper expert opinion.** | Sustained: |
| 24 | 12-18: "I have reviewed | The expert's testimony does not provide | _____ |
| 25 | the motions for Summary | any way for the court to determine its | _____ |
| 26 | Judgment filed by | reliability. Mudgett does not explain the | Overruled: |
| 27 | Plaintiff, Torrance and | methodology by which he reaches this | _____ |
| 28 | | | |

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2955611.3 a02/10/12

-4-

Case No. CV11-06154 SJO (JCx)
TPD'S EVIDENTIARY OBJECTIONS TO
DECLARATION OF LAWRENCE MUDGETT

JSER0175

| | Material Objected to: | Grounds for Objection: | Ruling: |
|---|---|---|---|
| 1 | | | |
| 2 | LASD, including | opinion.  Moreover, Mudgett does not | \_\_\_\_\_ |
| 3 | supporting documents | have the requisite qualifications to testify | |
| 4 | and oppositions.  The | on the geographic locations of schools | |
| 5 | need to Carry concealed | within Southern California.  (Daubert v. | |
| 6 | is due only to the | Merrell Dow Pharm., Inc. (1993) 509 U.S. | |
| 7 | decision, of the | 579, 593-94 [court must determine | |
| 8 | California legislature to | methodology of the expert was applied | |
| 9 | make that the only | reliably to the facts of the case]; Stilwell v. | |
| 10 | method of permissible | Smith & Nephew, Inc. (9th Cir. 2007) 482 | |
| 11 | carry having, [sic] | F.3d 1187, 1192.) | |
| 12 | otherwise banned the | | |
| 13 | possession of a loaded | **FRE 704**.  **Improper legal conclusion.** | |
| 14 | firearm by law abiding | The expert's testimony improperly states a | |
| 15 | citizens and further, even | legal conclusion which is not permitted, | |
| 16 | the possession of an | i.e., the effect of California laws.  Experts | |
| 17 | unloaded weapon within | cannot give an opinion on their legal | |
| 18 | 1,000 feet of a school, | conclusions thereby "invading the | |
| 19 | which is Southern | province of the trial judge." (Nationwide | |
| 20 | California would make | Transport Finance v. Cass Information | |
| 21 | travel nearly an | Systems, Inc (9th Cir. 2008) 523 F.3d | |
| 22 | impossible task." | 1051, 1058.)  Moreover, as detailed in | |
| 23 | | TPD's Motion for Summary Judgment, | |
| 24 | | Opposition to Plaintiff's Motion for | |
| 25 | | Summary Judgment, and TPD's Reply, | |
| 26 | | Mudgett's legal conclusion is incorrect as | |
| 27 | | set forth in the statutes themselves. | |
| 28 | | | |

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2955611.3 a02/10/12

-5-

Case No. CV11-06154 SJO (JCx)
TPD'S EVIDENTIARY OBJECTIONS TO
DECLARATION OF LAWRENCE MUDGETT

JSER0176

| | Material Objected to: | Grounds for Objection: | Ruling: |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | **FRE 402**. **Relevance.** | |
| 4 | | The January 2012 California legislative | |
| 5 | | scheme governing weapons is not relevant | |
| 6 | | to this case, as the only relevant timeframe | |
| 7 | | is when Plaintiff's application for a CCW | |
| 8 | | permit was denied by TPD: April 2011. | |
| 9 | | | |
| 10 | | **FRE 602/703**. **Lack of foundation.** | |
| 11 | | Mudgett states that he "reviewed the | |
| 12 | | motions for Summary Judgment filed by | |
| 13 | | Plaintiff, Torrance and LASD, including | |
| 14 | | supporting documents and oppositions." | |
| 15 | | This is impossible.  Mudgett signed his | |
| 16 | | declaration on January 7, 2012.  Neither | |
| 17 | | LASD nor TPD had even filed **any** | |
| 18 | | opposition documents yet.  In fact, TPD | |
| 19 | | did not file its opposition documents until | |
| 20 | | a month later. | |
| 21 | 3. Paragraph 4, p. 2, lines | **FRE 602/703**. **Lack of Foundation.** | Sustained: |
| 22 | 19-24: "The reality is 49 | Mudgett does not explain upon what data | _____ |
| 23 | states now recognize the | these statements are based. | _____ |
| 24 | citizens to carry a | | Overruled: |
| 25 | functional, handgun in a | **FRE 702**. **Improper expert opinion.** | _____ |
| 26 | concealed manner, either | This testimony does not assist the trier of | _____ |
| 27 | by constitutional | fact in determining a factual issue that it | |
| 28 | | | |

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2955611.3 a02/10/12

-6-

Case No. CV11-06154 SJO (JCx)
TPD'S EVIDENTIARY OBJECTIONS TO
DECLARATION OF LAWRENCE MUDGETT

JSER0177

| | Material Objected to: | Grounds for Objection: | Ruling: |
|---|---|---|---|
| 1 | | | |
| 2 | amendment, "Shall Issue" | would not be able to determine on its own. | |
| 3 | system or "Good Cause": | Under <u>Daubert v. Merrell Dow Pharm.,</u> | |
| 4 | 35 states have "shall | <u>Inc.</u>(1993) 509 U.S. 579, 593-94, and | |
| 5 | issue" permit laws that | <u>Kumho Tire Co., Ltd. v. Carmichael</u> | |
| 6 | usually require states to | (1999) 526 U.S. 137, 141, expert opinion | |
| 7 | issue permits to those | testimony is only appropriate where the | |
| 8 | who meet legal | trier of fact cannot resolve the factual issue | |
| 9 | requirements; 10 others | without this specialized assistance. | |
| 10 | have "may issue" or | Moreover, it is unclear what Mudgett's | |
| 11 | discretionary permit laws. | testimony means. | |
| 12 | Vermont, Arizona, | | |
| 13 | Alaska and Wyoming do | | |
| 14 | not require a permit to | | |
| 15 | carry a concealed | | |
| 16 | weapon." | | |
| 17 | 4. Paragraph 5, p. 2, lines | <u>**FRE 702**</u>.  **Improper expert opinion.** | Sustained: |
| 18 | 25 – 27: "It is my | This testimony does not assist the trier of | _____ |
| 19 | opinion, based upon my | fact in determining a factual issue that it | _____ |
| 20 | education, training and | would not be able to determine on its own. | Overruled: |
| 21 | experience that increased | Under <u>Daubert v. Merrell Dow Pharm.,</u> | _____ |
| 22 | training reduces the risk | <u>Inc.</u>(1993) 509 U.S. 579, 593-94, and | _____ |
| 23 | of accident, injury and | <u>Kumho Tire Co., Ltd. v. Carmichael</u> | |
| 24 | misuse of firearms." | (1999) 526 U.S. 137, 141, expert opinion | |
| 25 | | testimony is only appropriate where the | |
| 26 | | trier of fact cannot resolve the factual issue | |
| 27 | | without this specialized assistance. | |
| 28 | | | |

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2955611.3 a02/10/12

-7-

Case No. CV11-06154 SJO (JCx)
TPD'S EVIDENTIARY OBJECTIONS TO
DECLARATION OF LAWRENCE MUDGETT

JSER0178

| | Material Objected to: | Grounds for Objection: | Ruling: |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | **FRE 402**.  **Relevance.** | |
| 4 | | The matters asserted are not relevant to the | |
| 5 | | issue before the Court.  For instance, | |
| 6 | | anyone can obtain increased training on | |
| 7 | | use of a firearm, regardless of whether they | |
| 8 | | apply for a CCW permit or not. | |
| 9 | 5. Paragraph 6, p. 3, lines | **FRE 602/703**.  **Lack of foundation.** | Sustained: |
| 10 | 2-7: "According to | Mudgett has not explained how his | _____ |
| 11 | studies armed citizens kill | experience has led to the conclusion he | _____ |
| 12 | more criminals in self- | reaches here, and how that experience is | Overruled: |
| 13 | defense than our Nations | reliably applied to the facts of the case. | _____ |
| 14 | police officers by about 2 | Mudgett also fails to identify any studies | _____ |
| 15 | to 1.  It is my opinion | that support his conclusion regarding | |
| 16 | based upon my | armed citizens killing more criminals than | |
| 17 | education, training and | police officers.  Mudgett theorizes, without | |
| 18 | experience that criminals | providing any causal connection evidence, | |
| 19 | tend to fear armed | that criminals tend to fear armed citizens | |
| 20 | citizens more than they | more than law enforcement officers, and | |
| 21 | fear Law enforcement | that that has caused a drop in violent crime | |
| 22 | Officers and that the | each year.  (See <u>Sorensen by & Through</u> | |
| 23 | increase in the number of | <u>Dunbar v. Shaklee Corp.</u> (8th Cir. 1994) | |
| 24 | citizens who now carry | 31 F.3d 638, 649-651 [testimony regarding | |
| 25 | concealed weapons is a | causative connection properly excluded | |
| 26 | significant factor in the | because scientific basis too speculative.].) | |
| 27 | distinct and significant | | |
| 28 | | | |

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2955611.3 a02/10/12

-8-

Case No. CV11-06154 SJO (JCx)
TPD'S EVIDENTIARY OBJECTIONS TO
DECLARATION OF LAWRENCE MUDGETT

JSER0179

| | Material Objected to: | Grounds for Objection: | Ruling: |
|---|---|---|---|
| 1 | | | |
| 2 | drop in violent crime each year (according to the FBI statics)." | **FRE 702. Improper expert opinion.** The expert's testimony does not provide any way for the court to determine the reliability of his conclusion that "criminals tend to fear armed citizens more than they fear Law enforcement Officer." Mudgett does not explain the methodology by which he reaches this opinion. Moreover, Mudgett blindly states that his opinion is based on his "education," but has provided no examples of what this education entailed. Without such information the court may not perform its "gatekeeping" role under <u>Daubert v. Merrell Dow Pharm., Inc.</u> (1993) 509 U.S. 579, 593-94, to determine that the methodology of the expert was applied reliably to the facts of the case. (<u>Stilwell v. Smith & Nephew, Inc.</u> (9th Cir. 2007) 482 F.3d 1187, 1192.) | |
| 6. Paragraph 7, p. 3, lines 8-18: "It is my opinion, based upon my education, training and experience that over the last 30 years the availability of concealed | | **FRE 702. Improper expert opinion.** This testimony does not assist the trier of fact in determining a factual issue that it would not be able to determine on its own. Under <u>Daubert v. Merrell Dow Pharm., Inc.</u> (1993) 509 U.S. 579, 593-94, and <u>Kumho Tire Co., Ltd. v. Carmichael</u> | Sustained: _____ _____ Overruled: _____ _____ |

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2955611.3 a02/10/12

-9-

Case No. CV11-06154 SJO (JCx)
TPD'S EVIDENTIARY OBJECTIONS TO
DECLARATION OF LAWRENCE MUDGETT

JSER0180

| | Material Objected to: | Grounds for Objection: | Ruling: |
|---|---|---|---|
| 1 | | | |
| 2 | carry has increased | (1999) 526 U.S. 137, 141, expert opinion | |
| 3 | dramatically from about | testimony is only appropriate where the | |
| 4 | 10 states to over 49 | trier of fact cannot resolve the factual issue | |
| 5 | currently.  It is also | without this specialized assistance. | |
| 6 | interesting to note that 4 | | |
| 7 | states now have | Mudgett also offers no justification for his | |
| 8 | Constitutional Carry | conclusion that "shall issue" states have | |
| 9 | Laws.  Wyoming, | had "success." | |
| 10 | Alaska, Vermont, and | | |
| 11 | Arizona allow any citizen | The testimony related to California | |
| 12 | who is not prohibited | residents in the last two sentences is | |
| 13 | from possessing a | argumentative and does not assist the trier | |
| 14 | handgun to carry it | of fact in determining a factual issue that it | |
| 15 | concealed.  The | would not be able to determine on its own. | |
| 16 | legislatures of Utah and | Under Daubert v. Merrell Dow Pharm., | |
| 17 | other states are | Inc. (1993) 509 U.S. 579, 593-94, and | |
| 18 | considering adopting | Kumho Tire Co., Ltd. v. Carmichael | |
| 19 | similar law.  When | (1999) 526 U.S. 137, 141, expert opinion | |
| 20 | considering the success | testimony is only appropriate where the | |
| 21 | that other states have had | trier of fact cannot resolve the factual issue | |
| 22 | with the "shall issue | without this specialized assistance. | |
| 23 | system," we must wonder | | |
| 24 | why LE officials do not | | |
| 25 | believe that the same | | |
| 26 | result would occur in CA. | | |
| 27 | One can only conclude | | |
| 28 | | | |

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2955611.3 a02/10/12

-10-

Case No. CV11-06154 SJO (JCx)
TPD'S EVIDENTIARY OBJECTIONS TO
DECLARATION OF LAWRENCE MUDGETT

JSER0181

| | Material Objected to: | Grounds for Objection: | Ruling: |
|---|---|---|---|
| 1 | | | |
| 2 | that LE officials must | **FRE 402**.  **Relevance.** | |
| 3 | believe that California | The testimony and opinion regarding | |
| 4 | residents are somehow | California residents in the last two | |
| 5 | different that the | sentence has no relevance to the issues at | |
| 6 | residents of other states. | hand. | |
| 7 | California residents must | | |
| 8 | be deemed less | | |
| 9 | trustworthy, less | | |
| 10 | restrained, more violent, | | |
| 11 | more prone to commit | | |
| 12 | crimes, etc." | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | 7. Paragraph 8, p. 3, lines | **FRE 702**.  **Improper expert opinion.** | Sustained: |
| 19 | 19-27 – p. 4, lines 1-3: | The expert's testimony does not provide | _____ |
| 20 | "It is my opinion, based | any way for the court to determine its | _____ |
| 21 | upon my education, | reliability.  Mudgett does not explain the | Overruled: |
| 22 | training, and experience | methodology by which he reaches this | _____ |
| 23 | and being familiar with | opinion.  Without such information the | |
| 24 | firearms research, | court may not perform its "gatekeeping" | _____ |
| 25 | regulation, publications | role under Daubert v. Merrell Dow Pharm., | |
| 26 | and studies, that there is | Inc. (1993) 509 U.S. 579, 593-94 to | |
| 27 | no correlation between | determine that the methodology of the | |
| 28 | | | |

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2955611.3 a02/10/12

-11-

Case No. CV11-06154 SJO (JCx)
TPD'S EVIDENTIARY OBJECTIONS TO
DECLARATION OF LAWRENCE MUDGETT

JSER0182

| | Material Objected to: | Grounds for Objection: | Ruling: |
|---|---|---|---|
| 1 | | | |
| 2 | the issuance of CCW | expert was applied reliably to the facts of | |
| 3 | permits and unlawful | the case.  (Stilwell v. Smith & Nephew, | |
| 4 | violence.  In fact as a | Inc. (9th Cir. 2007) 482 F.3d 1187, 1192.) | |
| 5 | retired law enforcement | | |
| 6 | officer, it has been my | **FRE 402**.  **Relevance.** | |
| 7 | experience that criminals | The matters asserted are not relevant to the | |
| 8 | do not seek out training | issue before the Court.  For instance, | |
| 9 | or licensing for the | anyone can obtain increased training on | |
| 10 | purpose of carrying | use of a firearm, regardless of whether they | |
| 11 | concealed weapons, and | apply for a CCW permit or not. | |
| 12 | CCW permit holders are | | |
| 13 | not in any way likely to | | |
| 14 | increase crime or | | |
| 15 | violence, and among the | | |
| 16 | gun owning population | | |
| 17 | are safer and more likely | | |
| 18 | to reduce the accident | | |
| 19 | rate because of their | | |
| 20 | increased training and | | |
| 21 | awareness.  What facts I | | |
| 22 | am aware of indicate that | | |
| 23 | armed and trained | | |
| 24 | citizens reduce crime by | | |
| 25 | their very existence, as | | |
| 26 | criminals do not know | | |
| 27 | which citizens are in fact | | |
| 28 | | | |

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2955611.3 a02/10/12

-12-

Case No. CV11-06154 SJO (JCx)
TPD'S EVIDENTIARY OBJECTIONS TO
DECLARATION OF LAWRENCE MUDGETT

JSER0183

| | Material Objected to: | Grounds for Objection: | Ruling: |
|---|---|---|---|
| 1 | | | |
| 2 | armed." | | |
| 3 | 8. Paragraph 9, p. 5, lines | **FRE 602/703**.  **Lack of foundation.** | Sustained: |
| 4 | 9-20: "The declaration of | Mudgett has not explained how his | _____ |
| 5 | Franklin Zimring is not | experience has led to the conclusion he | _____ |
| 6 | consistent with my | reaches here, and how that experience is | Overruled: |
| 7 | knowledge, training or | reliably applied to the facts of the case. | _____ |
| 8 | experience.  Mr. Zimring | For instance, he does not identify any | _____ |
| 9 | expresses theories which | training or education that gives him any | |
| 10 | are not related to CCW | ability to analyze statistics. | |
| 11 | permits and are not | | |
| 12 | consistent with any peer | **FRE 704**.  **Improper legal conclusion.** | |
| 13 | reviewed statistics.  By | The expert's testimony improperly states a | |
| 14 | way of example, one of | legal conclusion which is not permitted, | |
| 15 | the undisputed facts used | i.e., that the effect of the denial of a CCW | |
| 16 | by Zimring was the so | permit is to deny the right of self-defense. | |
| 17 | called fact that 39 percent | Experts cannot give an opinion on their | |
| 18 | of people who commit | legal conclusions thereby "invading the | |
| 19 | murder had at the time no | province of the trial judge." (Nationwide | |
| 20 | disqualifying convictions. | Transport Finance v. Cass Information | |
| 21 | My first thought is that | Systems, Inc.(9th Cir. 2008) 523 F.3d | |
| 22 | these were juveniles who | 1051, 1058.)  Moreover, as detailed in | |
| 23 | commit a good | TPD's Motion for Summary Judgment, | |
| 24 | percentage of the crime | Opposition to Plaintiff's Motion for | |
| 25 | in Los Angeles.  Their | Summary Judgment, and TPD's Reply, | |
| 26 | juvenile arrests may not | this is an incorrect view of the law. | |
| 27 | be used against them as | | |
| 28 | | | |

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2955611.3 a02/10/12

-13-

Case No. CV11-06154 SJO (JCx)
TPD'S EVIDENTIARY OBJECTIONS TO
DECLARATION OF LAWRENCE MUDGETT

JSER0184

| Material Objected to: | Grounds for Objection: | Ruling: |
|---|---|---|
| adults and they may comprise a portion of this supposed 39 percent. The second factor is that people who are arrested for serious crimes in LA are often allowed to plea the case down to a far lesser crime and the minor crime is the one they are actually convicted of.  These are weaknesses in the criminal, justice system that should not be used, to deny the right of self-defense to law abiding citizens.  I find the statistic suspicious in any case." | | |

Dated:  February 10, 2012

RUTAN & TUCKER, LLP
ROBERT S. BOWER
AJIT S. THIND

By: _____
Ajit S. Thind
Attorneys for Defendant
TORRANCE POLICE
DEPARTMENT

Rutan & Tucker, LLP
attorneys at law

2465/062579-0097
2955611.3 a02/10/12

-14-

Case No. CV11-06154 SJO (JCx)
TPD'S EVIDENTIARY OBJECTIONS TO
DECLARATION OF LAWRENCE MUDGETT

JSER0185

# Tab 7

1 | JOHN F. KRATTLI, Acting County Counsel
ROGER H. GRANBO, Assistant County Counsel
2 | JENNIFER A.D. LEHMAN, Principal Deputy County Counsel
(SBN 191477) • *jlehman@counsel.lacounty.gov*
3 | 648 Kenneth Hahn Hall of Administration
500 West Temple Street
4 | Los Angeles, California 90012-2713
Telephone: (213) 974-1908 · Fax: (213) 626-2105
5 |
Attorneys for Defendant
6 | LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

7

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | ROBERT THOMSON,                          CASE NO. CV 11-06154 SJO (JCx)

12 |                Plaintiff,                **OBJECTIONS TO PLAINTIFF'S
                                            EVIDENCE IN OPPOSITION TO**
13 |        v.                               **LASD DEFENDANT'S MOTION
                                            FOR SUMMARY JUDGMENT**
14 | TORRANCE POLICE
DEPARTMENT and THE LOS
15 | ANGELES COUNTY SHERIFF'S                **MSJ Date:      February 27, 2012**
DEPARTMENT,                              Time:          10:00 a.m.
16 |                                         Ctrm:          1
                Defendants.
17 |                                         Action Filed:  July 26, 2011
                                            **Trial Date:    None set**
18 |

19

20 |        Defendant Los Angeles County Sheriff's Department (LASD) objects to

21 | Plaintiff's evidence in Opposition to the LASD's Motion for Summary Judgment

22 | as follows:

23 |        **Declaration of Lawrence Mudgett**

24 |        Initially, Plaintiff offers the declaration of Lawrence Mudgett, a retired

25 | Chief Firearms Instructor from the Los Angeles Police Department, to opine

26 | regarding nationwide public policy and statistics regarding concealed weapons

27 | permit (CCW) possession and violence.  Defendant objects under Federal Rule of

28 | HOA.860437.1

1   Evidence 702 that Mr. Mudgett is not qualified to provide such testimony.  Mr.

2   Mudgett's credentials and curriculum vitae do not indicate that he has any

3   expertise in nationwide public policy matters related to firearms.

4        Defendant further objects as follows;

5        1.    **Paragraph 3**: "The need to Carry concealed is due only to the

6   decision of the California legislature to make that the only method of permissible

7   carry having, otherwise banned the possession of a loaded firearm by law abiding

8   citizens and further, even the possession of an unloaded weapon within 1000 feet

9   of a school, which in Southern California would make travel nearly an impossible

10  task."

11       *Objection*:  Lacks Foundation, Improper Expert Opinion, Calls for a

12  Legal Conclusion not within Declarant's Expertise.  FRE 402, 602, 701, 702-704,

13  802.

14       2.    **Paragraph 4:**  "The reality is 49 states now recognize the citizens to

15  carry a functional handgun in a concealed manner, either by constitutional

16  amendment, "Shall Issue" system or "Good Cause": 35 states have "shall issue"

17  permit laws that usually require states to issue permits to those who meet legal

18  requirements; 10 others have "may issue" or discretionary permit laws.  Vermont,

19  Arizona, Alaska and Wyoming do not require a permit to carry a concealed

20  weapon.

21       *Objection:*  Irrelevant, Lacks Foundation, Improper Expert Opinion,

22  Calls for a Legal Conclusion not with Declarant's Expertise.  FRE 402, 602, 701,

23  702, 703, 802.

24       3.    **Paragraph 5:**  "It is my opinion, based upon my education, training

25  and experience that increased training reduces the risk of accident, injury and

26  misuse of firearms.  For example, when the LAPD Firearms Training Unit

27  increased the quality of their firearms training program, both negligent and

28  HOA.860437.1

JSER0187

1  accidental discharges were reduced."

2      ***Objection:*** Irrelevant, Lacks Foundation, Improper Expert Opinion,
3  Calls for a Legal Conclusion not with Declarant's Expertise.  FRE 402, 602, 701,
4  702, 802.

5      4.    **Paragraph 6:** "According to studies armed citizens kill more
6  criminals in self-defense than our Nation's police officers by about 2 to 1.  It is
7  my opinion based upon my education, training, and experience that criminals tend
8  to fear armed citizens more than they fear law enforcement officers and that the
9  increase in the number of citizens who now carry concealed weapons is a
10  significant factor in the distinct and significant drop in violent crime each year
11  (according to the FBI statistics)."

12      ***Objection***: Lacks Foundation, Improper Expert Opinion, Calls for a
13  Legal Conclusion not Within Declarant's Expertise; Best Evidence Rule.  FRE
14  402, 602, 701, 702, 703, 802.

15      5.    **Paragraph 7:** "It is my opinion, based upon my education, training
16  and experience that over the last 30 years the availability of concealed carry has
17  increased dramatically from about 10 states to over 49 currently.  It is also
18  interesting to note that 4 states now have Constitutional Carry Laws.  Wyoming
19  Alaska, Vermont and Arizona allow any citizen who is not prohibited from
20  possessing a handgun to carry it concealed.  The legislatures of Utah and other
21  states are considering adopting similar law.  When considering the success that
22  other states have had with the "shall issue system," we must wonder why LE
23  officials do not believe that the same result would occur in CA.  One can only
24  conclude that LE officials must believe that California residents are somehow
25  different than the residents of other states.  California residents must be deemed
26  less trustworthy, less restrained, more violent, more prone to commit crimes, etc."

27

28  HOA.860437.1

JSER0188

1       *Objection:* Irrelevant, Lacks Foundation, Improper Expert Opinion,

2  Calls for a Legal Conclusion not with Declarant's Expertise. FRE 402, 602, 701,

3  702, 703, 802.

4       6.    **Paragraph 8**:

5       a)    "It is my opinion, based upon my education, training, experience, and

6  being familiar with firearms research, regulation, publications, and studies, that

7  there is no correlation between the issuance of CCW permits and unlawful

8  violence."

9       b)    "...CCW permit holders are not in any way likely to increase crime or

10  violence, and among the gun owning population are safer and more likely to

11  reduce the accident rate because of their increased training and awareness.  What

12  facts I am aware of indicate that armed and trained citizens reduce crime by their

13  very existence, as criminals do not know which citizens are in fact armed."

14       *Objection*: Hearsay, Speculation, Lacks Foundation, Improper

15  Expert Opinion, Calls for a Legal Conclusion not Within Declarant's Expertise.

16  FRE 402, 602, 701, 702, 802.

17       7.    **Paragraph 9**: "The declaration of Franklin Zimring is not consistent

18  with my knowledge, training, or experience.  Mr. Zimring expresses theories

19  which are not related to CCW permits and are not consistent with any peer

20  reviewed statistics.  By way of example, one of the undisputed facts used by

21  Zimring was the so called fact that 39 percent of people who commit murder had

22  at the time no disqualifying convictions.  My first thought is that these are

23  juveniles who commit a good percentage of the crime in Los Angeles.  Their

24  juvenile arrests may not be used against them as adults and they may comprise a

25  portion of this supposed 39 percent.  The second factor is people who are arrested

26  for serious crimes in LA are often allowed to plea the case down to a far lesser

27  crime and the minor crime is the one they are actually convicted of.  These are

28  HOA.860437.1

JSER0189

1 | weaknesses in the criminal justice system that should not be used to deny you the
2 | right of self-defense.  I find the statistics suspicious in any case."
3 |         *Objection*:  Hearsay, Misstates Zimring Declaration; Speculation,
4 | Lacks Foundation, Improper Expert Opinion, Calls for a Legal Conclusion not
5 | Within Declarant's Expertise. FRE 402, 602, 701, 702, 703, 802.
6 |
7 | DATED: February 10, 2012         Respectfully submitted,
8 |
9 |         JOHN F. KRATTLI
        Acting County Counsel
10 |
11 |         By
12 |         JENNIFER A.D. LEHMAN
        Principal Deputy County Counsel
13 |
14 |         Attorneys for Defendant
        LOS ANGELES COUNTY SHERIFF'S
        DEPARTMENT
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

**Tab 8**

**JONATHAN W. BIRDT – SBN 183908**
**Law Office of Jonathan W. Birdt**
18252 Bermuda Street
Porter Ranch, CA 91326
Telephone:     (818) 400-4485
Facsimile:     (818) 428-1384
jon@jonbirdt.com
Attorney for Plaintiff Robert Thomson

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT THOMSON,<br><br>    Plaintiff,<br><br> vs.<br><br>TORRANCE POLICE DEPARTMENT and<br>THE LOS ANGELES COUNTY SHERIFFS<br>DEPARTMENT,<br><br>    Defendants. | ) CASE NO.  2:11-cv-06154-SJO-JC<br>)<br>) **NOTICE OF APPEAL**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

   Notice is hereby given that Plaintiff hereby appeals to the United States

Court of Appeals for the Ninth Circuit from the Order Re Plaintiff's and

Defendants' Motions for Summary Judgment entered July 2, 2012.

July 3, 2012      ___/s/_____

           Jonathan W. Birdt, Esq.

NOTICE OF APPEAL

JSER0191

**Tab 9**

## UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:11-cv-06154-SJO-JC

| | |
|---|---|
| Robert Thomson v. Torrance Police Department et al | Date Filed: 07/26/2011 |
| Assigned to: Judge S. James Otero | Date Terminated: 07/02/2012 |
| Referred to: Magistrate Judge Jacqueline Chooljian | Jury Demand: Plaintiff |
| Case in other court: 9th CCA, 12-56236 | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**Plaintiff**

**Robert Thomson**    represented by    **Jonathan Wesley Birdt**
18252 Bermuda Street
Porter Ranch, CA 91326
818-400-4485
Fax: 818-428-1384
Email: jon@jonbirdt.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Torrance Police Department**    represented by    **Ajit Singh Thind**
Rutan & Tucker LLP
611 Anton Boulevard Suite 1400
Costa Mesa, CA 92626
714-338-1819
Fax: 714-546-9035
Email: athind@rutan.com
*ATTORNEY TO BE NOTICED*

**Della D Thompson-Bell**
City of Torrance
City Attorneys Office
3031 Torrance Boulevard
Torrance, CA 90503
310-618-2745
Fax: 310-618-5813
Email:
dthompsonbell@torranceca.gov
*ATTORNEY TO BE NOTICED*

Robert S Bower
Rutan & Tucker
611 Anton Blvd, 14th Fl
Costa Mesa, CA 92626-1931
714-641-5100
Email: rbower@rutan.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Los Angeles County Sheriffs Department**
*The*

represented by **Jennifer A D Lehman**
Los Angeles County Counsel
500 West Temple Street
Los Angeles, CA 90012-2713
213-974-1908
Email:
jlehman@counsel.lacounty.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/26/2011 | 1 | COMPLAINT against Defendants Los Angeles County Sheriffs Department, Torrance Police Department. Case assigned to Judge S. James Otero for all further proceedings. Discovery referred to Magistrate Judge Jacqueline Chooljian. (Filing fee $ 350 Paid.), filed by Plaintiff Robert Thomson. (et) (mg). (Entered: 07/27/2011) |
| 07/26/2011 | | 21 DAY Summons Issued re Complaint - (Discovery) 1 as to Defendants Los Angeles County Sheriffs Department, Torrance Police Department. (et) (Entered: 07/27/2011) |
| 07/26/2011 | 2 | CERTIFICATION AND NOTICE of Interested Parties filed by Plaintiff Robert Thomson. (et) (mg). (Entered: 07/27/2011) |
| 07/26/2011 | 3 | NOTICE TO PARTIES of ADR PROGRAM filed. (et) (Entered: 07/27/2011) |
| 07/29/2011 | 4 | AMENDED DOCUMENT filed by Plaintiff Robert Thomson. *First Amended Complaint* (Birdt, Jonathan) (Entered: 07/29/2011) |
| 08/01/2011 | 5 | INITIAL STANDING ORDER FOR CASES ASSIGNED TO Judge S. James Otero. Read This Order Carefully. It Controls This Case and Differs in Some Respects From the Local Rules. (See Order for Details). (sch) (Entered: 08/01/2011) |
| 08/01/2011 | 6 | PROOF OF SERVICE Executed by Plaintiff Robert Thomson, upon Defendant Los Angeles County Sheriffs Department served on 8/1/2011, answer due 8/22/2011. Service of the Summons and Complaint were executed upon Lashawn Tillman in compliance with |

| | | |
|---|---|---|
| | | Federal Rules of Civil Procedure by personal service. Original Summons NOT returned. (Birdt, Jonathan) (Entered: 08/01/2011) |
| 08/03/2011 | 7 | PROOF OF SERVICE Executed by Plaintiff Robert Thomson, upon Defendant Torrance Police Department served on 8/2/2011, answer due 8/23/2011. Service of the Summons and Complaint were executed upon V. Padila- Desk Officer in compliance with Federal Rules of Civil Procedure by personal service. Original Summons NOT returned. (Birdt, Jonathan) (Entered: 08/03/2011) |
| 08/03/2011 | 8 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Amended Document (Non-Motion) 4 . The following error(s) was found: Incorrect event selected. The correct event is: Amended Complaint. Other error(s) with document(s): Amended document, is an initiating Amended Complaint. Initiating documents are to be manually filed with Civil Intake. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (vh) (Entered: 08/03/2011) |
| 08/19/2011 | 9 | STIPULATION Extending Time to Answer the complaint as to Torrance Police Department answer now due 9/9/2011, re Amended Document (Non-Motion) 4 filed by Defendant Torrance Police Department. (Attachments: # 1 Proposed Order [Proposed] Order Extending Time to Respond to Initial Complaint by Not More Than 30 Days (L.R. 8-3))(Bower, Robert) (Entered: 08/19/2011) |
| 08/19/2011 | 10 | *Defendant Los Angeles County Sheriff Department's* Notice of Interested Parties filed by Defendant Los Angeles County Sheriffs Department, identifying Robert Thomson, Jonathan Birdt, Torrance Police Department. (Lehman, Jennifer) (Entered: 08/19/2011) |
| 08/24/2011 | 11 | ORDER Extending Time to Respond to Initial Complaint by Not More than 30 days 9 by Judge S. James Otero. It is hereby ordered that The Torrance Police Department and the Los Angeles County Sheriffs Department shall have until September 2, 2011 to ANSWER to Plaintiffs First Amended Complaint. Denied in Part. The Proposed Stipulation and Order was filed late on Friday before Monday Due Date. Good Cause to Extend the Date to respond has not been estalished. (Note: Changes Have Been Made to This Document). (sch) Modified on 8/25/2011 (sch). (Entered: 08/25/2011) |
| 08/29/2011 | 12 | ANSWER to Complaint - (Discovery), Complaint - (Discovery) 1 *Answer to Plaintiff's First Amended Complaint* filed by Defendant Torrance Police Department.(Bower, Robert) (Entered: 08/29/2011) |
| 08/30/2011 | 13 | MINUTE ORDER (IN CHAMBERS) by Judge S. James Otero: Scheduling Conference set for 10/24/2011 at 08:30 AM; Rule 26 |

| | | |
|---|---|---|
| | | Meeting Report due by 10/11/2011; in order to assist counsel, court has included a schedule form for pretrial dates to be completed by counsel and submitted in conjunction with their rule 26(f) report; if case is part of ADR program, counsel must confer and jointly complete ADR Pilot Program Questionnaire and to file it concurrently with the Joint Rule 26 (f) report; plaintiff counsel directed to give notice of scheduling conference to all parties. (sch) (Entered: 08/30/2011) |
| 08/30/2011 | 14 | ANSWER to Complaint - (Discovery), Complaint - (Discovery) 1 filed by Defendant Los Angeles County Sheriffs Department.(Lehman, Jennifer) (Entered: 08/30/2011) |
| 10/07/2011 | 15 | JOINT ADR PROGRAM QUESTIONNAIRE filed by Plaintiff Robert Thomson.(Birdt, Jonathan) (Entered: 10/07/2011) |
| 10/07/2011 | 16 | REPORT filed by Plaintiff Robert Thomson. (Attachments: # 1 Supplement Pretrial Schedule)(Birdt, Jonathan) (Entered: 10/07/2011) |
| 10/11/2011 | 17 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Report 16 . The following error(s) was found: Incorrect event selected. The correct event is: Joint Report Rule 26(f) Discovery Plan found under Pretrial and Trial Documents. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (sch) (Entered: 10/11/2011) |
| 10/24/2011 | 21 | MINUTES OF Scheduling Conference held before Judge S. James Otero: Plaintiff shall file an amended complaint by October 31, 2011. Motion for summaryjudgment shall be filed by January 3, 2012. Hearing will be set on Monday, February 27, 2012 10:00 a.m.Court Recorder: CS 10/24/11. (lc) (Entered: 11/01/2011) |
| 10/31/2011 | 18 | AMENDED DOCUMENT filed by Plaintiff Robert Thomson. *Second Amended Complaint* (Birdt, Jonathan) Modified on 11/1/2011 (lc). (STRICKEN PER 11/1/11 ORDER) (Entered: 10/31/2011) |
| 11/01/2011 | 19 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Amended Document (Non-Motion) 18 . PDF is an initiating document, a Second Amended Complaint. The following error(s) was found: Incorrect event and Incorrect procedure selected. Per G.O. 10-07, Attorneys are NOT TO E-FILE INITIATING DOCUMENTS, but to MANUALLY FILE IT WITH CIVIL INTAKE. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (lc) (Entered: 11/01/2011) |
| | | |

| | | |
|---|---|---|
| 11/01/2011 | [20](#) | ORDER by Judge S. James Otero: the following document(s) be STRICKEN for failure to comply with the Local Rules, General Order and/or the Courts Case Management Order: Amended Document (Non-Motion) [18](#) (an amended complaint), for the following reasons: wrong event and wrong procedure.Per G.O. 10-07, Attorneys are NOT TO E-FILE INITIATING DOCUMENTS*, but to MANUALLY FILE IT WITH CIVIL INTAKE. AFTERWHICH, EMAIL WITHIN 24 HOURS the conformed filed stamped PDF image to :CivilIntakeCourtDocs-LA@cacd.uscourts.gov. (lc) (Entered: 11/01/2011) |
| 11/15/2011 | [22](#) | MINUTE ORDER IN CHAMBERS by Judge S. James Otero: Plaintiff is Ordered to refile the Second Amended Complaint by not later than November 21, 2011 incompliance with the Courts Electronic case filing system. Failure to comply shall result in dismissal of this action. (lc) (Entered: 11/15/2011) |
| 11/15/2011 | [23](#) | AMENDED DOCUMENT filed by Plaintiff Robert Thomson. *Second Amended Complaint filed pursuant to order* (Birdt, Jonathan) (Entered: 11/15/2011) |
| 11/17/2011 | [24](#) | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Amended Document (Non-Motion) [23](#) . The following error(s) was found: Incorrect event and incorrect procedure selected. pdf is an initiating document, the second amended complaint. Per G.O. 10-07, Attorneys are NOT TO E-FILE INITIATING DOCUMENTS*, but to MANUALLY FILE IT WITH CIVIL INTAKE. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (lc) (Entered: 11/17/2011) |
| 11/18/2011 | [25](#) | ORDER by Judge S. James Otero: the following document(s) be STRICKEN for failure to comply with the Local Rules, General Order and/or the Courts Case Management Order: Amended Document (Non-Motion) [23](#) , pdf is an amended complaint, for the following reasons: wrong event and wrong procedure;Per G.O. 10-07, Attorneys are NOT TO E-FILE INITIATING DOCUMENTS, but to MANUALLY FILE IT WITH CIVIL INTAKE. AFTERWHICH, EMAIL WITHIN 24 HOURS the conformed filed stamped PDF image to :CivilIntakeCourtDocs-LA@cacd.uscourts.gov (lc) (Entered: 11/18/2011) |
| 11/22/2011 | [26](#) | SECOND AMENDED COMPLAINT against defendants Los Angeles County Sheriffs Department, Torrance Police Department amending Complaint - (Discovery) [1](#) ; JURY DEMAND filed by plaintiff Robert Thomson (lc) (lc). (Additional attachment(s) added on 11/29/2011: # [1](#) second amended complaint) (lc). (Entered: 11/23/2011) |

| | | |
|---|---|---|
| 12/05/2011 | 27 | OBJECTIONS *to Plaintiff's Second Amended Complaint & Request for Dismissal* filed by Defendant Torrance Police Department. (Thind, Ajit) Modified on 12/22/2011 (lc). (STRICKEN PER 12/22/11 MINUTES) (Entered: 12/05/2011) |
| 12/06/2011 | 28 | OBJECTIONS to Objections - non-motion 27 *response to objection* filed by Plaintiff Robert Thomson. (Birdt, Jonathan) (Entered: 12/06/2011) |
| 12/06/2011 | 29 | ANSWER to Amended Complaint, 26 filed by Defendant Torrance Police Department.(Thind, Ajit) (Entered: 12/06/2011) |
| 12/07/2011 | 30 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Defendant Torrance Police Department Answer to Complaint (Discovery) 29 . The following error(s) was found: Local Rule 7.1-1 No Certification of Interested Parties. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (lc) (Entered: 12/07/2011) |
| 12/07/2011 | 31 | Notice of Interested Parties filed by Defendant Torrance Police Department, identifying Robert Thomson, Jonathan Birdt, Torrance Police Department, Los Angeles County Sheriff's Department, City of Torrance. (Thind, Ajit) (Entered: 12/07/2011) |
| 12/07/2011 | 32 | MINUTES OF IN CHAMBERS ORDER by Judge S. James Otero : Scheduling Conference set for 2/6/12 8:30 AM; Rule 26 Meeting Report due by 1/23/12 ; in order to assist counsel, court has included a schedule form for pretrial dates to be completed by counsel and submitted in conjunction with their rule 26(f) report; if case is part of ADR program, counsel must confer and jointly complete ADR Pilot Program Questionnaire and to file it concurrently with the Joint Rule 26 (f) report; plaintiff counsel directed to give notice of scheduling conference to all parties. (lc) (Entered: 12/07/2011) |
| 12/07/2011 | 33 | ANSWER to Amended Complaint, 26 filed by Defendant Los Angeles County Sheriffs Department.(Lehman, Jennifer) (Entered: 12/07/2011) |
| 12/17/2011 | 34 | NOTICE OF MOTION AND MOTION for Summary Judgment as to Plaintiffs Complaint filed by Plaintiff Robert Thomson. Motion set for hearing on 2/27/2012 at 10:00 AM before Judge S. James Otero. (Attachments: # 1 Memorandum of Points and Authorities in Support Thereof, # 2 Supplement Separate Statement of Undicputed Facts, # 3 Proposed Order)(Birdt, Jonathan) (Entered: 12/17/2011) |
| 12/22/2011 | 35 | MINUTE ORDER IN CHAMBERS by Judge S. James Otero:The Court continues Strikes Defendants Objections to Plaintiff's Second Amended Complaint and Request for Dismissal 27 . Request for |

| | | dismissal should be filed as a formal motion to dismiss. (lc) (Entered: 12/22/2011) |
|---|---|---|
| 12/23/2011 | 36 | NOTICE OF MOTION AND MOTION for Summary Judgment as to Complaint filed by Defendant Los Angeles County Sheriffs Department. Motion set for hearing on 2/27/2012 at 10:00 AM before Judge S. James Otero. (Attachments: # 1 Proposed Order Granting Defendant County of Los Angeles Sheriff's Department's Motion for Summary Judgment)(Lehman, Jennifer) (Entered: 12/23/2011) |
| 12/23/2011 | 37 | NOTICE OF LODGING filed *by Defendant Los Angeles County Sheriff's Department's Separate Statement of Undisputed Facts* re MOTION for Summary Judgment as to Complaint 36 (Attachments: # 1 Defendant Los Angeles County Sheriff's Department's Separate Statement of Undisputed Facts & Conclusions of Law; Evidence in Support Thereof)(Lehman, Jennifer) (Entered: 12/23/2011) |
| 01/03/2012 | 38 | NOTICE OF MOTION AND MOTION for Summary Judgment *or, alternatively*, MOTION for Partial Summary Judgment filed by Defendant Torrance Police Department. Motion set for hearing on 2/27/2012 at 10:00 AM before Judge S. James Otero. (Thind, Ajit) (Entered: 01/03/2012) |
| 01/03/2012 | 39 | MEMORANDUM in Support of MOTION for Summary Judgment *or, alternatively* MOTION for Partial Summary Judgment 38 filed by Defendant Torrance Police Department. (Thind, Ajit) (Entered: 01/03/2012) |
| 01/03/2012 | 40 | DECLARATION of Ajit Singh Thind in support of MOTION for Summary Judgment *or, alternatively* MOTION for Partial Summary Judgment 38 filed by Defendant Torrance Police Department. (Attachments: # 1 Exhibit A)(Thind, Ajit) (Entered: 01/03/2012) |
| 01/03/2012 | 41 | DECLARATION of John Neu in support of MOTION for Summary Judgment *or, alternatively* MOTION for Partial Summary Judgment 38 filed by Defendant Torrance Police Department. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Thind, Ajit) (Entered: 01/03/2012) |
| 01/03/2012 | 42 | NOTICE OF LODGING re MOTION for Summary Judgment *or, alternatively* MOTION for Partial Summary Judgment 38 filed by Defendant Torrance Police Department. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Thind, Ajit) (Entered: 01/03/2012) |
| 01/03/2012 | 43 | MINUTE ORDER IN CHAMBERS by Judge S. James Otero: The Court Strikes and vacates the Minute Order 32 setting Scheduling Conference on 2/6/12, as issuedin error. (lc) (Entered: 01/03/2012) |
| 01/04/2012 | 44 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Torrance Police Motion Related Document 42 . The |

| | | |
|---|---|---|
| | | following error(s) was found: Incorrect event selected. The correct event is: Notice of Lodging. Other error(s) with document(s): suggestion re attachments which were the lodged order, statement etc, should be labeled correspondingly, instead of, as exhibit A, B and C. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (lc) (Entered: 01/04/2012) |
| 01/06/2012 | 45 | NOTICE of Change of Attorney Information for attorney Della D Thompson-Bell counsel for Defendant Torrance Police Department. Changing address to 3031 Torrance Boulevard, Torrance, CA 90503. Adding Della Thompson-Bell as attorney as counsel of record for Torrance Police Department for the reason indicated in the G-06 Notice. Filed by Defendant Torrance Police Department (Thompson-Bell, Della) (Entered: 01/06/2012) |
| 01/09/2012 | 46 | OPPOSITION in opposition to re: MOTION for Summary Judgment *or, alternatively* MOTION for Partial Summary Judgment 38 , MOTION for Summary Judgment as to Complaint 36 filed by Plaintiff Robert Thomson. (Attachments: # 1 Declaration of Lawrence Mudgett) (Birdt, Jonathan) (Entered: 01/09/2012) |
| 01/18/2012 | 47 | NOTICE of Related Case(s) filed by Defendant Los Angeles County Sheriffs Department. Related Case(s): 10CV-08377 JAK (JEMx); 11CV-08026 JHN (JCGx) (Lehman, Jennifer) (Entered: 01/18/2012) |
| 01/18/2012 | 48 | NOTICE of Related Case(s) filed by Defendant Los Angeles County Sheriffs Department. Related Case(s): 11CV06154 SJO (JCx), 10CV08377 JAK (JEMx), 11CV-08026 JHN (JCGx) (Lehman, Jennifer) (Entered: 01/18/2012) |
| 01/19/2012 | 49 | AMENDED DOCUMENT filed by Defendant Los Angeles County Sheriffs Department. Amendment to Notice of Related Case(s) 48 *amended to include pages 2 and 3 which were inadvertently left out when the document was coverted to PDF* (Lehman, Jennifer) (Entered: 01/19/2012) |
| 01/19/2012 | 50 | MEMORANDUM of Points and Authorities in Opposition *to request to relate cases* Re: Amended Document (Non-Motion) 49 , Notice of Related Case(s) 48 , Notice of Related Case(s) 47 (Birdt, Jonathan) (Entered: 01/19/2012) |
| 01/20/2012 | 51 | REPLY filed by Defendant Los Angeles County Sheriffs Department to Memorandum of Points and Authorities in Opposition (non-motion) 50 (Lehman, Jennifer) (Entered: 01/20/2012) |
| 01/20/2012 | 52 | REPLY filed by Defendant Los Angeles County Sheriffs Department to Memorandum of Points and Authorities in Opposition (non-motion) 50 |

| | | |
|---|---|---|
| | | (Lehman, Jennifer) (Entered: 01/20/2012) |
| 01/25/2012 | 53 | ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 08-05 (Related Case) filed. Transfer of case declined by Judge John A Kronstadt, for the reasons set forth on this order. Related Case No. CV 10-08377 JAK(JEMx) (rn) (Entered: 01/25/2012) |
| 01/30/2012 | 54 | MEMORANDUM in Opposition to MOTION for Summary Judgment as to Plaintiffs Complaint 34 filed by Defendant Los Angeles County Sheriffs Department. (Lehman, Jennifer) (Entered: 01/30/2012) |
| 01/30/2012 | 55 | NOTICE OF LODGING filed *by Defendant Los Angeles Sheriff's Department* re MOTION for Summary Judgment as to Plaintiffs Complaint 34 (Attachments: # 1 Response to Plaintiff's Separate Statement of Uncontroverted Facts)(Lehman, Jennifer) (Entered: 01/30/2012) |
| 02/06/2012 | 56 | MEMORANDUM in Opposition to MOTION for Summary Judgment as to Plaintiffs Complaint 34 filed by Defendant Torrance Police Department. (Thind, Ajit) (Entered: 02/06/2012) |
| 02/06/2012 | 57 | DECLARATION of Ajit Singh Thind In opposition to MOTION for Summary Judgment as to Plaintiffs Complaint 34 filed by Defendant Torrance Police Department. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Thind, Ajit) (Entered: 02/06/2012) |
| 02/06/2012 | 58 | STATEMENT of Genuine Disputes of Material Facts MOTION for Summary Judgment as to Plaintiffs Complaint 34 filed by Defendant Torrance Police Department. (Thind, Ajit) (Entered: 02/06/2012) |
| 02/06/2012 | 59 | REPLY support MOTION for Summary Judgment as to Plaintiffs Complaint 34 filed by Plaintiff Robert Thomson. (Birdt, Jonathan) (Entered: 02/06/2012) |
| 02/10/2012 | 60 | RESPONSE IN SUPPORT of MOTION for Summary Judgment *or, alternatively* MOTION for Partial Summary Judgment 38 filed by Defendant Torrance Police Department. (Bower, Robert) (Entered: 02/10/2012) |
| 02/10/2012 | 61 | Objection support of re: MOTION for Summary Judgment *or, alternatively* MOTION for Partial Summary Judgment 38 *Defendant Torrance Police Department's Evidentiary Objections to the Declaration of Lawrence Mudgett* filed by Defendant Torrance Police Department. (Bower, Robert) (Entered: 02/10/2012) |
| 02/10/2012 | 62 | Objection Opposition to re: MOTION for Summary Judgment as to Plaintiffs Complaint 34 *Defendant Torrance Police Department's Evidentiary Objections to Evidence Cited in Plaintiff's Reply Brief Re Plaintiff's Motion for Summary Judgment* filed by Defendant Torrance Police Department. (Bower, Robert) (Entered: 02/10/2012) |

| | | |
|---|---|---|
| 02/10/2012 | [63](#) | REPLY in Support of MOTION for Summary Judgment as to Complaint [36](#) filed by Defendant Los Angeles County Sheriffs Department. (Lehman, Jennifer) (Entered: 02/10/2012) |
| 02/10/2012 | [64](#) | Objections in Support re: MOTION for Summary Judgment as to Complaint [36](#) filed by Defendant Los Angeles County Sheriffs Department. (Lehman, Jennifer) (Entered: 02/10/2012) |
| 02/10/2012 | [65](#) | REQUEST FOR JUDICIAL NOTICE *in Support of Reply to Opposition to Defendant's Motion for Summary Judgment* filed by Defendant Los Angeles County Sheriffs Department. (Lehman, Jennifer) (Entered: 02/10/2012) |
| 02/16/2012 | [66](#) | MINUTES (IN CHAMBERS) by Judge S. James Otero: The parties are advised that the MOTION for Summary Judgment as to Plaintiffs Complaint filed by Plaintiff Robert Thomson [34](#) , the MOTION for Summary Judgment as to Complaintfiled by Defendant Los Angeles County Sheriffs Department [36](#) and the MOTION for Summary Judgment or, alternatively, MOTION for Partial Summary Judgment filed by Defendant Torrance Police Department [38](#) , scheduled for hearing on Monday, February 27, 2012, are taken under submission. Accordingly, the hearing date is vacated. Order will issue. (lc) (Entered: 02/16/2012) |
| 03/05/2012 | [67](#) | REPLY MOTION for Summary Judgment *or, alternatively* MOTION for Partial Summary Judgment [38](#) , MOTION for Summary Judgment as to Complaint [36](#) , MOTION for Summary Judgment as to Plaintiffs Complaint [34](#) filed by Plaintiff Robert Thomson. (Birdt, Jonathan) (Entered: 03/05/2012) |
| 06/15/2012 | [68](#) | Request for ruling on submitted matter filed by Plaintiff Robert Thomson re: Order on Motion for Summary Judgment,, Order on Motion for Partial Summary Judgment,,,,,,,,,, [66](#) (Birdt, Jonathan) (Entered: 06/15/2012) |
| 06/22/2012 | [69](#) | Joint REQUEST for Ruling Motions for Summary Judgment filed by Defendant Torrance Police Department. (Bower, Robert) (Entered: 06/22/2012) |
| 07/02/2012 | [70](#) | MINUTES OF (IN CHAMBERS): ORDER DENYING Plaintiff's Motion for Summary Judgment [34](#) ; Order GRANTING Los Angeles County Sheriff's Department's Motion for Summary Judgment [36](#) ; Order GRANTING Torrance Police Department's Motion for Summary Judgment [38](#) by Judge S. James Otero. For the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary Judgment, GRANTS LASD's Motion for Summary Judgment, and GRANTS TPD's Motion for Summary Judgment. (See Order for Details). (sch) (Entered: 07/02/2012) |
| 07/02/2012 | [71](#) | JUDGMENT that summary judgment shall be, and hereby is, entered in |

| | | favor of Defendants Los Angeles County Sheriff's Department and Torrance Police Department as to all claims. by Judge S. James Otero (MD JS-6, Case Terminated). (lc) (Entered: 07/02/2012) |
|---|---|---|
| 07/03/2012 | 72 | NOTICE OF APPEAL to the 9th CCA filed by Plaintiff Robert Thomson. Appeal of Judgment 71 (Appeal fee of $455 receipt number 0973-10617247 paid.) (Birdt, Jonathan) (Entered: 07/03/2012) |
| 07/05/2012 | 73 | NOTIFICATION by Circuit Court of Appellate Docket Number 12-56236, 9th CCA regarding Notice of Appeal to 9th Circuit Court of Appeals 72 as to Plaintiff Robert Thomson. (car) (Entered: 07/05/2012) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/06/2012 11:51:47 | | | |
| **PACER Login:** | rt0087 | **Client Code:** | 062579-0097 |
| **Description:** | Docket Report | **Search Criteria:** | 2:11-cv-06154-SJO-JC End date: 12/6/2012 |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

**Certificate of Service**

I certify that on January 8, 2013, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Dated:  January 8, 2013          RUTAN & TUCKER, LLP
ROBERT S. BOWER
AJIT S. THIND

By:_____
     Ajit S. Thind
     Attorneys for Appellee
     TORRANCE POLICE
     DEPARTMENT