IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

**Case No. 12-56236**

_____

ROBERT THOMSON,

Plaintiff-Appellant,

v.

TORRANCE POLICE DEPARTMENT and THE LOS ANGELES COUNTY
SHERIFF'S DEPARTMENT,

Defendants-Appellees.

_____

On Appeal from the United States District Court for the Central District of
California, the Honorable S. James Otero, Judge
Case No. CV 11-06154 SJO (JCx)

_____

**APPELLEE'S BRIEF OF
THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT**

_____

JOHN F. KRATTLI, County Counsel
ROGER H. GRANBO, Assistant County Counsel
JENNIFER A.D. LEHMAN, Principal Deputy County Counsel
State Bar No. 191477
500 West Temple, Sixth Floor
Los Angeles, California 90012-2713
Tel: (213) 974-1908   Fax: (213) 626-2105

Attorneys for Defendant-Appellee
LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ("LASD")

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ....................................................................1

STANDARD OF REVIEW ..............................................................................1

STATEMENT OF ISSUES ..............................................................................1

SUMMARY OF ARGUMENT .........................................................................1

STATEMENT OF FACTS ...............................................................................2

      LASD CCW Application Process .................................................4

      LASD's Good Cause Requirement ...............................................5

      Thomson's CCW Application to the LASD .................................8

STATEMENT OF THE CASE...........................................................................9

ARGUMENT ................................................................................................10

I.    THERE IS NO CONSTITUTIONAL RIGHT TO CARRY A
LOADED CONCEALED WEAPON IN PUBLIC UNDER THE
SECOND AMENDMENT. ..........................................................10

      A.    The Second Amendment Does Not Include the Right to Keep
and Carry a Weapon in Any Manner. ................................11

      B.    California's Restrictions on Concealed Weapons Do Not
Infringe on the Right of Self-Defense in the Home............15

II.   THE LASD'S POLICIES LIMITING CCW LICENSES TO
INDIVIDUALS WITH SPECIFICALLY IDENTIFIABLE AND
DOCUMENTED NEEDS WITHSTANDS CONSTITUTIONAL
SCRUTINY. ...............................................................................17

      A.    There is a Reasonable Fit Between the LASD's Policy and the
LASD's Important Governmental Interests..........................18

    B.    Thomson Has Other Means to Possess a Gun Without a CCW Permit ........................................................................................27

III.   THE LASD DEFENDANTS PROPERLY FOUND THAT THOMSON HAD NOT ESTABLISHED GOOD CAUSE FOR A CCW PERMIT IN HIS APPLICATION. ....................................................28

CONCLUSION ........................................................................................28

STATEMENT OF RELATED CASES ..................................................30

CERTIFICATE OF COMPLIANCE .....................................................31

CERTIFICATE OF SERVICE ..............................................................32

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abrams v. Johnson,*
 521 U.S. 74, 91 (1997) ........................................................22

*Board of Trustees of the State University of New York v. Fox,*
 492 U.S. 469, 480 (1989) ...............................................15, 22

*CBS Inc. v. Block,*
 42 Cal.3d 646, 655 (1986) ...................................................3

*Clark v. Jeter,*
 486 U.S. 456, 461 (1988) ....................................................15

*District of Columbia v. Heller,*
 554 U.S. 570, 128 S.Ct. 2783, (2008) .........................passim

*Erdelyi v. O'Brien,*
 680 F.2d 61, 63-64 (9th Cir. 1982) .......................................10

*Gamble v. United States,*
 30 A.3d 161, 166 (2011) ......................................................11

*Gifford v. City of Los Angeles,*
 88 Cal.App.4th 801, 805 (2001) ...........................................3

*Gonzales v. Carhart,*
 550 U.S. 124, 146 (2007) ....................................................22

*Heller v. District of Columbia (Heller II),*
 698 F.Supp.2d 179, 188 (D.D.C. 2010) ..............................15

*Hickman v. Block,*
 81 F.3d 98 (9th Cir. 1996) ...................................................10

*Kachalsky v. County of Westchester,*
 701 F.3d 81 (2nd Cir. 2012)......................................11, 16, 18

*Kelley v. Johnson,*
 425 U.S. 238, 247 (1976) ....................................................20

*Marshall v. Walker,*
 958 F.Supp. 359, 365 (N.D. Ill. 1997).................................21

*McDonald v. City of Chicago,*
 130 S.Ct. 3020, 3026, 3044 (2010) ...........................10, 11, 15, 16

*Medtronic, Inc. v. Lohr,*
 518 U.S. 470, 475 (1996) ....................................................16

*Moore v. Madigan,*
    2012 U.S. App. LEXIS 25264 (7th Cir. 2012)...............................................11

*Nichols v. County of Santa Clara,*
    223 Cal.App.3d 1236, 1241 (1990) ....................................................................3

*People v. Ellison,*
    196 Cal.App.4th 1342 (2011) ..........................................................................13

*People v. Flores,*
    169 Cal.App.4th 568, 575-576 (2008) .........................................................11, 12

*People v. Hale,*
    43 Cal.App.3d 353, 356 (1974) ....................................................................12, 14

*People v. Hodges,*
    70 Cal.App.4th 1348, 1357 (1999) ..................................................................14

*People v. Marin,*
    795 N.E.2d 953, 958–59 (Ill. App. 2003) ........................................................21

*People v. Wasley,*
    245 Cal.App.2d 383, 386 (1966) ....................................................................12

*People v. West,*
    422 N.E.2d 943, 945 (Ill.App. 1981) ..............................................................21

*People v. Yarbrough,*
    169 Cal.App.4th 303, 312-314 (2008) .......................................................11, 12, 20

*Peruta v. County of San Diego,*
    758 F.Supp.2d 1106 (S.D. Cal. 2010) .........................................................15, 17

*Pizczatoski v. Filko,*
    840 F.Supp.2d 813, 835 (D. N.J. 2012)........................................................16, 19

*Planned Parenthood of Southeastern Penn. v. Casey,*
    505 U.S. 833, 878 (1992) ...............................................................................22

*Richards v. County of Yolo,*
    821 F.Supp.2d 1169 (E.D. Cal. 2011) ............................................................13

*Robertson v. Baldwin,*
    165 U.S. 275, 281-282 (1897) ........................................................................10

*Schall v. Martin,*
    467 U.S. 253, 264 (1984) ...............................................................................20

*State v. Cole,*
    665 N.W.2d 328, 344 (2003)...........................................................................22

*Travelers Cas. & Sur. Co. of America v. Brennete,*
    551 F.3d 1132, 1137 (9th Cir. 2009)................................................................1

*United States v. Chester,*
   628 F.3d 683 (4th Cir. 2010) .......................................................15

*United States v. Marzzarella,*
   614 F.3d 85, 97 (3rd Cir. 2010) ..................................................15

*United States v. Morrison,*
   529 U.S. 598, 618 (2000) ...........................................................16

*United States v. Salerno,*
   481 U.S. 739, 750 (1987) ...........................................................20

*United States v. Skoien,*
   614 F.3d 638, 641 (7th Cir. 2010) ..............................................15

## STATUTES

28 U.S.C. § 1291 ...............................................................................1

42 U.S.C. § 1983 ...............................................................................9

California Penal Code section 12025 ...................................12, 22, 23

California Penal Code section 12025(a)(2) .....................................11

California Penal Code section 12026 ...............................................23

California Penal Code section 12031 ...................................13, 22, 23

California Penal Code section 12050 ...........................................1, 19

California Penal Code section 25850 ...............................................19

California Penal Code section 26150 .......................................1, 13, 19

California Penal Code section 26150, et. seq. .................................2, 4

California Penal Code section 830.6 ..................................................4

## STATEMENT OF JURISDICTION

The Court of Appeals has jurisdiction pursuant to 28 U.S.C. § 1291.

## STANDARD OF REVIEW

An order granting summary judgment is reviewed de novo. *Travelers Cas. & Sur. Co. of America v. Brennete*, 551 F.3d 1132, 1137 (9th Cir. 2009).

## STATEMENT OF ISSUES

1)      Does the Second Amendment convey an absolute right to carry concealed weapons in public places?

2)      Does Los Angeles County's requirement that a concealed weapons permit applicant show convincing evidence of a clear and present danger to the applicant or the applicant's family's safety that cannot adequately be dealt with by law enforcement violate the Second Amendment?

## SUMMARY OF ARGUMENT

Plaintiff and Appellant Robert Thomson claims that he was improperly denied a concealed weapons (CCW) permit by Defendant and Appellee Los Angeles County Sheriff's Department ("LASD").  Thomson alleges that the LASD's definition of good cause, as required by prior California Penal Code section 26150 (previously section 12050) for the issuance of a CCW permit, violates the Second Amendment of the United States Constitution.

The California Legislature has given the Sheriff the discretion to issue concealed weapon permits to qualified individuals who can show good cause.

Similar to many other jurisdictions in California and as set forth herein, the LASD defines good cause as requiring convincing evidence of a clear and present danger to the applicant or his/her family that cannot adequately be dealt with by law enforcement.  There is no constitutional right to carry a concealed firearm in public, and the LASD's policy withstands constitutional scrutiny.  As such, the trial court properly granted summary judgment.

## STATEMENT OF FACTS

California Penal Code sections 26150, et. seq[1] authorizes a county sheriff to issue a license to carry a concealed pistol, revolver, or other firearm capable of being concealed upon the person (hereinafter "CCW permit") upon the existence of good cause, and provided that the applicant meets other criteria provided for in the Penal Code.  California is a "may issue" state, meaning that law enforcement officials have the discretion to grant or deny a permit based on a number of statutory factors.[2]  Penal Code sections 26150-26190 set forth the general criteria that California CCW applicants must meet.  Applicants must be of good moral character, be a resident of or spend substantial time in the County in which they

---

[1] The CCW licensing laws were previously codified at Penal Code § 12050 et. seq.  As of January 1, 2012, the sections were re-numbered.  The language of the relevant sections was unchanged.

[2] In contrast, "shall issue" states require the issuance of a permit to any person who meets certain minimum requirements.

apply, demonstrate good cause and take a firearms course.  (See Penal Code §§ 26150-26190.)  The language of Section 26150 is permissive, not mandatory, and gives extremely broad discretion to a sheriff or police chief in issuing concealed weapons licenses — even to individuals who meet the minimum statutory requirements.  *Gifford v. City of Los Angeles*, 88 Cal.App.4th 801, 805 (2001) quoting in part, *Nichols v. County of Santa Clara*, 223 Cal.App.3d 1236, 1241 (1990); *CBS Inc. v. Block*, 42 Cal.3d 646, 655 (1986).

## LASD CCW Application Process

At the time of Mr. Thomson's application, Paul Tanaka was the Undersheriff for Los Angeles County. As part of his responsibilities as Undersheriff, he was designated to act as the Sheriff's sole authorized representative for reviewing applications for CCW licenses for the County of Los Angeles.  While members of his staff make recommendations regarding applications, he is the final decision-maker.  (2 JSER[3] p. 4:4-16; p. 18:¶¶1, 2.)  As part of his evaluation of CCW applications, he reviews the entire application packet and any and all supporting documentation.  He had been involved in these decisions since he became Undersheriff in 2005.  (2 JSER p. 4:17-20; pp. 18-19.)

---

[3] References to the "JSER" are to the Joint Supplemental Excerpts of Record submitted by the LASD and Torrance Defendants.

In Los Angeles County, there are four distinct categories of CCW licenses: Employment, Standard, Judges, and Reserve Police Officers. The Employment CCW license is issued only to a person who spends a substantial period of time in his or her principal place of employment or business in Los Angeles County. The Standard CCW license is issued to residents of Los Angeles County or to residents of a particular city within Los Angeles County. The Judge CCW license is issued to California judges, full-time commissioners, and to federal judges and magistrates of the federal courts. The Reserve Police Officer CCW license may be issued to reserve police officers appointed pursuant to California Penal Code § 830.6. (2 JSER p. 4:22 - p. 5:15; p. 19, ¶3.)

If an applicant resides in an incorporated city not policed by the LASD, the applicant must first apply to the chief of police of their city of residence for a concealed weapons license and have such application acted upon. Within 60 days after a denial of such application, such city resident may file a separate application with the LASD, attaching a copy of the application denied by the chief of police. The LASD will exercise independent discretion in granting or denying licenses to such person but may review, consider, and give weight to the grounds upon which such denial was made. (2 JSER p. 5:16 - p. 6:5; p. 19:¶4.) California Penal Code sections 26150-26190 (previously sections 12050-12054) set forth the general criteria that CCW applicants must meet. Applicants must be of good moral

character, be a resident of, or spend substantial time in the County they apply in, take a firearms course, and demonstrate good cause for the license.  (2 JSER p. 6:6-13; p. 19:¶5.)

## LASD's Good Cause Requirement

The ability of private citizens to carry concealed weapons is of great concern to the LASD.  The LASD's overriding policy is that no CCW license should be granted merely for the personal convenience of the applicant.  No position or job application in itself shall constitute good cause for the issuance, or for the denial, of a CCW license.  (2 JSER p. 6:14-23; p. 20:¶6.)

The LASD defines "good cause" as requiring:

> convincing evidence of a clear and present danger to life or of great bodily harm to the applicant, his spouse or dependent child, which cannot be adequately dealt with by existing law enforcement resources and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm.

(2 JSER p. 6:24 - p. 7:10; p. 20:¶6.)  Each CCW application is individually reviewed for the existence of good cause.  The LASD's definition of good cause has been in effect since at least 2005.  This definition of good cause, or one similar to it, is utilized by many other counties within California, including the cities of Los Angeles and San Diego.  (2 JSER p. 7:11-19; p. 20:¶6.)

In evaluating whether an applicant has established good cause, an applicant's stated reason of self-defense is not enough. (2 JSER p. 7:20-23; p. 20:¶6.) The applicant must demonstrate a credible threat of violence which would justify the need to possess a concealed weapon. If an applicant claims that he or she has been threatened, the LASD looks for documentation of that threat, such as police reports or other evidence. (2 JSER, p. 7:24 - p. 8:4; p. 20:¶7.)

One of the purposes for the LASD's policy is to protect against gun violence to the community at large, as well as to protect officers conducting law enforcement operations on the streets. (2 JSER p. 8:5-10; p. 20:¶8.) Gun violence is a problem throughout the State of California and Los Angeles County is no exception. The vast majority of homicides in Los Angeles County are committed with the use of guns. Handguns are of particular concern because they are much more likely to be used than shotguns and rifles. Because handguns are small, easy to conceal, and deadly at short range, they are of paramount concern and danger. Further, most of the violent acts committed in this County involving the use of guns are by gang members. (2 JSER p. 8:11-24, p. 20:¶ 8; pp. 49-51:¶¶3-6.)

The presence of more guns on the streets of Los Angeles County creates many problems for law enforcement officers. Officers are often charged with monitoring public gatherings as well as with breaking up public nuisances. Officers must act quickly whenever a disturbance occurs. Often times, this

involves isolating one or two problem individuals. However, if multiple persons within a crowd are carrying concealed weapons, this creates an increased likelihood that guns will be brandished or used. Thus, the increased presence of guns creates not only increased safety problems for officers but also for members of the community at large. (2 JSER, p. 8:25 – p. 9:16; p. 21:¶ 9; pp. 49-51:¶¶3-6.) It is the LASD's position that increasing the numbers of concealed weapons in the community increases the threat of gun violence to the community at large, to those who use the streets and go to public accommodations, and to law enforcement officers patrolling the streets. Further, the increased presence of concealed handguns make law enforcement operations more difficult thus taking away valuable resources which would be better used conducting law enforcement operations. (2 JSER p. 9:17- p. 10:3; p.21:¶10; pp. 49-51:¶¶3-6.) Los Angeles County's "good cause" requirement is intended to drastically restrict the number of persons who are secretly armed in the County. (2 JSER p. 10:4-8; p.21:¶10; pp. 49-51:¶¶3-6.) In 2010, there were approximately 400 concealed weapons permits that were issued by the LASD. The population of Los Angeles County was estimated to be 10,441,080 people as of January 2010. (2 JSER p. 10:9-16, p. 21:¶11.)

**Thomson's CCW Application to the LASD**

On or about April 7, 2011, Thomson applied to the LASD for a CCW.    In

his initial application to the LASD, he states as justification:

> I am a licensed California Bail Agent.  I have been
> licensed for over three years.  I am alone when I meet
> with co-signers and defendants at their homes in violent
> high crime areas within Los Angeles County such as
> Compton, Inglewood, Watts, and South Los Angeles as
> well as city and county jails to fill out paperwork and
> receive payment for I am called to post bail at all hours
> of the day and night.  Often when I bail out a person I am
> in neighborhoods where other suspects are a danger to
> me.  I don't' know the backgrounds of clients who may
> be disgruntled and have a grudge against me.  While in
> the process of my Bail Agent duties, I sometimes have in
> my possession over $10,000 in cash.
>
> I fear great bodily injury or death from an armed
> assailant who has the intent to steal my case of harm me.
> I am a man of small stature, and work very late hours of
> the night.  The criminal element that I deal with presents
> a danger to my safety that cannot be mitigated by law
> enforcement resources or other means available to me.  I
> don't have any other means of defending myself.

(2 JSER p. 10:20 – p. 11:25; p. 42.)  The LASD reviewed Plaintiff's application

and determined that he failed to show good cause as required by LASD policy, and

as defined above.  Specifically, Plaintiff failed to show convincing evidence of a

clear and present danger to life or of great bodily harm to the applicant, his spouse

or dependent child, which cannot be adequately dealt with by existing law

enforcement resources and which danger cannot be reasonably avoided by

alternative measures, and which danger would be significantly mitigated by the

applicant's carrying of a concealed firearm. (2 JSER p. 11:26 – p. 12:15; pp. 21-22:¶¶ 12-13.)

## STATEMENT OF THE CASE

Thomson sued the LASD Defendants and co-Defendant and co-Appellees Torrance Police Department ("the Torrance Defendants") under 42 U.S.C. §1983 claiming that their denial of his CCW application violated his Second Amendment right to bear arms. The Honorable S. James Otero of the Central District of California granted both the LASD Defendants and the Torrance Defendants motions for summary judgment finding the LASD and Torrance CCW policies constitutional. (ER, pp. 1-13.) Thomson now appeals.

## ARGUMENT

### I. THERE IS NO CONSTITUTIONAL RIGHT TO CARRY A LOADED CONCEALED WEAPON IN PUBLIC UNDER THE SECOND AMENDMENT.

To prevail under 42 U.S.C. § 1983, Thomson must show a violation of a constitutional right. (Ninth Circuit Model Jury Inst. 9.4.) His lawsuit fails at the outset because there is no constitutional right to carry a loaded concealed weapon in public under the Second Amendment.

In *District of Columbia v. Heller*, 554 U.S. 570, 574, 128 S.Ct. 2783 (2008), the United States Supreme Court held that the Second Amendment protects an individual's right to possess firearms <u>in the home</u> for self-defense and that the city's total ban on handguns, as well as its requirement that firearms in the home

be kept nonfunctional even when necessary for self-defense, violated that right.  In

*McDonald v. City of Chicago*, 130 S.Ct. 3020, 3026, 3044 (2010), the court

evaluated restrictions similar to those in *Heller* and held that the Due Process

Clause of the Fourteenth Amendment incorporates the Second Amendment right to

possess a handgun in the home for self-defense.

### A.  The Second Amendment Does Not Include the Right to Keep and Carry a Weapon in Any Manner.

Thomson argues that the decisions regarding the ability to have a weapon in

one's home also establish his right to carry a concealed weapon in public.

However, the law does not support his position.  Since 1897, in *Robertson v.*

*Baldwin*, 165 U.S. 275, 281-282 (1897), the Supreme Court recognized that the

Second Amendment right of people to keep and bear arms is not infringed by laws

prohibiting the carrying of concealed weapons.  See also *Hickman v. Block*, 81

F.3d 98 (9th Cir. 1996); *Erdelyi v. O'Brien*, 680 F.2d 61, 63-64 (9th Cir. 1982).

That principle has not changed.  In *Heller*, the Supreme Court noted that the "core

right" embodied in the Second Amendment does not include the right to keep and

carry any weapon in any manner:

> the right secured by the Second Amendment is not
> unlimited.  From Blackstone through the 19th-century
> cases, commentators and courts routinely explained that
> the right [to keep and bear arms] was not a right to keep
> and carry any weapon whatsoever in any manner
> whatsoever and for whatever purpose.

*Heller*, 554 U.S. at 626. While *Heller* does not specifically address concealed weapons in public, it does acknowledge that the Second Amendment right to bear arms is limited. See *id.*

Thus far, courts have overwhelmingly declined to extend *Heller* or *McDonald* to bestow a constitutional right to carry a concealed weapon in public. See e.g., *Gamble v. United States*, 30 A.3d 161, 166 (2011) ("To maintain the position that, all of a sudden, it's a free for all out there when it comes to firearms based on the *Heller* decision would be inappropriate, and frankly, it would be asking for trouble." quoting Judge (Puig-Lugo); *Kachalsky v. County of Westchester*, 701 F.3d 81 (2nd Cir. 2012) (New York CCW licensing scheme falls outside *Heller* protections as CCW relates to carrying handguns in public – not in home); but see *Moore v. Madigan*, 2012 U.S. App. LEXIS 25264 (7th Cir. 2012) (state could not preclude **any** CCW licenses (except for police, security, hunters and members of target shooting clubs) without proof of more than a rational basis).

California courts have upheld prohibitions on carrying a concealed weapon in public against Second Amendment challenges. See e.g., *People v. Flores*, 169 Cal.App.4th 568, 575-576 (2008); *People v. Yarbrough*, 169 Cal.App.4th 303, 312-314 (2008). In *People v. Yarbrough*, Yarbrough was convicted of violating prior California Penal Code § 12025(a)(2) for carrying a concealed weapon on residential property that was fully accessible to the public. *Yarbrough* challenged

his conviction on many grounds, including the Second Amendment. Noting that

*Helle*r had "specifically expressed constitutional approval of the accepted statutory

proscriptions against carrying concealed weapons," the *Yarbrough* court held:

> we find nothing in Penal Code section 12025, subdivision
> (a), that violates the limited right of the individual
> established in *Heller* to possess and carry weapons in
> case of confrontation. Section 12025, subdivision (a),
> does not broadly prohibit or even regulate the possession
> of a gun in the home for lawful purposes of confrontation
> or self-defense, as did the law declared constitutionally
> infirmed in *Heller*. Rather, section 12025, subdivision
> (a), in much more limited fashion, specifically defines as
> unlawful carrying concealed within a vehicle or
> "concealed upon his or her person any pistol, revolver, or
> other firearm capable of being concealed upon the
> person." Further, carrying a firearm concealed on the
> person or in a vehicle in violation of section 12025,
> subdivision (a), is not in the nature of a common use of a
> gun for lawful purposes which the court declared to be
> protected by the Second Amendment in *Heller*. (See
> *People v. Wasley,* 245 Cal.App.2d 383, 386 (1966) .)

The *Yarbrough* court held that, unlike possession of a gun for protection within a

residence, carrying a concealed firearm presents a recognized "threat to public

order," and is "prohibited as a means of preventing physical harm to persons other

than the offender.' *Id*. at 314, citing *People v. Hale*, 43 Cal.App.3d 353, 356

(1974).

Similarly, in *People v. Flores*, 169 Cal.App.4th 568 (2008), the court

affirmed convictions under California Penal Code sections 12025 and 12031 (now

§ 25850) in the face of a Second Amendment challenge. With regard to the section

12031 conviction, the court reasoned: "there can be no claim that section 12031 in any way precludes the use of handguns held and used for self-defense in the home…[i]nstead, section 12031 is narrowly tailored to reduce the incidence of unlawful public shootings, while at the same time respecting the need for persons to have access to firearms for lawful purposes, including self-defense. *Id*. at 576; see also *People v. Ellison*, 196 Cal.App.4th 1342 (2011) (conviction of carrying concealed firearm did not violate Second Amendment).

In *Richards v. County of Yolo*, 821 F.Supp.2d 1169 (E.D. Cal. 2011) (on appeal to the Ninth Circuit), the plaintiffs challenged Yolo County's good cause policy after they were denied concealed weapons permits. *Id.* at 1171.  In granting the county's motion for summary judgment, the court held that the Second Amendment did not create a fundamental right to carry a concealed weapon in public. *Id.* at 1174.

### B. California's Restrictions on Concealed Weapons Do Not Infringe on the Right of Self-Defense in the Home.

Penal Code section 26150 does not regulate the possession of a gun in the home for lawful purposes of confrontation or self-defense, as did the law declared unconstitutional in *Heller*.  Rather, it involves the licensing of persons in the context of regulating the carrying of concealed weapons in public places.  Carrying a firearm concealed on the person or in a vehicle is not in the nature of a common use of a gun for lawful purposes which the court declared to be protected by the

Second Amendment in *Heller*. Unlike possession of a gun for protection within a residence, carrying a concealed firearm presents a recognized "threat to public order," and is "'prohibited as a means of preventing physical harm to persons other than the offender.' [Citation.]" *People v. Hale*, 43 Cal.App.3d 353, 356 (1974). A person who carries a concealed firearm on his person or in a vehicle, "which permits him immediate access to the firearm but impedes others from detecting its presence, poses an 'imminent threat to public safety ….' [Citation.]" *People v. Hodges*, 70 Cal.App.4th 1348, 1357 (1999).

Here, California law does not impede the ability of individuals to defend themselves with firearms in their homes, as set forth in *Heller*. Instead, as the California courts recognize above, there is no right to carry a concealed weapon in public under the Second Amendment. California's regulation of both concealed carry of firearms and carry of loaded firearms in public do not infringe on the Second Amendment. Similarly, the LASD Defendants' policies and practices regarding the issuance of CCW permits do not impact any recognized Second Amendment right. Because Thomson could not and cannot show that he was denied any constitutional right, his civil rights claim failed at the outset and summary judgment was proper.

## II. THE LASD'S POLICIES LIMITING CCW LICENSES TO INDIVIDUALS WITH SPECIFICALLY IDENTIFIABLE AND DOCUMENTED NEEDS WITHSTANDS CONSTITUTIONAL SCRUTINY.

Nonetheless, even if this Court finds that the Second Amendment is infringed, the LASD Defendants' policies and practices withstand constitutional scrutiny. The majority of courts both before and after *McDonald* have employed an intermediate scrutiny standard when evaluating gun regulations. See *United States v. Skoien,* 614 F.3d 638, 641 (7th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 97 (3rd Cir. 2010); *Heller v. District of Columbia* (*Heller II*), 698 F.Supp.2d 179, 188 (D.D.C. 2010) (surveying the landscape of post-*Heller* decisions and joining the majority of courts in holding that intermediate scrutiny is the most appropriate standard); see also *Peruta v. County of San Diego,* 758 F.Supp.2d 1106 (S.D. Cal. 2010) (on appeal to the Ninth Circuit). Intermediate scrutiny requires that the challenged statute or regulation "be substantially related to an important governmental objective." *Clark v. Jeter*, 486 U.S. 456, 461 (1988).

### A. There is a Reasonable Fit Between the LASD's Policy and the LASD's Important Governmental Interests

Intermediate scrutiny requires only a "reasonable fit" between the challenged regulation and a "substantial" government interest. *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 480 (1989), *United States v. Chester*, 628 F.3d 683 (4th Cir. 2010). The LASD Defendants' policies and practices in

limiting concealed carry licensing to individuals with specifically identifiable and documented needs for concealed carry withstand intermediate scrutiny. Maintaining public safety and preventing crime are clearly important governmental interests. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (noting that States have "great latitude" to use their police powers); *United States v. Morrison*, 529 U.S. 598, 618 (2000) ("there is no better example of the police power than the suppression of violent crime") Some courts have even found these interests compelling. *Kachalsky, supra,* 701 F.3d 81, 2012 U.S. App. LEXIS 24363 at *42; *Pizczatoski v. Filko*, 840 F.Supp.2d 813, 835 (D. N.J. 2012) The regulation of concealed firearms is a critical factor in accomplishing these interests. *McDonald*, *supra*, 130 S.Ct. at 3126 ("private gun regulation is the quintessential exercise of a State's police power.")

Handguns are unquestionably dangerous and contribute to the majority of criminal cases that result in a person's death. (2 JSER p. 8:11 – p. 10:3; pp. 20-21:¶¶8-10; pp.49-59:¶¶ 3-28; see also *Heller, supra*, 554 U.S. at 636 (acknowledging the problem of handgun violence in the U.S.). A 2001 study revealed that a ten percent increase in handgun ownership correlates with a two percent increase in homicides. *See* Michael B. de Leeuw et al., *Beyond the Final Frontier: a "Post-Racial" America?: The Obligations of Lawyers, the Legislature, and The Court: Ready Aim, Fire? District of Columbia v. Heller and Communities*

*of Color*, 25 Harv.BlackLetter J. 133, 149 (Spring 2009). Handgun possession is a particular problem in Los Angeles County due to the high population of gang members. (2 JSER p. 8:11 – p. 10:3; pp. 20-21:¶¶8-10; pp.49-59:¶¶ 3-28.)

Concealed handguns, in particular pose an obvious threat to the public as a concealed handgun generates no special notice until the weapon is brandished. (2 JSER p. 8:11 – p. 10:3; pp. 20-21:¶¶8-10; pp.49-59:¶¶ 3-28) As more than 90% of police officer killings are caused by guns, high rates of concealed gun carry especially endanger police officers. *Id*. Of the 536 law enforcement officers killed in the line of duty between 2000 and 2009 (including 47 in California), 490 were killed with firearms and of those, handguns were used by the perpetrator 73% of the time. *See* Fed. Bureau of Investigations, U.S. Dep't of Justice, *Law Enforcement Officers Killed and Assaulted* (2009), tables 1 and 27, *available at* http://www.fbi.gov/about-us/cjis/ucr/leoka/2009/leoka-2009.

Consistent with these public safety concerns, courts have thus far upheld CCW licensing schemes similar to that maintained by Appellees. In *Peruta,* the Southern District of California found that the San Diego Sheriff had "an important and substantial interest in public safety and in reducing the rate of gun use in crime;" "in reducing the number of concealed weapons in public in order to reduce the risks to other members of the public who use the streets and go to public accommodations;" and "in reducing the number of concealed handguns in public

because of their disproportionate involvement in life-threatening crimes of violence, particularly in streets and other public places." *Peruta, supra*, 758 F.Supp. at 1117. The court also held that the Sheriff's policy which differentiated between "individuals who have a bona fide need to carry a concealed handgun for self-defense and individuals who do not" was reasonably related to the government's important and substantial interest in public safety. *Id*. at 1117. Accordingly, the court in *Peruta* upheld the San Diego Sheriff's concealed weapon permitting policy.

In *Kachalsky*, the Second Circuit found that New York's concealed weapons statutes requiring proper cause for a license passed constitutional scrutiny. *Kachalsky, supra*, 701 F.3d at __; 2012 U.S.App.LEXIS 24363 at *42. Under New York statutes, CCW applicants must demonstrate a special need for self-protection distinguishable from that of general community to qualify for a CCW. *Id.* at *10-11. Like the case at bar, a general desire to carry a concealed weapon for protection does not constitute proper cause, nor does living in a high crime area. *Id.* Licensing officers are vested with considerable discretion in deciding whether proper cause exists for the issuance of a license. *Id.* at *12. The Second Circuit held that New York's criteria were substantially related to their "substantial, indeed compelling, governmental interests in public safety and crime prevention." *Id.* at *42.

In *Pizczatoski, supra,* 840 F.Supp.2d at 813, the court upheld New Jersey's concealed weapons policies which, similar to the LASD, required written certification of justifiable need which details "the urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than issuance of a permit to carry a handgun." *Id.* at 817. The court found that New Jersey's statutes passed intermediate scrutiny as they were substantially related to the protection of public safety. *Id.* at 833-835.

That need for protection is no different in Los Angeles County. Los Angeles County's practices in limiting CCW licenses to those with specific and documented needs is consistent with the compelling and significant legislative goals underlying Penal Code sections 26150 and 25850: the protection of the public from widespread and unchecked public carry of concealed and loaded firearms. LASD's policy creates a balance between the competing Second Amendment interests in self-defense and public safety. The LASD enables those with a clear and present need for self-defense to obtain a concealed weapon permit, so long as they also meet the requirements enumerated in California Penal Code section 12050. The LASD's policy is reasonably related to the government's important and substantial interest in public safety and concealed weapon control. Therefore, the policy withstands constitutional scrutiny.

Maintaining public safety and preventing crime are clearly important (if not paramount) government interests and the regulation of concealed firearms is a critical factor in accomplishing that interest. (2 JSER p. 8:11 – p. 10:3; pp. 20-21:¶¶8-10; pp.49-59:¶¶ 3-28.) S*ee, e.g., United States v. Salerno*, 481 U.S. 739, 750 (1987); *Schall v. Martin*, 467 U.S. 253, 264 (1984); *Kelley v. Johnson*, 425 U.S. 238, 247 (1976) ("The promotion of safety of persons and property is unquestionably at the core of the State's police power ..."); *People v. Yarbrough*, *supra*, 169 Cal.App.4th at 312-314. Concealed handguns are the priority of law enforcement everywhere because of the use of the concealed handgun in vast numbers of criminal offenses. (2 JSER p. 8:11 – p. 10:3; pp. 20-21:¶¶8-10; pp.49-59:¶¶ 3-28.) Concealed carry of handguns allows for stealth and surprise. Limiting the number of loaded and concealed firearms in public places helps to keep the balance in favor of law enforcement and avoids the necessity for every place that is open to the public – restaurants, malls, theaters, parks, etc.-- to be equipped with metal detectors, fencing and other forms of security, in order to protect patrons from the fear of widespread and unchecked concealed firearms.

Numerous courts have discussed the need for firearm regulation and the need for imposing restrictions on their use:

> …[A]ccidents with loaded guns on public streets or the escalation of minor public altercations into gun battles or, as the legislature pointed out, the danger of a police officer stopping a car with a loaded weapon on the

passenger seat. … [T]hus, otherwise "innocent" motivations may transform into culpable conduct because of the accessibility of weapons as an outlet for subsequently kindled aggression. … [T]he underlying activity of possessing or transporting an accessible and loaded weapon is itself dangerous and undesirable, regardless of the intent of the bearer since it may lead to the endangerment of public safety. … [A]ccess to a loaded weapon on a public street creates a volatile situation vulnerable to spontaneous lethal aggression in the event of road rage or any other disagreement or dispute. The prevention of the potential metamorphosis of such "innocent" behavior into criminal conduct is rationally related to the purpose of the statute, which is to enhance public safety. Because the legislature has a compelling interest in preventing the possession of guns in public under any such circumstances, the statute is reasonably related to the legislature's purpose of "mak[ing] communities in this state safer and more secure for their inhabitants."

*People v. Marin*, 795 N.E.2d 953, 958–59 (Ill. App. 2003) (citations omitted); s*ee also Marshall v. Walker*, 958 F.Supp. 359, 365 (N.D. Ill. 1997) (individuals should be able to walk in public "without apprehension of or danger from violence which develops from unauthorized carrying of firearms and the policy of the statute to conserve and maintain public peace on sidewalks and streets within the cities ...") (quoting *People v. West*, 422 N.E.2d 943, 945 (Ill.App. 1981).)

To pass constitutional scrutiny, the LASD Defendants need only show a sufficient "fit," which they have done. For intermediate scrutiny, what is required is a "fit" between the Legislature's ends and the "means chosen to accomplish those ends – a fit that is not necessarily perfect, but reasonable … within those bounds

we leave it to governmental decision-makers to judge what manner of regulation may best be employed." *Board of Trustees, supra,* 492 U.S. at 480. Here, the LASD, like the various other jurisdictions whose similar policies have been upheld, has made the requisite showing. (See section II.A. *infra*)

For these reasons, the LASD's policies would also withstand any other level of constitutional scrutiny. Strict scrutiny requires that a statute or regulation "be narrowly tailored to serve a compelling governmental interest" in order to survive a constitutional challenge. *Abrams v. Johnson*, 521 U.S. 74, 91 (1997). Finally, a statute or regulation survives an "undue burden" analysis where it does not have the "'purpose or effect [of] plac[ing] a substantial obstacle in the path'" of the individual seeking to engage in constitutionally protected conduct. *Gonzales v. Carhart*, 550 U.S. 124, 146 (2007) (quoting *Planned Parenthood of Southeastern Penn. v. Casey*, 505 U.S. 833, 878 (1992). The LASD's policy to limit CCW licenses to those with specific and documented needs is consistent with the compelling and significant legislative goals underlying sections 12025 and 12031, i.e. the protection of the general public from widespread and unchecked public carry of concealed and loaded firearms. There is a "compelling state interest in protecting the public from the hazards involved with certain types of weapons, such as guns." *State v. Cole*, 665 N.W.2d 328, 344 (2003).

### B. Thomson Has Other Means to Possess a Gun Without a CCW Permit

Further, Thomson also has other avenues to possess a gun without a CCW permit. First, he could: (1) open-carry or carry concealed a loaded weapon at his place(s) of business and home, including any temporary residence or campsite; (Cal. Penal Code §§ 12026, 12031(h), (l); now §§ 25605, 26035. 26055); (2) open carry a loaded weapon while making a lawful arrest (§ 12031(k), now § 26050); and (3) carry a loaded weapon if he believed he was in immediate, grave danger and the firearm was needed for self-defense (§ 12031(j)(1); § 12025.5; now §§ 25600, 26045). The California Penal Code also allows for several other exemptions from the concealed weapon prohibitions. (See California Penal Code §§ 25635, 26000, 26005.)

### III. THE LASD DEFENDANTS PROPERLY FOUND THAT THOMSON HAD NOT ESTABLISHED GOOD CAUSE FOR A CCW PERMIT IN HIS APPLICATION.

Finally, the LASD's policy was constitutionally applied to Thomson. His application was reviewed like every other application and underwent the same evaluation every other application did. (2 JSER, p. 10:17 – p. 12:15; pp. 21-22:¶¶ 12-13; pp. 30-46.) Thomson's application was denied because he did not present evidence of a clear and present danger, as required under the LASD's good cause policy. (2 JSER, p. 10:17 – p. 12:15; pp. 21-22:¶¶ 12-13; pp. 30-46.)

## <u>CONCLUSION</u>

For the foregoing reasons, the LASD Defendants ask that the Court affirm

the trial court's ruling.

DATED: January 8, 2013   Respectfully submitted,

            JOHN F. KRATTLI
            County Counsel


           By  /S/ Jennifer A.D. Lehman
              JENNIFER A.D. LEHMAN
              Principal Deputy County Counsel

           Attorneys for Defendants-Appellees
           THE LOS ANGELES COUNTY SHERIFF'S
           DEPARTMENT ("LASD")

## STATEMENT OF RELATED CASES

There are two related cases in the Ninth Circuit arising out of the LASD's denial of concealed weapons permits, and who are also represented by Appellant Thomson.

1) *Jonathan Birdt v. Los Angeles County Sheriff's Department*, Ninth Circuit Case No. 12-55115 (United States District Court Case No. CV 10-08377 JAK).

2) *Sigitas Raulinaitis et al. v. Los Angeles County Sheriff's Department*, Ninth Circuit Case No. 12-56508 (United States District Court Case No. CV 11-8026 MWF)

In both of these related cases, the trial courts granted summary judgment to the LASD finding the good cause policy at issue here to be constitutional.

DATED: January 8, 2013   Respectfully submitted,

JOHN F. KRATTLI
County Counsel


By  /S/ JENNIFER A.D. LEHMAN
    JENNIFER A.D. LEHMAN
    Principal Deputy County Counsel

Attorneys for Defendants-Appellees
THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ("LASD")

# CERTIFICATE OF COMPLIANCE

I, Jennifer A.D. Lehman, declare as follows:

1.　　I am an attorney duly admitted to practice before this Court.  I am a Deputy County Counsel in the office of the Los Angeles County Counsel, attorneys of record for the Defendants and Appellees Los Angeles County Sheriff's Department.

2.　　Pursuant to Circuit Rule 32-1, I certify that the Appellees' Answering Brief conforms with Fed. R. App. P. 32(a)(7)(B)(i), is proportionately spaced, has a typeface of 14 points or more and contains less than 14,000 words, including footnotes.  According to the Word program used to produce this brief, the word count is <u>6,683.</u>

I declare under penalty of perjury under the laws of the State of California and the Unites States of America that the foregoing is true and correct.

Executed on January 8, 2013, at Los Angeles, California.

　　/S/JENNIFER A.D. LEHMAN　　
Jennifer A.D. Lehman
Principal Deputy County Counsel

## CERTIFICATE OF SERVICE

9th Circuit Case No. 12-56236

I hereby certify that I electronically filed the foregoing

**APPELLEES' ANSWERING BRIEF**

with the Clerk of the Court for the United States Court of Appeals for the Ninth

Circuit by using the appellate CM/ECF system on January 8, 2013.

I certify that all participants in the case are registered CM/ECF users

and that service will be accomplished by the appellate CM/ECF system.

Signature:  /s/Jennifer A.D. Lehman